# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CITRIX SYSTEMS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 18-588-LPS |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| WORKSPOT, INC., | ) |
| | ) |
| Defendant. | ) |

## LETTER TO THE HONORABLE LEONARD P. STARK
## FROM BINDU A. PALAPURA

OF COUNSEL:

H. Mark Lyon
GIBSON DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211

Y. Ernest Hsin
GIBSON DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921

Brian K. Andrea
Brian M. Buroker
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306

Jennifer Rho
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Workspot, Inc.*

OF COUNSEL:

Aaron B. Frumkin
GIBSON DUNN & CRUTCHER LLP
2029 Century Park East, Suite 4000
Los Angeles, CA 90067

Dated: September 28, 2018
5941034 / 45039

September 28, 2018

**VIA ELECTRONIC FILING**
The Honorable Leonard P. Stark
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

      Re:    *Citrix Systems, Inc. v. Workspot, Inc.*, C.A. No. 18-588-LPS

Dear Chief Judge Stark:

      In seeking a preliminary injunction ("PI"), a patent plaintiff is solemnly representing to the Court that infringement and irreparable harm are *so certain and clear*—at the time the PI motion is filed—that this extraordinary remedy is justified. Here, Citrix took a vastly different approach, instead filing a PI motion devoid of substance and competent evidence in order to wield this Court's PI proceedings as a weapon to open the door to expedited and burdensome discovery, and hold the unjustified threat of injunction over Workspot. Right from the beginning, Citrix admitted that its opening brief was a placeholder and that it expected to "submit supplemental materials, including an expert declaration." *See* D.I. 23 at 11, fn 5. And now, in its Reply Brief (D.I. 83), Citrix's strategy has fully revealed itself, as the Reply does not simply supplement Citrix's motion using non-public supporting evidence obtained during discovery, but rather sets forth, for the first time, entirely different *theories* of patent infringement for each of the four asserted patents, as well as for Citrix's false advertisement and irreparable harm claims.

      Citrix's "trial by ambush" strategy violates this Court's mandate that "[t]he party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." D. Del. LR 7.1.3(c)(2). Workspot therefore moves this Court—under Your Honor's procedures and Fed. R. Civ. P. 37—to strike all of the newly-raised theories and supporting declarations to the extent they address those new theories, discussed below.

### I.   *Citrix's Reply Raises Brand New Theories and Arguments*

      Citrix's Reply and supporting declaration of its expert, Dr. Hugh Smith, put forth the following new infringement *theories* that are entirely different from the theories in Citrix's Opening Brief. Dr. Smith did not submit a declaration with Citrix's Opening Brief, nor did Workspot have a chance to depose him.

'018 patent

- Citrix's Reply now argues that Workspot Control meets the claim element "identifying the plurality of disconnected application sessions" (1[c]) via the icons displayed on the Workspot "launch pad" screen. D.I. 85, Appx. A at 11. Citrix's Opening asserted *an entirely different theory* that assigning desktops in Workspot Control and/or the onboarding process met this limitation—despite the fact that the "launch pad" screen that Citrix now points to was publicly known and described in detail on Workspot's website long before Citrix filed its PI motion. *See* D.I. 23 at 14–15; D.I. 1, Ex. 7 at 2.

- Citrix's Reply now argues that Workspot Control meets the "one of required, permitted, and forbidden" limitation (1[e]) through "whitelisted/blacklisted" URL functionality. D.I. 85, Appx, A at 11–12. Citrix's Opening did not even set forth a theory for meeting all three options. *See* D.I. 23 at 14–15; D.I. 1, Ex. 7 at 2.

'732 patent

- Citrix's Reply now argues that the "identification component," "execution component," and "management component" claim limitations (20[c]-[e]) are each provided by "Workspot Control and/or Azure at the direction of Workspot." D.I. 85, Appx. A at 5, 8–9. Citrix's

- Opening never mentioned Workspot's products allegedly directing Microsoft's Azure, despite the fact that Workspot's interaction with Azure was already described in the same public "whitepaper" that Citrix cited as an exhibit to its Complaint. *See* D.I. 23 at 13–14; D.I. 1, Ex. 6 at 5–6.
- Citrix's Reply now argues that choosing from among different "remote desktop pools" meets the claim element "selecting the method of execution" (20[f][i]). D.I. 85, Appx. A at 5–7. Citrix's Opening asserted *an entirely different theory* that choosing from among different desktops, e.g., "persistent desktop" or "non-persistent desktop" meets the claim element. *See* D.I. 23 at 13–14; D.I. 1, Ex. 6 at 3, 6.

'677 patent

- Citrix's Reply now argues that Workspot Client meets the "directs" claim limitations (15[a][ii] and 15[c][ii]) via Workspot Control's sending a signal to Workspot Client prior to Workspot Client's gathering information about "device type (e.g., Android, iOS, Windows, Mac)." D.I. 85, Appx. A at 1–2. Citrix's Opening asserted *an entirely different theory* that these limitations are met through Workspot Client's determining whether the user device is "jailbroken" or has any "rogue applications," or "IT" defining "policies to control the behavior of the workspace." *See* D.I. 23 at 11–13; D.I. 1, Ex. 5 at 1, 9–10.
- Citrix's Reply now argues that the "AppManager class" implemented in Workspot Control can meet the claim limitation of "grants . . . access" (15[a][iii] and 15[c][iii]). D.I. 85, Appx. A at 2–3. Citrix's Opening asserted *an entirely different theory* that these claim limitations are met through the system administrator's assigning particular virtual desktops to a user, Workspot Client's downloading configuration information, and "IT" defining certain policies. *See* D.I. 23 at 11–13; D.I. 1, Ex. 5 at 1–2, 9–11.

'843 patent

- Citrix's Reply now argues that the "content server," "web service directory," and the "web server" in the asserted claim (1[a]) are both met by Workspot Control. D.I. 85, Appx. A at 13–14. Citrix's original theory did not map these claim elements to anything in Workspot's system. *See* D.I. 23 at 15–16; D.I. 1, Ex. 8 at 2–3.
- Citrix's Reply now argues that Microsoft Terminal Server is the "application server" and that "RDPActivity" is the claimed "second application" (1[c]). D.I. 85, Appx. A at 15–16. Citrix's Opening did not map these claim elements to Workspot functionality. *See* D.I. 23 at 15–16; D.I. 1, Ex. 8 at 3–4.

Additionally, Citrix includes the following new theories and arguments regarding its claims of false advertising and irreparable harm.

- Citrix includes several blog posts and articles that Citrix characterizes as containing "Workspot's False Statements." See, e.g., Reply at 12, fn. 13. Not only does Citrix not identify the alleged "false statements" in these items, they existed at the time that Citrix filed its Opening, but were not mentioned therein.
- Citrix now argues that it has been irreparably harmed by identifying, for the first time, new arguments and evidence that over fifty of Workspot's customers are also Citrix customers. Citrix could have investigated prior to filing its Motion whether any of its own customers had begun to also use Workspot products.
- Citrix provides a new theory of purported harm, arguing that Workspot's business dealings with Microsoft beginning in 2017 (for example, by engaging in a joint sales campaign) attempt to disrupt Citrix's relationship with Microsoft. *See*, *e.g.*, Reply at 3-4, Exs. 8-11. However, Workspot's partnership with Microsoft was public months before Citrix filed its

Motion. *See*, *e.g.*, http://blog.workspot.com/2017-the-year-of-the-workspot-desktop-cloud (Jan. 3, 2018).

## II. Striking Citrix's New Theories Is The Appropriate Remedy

Citrix argues that "[t]his is not a garden-variety patent infringement case," in an attempt to justify its request for the extraordinary relief of a preliminary injunction. Workspot agrees that this case is unusual, but only insofar as Citrix has so brazenly misused the Court's PI proceedings. Workspot's Opposition systematically identified the multitude of theories that were incoherent or missing from—and that should have been spelled out in—*Citrix's Opening*. It is no response to simply provide them now, for the first time, *in Citrix's Reply*. Citrix is either attempting to remedy its failure to conduct an adequate investigation prior to filing its PI motion, or has been sandbagging by reserving new theories for its Reply. Citrix's strategic misuse of the judicial system warrants striking the offending portions of its Reply. *See also Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*, 757 F. Supp. 2d 431, 439 (D. Del. 2010) (excluding documents from inclusion in a reply brief when movant had failed to diligently pursue them at an earlier stage and thus "effectively reserved" the material for its reply).

Citrix's conduct violates this District's local rules and two orders entered by this Court that referred to the limited scope of Citrix's reply. Local Rule 7.1.3(c)(2) exists to "prevent litigants from engaging in impermissible 'sandbagging,' reserving crucial arguments for a reply brief to which an opponent cannot respond." *Fifth Mkt., Inc. v. CME Grp., Inc.*, 2013 WL 3063461, at *1 (D. Del. June 19, 2013). While Citrix is allowed to use evidence obtained during discovery to support its PI motion, as discussed above, Citrix's Reply goes far beyond mere supplementation. Citrix expressly agreed when negotiating the PI schedule that its final submission was limited to the "Reply and *Rebuttal* Expert Disclosures". *See* D.I. 31. And, most recently, Workspot agreed to Citrix's request for page extension on the express understanding that Citrix's Reply would not include new material. *See* D.I. 82. Despite its promises, Citrix failed to hold up its end of the bargain. Citrix's gamesmanship materially prejudices Workspot's ability to oppose the PI motion. Due process and fairness require that the Court strike the newly-raised theories because Workspot did not have reasonable notice of the arguments and thus could not have addressed them in its discovery and opposition.

Alternative forms of relief, including approval to take additional discovery and submit a sur-reply, do not adequately remedy the prejudice Workspot has suffered. Citrix's PI motion, which has been pending since May, is a cloud on Workspot's business and operations. Thus, any delay in resolving this meritless dispute harms Workspot. As such, Workspot respectfully requests that the Court keep the currently-scheduled hearing and exclude the new material in Citrix's reply.

## III. If the Court is Not Inclined to Strike, Workspot Seeks Alternative Relief

Should this Court not strike Citrix's new arguments, Workspot requests the opportunity to take additional discovery and submit a sur-reply in order to address Citrix's new theories, and proposes the following schedule:

- Written discovery (5 ROGs) propounded by October 8th, response due by October 22nd;
- Possible depositions of Citrix's technical expert (Hugh Smith) and Lesley Hamlin during the last week of October;
- Sur-reply (up to 10 pages) due November 13[1];
- PI hearing on or about December 6 (subject to the Court's availability)

---

[1] A Court may grant leave to file a sur-reply if it responds to new evidence, facts, or arguments. *St. Clair Intellectual Prop. Consultants, Inc. v. Samsung Elecs. Co. Ltd.*, 291 F.R.D. 75, 80 (D. Del. 2013)

Respectfully,

*/s/ Bindu A. Palapura*

Bindu A. Palapura (#5370)

BAP:msb/5941034/44681
cc: Clerk of Court (via hand delivery)
Counsel of Record (via electronic mail)