# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

CITRIX SYSTEMS, INC.,

        Plaintiff,

        v.

WORKSPOT, INC.,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)

C.A. No. 18-588-LPS

**JURY TRIAL DEMANDED**

**PUBLIC VERSION**

## DEFENDANT WORKSPOT, INC.'S ANSWERING BRIEF IN
## OPPOSITION TO PLAINTIFF'S MOTION FOR TRO AND TO SHOW CAUSE

OF COUNSEL:

H. Mark Lyon
GIBSON DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel: (650) 849-5300

Y. Ernest Hsin
GIBSON DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Tel: (415) 393-8200

Jennifer J. Rho
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 229-7000

Dated: October 30, 2018
5971479 / 45039
Public Version Dated: February 5, 2019

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Workspot, Inc.*

## TABLE OF CONTENTS

I.   Background ..................................................................................................................2

    A.   Citrix repeats its practice of file first and investigate later ....................................2

    B.   Workspot conducted an independent investigation ................................................4

II.  Argument .....................................................................................................................5

    A.   The Court should deny Citrix's request for TRO ...................................................5

        1.   Citrix's mischaracterizes the dispute concerning the threatening emails as a "Protective Order violation" ...................................................................5

        2.   Citrix lacks any credible evidence to support its allegations......................6

        3.   Workspot is the only party suffering irreparable harm here ......................11

        4.   Granting a TRO is not in the public interest ..............................................11

    B.   The Court should deny Citrix's improper request for Workspot to show cause ...11

        1.   Workspot complied with—not "disobeyed"—the Protective Order .........12

        2.   An Order to Show Cause and/or a Finding of Contempt Is Not Appropriate Because the Inadvertently Disclosed Information Was Largely Public and Unrelated to the 2018 Workspot-Microsoft License Agreements. ...........14

    C.   Citrix's motivation is to interfere with Workspot's business relationship with Microsoft ..........................................................................................................17

    D.   Ironically, the threatening emails do suggest bad acts—█████████████ █████, not by Workspot or Mr. Chawla ...........................................................18

    E.   Citrix should be ordered to pay Workspot's fees for responding to this motion...19

III. Conclusion .................................................................................................................20

i

## TABLE OF AUTHORITIES

CASES

**Page(s)**

*CrowdStrike, Inc. v. NSS Labs. Inc.,*
   C.A. No. 17-146-GMS, 2017 WL 588713 (D. Del. Feb. 13, 2017) ..........................................5

*Harley-Davidson, Inc. v. Morris,*
   19 F.3d 142 (3d Cir. 1994).......................................................................................14

*INVISTA N. Am. S.a.r.l. v. M & G USA Corp.,*
   C.A. No. 11-1007-SLR-CJB, 2014 WL 1908286 (D. Del. Apr. 25, 2014) ............................12

*LifeScan Scotland, Ltd. v. Shasta Techs, LLC,*
   No. 11-CV-04494-WHO, 2013 WL 4604746 (N.D. Cal. Aug. 28, 2013) ............................15

*W.L. Gore & Associates, Inc. v. C.R. Bard, Inc.,*
   231 F. Supp. 3d 19 (D. Del. 2017).................................................................... 19-20

STATUTES & RULES

28 U.S.C. § 1927...........................................................................................19

D. DEL. LR 7.1.1 ............................................................................................3

ii

Based solely on speculation, and triggering significant additional needless fees and costs to Workspot, Citrix's Motion for TRO and To Show Cause (D.I. 101) should be denied with fees and costs awarded to Workspot. In seeking a TRO and contempt order, Citrix asks this Court to accept, without any competent evidence, that Workspot and its CTO, Puneet Chawla, were responsible for hacking and leaking Citrix emails and also writing certain emails to Citrix executives. There is no evidence, however, that Workspot is responsible for the emails Citrix executives received, and Citrix's allegations are based on speculation and coincidence. Workspot has not violated the Protective Order ("PO"). Workspot employees do not have access to Citrix confidential information produced in this litigation, and Workspot has, at all times, fully complied with the PO.

This is the second motion Citrix has filed in a span of six months seeking extraordinary relief without conducting the necessary analysis. Citrix is and has been, from the outset, wielding this litigation as a sword to accomplish its ulterior business objective – as evidenced by one of the very emails Citrix seeks to shield from disclosure – to hurt Workspot's business by any and all means. The "leaked" email from Citrix's CEO – which Citrix has never produced in this case – confirms the marching orders: ████████████████████████████ ████████████████████████ (D.I. 104, Ex. M). In this case, that means filing one specious motion after another in order to drive up litigation costs and interfere with Workspot's business operations during this critical period of growth.

Citrix's "file first and investigate later" strategy cannot be rewarded. Given the extremely serious nature of the accusations set forth in the motion, and the utter lack of evidence to support Citrix's claims, Workspot respectfully requests that it be awarded the attorneys' fees it incurred in having to respond to this premature and meritless motion.

## I.      Background

### A.      *Citrix repeats its practice of file first and investigate later.*

On October 9, 2018, Citrix executives, David Henshall and Juan Rivera, purportedly started receiving the emails at the heart of Citrix's motion.  Certain emails written by Mr. Henshall also were being leaked and posted on social media such as TheLayoff.com and Pastebin.com.  On the evening of October 15, 2018, Citrix's counsel first notified Workspot of Citrix's email issues and its intentions to move for a TRO against Workspot.  In that notice, Citrix also raised a months-old, stale issue concerning a single confidential document over 20 years old that was *inadvertently* disclosed.

Given the seriousness of the email-related accusations, Counsel for Workspot responded within hours that it was willing to meet and confer the very next morning to find out the bases for Citrix's accusations.  Ex. 1.[1]  During that October 16th meeting, Citrix represented that it had shared all "evidence" supporting its accusations and requested Workspot stipulate to a third-party subpoena for Comcast to obtain IP-address information relating to the emails.  Workspot stipulated to the Comcast subpoena.[2]  *See* D.I. 106.  Workspot further indicated that if there were evidence that a rogue employee was actually behind the emails to Henshall and Rivera, Workspot wanted that information and would investigate and take remedial action.  Ex. 2.

Workspot also informed Citrix that Workspot searched for the Citrix-internal email from Henshall that was apparently posted to Pastebin.com (D.I. 104, Ex. M), but did not locate that email in any of the documents Citrix had produced to Workspot in this action.  Workspot asked Citrix to identify the document by Bates Number.  Ex. 2.  Counsel for Citrix never responded to

---

[1] All exhibits to this brief are attached to the Declaration of Bindu Palapura filed herewith.
[2] Once the Court entered the stipulation order, Citrix proceeded to serve not only Comcast but three other third parties with subpoenas, although Citrix had not disclosed the intent to serve such additional subpoenas.

Workspot's email.  Instead, that evening, Citrix filed its TRO motion accusing Workspot and its

CTO of so-called "protective order violations".  Citrix appears, therefore, to have pre-determined

to file its motion and was simply checking the box on Local Rule 7.1.1.  Notably, Citrix has not

requested expedited consideration of this issue.

Despite Workspot's speedy response, its agreement to stipulate to a third-party subpoena

to obtain IP-address information, and its stated intent to take remedial action if actual evidence

emerged tying the emails to a rogue Workspot employee, Citrix refused to give Workspot an

opportunity to investigate Citrix's claims prior to bringing its motion.  Nor did it permit the

Workspot employee identified by name in Citrix's motion to see the emails he is accused of

sending.  Workspot's counsel was unable to share Citrix's motion with Mr. Chawla because

Citrix's brief was marked Confidential and filed under seal.  The public version of the brief,

which Citrix provided nearly one week later, is heavily redacted and fully redacts all the

exhibits.[3]  Nevertheless, Mr. Chawla has signed a declaration in support of this Answering Brief

*swearing under oath that he has never sent any emails* (threatening or otherwise) to Messrs.

Henshall or Rivera. *See* Chawla Decl., ¶¶ 3, 4.  Citrix did not even wait until it had performed a

full investigation, admitting that its investigation was "not yet complete."  D.I. 102, p. 6.

Citrix started issuing subpoenas to third parties days after filing its motion.  To date,

Citrix has served subpoenas on Comcast (ISP provider), Microsoft, and TheLayoff.com. *See*

D.I. 107 and 108. The date for compliance was October 26, 2018.  TheLayoff.com responded to

the subpoena on October 29, 2018.  Ex. 7.  There is no information in TheLayoff.com's response

that connects Workspot to the posts on its website.  Citrix informed Workspot that Microsoft

---

[3] Workspot objects to Citrix's proposed redactions and believes the full briefing should be a matter of public record.  As discussed herein, much of the information discussed in the emails at issue is public information.  The parties are still conferring on this issue.

plans to respond by November 8, 2018 and that Comcast has not responded.

      B.    *Workspot conducted an independent investigation*

      Unlike Citrix, Workspot hired an independent computer forensics firm, Kivu Consulting, Inc. ("Kivu"), to investigate Citrix's claims regarding the Guerilla Mail messages. Brush Decl., ¶ 5. Kivu's investigation demonstrates the complete insufficiency of Citrix's own investigation, which started with the presumption that the originating IP address fields of the Guerilla Mail messages were authentic (*see* D.I. 103, ¶¶ 5–7).

      First, Kivu analyzed the Guerilla Mail service and methods that could be used to hide or discover an IP address when using the Guerilla Mail service. Brush Decl., ¶ 6. Kivu's investigation included researching publicly available information regarding the Guerilla Mail service, as well as demonstrations of the use of the Guerilla Mail service in combination with virtual private network ("VPN") services to send Guerilla Mail email messages. *Id.*, ¶¶ 6-7.

      Kivu concluded that although Guerilla Mail messages include an originating Internet Protocol ("IP") address field, that field can be manipulated, and thus cannot be used to determine who sent a particular Guerilla Mail message. *Id.*, ¶¶ 6-11. For example, when using an "http-poxy," the sender's IP address can be contained in a header line, but "this line can be easily removed or even modified to display an incorrect originating IP address." *Id.*, ¶¶ 7-8. Moreover, "commercially available" VPN services can also be used to obfuscate the sender's IP address. *Id.*, ¶ 9. Indeed, Kivu demonstrated how someone could use a VPN service to obfuscate his or her IP address when sending a Guerilla Mail email message. *Id.*, ¶ 10. From Kivu's offices in Denver, CO, Kivu sent test Guerilla Mail email messages after connecting to various VPN servers. *Id.* In doing so, Kivu was able to send email messages with originating IP addresses of servers located in Seattle, WA and Luxembourg. *Id.* By combining VPN services with the Guerilla Mail service, Kivu was able to send email messages from Denver, CO, but which

4

appeared to have been sent from Seattle, WA or Luxembourg.

Thus, Kivu concluded that the originating IP address field of a Guerilla Mail message is not necessarily the sender's IP address. *Id.*, ¶¶ 8-12. Additional information beyond the Guerilla Mail messages themselves would be needed to determine the sender's IP address. *Id.*, ¶¶ 11-12. Citrix's investigation—which relied solely on the originating IP address field of the Guerilla Mail messages, *see* D.I. 103, ¶¶ 5–7—is therefore incomplete, and cannot establish the sender's IP address. Thus, there is insufficient basis for Citrix to level the serious accusations that it has against Workspot based on the IP addresses of the Guerilla Mail messages.

## II.    Argument

### A.    *The Court should deny Citrix's request for TRO.*

Citrix seeks a temporary restraining order ("TRO") precluding Workspot from "leaking," or otherwise disseminating, any confidential Citrix information, including any non-public information produced by Citrix in this litigation. A TRO is appropriate only if Citrix can demonstrate: (1) a reasonable likelihood of success on the merits; (2) irreparable harm absent the restraining order; (3) that the harm to Citrix would exceed the harm to Workspot; and (4) the public interest favors such relief. *See CrowdStrike, Inc. v. NSS Labs. Inc.*, C.A. No. 17-146-GMS, 2017 WL 588713, at *1 (D. Del. Feb. 13, 2017). Because Citrix fails to establish each element, the Court should deny the request for TRO.

1.    Citrix mischaracterizes the dispute concerning the threatening emails as a "Protective Order violation"

Citrix raises the "threatening emails" issue under the guise of a "PO violation" to manufacture an issue that could trigger extreme sanctions. To prove likelihood of success on the merits for the violation of the PO, Citrix must prove that the information contained in the emails is confidential material protected under the order. As explained below, all but one of the threatening emails discuss matters that are public information, such as companies that compete in

the same space as Citrix and Workspot, the fact that Citrix sells DaaS products and has patents related thereto, and the identity of certain of Citrix's executives. Thus, the information contained in Exs. F to L to the Strapp Declaration (D.I. 104) is public and not covered by the PO. The only document that is a Citrix internal email is Ex. M. However, this document *was never produced to Workspot* in the course of this litigation and as such is not protected by the PO. Consequently, the likelihood that Citrix can succeed on the merits is zero.

2.    Citrix lacks any credible evidence to support its allegations

Even if the Court finds the information is protected by the PO in this case, Citrix still cannot meet its burden. Like its preliminary injunction motion, Citrix's TRO motion is primarily based on attorney speculation, not facts and evidence. Citrix offers no evidence that Workspot is *actually* behind the email campaign targeting its executives, Messrs. David Henshall and Juan Rivera, and admits that its "investigation" is "not yet complete." D.I. 102 at p. 6. Citrix's motion *expressly* speculates that the individuals involved "*may be* Workspot employee(s) or individuals(s) affiliated with and acting on behalf of Workspot." D.I. 102 at p. 6 (emphasis added). Rank speculation is insufficient to meet Citrix's high burden on this motion.

The "evidence" Citrix's cobbled together as the basis for its motion does not support Citrix's theory. Citrix argues that the content of the threatening emails suggests that the individual(s) involved "has access to, has leaked and is threatening to continue to leak highly-sensitive Citrix information." D.I. 102 at p. 6. First and foremost, pursuant to §7.4 of the PO (D.I. 34), Workspot employees do not have access to Citrix's Confidential information. No one at Workspot has access to the document review platform containing the documents Citrix produced to Workspot in this litigation. *See* Andrea Decl., ¶¶ 2-3. Apart from a single instance of inadvertent disclosure, discussed below, no Workspot employee has seen Citrix documents marked Confidential. *See* Andrea Decl., ¶ 3. Thus, it is impossible that employees of Workspot

have access to Citrix's Confidential material.

Second, the *only* email identified by Citrix that arguably contains "leaked" Citrix internal

communications is Ex. M, the email from Mr. Henshall to Mr. Hough that appears to show ▉



***This email was not produced by Citrix to Workspot in this litigation.*** Citrix did not identify a

bates number for this email, despite Workspot's request.  Nor does it cite one in its brief.  It is

therefore a factual impossibility that the posting of this email was a PO violation by Workspot.

Because this email was never produced to Workspot, the only evidence in the record that actually

contains an internal Citrix communication *points away from Workspot.*

Third, the remaining emails sent to Messrs. Henshall and Rivera do not contain

confidential information, nor do they evidence attribution to or by Workspot.  Messrs. Henshall

and Rivera are Citrix's CEO and SVP, Cloud and Server Engineering, respectively.  Their

identities and positions in the company are public information.  Exs. 3, 4. The companies

mentioned in those emails, Nutanix, Microsoft, Frame and Workspot, are all publicly known to

be in the same general industry.[4]  According to a post on the layoff.com, the thread regarding

---

[4]     Notably, while four different companies are mentioned by name in the emails, Citrix has
accused only Workspot of sending them.

"Citrix Systems Inc. layoffs" is one of the most active on the website. Ex. 5. Comments to this post indicate there are many disgruntled ex-employees. A post from "9 days ago" states, ███

███████████████████████████████ He did not reply." Ex. 5. Citrix's motion does not even address the possibility that these emails may have come from these employees, or some other source, such as one of the three other companies mentioned by name in the emails.

Citrix argues that it produced several internal emails that reference the companies identified in the emails, yet it fails to correlate any of those emails to the ones at issue in its motion. The chart below identifies the repeated flaws in Citrix's logic.

| | |
|---|---|
| **Ex. F**: Email to Henshall with the subject "Emails leaked to take revenge." Body of email states: "What will happen to your career if your emails are leaked? Emails to dheeraj at Nutanix? Emails to brad at Microsoft? Emails to templeton to discuss internal issues? You will get a thanksgiving present this year! | • No evidence that emails produced to Workspot in this litigation have been leaked<br>• Citrix fails to correlate confidential documents produced in this litigation with the statements in this email |
| **Ex. G:** Email to Henshall with the subject "Patent trolls." Body of email states: "DH: your career will end in 2 months! Your emails are out in the dark web. It's coming out as a thanksgiving gift!" This email includes a link to an article regarding Microsoft's decision to "open source" its "patent portfolio." | • No evidence that emails produced to Workspot in this litigation have been leaked<br>• Citrix fails to correlate confidential documents produced in this litigation with the statements in this email<br>• Link is to an article available publicly on the web |
| **Ex. H:** Email to Rivera with the subject "Emails leaked." Body of email states: "Citrix email thread discussing legal patent cases have been leaked." | • No evidence that emails produced to Workspot in this litigation have been leaked<br>• No specific reference to Workspot<br>• Multiple other litigations involving Citrix pending nationwide<br>• Citrix fails to correlate confidential documents produced in this litigation with the statements in this email |
| **Ex. I:** Email to Henshall with the subject "email leaks." Body of email states: "Looks like some email conversations discussing Frame and Workspot got leaked. We are hearing rumors | • No evidence that emails produced to Workspot in this litigation have been leaked<br>• Citrix fails to correlate confidential |

| | |
|---|---|
| that brianmadden.com is planning to publish those in the next month. VMware is helping push it." | documents produced in this litigation with the statements in this email<br>• Email references Frame, VMWare and Workspot, yet Citrix has not accused Frame or VMWare of sending the threatening emails |
| **Ex. J:** Email to Henshall with the subject "Sorry." Body of email states: "Our emails have leaked." | • No evidence that emails produced to Workspot in this litigation have been leaked<br>• No direct correlation to Workspot |
| **Ex. K:** Email to Rivera with the subject "Cloud innovation." Body of email states: "Do you track where you are getting new ideas from. Looks like you are copying everything these days. DaaS is also an original idea? You can work with legal but at the end you will have your face buried in shyt!" | • No direct correlation to Workspot - there are dozens of companies selling DaaS products |
| **Ex. L:**  Statement posted to a website called TheLayoff.com stating that, "Rumor is that David Henshall's emails have been leaked. They are going to cause serious stock issues in the next 4 weeks." Information below this post directs readers of the post to a different website called Pastebin.com | • No evidence that emails produced to Workspot in this litigation have been leaked<br>• The email posted on Pastebin.com was never produced to Workspot in this litigation |

Finally, Citrix offers the declaration of Mike Fernandez, an engineer at Citrix to bolster

its claims.  Mr. Fernandez's opinion should be given little or no weight.  First, it is unclear

whether Mr. Fernandez is professionally qualified to render an opinion on this issue.  Citrix

expects the Court to accept his opinion simply because he is a member of the Cyber Security

team at Citrix.  Second, Mr. Fernandez's simplistic analysis of the issue is not credible.  Even if

the Court were to consider this declaration, all it states is that the threatening emails and posts

originated from two different IP addresses – the one based in Fremont, California and the other

from Boydton, Virginia.  As discussed above, Workspot, unlike Citrix, retained an independent

third-party forensics firm, whose investigation refutes Mr. Fernandez's analysis and

assumptions, that the apparent IP addresses of the Guerilla Mail messages are authentic.

Citrix further argues that Mr. Chawla must have sent the threatening emails because he used the term "patent troll" in a tweet to describe Citrix the same day one of the emails was sent and because the emails appear to have been sent from an IP address in Fremont, California. The term "patent troll" is part of the common lexicon used to describe companies asserting patents improperly and in no way establishes that Mr. Chawla sent the emails. And, even putting aside the evidence set forth in the declaration of the forensics firm that an IP address can be readily faked, the fact is that there are more than 230,000 people living in Fremont, California. There is simply no evidence that Mr. Chawla is the individual who sent the emails in question. And, most importantly, Mr. Chawla confirms in his sworn declaration that he did not send any emails to or post any threats to Citrix, Messrs. Henshall, or Rivera. *See* Chawla Decl., ¶ 3, 4.

Citrix's argument to connect Workspot to the second IP address, which it claims is owned by Microsoft Azure, is equally meritless. The only supposed link is that Azure is a cloud-hosting service used by Workspot. However, that service is used by thousands of subscribers, including other companies mentioned in the threatening emails. Workspot alone actively uses thousands of IP addresses in the cloud. *See* Chawla Decl., ¶ 5. Nonetheless, Citrix immediately pointed the finger at Workspot. Workspot is furthermore investigating if any Workspot machine was compromised, and, once Citrix allows the IP addresses of the email messages to be shared with Workspot, Workspot intends to investigate whether the IP addresses mentioned by Citrix were ever used in the Workspot cloud. *See* Chawla Decl., ¶ 6. That investigation is ongoing, but not yet complete as of the due date for this Answering Brief, as the parties are negotiating the scope of confidential redactions. This further highlights that Citrix's motion for TRO was highly premature, especially in light of Workspot's cooperation, and own interest, in getting to the bottom of Citrix's allegations.

After filing its motion, Citrix served subpoenas on the ISP's and websites containing the threatening posts. To date, only TheLayoff.com has responded. The information provided does not substantiate Citrix's claims. Instead it confirms, that no "Poster Name" is available and that they "do not have any other posts from 104.46.110.21." Ex. 7.

### 3.   Workspot is the only party suffering irreparable harm here

Citrix puts the cart before the horse, and by doing so, seeks to prosecute Workspot for crimes based on attorney argument alone. Citrix's disregard for the facts is particularly egregious given the detrimental impact this motion has had and will have on Workspot and its employees, particularly Mr. Chawla. Citrix's motion directly attacks the values and ethics of Workspot and Mr. Chawla. As explained further below, the "leaked" email from Mr. Henshall to Mr. Hough posted on Pastebin.com validates Workspot's suspicion that Citrix is using this litigation to interfere with Workspot's business opportunities and injure its reputation.

While Citrix rattles off a list of generic "harms", its claims are unsubstantiated. More importantly, even if Citrix suffered harm, for the reasons already discussed, Workspot is not is not at fault. Thus, factors 2 and 3 disfavor a TRO.

### 4.   Granting a TRO is not in the public interest

Because Citrix failed to show a likelihood of success on the merits and irreparable harm absent injunctive relief, the Court does not need to reach this factor. Workspot agrees that the public has a strong interest in protecting confidential information from being stolen or misused. However, a TRO is unnecessary where there is already a PO in place.

### B.   *The Court should deny Citrix's improper request for Workspot to show cause*

Citrix turns the law on its head by requesting that the Court enter an order that Workspot show cause why it should *not* be held in contempt for "Workspot's admitted violation of the Protective Order." Contempt is a "severe remedy," and the movant bears a heavy burden to

show that the charged party is guilty of civil contempt. *INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*, C.A. No. 11-1007-SLR-CJB, 2014 WL 1908286, at *4 (D. Del. Apr. 25, 2014), report and recommendation adopted, 2014 WL 2917110 (D. Del. June 25, 2014). The burden thus lies with Citrix – not Workspot. Citrix must show by clear and convincing evidence that Workspot disobeyed the PO. It cannot meet that burden because Workspot in fact has fully complied with the PO.

      1.      Workspot *complied with*—not *"disobeyed"*—the Protective Order

Citrix suggests – falsely – that Workspot *deliberately* "disobeyed the [Protective Order] when it shared Citrix's confidential information." D.I. 102 at 15. That is incorrect. In the process of drafting Workspot's Opposition to Citrix's Motion for Preliminary Injunction, Workspot's counsel inadvertently failed to redact a section of the draft brief addressing Workspot's license defense and discussing aspects of the underlying license agreement, which was signed in 1997 by Citrix and Microsoft, and whose general subject matter and scope *was published in a press release at that time.*

     As soon as this was discovered, Workspot's counsel followed the procedure set in the PO, which contemplates this precise situation. Section 11 of the PO requires a party who learns of an inadvertent disclosure to take the following steps: First, the party must "notify in writing the Designating Party of the unauthorized disclosures." Workspot's counsel accordingly sent Citrix's counsel an email that identified exactly who had received the information and the precise license sections that were received. *See* Ex. A to D.I. 102.

     Second, the party must "use [] best efforts to retrieve all unauthorized copies of the Protected Material." Workspot's counsel immediately requested that the recipients of the draft brief destroy any copies of that draft brief, as well as confirm that they had not provided the draft to anyone else. The recipients confirmed the destruction of the brief and that the brief had not

been provided to anyone else, and that they would hold any information they recalled as highly confidential.

Third, the party must "inform the person or person to whom unauthorized disclosures were made of all of the terms of this Order." Workspot's counsel immediately provided a full copy of the PO to the recipients, who confirmed they had read the PO and, as noted above, that they would hold any information that they recalled as highly confidential.

Fourth, the party must "request such person or person to execute the 'Acknowledgment and Agreement to be Bound' that is attached hereto as Exhibit A'." Workspot's counsel also asked the recipients – Messrs. Sinha and Chawla – to be willing to execute the PO Acknowledgment. Both were willing to do so, and already had agreed to hold the information to themselves as highly confidential. However, Workspot's counsel first asked Citrix to confirm that the PO Acknowledgment of Messrs. Sinha and Chawla would be tailored to the situation at hand, given the limited nature and scope of the information at issue regarding certain terms of a 1997 license agreement. Given the presence of a prosecution bar in the PO, Workspot's counsel requested that Citrix confirm that the prosecution bar would not apply in this instance, as the information at issue related to a license agreement, not confidential technical information—and therefore is irrelevant to patent prosecution.

Citrix's counsel refused to agree, taking the position that the "scope of the disclosure is irrelevant" and therefore the prosecution bar should apply. *See* Ex. B to D.I. 102. In fact, Citrix took its position even further than the provisions of the PO, asserting that the inadvertent disclosure of the 1997 license information to Messrs. Sinha and Chawla not only should bar them from "being involved in patent prosecution," but also that they "should not be permitted to engage with Microsoft on behalf of Workspot in any capacity for the pendency of this litigation."

After explaining that much of the information at issue was already publicly available, Workspot's counsel renewed its request to meet and confer on the issue. In a telephonic meet and confer, Citrix's counsel then suggested that it would be willing to modify its demand and agree that the prosecution bar would not apply to Messrs. Chawla and Sinha if they agreed that they could not negotiate license agreements with Microsoft. *See* Andrea Decl., ¶ 4-5.

After considering the issue, Workspot's counsel again reached out to Citrix's counsel to reiterate its request that Citrix agree that the PO Acknowledgments of Messrs. Sinha and Chawla would be limited to the information that they actually received and, given the nature of such information, they would not be subject to the prosecution bar. On September 4, 2018, Workspot accordingly wrote: "If Citrix is unwilling to allow Messrs. Sinha and Chawla to sign onto the PO under the constraints we set forth in our prior email, please let us know *and we will prepare a joint letter notifying the Court of the dispute.*" *See* Andrea Decl., ¶ 6; *see also* Ex. 6. Citrix did not respond until it filed the present motion and accused *Workspot* of sitting on the issue when it was Citrix who did not respond for weeks regarding their position in these issues. D.I. 102 at 4. The most reasonable conclusion is that Citrix no longer considered this an issue.

      2.      <u>An Order to Show Cause and/or a Finding of Contempt Is Not Appropriate Because the Inadvertently Disclosed Information Was Largely Public and Unrelated to the 2018 Workspot-Microsoft License Agreements.</u>

Workspot's *inadvertent* disclosure and *compliance* with the PO renders the case law cited by Citrix entirely inapposite because those cases involved *deliberate* violations. In *Harley-Davidson, Inc. v. Morris*, the court confronted a situation where a party subject to a consent judgment adopted an unreasonable interpretation of that consent judgment and used that self-serving interpretation to continue to act in a manner that violated the consent judgment. 19 F.3d 142 (3d Cir. 1994). The *Harley Davidson* party's decision to continue selling trademarked products after having agreed to cease selling them is distinguishable from the present situation,

where the disclosure was entirely inadvertent and all individuals involved – counsel, Mr. Sinha,

and Mr. Chawla – immediately acted in accordance with the PO.  Similarly, *Roe v. Operation*

*Rescue* addressed a situation where, despite a court-ordered permanent injunction that prevented

the defendants from "'trespassing on, blocking, obstructing ingress or egress from any facility at

which abortions are performed in the City of Philadelphia or metropolitan area' and from

'physically abusing or tortiously harassing persons entering, leaving, working at, or using any

services at any facility at which abortions are performed in the City of Philadelphia and

metropolitan area,'" the defendants nonetheless encouraged and led blockades and

demonstrations and protests on the grounds of various medical centers as well as blocked their

doors.  *Id.* at 135-137.  Thus, in that case, the parties were aware of and deliberately acted in a

manner that caused the violation of court injunction.

Similarly, in *LifeScan Scotland, Ltd. v. Shasta Techs, LLC,* the defending entity

acknowledged that it had *chosen* to use confidential information to identify third parties to whom

it sent cease-and-desist letters alleging that a patent was likely infringed and, as a result, sales of

products using such patent would similarly be infringing and should cease.  No. 11-CV-04494-

WHO, 2013 WL 4604746 (N.D. Cal. Aug. 28, 2013).  The Court found both that the defending

entity had used confidential information covered by the PO in place and that the defending entity

acknowledged using the information for a purpose unrelated to the litigation.

Here, Workspot has not used the inadvertently disclosed information in an unauthorized

manner.  As Workspot's counsel explained to counsel for Citrix, *see* Ex. C to D.I. 102, a

significant portion of the inadvertently-disclosed information has been public – and therefore not

governed by the PO – since 1997, when Microsoft issued a press release publicizing the

existence, subject matter, and scope of the license agreement.  *See* Ex. 8.  In its press release,

Microsoft explained:

- o The Citrix-Microsoft license was signed in May 1997;
- o The Citrix-Microsoft license had a general focus on joint development of advanced multiuser capabilities for server-based systems and Windows-based terminals used by task-based users that run certain software from servers; and
- o The licensed patents related to this general area.

As set forth in correspondence from Workspot's counsel, the inadvertently disclosed information

in this case indicated:



Ex. A to D.I. 102.  The inadvertently disclosed information tracks almost exactly the information

regarding the Citrix-Microsoft license that was already public.  The only additional information

contained ████████████████████████████████████████████████████████.  None of this information gives a competitive advantage for

Workspot vis á vis Citrix.

Indeed, the 1997 Citrix-Microsoft license is fundamentally different from the two

agreements signed by Workspot and Microsoft in 2018, which Citrix alleges—without

evidence—were obtained by Workspot through use of the inadvertently disclosed information.

For example, the first agreement is a "Microsoft Partner Datacenter Migration Program

Agreement," effective for one year, under which Microsoft agrees to provide technical assistance

and resources toward the migration of "[Workspot's] customers' current data center

environments to Microsoft Azure datacenter infrastructure." Ex. E to D.I. 102.  This is not a

patent license agreement; nor does the inadvertently disclosed information appear relevant in any

way to this agreement.  Similarly, the second agreement, a Confidential Patent License for

Microsoft Remote Desktop Protocol, signed on August 14, 2018 by Workspot and August 15, 2018 by Microsoft, provides Workspot with a license to *Microsoft's* patents – not Citrix's patents – relating to the Microsoft Remote Desktop Protocol.  Again, this has nothing to do with the Citrix-Microsoft license, which gave ███████████████████████████████████ ███████████.  Thus, neither agreement has anything to do with the inadvertent disclosure of the 1997 license information.

      C.    <u>Citrix's motivation is to interfere with Workspot's business relationship with Microsoft</u>

Citrix's request that Workspot be held in civil contempt is based solely on Workspot's *following* the express provisions of the PO addressing inadvertent disclosure.  As with its motion for preliminary injunction, which was filed without a single coherent theory of patent infringement or irreparable harm (*see* Workspot's Opp to PI Motion),[5] Citrix is again using its unjustified Motion for TRO improperly as a weapon.

Moreover, if none of the threatening emails—the supposed impetus for this TRO motion in the first place—has anything to do with the PO in this case, one is left to wonder why Citrix is arguing that they do.  Based on Citrix's own actions to date and the utter lack of evidence tying Workspot to the Guerilla Mail emails, it is reasonable to conclude that Citrix's true motivation is to use these threatening emails to bootstrap its argument regarding Workspot's inadvertent disclosure in an attempt to handicap Workspot by prohibiting its top executives from having any business contact with Microsoft, one of its most important business partners.  And, again, Citrix seeks this prohibition even though: (a) the PO contains a provision dealing with precisely this situation of inadvertent disclosure, *see* section 11 of the PO, and (b) Workspot followed that

---

    [5]    Workspot respectfully submits that Citrix's litigation strategy and apparent motivations in filing this lawsuit are relevant to the Court's consideration of both this motion and the pending preliminary injunction motion, in which Citrix has put the balance of equities at issue.

provision word for word.  Citrix's request that Workspot be held in civil contempt is entirely
without merit.

> **D.**    *Ironically, the threatening emails do suggest bad acts—* 
> ███████ *not by Workspot or Mr. Chawla*

While Citrix's accusations of bad acts by Workspot are without evidence and contrary to
the facts, its motion for TRO does contain ████████████████████
████████████████ the email from Mr. Henshall to Mr. Hough, which was never produced to
Workspot in the course of this litigation (D.I. 104, Ex. M).[6]  In fact, neither Workspot nor its
counsel knew anything about this email until Citrix brought it to their attention on October 15th.
In its brief, Citrix confirms that this email concerns Workspot.  See D.I. 102 at p. 11. The email
appears to show ████████████████████████████████
████████████████████████████████████████████████
████████████████████████████

This email validates Workspot's concerns that Citrix brought this litigation, and the
resulting PI and TRO motions, to stifle competition.  Workspot is entitled to know ███████
████████████████████████████████████████████████
███████████ D.I. 104, Ex. M.  At the time, Workspot had been in discussions with Nutanix, and
these discussions essentially ceased around the time of this email, with Nutanix subsequently
acquiring a Workspot competitor instead.  Moreover, barely three months after ████████████
████████████████, Citrix filed the current lawsuit against Workspot alleging patent
infringement and false advertising.  And, when expedited PI discovery in this case commenced,

---

[6]    The email from Henshall to Hough is responsive to Workspot's RFP No. 8, which
requested all internal communications regarding Workspot.  The parties agreed to a procedure to
collect emails using search terms.  Presumably this document was not produced because it did
not hit on the search terms.  Since its disclosure in Citrix's TRO motion, Workspot has requested
discovery related to this document.  The parties are in the process of conferring on this issue.

Citrix negotiated Mr. Henshall's name off of the Citrix document custodian list, while also using "Nutanix" as a key word search term for documents requested from Workspot.

> **E.      Citrix should be ordered to pay Workspot's fees for responding to this motion**

Workspot respectfully requests that, pursuant to 28 U.S.C. §1927 and the Court's inherent authority, the Court order Citrix to award Workspot its fees for responding to this meritless motion. The Third Circuit has interpreted § 1927 to permit fee awards where an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *W.L. Gore & Associates, Inc. v. C.R. Bard, Inc.*, 231 F. Supp. 3d 19, 21 (D. Del. 2017) (citations omitted). This Court's discretionary power also permits it to "award attorneys' fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id*.

Citrix's TRO motion was brought in bad faith to oppress Workspot and its employees. This conclusion is corroborated by the steps Citrix took (and did not take) between first learning of the emails and filing this motion. Citrix did not conduct a forensic investigation into the source of the emails. It did not contact local authority or the FBI. It did not subpoena the ISP's or websites on which the offensive messages were posted. It did not give Workspot an opportunity to conduct its own investigation, or even allow Mr. Chawla to see the emails he is accused of sending. Instead, Citrix prepared its TRO motion in stealth, so it could file immediately after conducting a "meet and confer" that was plainly a charade. The motion itself presents no credible evidence. There is no direct evidence that Workspot was behind the threatening emails, or that Workspot hacked Mr. Henshall's emails. Citrix knew that the leaked email was never produced in this litigation, yet accused Workspot of posting it publicly.

Citrix presumed guilt and filed this motion with no regard for the actual facts and evidence. In *W.L. Gore & Associates, Inc.*, this Court awarded fees under similar circumstances,

finding:

> [T]he manner in which Gore presented its Sanctions Motion did not at all make it appear as if Gore's counsel were solely, or even primarily, interested in presenting potentially troublesome conduct to the Court for its "independent assessment." Instead, it reasonably appeared to Bard and the Court that Gore had decided for itself, from the beginning, that Bard was guilty. . . . And the opening brief Gore filed gave no sense of being written by counsel who were hesitant to make their accusations and were primarily concerned with deterring future misconduct, filled (as it is) with confident assertions of Bard's guilt.

Workspot should not have to bear the repeated costs of defending itself from a much larger player in the market. Already, Workspot was forced to engage in costly and expedited discovery in furtherance of Citrix's PI motion. Workspot therefore respectfully requests that Citrix's conduct be sanctioned.

## III.   Conclusion

For the reasons set forth above, Workspot respectfully requests that Citrix's motion be denied and Workspot be awarded with the fees and costs associated with responding to Citrix's motion.

OF COUNSEL:

H. Mark Lyon
GIBSON DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Tel:  (650) 849-5300

Y. Ernest Hsin
GIBSON DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA  94105-0921
Tel:  (415) 393-8200

Jennifer Rho
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071
Tel:  (213) 229-7000

Dated:  October 30, 2018
5971479 / 45039
Public Version Dated: February 5, 2019

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By:  */s/ Bindu A. Palapura*
　　　David E. Moore (#3983)
　　　Bindu A. Palapura (#5370)
　　　Stephanie E. O'Byrne (#4446)
　　　Hercules Plaza, 6th Floor
　　　1313 N. Market Street
　　　Wilmington, DE  19801
　　　Tel:  (302) 984-6000
　　　dmoore@potteranderson.com
　　　bpalapura@potteranderson.com
　　　sobyrne@potteranderson.com

*Attorneys for Defendant Workspot, Inc.*