IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CITRIX SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 18-588-LPS |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| WORKSPOT, INC., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

**DEFENDANT WORKSPOT, INC.'S SUR-REPLY BRIEF IN
OPPOSITION TO PLAINTIFF'S MOTION FOR TRO AND TO SHOW CAUSE**

OF COUNSEL:

H. Mark Lyon
GIBSON DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel: (650) 849-5300

Y. Ernest Hsin
GIBSON DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Tel: (415) 393-8200

Jennifer Rho
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 229-7000

Karen A. Gibbs
1901 S. Bascom Avenue, Suite 900
Campbell, CA 95008

Dated: December 7, 2018
6018998 / 45039
Public Version Dated: February 5, 2019

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Workspot, Inc.*

# TABLE OF CONTENTS

I. The evidence proves that Workspot did not violate the Protective Order. ................... 3

II. Citrix withheld information and obstructed Workspot's ability to investigate. .................. 5

III. To alleviate any concern, Workspot has taken steps to ensure the issue is not repeated. .................................................................................................................... 6

Citrix's motion for TRO is based on the incorrect premise that Workspot has violated and may violate the Protective Order ("PO") by making public or otherwise misusing Citrix's confidential information produced in this case. However, following lengthy investigations by both parties (including analyses by two outside forensics firms) and after receiving third party discovery from Internet service providers, *there is no evidence of any protective order violation.* As such, Citrix's motion should be denied.

Citrix sets forth two broad categories of relief it seeks in its Opening Brief: "(i) a temporary restraining order precluding Workspot from 'leaking,' or otherwise disseminating, any *confidential Citrix information*, including any non-public information produced by Citrix in this litigation"; and "(ii) an order that Workspot show cause why it should not be held in contempt for Workspot's admitted *violation of the Protective Order*." D.I. 102 at 1 (emphases added).

As "proof" that Workspot had "leaked" confidential Citrix information, Citrix pointed in its Opening Brief to a number of emails sent anonymously to certain Citrix executives. None of those emails actually reflected confidential Citrix information. The only email that even appeared to have confidential information threatened making public an internal communication from Citrix's CEO, David Henshall, to another executive regarding ███████████
████████████████████████████████████████
███████ While Citrix moved forward with its TRO motion on the express basis that this internal communication was authentic (and therefore evidence of violation of the PO), it now reveals in its Reply Brief that it cannot locate the communication and that *it likely was fabricated.* There is no evidence, therefore, of any actual "leaking" or "disseminating" of any Citrix confidential information. Nor has any "threatened" dissemination of such information occurred, even though the original anonymous emails threatened dissemination by Thanksgiving.

That there is no actual evidence of misuse of Citrix's CBI is not surprising because no Workspot employee has had access to any confidential Citrix information produced in this case, with the exception of one instance of inadvertent disclosure. That inadvertent disclosure forms the entire basis for Citrix's second request for relief "that Workspot show cause why it should not be held in contempt for Workspot's admitted violation of the Protective Order." As set forth in detail in Workspot's Opposition Brief, the PO itself contemplates the potential for this kind of inadvertent disclosure, and Citrix *does not dispute* that Workspot followed the very steps set forth in the PO for correctively dealing with it. In fact, when Citrix was first notified of the inadvertent disclosure, Citrix's counsel stated: "Thank you for bringing this to our attention, and *we appreciate your **compliance** with the Protective Order*." Palapura Decl., ¶2 (emphasis added). This contemporaneous communication directly contradicts Citrix's position. To hold Workspot in contempt for its inadvertent disclosure would eviscerate and render meaningless this provision common to most protective orders addressing instances of inadvertent disclosure.

While there is no evidence of a violation of the PO, Workspot acknowledges that the anonymous emails sent to Citrix's executives indicates improper behavior by someone. Workspot further acknowledges that the evidence that has now come in (*after* Citrix filed its motion) appears potentially to implicate Puneet Chawla, Workspot's CTO. As a result, out of an abundance of caution, Workspot has taken steps (most of which are consistent with relief sought by Citrix in its proposed order) to ensure that if Mr. Chawla was responsible, the conduct ceases and is not repeated. However, because the conduct in question, while improper, does not implicate any actual violation of the PO, Citrix's motion (premised entirely on such a violation) should be denied.

## I. The evidence proves that Workspot did not violate the Protective Order.

Citrix cannot show a likelihood of success on the merits because there was no PO violation. Only one of the anonymous emails appeared on its face to possibly contain Citrix CBI, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ("Henshall email"). D.I. 104, Ex. M. Before Citrix filed its motion, Workspot told Citrix it did not believe that this email was ever produced in this litigation, yet Citrix filed its motion anyway and continued to press its allegations that Workspot "leaked" this email. D.I. 113, Ex. 1. Citrix now admits that this email was not produced under the PO, and that it may be "fabricated". D.I. 117 at 10. To date, Citrix also refuses to tell Workspot when it discovered or suspected that the Henshall email might not be authentic. The McSweeney declaration suggests that Citrix only began investigating this issue on October 22nd. (D.I. 119, at ¶8). Thus it seems that Citrix filed the TRO motion without even confirming that the only email that might possibly contain Citrix CBI was authentic.

As Workspot explained in its Opposition Brief (D.I. 112), no one at Workspot has access to the document review platform containing the documents Citrix produced to Workspot in this litigation. *See* D.I. 114 at ¶¶ 2-3. Citrix speculates that Workspot could have accessed Citrix confidential information through its law firms' ShareFile accounts. Gibson Dunn and Potter Anderson conducted their own internal investigations and confirm that no documents containing Citrix CBI were available to any Workspot employees, via ShareFile or otherwise. D.I. 114, ¶2; *see also* Palapura Decl., ¶ 3.

Regarding inadvertent disclosure, Citrix fails to demonstrate, by clear and convincing evidence, that Workspot "disobeyed" the PO. Citrix argues, "Workspot's attempt to characterize its violation of the Protective Order as 'compliance' with the Order is illogical." D.I. 117 at 8. Yet, this is exactly what Citrix's counsel admitted in August 2018, when he said: "Thank you for

3

bringing this to our attention, and *we appreciate your **compliance** with the Protective Order.*"
Palapura Decl., Ex. 9 (emphasis added). Citrix's own admission contemporaneous with the
inadvertent disclosure is dispositive of this issue. A contempt finding against Workspot would
also render Section 11 of the PO—governing instances of inadvertent disclosure and the required
corrective actions—meaningless.

Additionally, Citrix cannot show any actual or potential harm arising from this
inadvertent disclosure. *See* D.I. 112 at 11. The fact that Citrix waited nearly two months to
resurrect this stale claim underscores this point. Indeed, Citrix deposed both Workspot
individuals who received the inadvertent disclosure after learning of the disclosure, and yet did
not ask a single question concerning the disclosure or any use of the information that was
inadvertently disclosed. And Citrix's supposition that the inadvertent disclosure affected *in some
unidentified way* the entirely unrelated agreements entered into between Workspot and Microsoft
is pure speculation without any evidence. *Id.* at 14 (discussing the dissimilarity of the
agreements).

Finally, the anonymous emails indicated that internal emails would be published by
Thanksgiving. D.I. 104, Ex. G. Yet, there is no evidence that such emails were published.
Another anonymous email sent on October 20th states, "I have no emails. No leaks. The email I
sent is not real. I made it up to mess with you." D.I. 119 at ¶ 14, Fig. 13. Thus, while these
emails reflect improper conduct by the sender, they simply do not evidence any actual PO
violation, and cannot form the basis for granting Citrix's requested relief.

## II. Citrix withheld information and obstructed Workspot's ability to investigate.

As explained in Workspot's PI briefing, Workspot believes Citrix has engaged in litigation and other conduct in an effort to stop Workspot's progress.[1] Consistent with this goal, Citrix refused to jointly investigate this matter and forced Workspot to engage in further, disruptive motion practice. Citrix first notified Workspot of its allegations on the evening of October 15th, and filed its TRO motion, along with a 17-page Opening Brief and over 200 pages of declarations and exhibits, the very next day. As it did with its PI motion, Citrix adopted a "file first and investigate later" approach with its TRO motion.

Citrix claims that it "kept Workspot apprised of facts uncovered in its investigation," but the record shows otherwise. Despite repeated requests from Workspot, Citrix refused to let anyone at Workspot access the sealed TRO filings until *last week*, on November 26th.[2] Workspot has been requesting the actual emails allegedly sent to Citrix executives (including all metadata associated with those emails) since October 16th, so that it could independently analyze them. D.I. 113, Ex. 1. Citrix finally provided them just *this week*. Even though it appears to have known much earlier, Citrix waited until November 2nd to inform Workspot that the Henshall Email may have been fabricated. And Citrix failed to timely disclose three additional anonymous emails it received from October 16-23. Workspot found out about them only in Citrix's November 6th Reply Brief.

---

[1] It is telling that for weeks, Citrix and its counsel believed that the Henshall Email, which discussed ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ was real. Workspot has a pending request for discovery conference to compel documents concerning the subject of this email. (D.I. 120).

[2] Only Workspot's CEO was allowed to view the briefing, and the review had to occur in person at Gibson Dunn's office. Mr. Chawla has never been able to see the exact allegations against him.

5

One additional issue for the record concerns ShareFile, which is a Citrix product used by Gibson Dunn and Potter Anderson and other law firms to securely share (often with clients) large files. Workspot and its counsel were troubled to learn, more than two weeks after the fact and only after Workspot had filed its Opposition brief, that Citrix monitored, without authorization, the private ShareFile servers used by Gibson Dunn and Potter Anderson. Despite repeated requests, Citrix refuses to disclose when its internal cyber security team began this clandestine investigation or when it determined that the Comcast IP address purportedly accessed Workspot legal team's ShareFile repositories. The McSweeney Declaration suggests that Citrix was aware as early as October 23rd, one week before Workspot's Opposition Brief was due. (D.I. 119, at ¶10). Yet, Citrix withheld this evidence until November 2nd.

### III. To alleviate any concern, Workspot has taken steps to ensure the issue is not repeated.

Citrix's refusal to let Workspot see the sealed briefing and Citrix's decision to withhold evidence made it difficult for Workspot to assess fully Citrix's allegations. Now, Workspot has had a chance, finally, to review all the claims and evidence. While there is no proof of a PO violation, Workspot acknowledges that the anonymous emails were improper, and that the evidence collected appears potentially to implicate Mr. Chawla.[3] This includes the information provided by Comcast and Microsoft, and the information discovered in the investigation conducted by Kivu, an outside forensic firm hired by Workspot, which determined that someone operating under the username ▇▇▇▇▇▇▇▇▇ had created and deleted a virtual machine the same day some of the anonymous emails were sent. *See* Supp. Brush Decl., ¶ 9.

---

[3] Workspot no longer seeks to rely on the Chawla Declaration in support of its opposition to the TRO motion. Further, Workspot respectfully requests that the Court not rely on it in deciding this motion. The facts stand for themselves – Workspot did not violate the PO.

6

Therefore, out of an abundance of caution, and to prevent any such incident in the future, Workspot has formally reprimanded Mr. Chawla. Workspot informed Mr. Chawla that, for at least the duration of the Delaware litigation, he is prohibited from: 1) contacting anyone working at Citrix without CEO or Board approval, and 2) posting on social media regarding Citrix. Additionally, Mr. Chawla was told that he may use only company-issued computers, phones, etc. for company-related business requiring electronic communications, which will be monitored for compliance with Nos. 1 and 2 and with Company policies generally.

So that the parties and the Court can put this matter behind them, Workspot is also willing to: 1) agree to cease and desist from any uninvited communications to Citrix personnel; and 2) confirm that beyond the information that has already been disclosed, at this time, Workspot does not have any additional information concerning the identities of the individual(s) who may have sent the emails to Rivera and Henshall, posted the messages on TheLayoff.com and Pastebin.com, or have access to, or own the devices associated with IP addresses 98.207.108.220 or 104.46.110.21. These proposed remedial measures are consistent with much of the relief Citrix's seeks concerning the anonymous emails and web posts. Because there is absolutely no evidence of a PO violation, which is the entire basis for Citrix's motion, the rest of the relief Citrix requests is unnecessary and inappropriate. For these reasons, Workspot respectfully requests that Citrix's TRO motion be denied.

| OF COUNSEL: | Respectfully submitted, |
| --- | --- |
| | POTTER ANDERSON & CORROON LLP |

OF COUNSEL:

H. Mark Lyon
GIBSON DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel: (650) 849-5300

Y. Ernest Hsin
GIBSON DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Tel: (415) 393-8200

Jennifer Rho
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 229-7000

Karen A. Gibbs
1901 S. Bascom Avenue, Suite 900
Campbell, CA 95008

Dated: December 7, 2018
6018998 / 45039

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: */s/ Bindu A. Palapura*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Stephanie E. O'Byrne (#4446)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19801
    Tel: (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    sobyrne@potteranderson.com

*Attorneys for Defendant Workspot, Inc.*