# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CITRIX SYSTEMS, INC.,

          Plaintiff,

v.

WORKSPOT, INC.

          Defendant.

C.A. No. 1:18-cv-00588-LPS



Public Version

---

## CITRIX'S BRIEF IN SUPPORT OF ITS
## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND TO SHOW CAUSE WHY WORKSPOT SHOULD NOT BE HELD IN CONTEMPT

Dated: October 16, 2018

**OF COUNSEL**:

Michael G. Strapp (admitted *Pro Hac Vice* )
Larissa Bifano (admitted *Pro Hac Vice* )
Kristoffer W. Lange (admitted *Pro Hac Vice* )
Yasmin Ghassab (admitted *Pro Hac Vice* )
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Telephone: (617) 406-6031
michael.strapp@dlapiper.com
larissa.bifano@dlapiper.com
kris.lange@dlapiper.com
yasmin.ghassab@dlapiper.com

Denise S. Kraft (DE Bar No. 2778)
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
denise.kraft@dlapiper.com

*Attorneys for Plaintiff*
*Citrix Systems, Inc.*

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ...................................................................1

II. BACKGROUND ..................................................................................2

    A. The Protective Order.......................................................................2

    B. Workspot's Admitted Violation Of The Protective Order.......................2

    C. The Harassment Of Citrix Executives And Leaking Of Citrix Confidential Information .................................................................................4

    D. Citrix's Investigation Of The Recent Harassment Of Citrix Executives .............6

III. ARGUMENT......................................................................................8

    A. Legal Standard ..............................................................................9

    B. A Temporary Restraining Order Should Be Entered By The Court Against Workspot ...................................................................................10

    i. Workspot Has Disclosed Citrix AEO Information In Violation of the Protective Order and It May Do So Again...................................................10

    ii. Citrix Is Likely to Suffer Irreparable Harm ..............................................12

    iii. The Balance of Equities Tips in Citrix's Favor ........................................13

    iv. A Temporary Restraining Order Is in The Public Interest..........................14

    C. The Motion For An Order For Workspot To Show Cause That Workspot Did Not Act In Contempt Should Be Granted .................................................14

IV. THE COURT SHOULD GRANT CITRIX APPROPRIATE RELIEF ...........................16

V. CONCLUSION...................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AstraZeneca AB, et al. v. Dr. Reddy's Laboratories, Inc.*,
C.A. No. 15-988-SLR (D. Del., November 6, 2015).................................................9

*Crowdstrike, Inc. v. NSS Labs, Inc.*,
C.A. No. 17-146-GMS (D. Del. Feb. 13, 2017) ........................................9

*Dish Network L.L.C. v. Ramirez*,
No. 15–CV–04712–BLF, 2016 WL 3092184 (N.D. Cal. June 2, 2016) ...............................14

*DTN, LLC v. Pioneer Hi-Bred Int'l, Inc.*,
No. CV 18-384-LPS, 2018 WL 1392343 (D. Del. Mar. 19, 2018) ...................................14, 15

*Elkin v. Fauver*,
969 F.2d 48 (3d Cir. 1992)...................................................................10

*Ferring Pharms., Inc. v. Watson Pharmaceuticals, Inc.*,
765 F.3d 205 (3d Cir. 2014)...................................................................9

*GE Harris Rwy. Elec., LLC v. Westinghouse Air Brake*,
Civil Action No. 99-070-GMS, 2004 WL 1854198 (D. Del., Aug. 18, 2004) .......................10

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*,
774 F.3d 192 (3d Cir. 2014)...................................................................13

*Harley-Davidson, Inc. v. Morris*,
19 F.3d 142 (3d Cir.1994)...................................................................10, 16

*Henry Schein, Inc. v. Cook*,
191 F. Supp. 3d 1072 (N.D. Cal. 2016) ..........................................................14

*Hybritech, Inc. v. Abbott Labs.*,
849 F.2d 1446 (Fed. Cir. 1988)...............................................................14

*In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) .......................15

*Kos Pharms. v. Andrx Corp.,* 369 F.3d 700, 708 (3d Cir. 2004) .................................15

*LifeScan Scotland, Ltd. v. Shasta Techs., LLC*,
No. 11-CV-04494-WHO, 2013 WL 4604746 (N.D. Cal. Aug. 28, 2013) .............................16

*New England Technology, Inc. v. Sigma Tech Sales, Inc.*,
    2011 WL 4014346 (S.D. Fla. September 9, 2011) ................................................16

*Opticians Association of America v. Independent Opticians of America*,
    920 F.2d 187 (3d Cir. 1990) ....................................................................................13

*Quinter v. Volkswagen of Am.*,
    676 F.2d 969 (3d Cir. 1982) ..........................................................................10, 16

*Roe v. Operation Rescue*,
    54 F.3d 133 (3d Cir. 1995) ....................................................................................16

*Waste Conversion, Inc. v. Rollins Envtl. Servs., Inc.*,
    893 F.2d 605 (3d Cir. 1990) ..................................................................................10

**Other Authorities**

Federal Rules of Civil Procedure Rule 26(c)(7) .........................................................10

Federal Rules of Civil Procedure Rule 65 ...................................................................8

6 James Wm. Moore et al., Moore's Federal Practice § 26.108[2] (3d ed.2011) ...................10, 16

## I. PRELIMINARY STATEMENT

Citrix Systems, Inc. ("Citrix") seeks a temporary restraining order and an order for Workspot Inc. ("Workspot") to show cause why it should not be held in contempt for past and threatened future violations of the Protective Order. Citrix seeks this relief for two reasons.

First, Workspot's counsel has acknowledged violating the Protective Order by sharing highly-confidential information regarding a license agreement between Citrix and Microsoft with its key executives. This information had been provided by Citrix to Workspot pursuant to the Protective Order under an "Attorneys' Eyes Only" confidentiality designation.

Second, over the past week, Citrix and two of its key executives have been threatened and harassed in an extraordinary fashion by an anonymous individual or individuals whom Citrix believes to be associated with Workspot. In particular, the individual(s) indicated in emails to Citrix executives that highly-confidential Citrix information "are out in the dark web," "have been leaked," and will continue to be "leaked," in an effort to "cause serious stock issues in the next 4 weeks" and to destroy the "career" and reputation of Citrix executives. The explicitly-stated motivation for this behavior is "to take revenge" for what the individual(s) assert is "patent troll[ing]" by Citrix.

Citrix accordingly and respectfully requests (i) a temporary restraining order precluding Workspot from "leaking," or otherwise disseminating, any confidential Citrix information, including any non-public information produced by Citrix in this litigation, and (ii) an order that Workspot show cause why it should not be held in contempt for Workspot's admitted violation of the Protective Order.

1

## II.    BACKGROUND

### A.    The Protective Order

The parties filed a Stipulated Protective Order on June 15, 2018 ("Protective Order"; D.I. 34), and the Court entered the Protective Order on June 20, 2018.  Under the Protective Order, a party may designate information or items that it produces in discovery as "CONFIDENTIAL," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" ("AEO") or "HIGHLY CONFIDENTIAL – SOURCE CODE."  D.I. 34 at 2.  A party that receives any such information in discovery may use this information "in connection with this case only for prosecuting, defending, or attempting to settle this litigation."  *Id.* at 7.

A party that receives information or items designated AEO may only share such information or items with (a) one designated in-house counsel; (b) outside counsel; (c) an expert retained for this litigation; (d) the Court; (e) court reporters and certain consultants and vendors retained for this litigation; and (f) the author or recipient of the information or items.  *Id.* at 12-15.  That is because information and items designated AEO are "extremely sensitive," and the disclosure of AEO information and items "to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means."  *Id.* at 3. For that reason, the parties agreed in the Protective Order that any individual who receives information designated AEO by another party "shall not be involved in the prosecution of patents or patent applications relating to the subject matter of the patents-in-suit."  *Id.* at 11.

### B.    Workspot's Admitted Violation Of The Protective Order

On August 20, 2018, counsel for Workspot acknowledged that it had violated the Protective Order by sharing Citrix's AEO information involving a license agreement between Citrix and Microsoft with Workspot co-founders Amitabh Sinha and Puneet Chawla.  *See*

Declaration of Michael Strapp ("Strapp Decl."), Ex. A.[1]  Workspot nonetheless requested that Citrix affirmatively agree that neither Workspot, Sinha nor Chawla face any consequences for their violation of the Protective Order.  *Id.*

Citrix would not make any such agreement.  To the contrary, Citrix explained that Sinha and Chawla were bound by the unequivocal language of the Protective Order.  Ex. B.  To that end, Citrix insisted that because Sinha and Chawla had received AEO information, they could not be "involved in patent prosecution, particularly given the highly sensitive nature of the information shared and their executive-level positions at Workspot."  *Id*.

Citrix also expressed its serious concerns that Sinha and Chawla had received "highly-sensitive, competitive information about the relationship with Microsoft and Citrix," and that "by receiving the terms of Citrix's agreement with Microsoft, they now have an unfair competitive advantage in discussions with a key partner of both Workspot and Citrix: Microsoft."  *Id.*  Accordingly, Citrix also requested that Workspot agree to a stipulation whereby Sinha and Chawla would "not be permitted to engage with Microsoft on behalf of Workspot in any capacity for the pendency of this litigation."  *Id.*

Workspot rejected Citrix's proposal.  First, it argued that it should not have to abide by the express terms of the patent prosecution bar in the Protective Order, and that Sinha and Chawla should therefore be permitted to continue prosecuting patents even though they had reviewed Citrix AEO information.  Second, Workspot stated that it would not agree to a stipulation to preclude Sinha and Chawla from engaging with Microsoft.  Ex. C.  Instead, Workspot announced its intent "to move the Court for a modification of the Protective Order with respect to Mr. Sinha and Mr. Chawla."  *Id.*

---

[1] All references hereafter to Exhibits ("Ex.") are to Exhibits attached to the Strapp Decl.

Although Workspot claimed it would seek a modification to the Protective Order, it never did. Instead, as evidenced by documents produced by Workspot in September, within days of reviewing information concern the highly-confidential Citrix-Microsoft license agreement, Sinha and Chawla entered into agreements with Microsoft on behalf of Workspot. Thus, for example, on August 14, Chawla entered into a Confidential Patent License for Remote Desktop Protocol with Microsoft on Workspot's behalf. Ex. D. And on August 31, Sinha entered into a Datacenter Migration Program Agreement with Microsoft on Workspot's behalf. Ex. E.

### C. The Harassment Of Citrix Executives And Leaking Of Citrix Confidential Information

Over the past week, an individual (or individuals) whom Citrix believes may be either a Workspot employee or employees, or an agent or agents acting on Workspot's behalf, sent emails and posted information to websites designed to harass and intimidate Citrix and two of its key executives, David Henshall, Citrix's President and Chief Executive Officer, and Juan Rivera, Citrix's Senior Vice President, Cloud and Server Engineering. The emails were sent to Henshall and Rivera using Guerrilla Mail, a service that provides an anonymized, temporary email address that requires no registration. Declaration of Mike Fernandez ("Fernandez Decl.") at ¶¶ 2-3. The individual (or individuals) has also posted threats targeting Citrix and Henshall on TheLayoff.com and Pastebin.com. Strapp Decl, Exs. L-M.

The emails and the posts explicitly threaten the impending leak of confidential Citrix information, potentially including information produced by Citrix to Workspot in this litigation. The emails and the posts also state that some confidential Citrix information has already been leaked. In fact, an email purportedly from Henshall regarding internal, confidential Citrix information was posted on Pastebin.com, and a link to the posted email on Pastebin.com was posted on TheLayoff.com. *Id*.

4

A summary of the emails and posts to websites follows:

- On October 9 at 11:07 pm,[2] an email was sent to Henshall with the subject "Emails leaked to take revenge." In this email, the sender threatens Henshall, writing, "What will happen to your career if your emails are leaked? Emails to dheeraj at Nutanix? Emails to brad at Microsoft? Emails to templeton to discuss internal issues? You will get a thanksgiving present this year!" Ex. F.

- On October 10 at 11:00 am, an email was sent to Henshall with the subject "Patent trolls." In this email, the sender again threatens Henshall, exclaiming, "DH: your career will end in 2 months! Your emails are out in the dark web. It's coming out as a thanksgiving gift!" Ex. G. This email includes a link to an article regarding Microsoft's decision to "open source" its "patent portfolio." *Id.*

- On October 10 at 11:06 am, an email was sent to Rivera with the subject "Emails leaked." In this email, the sender writes, "Citrix email thread discussing legal patent cases have been leaked." Ex. H.

- On October 10 at 1:56 pm, an email was sent to Henshall with the subject "email leaks." In this email, the sender writes, "Looks like some email conversations discussing Frame and Workspot got leaked. We are hearing rumors that brianmadden.com is planning to publish those in the next month. VMware is helping push it." Ex. I.

- On October 10 at 8:23 pm, an email was sent to Henshall with the subject "Sorry." In this email, the sender writes, "Our emails have leaked." Ex. J.

- On October 11 at 3:04 am, an email was sent to Rivera with the subject "Cloud innovation." In this email, the sender writes, "Do you track where you are getting new ideas from. Looks like you are copying everything these days. DaaS is also an original idea? You can work with legal but at the end you will have your face buried in shyt!" Ex. K.

- On October 11, an individual posted a statement to a website called TheLayoff.com stating that, "Rumor is that David Henshall's emails have been leaked. They are going to cause serious stock issues in the next 4 weeks." Ex. L. Information below this post directs readers of the post to a different website called Pastebin.com. *Id.*

- On October 11 at 3:29 pm, an individual posted on Pastebin.com a screenshot of an email from Henshall to P.J. Hough, Citrix's Executive Vice President and Chief Product Officer, with the Subject "███████" The email from Henshall to Hough states, "██ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ " Ex. M.

---

[2] All times referenced herein are Eastern Daylight Time.

- On October 11 at 3:37 pm, an email was sent to Henshall with the subject "Check this email." In this email, the sender writes, "You are done as the CEO. Look at this sample email!" Ex. N. The email to Henshall includes a link to the screenshot of the email from Henshall to Hough on Pastebin.com. *Id.*

- On October 11 at 3:39 pm, an email was sent to Rivera with the subject "Check this email." In this email, the sender writes, "Ethical?" The email to Rivera includes a link to the screenshot of the email from Henshall to Hough on Pastebin.com. Ex. O.

D. **Citrix's Investigation Of The Recent Harassment Of Citrix Executives**

Citrix has undertaken an investigation over the past few days regarding the harassing emails and website posts summarized above. This investigation, while not yet complete, indicates that the individual(s) behind the emails and website posts may be Workspot employee(s) or individual(s) affiliated with and acting on behalf of Workspot.

First, the content of several of the emails suggests that the individual who sent the emails has access to, has leaked, and is threatening to continue to leak highly-sensitive Citrix information, including information produced in this litigation by Citrix that has been designated AEO. In particular, the emails make reference to Citrix emails that will be leaked (and that have already been leaked) concerning Nutanix, Microsoft, Frame and Workspot. Citrix has produced several such emails in this litigation. Strapp Decl. at ¶ 25; Exs. X-BB. Most of these Citrix emails have been designated as AEO pursuant to the Protective Order. *Id.*

Second, the content of several of the threatening emails make reference to nuanced details regarding this litigation that would likely not be the subject of a harassing email sent by an individual not associated with Workspot. For example, an email to Rivera discusses "DaaS," a shorthand term for "Desktop-as-a-Service," and the core product offering by Workspot, and inquires whether DaaS is an "original idea." This email seems to reiterate the position, taken by

Workspot in opposing Citrix's pending preliminary injunction motion, that certain patents-in-suit concerning concepts relevant to DaaS are not original and are, instead, invalid.

Third, the targets of the harassing emails, Henshall and Rivera, as well as Hough, the recipient of the Henshall email posted on Pastebin.com, are individuals who have been the subject of Workspot's discovery requests. At the outset of the email discovery process, for example, the parties agreed to a process whereby each party would identify custodians of emails from whom they would collect and produce emails. After that exchange was made, each party could request that the other party add two more custodians whose emails would also be collected and produced.

Citrix initially proposed collecting emails from Christopher Fleck, Calvin Hsu, and Nabeel Youakim, three of the four Citrix employees who had provided declarations in support of Citrix's preliminary injunction motion. Ex. S. Workspot rejected this proposal, and requested instead that Citrix collect and produce emails from, among others, Henshall, Hough and Rivera. Ex. T.

Citrix eventually agreed to collect and produce emails from Hough and Rivera, among several other Citrix witnesses. While Citrix did not collect Henshall's email, emails it collected and produced from other custodians included, embedded within email chains, highly-confidential and highly-sensitive emails sent or received by Henshall. Exs. X - BB.

Fourth, Rivera, in particular, has been a key individual in this litigation. Not only did Rivera provide a declaration in support of Citrix's preliminary injunction motion, (D.I. 12) he also was deposed in a full-day deposition by Workspot, and he has previously been the target of unwarranted attention through social media for several months by Workspot employees. Exs. U-W.

Fifth, the investigation of Citrix's Cyber Security team has revealed through email header information that the originating Internet Protocol ("IP") address of the first six emails sent is in Fremont, California – only 25 miles from Workspot's headquarters.[3]  Fernandez Decl. at ¶ 6. Fremont, California appears to be the home of at least one Workspot executive, Puneet Chawla, Workspot's co-founder and CTO and formerly a member of VMWare's Office of the Chief Technology Officer.  Strapp Decl. at ¶ 17; Exs. 17-18.  Chawla, as noted above, was one of at least two unauthorized recipients of information about Citrix's license agreement with Microsoft. In this context, it does not appear to be a coincidence that on October 10, the very same day an email was sent to Henshall with the subject "Patent trolls," (Ex. G) Chawla posted a tweet on his Twitter account regarding a different patent infringement suit in which Citrix is a defendant and commented, "The art of patent trolling!  Who Is the bigger troll!"  Ex. R.

## III.    ARGUMENT

In light of the serious reputational, financial and competitive harm threatened in the emails sent to Citrix's CEO and SVP, the violations of the Protective Order that have already occurred, the explicit threat of emails being leaked, and the evidence pointing to Workspot's involvement, Citrix, pursuant to Rule 65 of the Federal Rules of Civil Procedure, respectfully requests that the Court enter forthwith a temporary restraining order against Workspot as detailed below, as well as an order for Workspot to show cause why it did not act in contempt of Court by violating the Protective Order.[4]

---

[3] The two remaining emails have an IP address in Boydton, Virginia and are owned by Microsoft Azure.  Fernandez Decl., ¶ 7.  Microsoft Azure is the cloud-hosting service used by Workspot. *See* https://www.workspot.com/microsoft-azure/ (last accessed on October 15, 2018).

[4] Citrix's active, diligent investigation into the nature of the Citrix emails that may already have been leaked and the provenance of the sender of the harassing emails and website posts is ongoing.  Fernandez Decl., ¶ 8.  Citrix has taken certain steps to mitigate risks and threats to the

## A.      Legal Standard

In a situation where "a party faces the possibility of irreparable harm" a "temporary restraining order" is often an appropriate remedy "to preserve the status quo and prevent such irreparable harm." *Crowdstrike, Inc. v. NSS Labs, Inc.*, C.A. No. 17-146-GMS (D. Del. Feb. 13, 2017) (*citing Granny Goose Foods, Inc. v. Bhd. a/Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty*.), 415 U.S. 423, 439 (1974).   A temporary restraining order should be granted "if: (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the preliminary relief will not result in even greater harm to the nonmoving party; and (4) granting the injunction is in the public interest." *Id.*; *see also Ferring Pharms., Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205, 210 (3d Cir. 2014).  The standard for issuance of a temporary restraining order is thus no different from that for issuance of a preliminary injunction.  *See AstraZeneca AB, et al. v. Dr. Reddy's Laboratories, Inc.*, C.A. No. 15-988-SLR (D. Del., November 6, 2015) (*citing Globus Medical, Inc. v. Vortex Spine, LLC*, 605 Fed. Appx. 126 (3d Cir. 2015); *Nutrasweet Co. v. Vit-Mar Enterprises, Inc*., 112 F .3d 689 (3d Cir. 1997)).

Rule 26(c)(7) of the Federal Rules of Civil Procedure permits the Court to enter, upon motion, a protective order to restrict the disclosure of certain types of information, such as confidential research, development or commercial information produced in discovery.  Fed. R. Civ. P. 26(c)(7).  Thus, once a protective order is entered, the dissemination of information obtained through discovery becomes controlled by the terms of the protective order.  *See Quinter*

---

company and to the specific executives who have been targeted.  *Id.*  But given the reputational and commercial risk engendered by the individual(s) who has sent these emails and made website posts, and given the fact that these issues dovetail with many of the specific harms already enumerated in Citrix's pending motion for preliminary injunction, Citrix files now its request for a temporary restraining order and a motion to show cause.

*v. Volkswagen of Am.,* 676 F.2d 969, 975 (3d Cir. 1982). Thereafter, a party must comply with the protective order or face possible sanctions. *Id.*

To establish that a party is in civil contempt of an order of court, the petitioning party must show: (i) that a valid order of court existed; (ii) that the party had knowledge of the order; and (iii) that the party disobeyed the order. *GE Harris Rwy. Elec., LLC v. Westinghouse Air Brake,* Civil Action No. 99-070-GMS, 2004 WL 1854198, *7 (D. Del., Aug. 18, 2004) (*citing Roe v. Operation Rescue,* 54 F.3d 133, 137 (3d Cir. 1995)). Civil contempt sanctions are often imposed against individuals who violate protective orders. 6 James Wm. Moore et al., Moore's Federal Practice § 26.108[2], at 26–570 (3d ed.2011). Determining appropriate sanctions for civil contempt is committed to the sound discretion of the Court. *See Elkin v. Fauver,* 969 F.2d 48, 52 (3d Cir. 1992). It is not necessary to prove that the party's disobedience was willful, nor does acting in good faith preclude a finding of contempt. *Harley-Davidson, Inc. v. Morris,* 19 F.3d 142, 148 (3d Cir.1994)*; see also Waste Conversion, Inc. v. Rollins Envtl. Servs., Inc.,* 893 F.2d 605, 609 (3d Cir. 1990).

**B.      A Temporary Restraining Order Should Be Entered By The Court Against Workspot**

i.      Workspot Has Disclosed Citrix AEO  Information In Violation of the Protective Order and It May Do So Again

Workspot has acknowledged that it violated the Protective Order when its counsel revealed to Workspot co-founders Sinha and Chawla information about Citrix's highly-confidential and AEO license agreement with Microsoft. Additionally, individual(s) who may be either Workspot employee(s) or individual(s) acting on behalf of Workspot sent harassing emails to Henshall and Rivera indicating that highly-sensitive Citrix information, potentially including information produced by Citrix to Workspot under the Protective Order in this litigation, has

10

already been leaked, and will continue to be leaked, in an effort to drive down Citrix's stock price, cause Henshall and Rivera to lose their jobs, and presumably convince Citrix to withdraw its lawsuit.

Individuals implicated in the threatening emails – including, in particular, David Henshall, Juan Rivera, and PJ Hough – are individuals whom Citrix did not offer as email custodians for purposes of discovery in the first instance, but whom Workspot insisted on being included in the parties' email exchanges. Ex. T. And the topics in the threatening emails deal with topics specifically at issue in this case, including Citrix's relationships with Workspot, Microsoft, and Nutanix, and Citrix's involvement in "legal patent cases." Exs. F-O. The targets and content of the threatening emails are an indicator that Workspot, or an individual or individuals acting on its behalf, may violate the Protective Order in order to harm Citrix and gain for Workspot an unlawful litigation and commercial advantage.

One reason that Citrix believes that the threatening, harassing and extortionate emails may be from an individual or individuals associated with Workspot is that Workspot has, for several months, engaged in a campaign against Citrix of intimidation through false advertising and social media trolling. The threatening emails and the posts and information on TheLayoff.com and Pastebin.com seem to be of a piece with Workspot's comments regarding Citrix employees on Twitter (Exs. U-W), crashing Citrix's annual Synergy conference (*see* Ex. W), and disseminating through multiple media channels false statements about Citrix and its products (D.I. 84, Exs. 48-51).

Workspot has already admitted violating the Protective Order. This incontrovertible evidence coupled with harassing threats that may have originated from Workspot to continue "leaking" highly-sensitive Citrix emails shows, at a minimum, that Citrix will likely prove that

Workspot has disclosed Citrix's confidential information in violation of the Protective Order, and that Workspot, or individuals associated with Workspot, may, absent relief from the Court, leak Citrix information in violation of the Protective Order.

ii.    <u>Citrix Is Likely to Suffer Irreparable Harm</u>

Citrix has already suffered irreparable harm from Workspot counsel's failure to properly protect Citrix's confidential information. Citrix will suffer further severe harm if confidential information is leaked.

When Workspot counsel inadvertently disclosed highly sensitive details regarding Citrix and Microsoft's license agreement to the two Workspot employees most likely to benefit from that information, Citrix was irreparably harmed. When those same Workspot employees, Sinha and Chawla, entered into agreements with Microsoft with that shared information still fresh on their minds, Workspot gained a competitive and commercial benefit to the detriment of Citrix.

That harm, as serious as it may be, pales in comparison to the harm Citrix has suffered and will suffer because of the intentional, unauthorized leaking of Citrix executives' highly-confidential emails. As Citrix counsel explained to Workspot counsel on numerous occasions, Citrix's document production contains highly sensitive business information regarding its products, employees, acquisition targets, and business strategies. For that reason Citrix has resisted producing information not directly relevant to this case (including the emails of David Henshall) and redacted certain highly-sensitive portions of documents prior to producing those documents to Workspot. Just months after Workspot insisted on the production of emails from the files of David Henshall and on the production of unredacted versions of Citrix's highly confidential business information not responsive to this litigation, Citrix is now being threatened with the "leak" of its confidential information to the public.

It is important to underscore that the leak of highly-confidential and sensitive Citrix emails would cause irreparable harm not just to the reputations and livelihoods of the Citrix executives implicated and referenced in the emails – including Henshall and Rivera – but also to the company as a whole. *See Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 205 (3d Cir. 2014) (ground for finding irreparable injury include harm to reputation and goodwill); *Opticians Association of America v. Independent Opticians of America*, 920 F.2d 187 (3d Cir. 1990) (same). And even if the emails themselves are not released – the dissemination of the alleged "hacking" of Mr. Henshall's email, as posted on TheLayoff.com and Pastebin.com, is damaging in and of itself. These website posts were designed to damage Citrix's stock price, Citrix's security reputation, the perception and morale of Citrix employees, Citrix's acquisition and business strategies, and the reputations of Citrix executives. A temporary restraining order is appropriate to head off further irreparable harm.

### iii. The Balance of Equities Tips in Citrix's Favor

Determining the balance of equities requires a court to consider the "harm that will occur to the moving party from a denial of the preliminary injunction with the harm that the non-moving party will incur if the injunction is granted." *Hybritech, Inc. v. Abbott Labs*., 849 F.2d 1446, 1457 (Fed. Cir. 1988). The reasonable measures Citrix requests in this Motion will not harm Workspot in any significant way – Citrix is only asking that Workspot follow the procedure it agreed to follow to safeguard confidential information when it signed the Protective Order. *See Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (balance of hardships tips in favor of plaintiff where defendant signed agreement prohibiting alleged conduct); *Dish Network L.L.C. v. Ramirez,* No. 15–CV–04712–BLF, 2016 WL 3092184, at *7 (N.D. Cal. June 2, 2016) (balance of hardships tips in favor of plaintiff seeking injunction when

it would "do no more than require Defendant to comply with federal and state...laws" (citation omitted)); *see also DTN, LLC v. Pioneer Hi-Bred Int'l, Inc.*, No. CV 18-384-LPS, 2018 WL 1392343, at *2 (D. Del. Mar. 19, 2018) (balance of hardships tips in favor of plaintiff where defendant breached its contractual obligations). Meanwhile, as detailed above, the harm to Citrix is irreparable and extensive. Citrix has already suffered harm, and the threat of release of additional confidential information has caused and will cause Citrix and its employees irreparable harm.

    iv.  A Temporary Restraining Order Is in The Public Interest

   There is no public harm in requiring Workspot to adhere to the Protective Order it agreed to long ago and not to publicly disclose confidential Citrix information. Such an order would simply maintain the status quo. *See Kos Pharms. v. Andrx Corp.,* 369 F.3d 700, 708 (3d Cir. 2004) (identifying "maintain[ing] the status quo" as "one of the goals" of a preliminary injunction). Indeed, the public has a strong interest in protecting confidential information from being stolen or misused, especially where, as here, that information was shared under the agreed-upon understanding that it would be protected. *See DTN*, 2018 WL 1392343 at *2 (finding that enforcing contractual obligations is in the public's interest).

**C.  The Motion For An Order For Workspot To Show Cause That Workspot Did Not Act In Contempt Should Be Granted**

   Workspot violated the Protective Order when its counsel revealed to its co-founders information about Citrix's highly-confidential license agreement with Microsoft. Workspot has attempted to downplay this violation and contends it should suffer no consequences for its actions. Of course, as Citrix has pointed out to Workspot, now that Sinha and Chawla know key information about the Citrix-Microsoft license, "[i]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-

intentioned the effort may be to do so." *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).  In that vein, it is perhaps unsurprising that around the same time Sinha and Chawla gained access to information about the Citrix-Microsoft license, both Sinha and Chawla separately entered into agreements with Microsoft on behalf of Workspot.

Given Workspot's admitted violation of the Protective Order, Sinha and Chawla should be required to abide by the self-executing patent prosecution bar provision of the Protective Order.  Additionally, given Sinha and Chawla's review of highly-sensitive, competitive information that goes to the relationship between Microsoft and Citrix, neither of these individuals should be permitted to engage with Microsoft on behalf of Workspot in any capacity for the pendency of this litigation.

What is more, because Citrix has established that (i) a valid order of this Court, the Protective Order, existed; (ii) Workspot had knowledge of the Protective Order; and (iii) Workspot disobeyed the order when it shared Citrix's confidential information, Workspot should be held in civil contempt.  *See Roe,* 54 F.3d at 137.  It is indisputable that Workspot violated the Protective Order when it shared its draft of the Preliminary Injunction Opposition Brief with key provisions of Citrix's license agreement with Microsoft unredacted.  This type of violation on its own merits a civil contempt sanction*.  See* 6 James Wm. Moore et al., Moore's Federal Practice § 26.108[2], at 26–570 (3d ed.2011).  Citrix need not prove whether Workspot's counsel did so willfully or in bad faith to find contempt.  *Harley-Davidson,* 19 F.3d at 148.  It is enough that highly confidential Citrix information regarding its relationship with Microsoft was shared with Workspot. *See LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, No. 11-CV-04494-WHO, 2013 WL 4604746, at *4 (N.D. Cal. Aug. 28, 2013) (granting motion for an order to show cause

where violation of protective order "risk[ed] disrupting [a party]'s commercial relationships" despite "LifeScan's counsel act[ing] in subjective good faith").

Further, evidence that is now available indicates that an individual (or individuals) employed by Workspot or acting on Workspot's behalf or on behalf of a Workspot employee may have accessed Citrix's confidential information, may already have released some of this information to the public, and could release Citrix confidential emails to the public at any time, thereby causing Citrix immeasurable and irreparable harm. *See Quinter,* 676 F.2d at ("In civil contempt proceedings enforcement of the rights and remedies of a litigant is the ultimate object."). For all these reasons, the Court should grant Citrix's motion to show cause. *See New England Technology, Inc. v. Sigma Tech Sales, Inc.,* 2011 WL 4014346, at *2 (S.D. Fla. September 9, 2011) ("When a party's continued violation of a court order requires the opposing party to seek enforcement of the order through a motion for contempt, the resulting attorney's fees and costs may be accessed against the noncomplying party, even if the court ultimately does not hold that party in contempt.").

## IV. THE COURT SHOULD GRANT CITRIX APPROPRIATE RELIEF

Upon granting Citrix's Motion for a Temporary Restraining Order and Motion for an Order to Show Cause, Citrix respectfully requests that the Court enter an order against Workspot, its officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with Workspot that specifically:

- requires Workspot to provide a detailed audit and accounting of all individuals who have had access or who may have gained access to any documents (or to the information contained in such documents) produced by Citrix as "CONFIDENTIAL," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the Protective Order, including the identity of Workspot employees that have received access (or obtained without authorization access) to any databases, fileshares, or document repositories containing any Citrix confidential material;

- requires Workspot to ascertain and identify with specificity any and all violations of the Protective Order, including the individual or individuals who violated the Protective Order and the nature of the violations;

- requires Workspot to cease and desist from any further uninvited communications in any form with Citrix personnel, including by means of social media;

- requires Workspot to immediately take down any information that has been leaked or published in violation of the Protective Order from any publicly accessible location and to preserve and provide to Citrix a copy of all such information;

- requires Workspot to provide a detailed plan regarding the steps it will immediately implement to ensure that it does not continue to violate the Protective Order;

- confirms that Sinha and Chawla may not be involved in patent prosecution on behalf of Workspot for patents concerning the subject matter of the patents-in-suit until one year after the termination of this litigation;

- prohibits Sinha and Chawla from engaging with Microsoft on behalf of Workspot in any capacity for the pendency of this litigation;

- requires Workspot to identify the individual(s) who (i) sent Henshall and Rivera the October 9, 10 and 11 emails and (ii) posted the information referenced above to TheLayoff.com and Pastebin.com; and

- requires Workspot to identify the individual(s) who have accessed, or who own any devices associated with IP addresses 98.207.108.220 or 104.46.110.21; and

- requires Workspot to pay all costs and fees of Citrix associated with this Motion.

## V.    CONCLUSION

Given the violation of the Protective Order that has already occurred and the impending threat of the disclosure of confidential Citrix information, Citrix respectfully requests that the Court grant this motion.

Dated:  October 16, 2018

**DLA PIPER LLP (US)**

**OF COUNSEL**:

_/s/ Denise S. Kraft_____
Denise S. Kraft (DE Bar No. 2778)

Michael G. Strapp (admitted _Pro Hac Vice_ )
Larissa Bifano (admitted _Pro Hac Vice_ )
Kristoffer W. Lange (admitted _Pro Hac Vice_ )
Yasmin Ghassab (admitted _Pro Hac Vice_ )
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Telephone:  (617) 406-6031
michael.strapp@dlapiper.com
larissa.bifano@dlapiper.com
kris.lange@dlapiper.com
yasmin.ghassab@dlapiper.com

**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, DE  19801
Telephone:  (302) 468-5700
Facsimile:   (302) 394-2341
denise.kraft@dlapiper.com

_Attorneys for Plaintiff_
_Citrix Systems, Inc._

## CERTIFICATE OF SERVICE

I, Denise S. Kraft, hereby certify that on this 16th day of October 2018, I caused a true and correct copy of the foregoing **[FILED UNDER SEAL] Citrix's Brief in Support of its Motion for Temporary Restraining Order and to Show Cause Why Workspot Should Not be Held in Contempt** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification to the following attorneys of record, and is available for viewing and downloading.

David E. Moore
Stephanie E. O'Byrne
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801
dmoore@potteranderson.com
sobyrne@potteransderson.com
bpalapura@potteranderson.com

H. Mark Lyon
GIBSON DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
mlyon@gibsondunn.com

Aaron B. Frumkin
Jennifer Rho
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
afrumkin@gibsondunn.com
jrho@gibsondunn.com

Y. Ernest Hsin
GIBSON DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
ehsin@gibsondunn.com

Brian K. Andrea
Brian M. Buroker
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
bandrea@gibsondunn.com
bburoker@gibsondunn.com

*/s/ Denise S. Kraft*
Denise S. Kraft (DE Bar No. 2778)