# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

CITRIX SYSTEMS, INC.,

                Plaintiff,

    v.

WORKSPOT, INC.

                Defendant.

C.A. No. 1:18-cv-00588-LPS

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Public Version

## CITRIX'S REPLY BRIEF IN SUPPORT OF ITS
## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND TO SHOW CAUSE WHY WORKSPOT SHOULD NOT BE HELD IN CONTEMPT

Dated: November 6, 2018

OF COUNSEL:

Michael G. Strapp (admitted *Pro Hac Vice*)
Larissa Bifano (admitted *Pro Hac Vice*)
Kristoffer W. Lange (admitted *Pro Hac Vice*)
Yasmin Ghassab (admitted *Pro Hac Vice*)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Telephone: (617) 406-6031
michael.strapp@dlapiper.com
larissa.bifano@dlapiper.com
kris.lange@dlapiper.com
yasmin.ghassab@dlapiper.com

Denise S. Kraft (DE Bar No. 2778)
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
denise.kraft@dlapiper.com

*Attorneys for Plaintiff*
*Citrix Systems, Inc.*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.    ARGUMENT ...................................................................................................... 4

    A.    The Court Should Grant Citrix A Temporary Restraining Order ......................... 4

        1.    Workspot Has Disclosed Citrix Information In Violation Of The Protective Order And May Do So Again .................................................... 5

        2.    Citrix Is Likely To Suffer Irreparable Harm ............................................... 6

        3.    The Balance Of Equities Tips In Citrix's Favor And A TRO Is In The Public Interest ................................................................................... 8

    B.    The Court Should Grant Citrix's Motion To Show Cause .................................... 8

III.    CONCLUSION................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Crowdstrike, Inc. v. NSS Labs, Inc.*,
  C.A. No. 17-146-GMS (D. Del. Feb. 13, 2017) ........................................................4

*Grant Heilman Photography, Inc. v. Pearson Educ., Inc.*,
  2018 WL 2414984 (E.D. Pa. May 29, 2018) .............................................................9

*Harley-Davidson, Inc. v. Morris*,
  19 F.3d 142 (3d Cir. 1994) .......................................................................................9

*INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*,
  C.A. No. 11-1007-SLR-CJB, 2014 WL 1908286, (D. Del. Apr. 25, 2014) ..............8

*LifeScan Scotland, Ltd. v. Shasta Techs, LLC*,
  2013 WL 4604746 (N.D. Cal. Aug. 28, 2013) ..........................................................9

*Polaris PowerLED Tech., LLC v. Samsung Elec. America, Inc.*,
  No. 2-17-cv-00715 (E.D. Tex. Oct. 29, 2018) ..........................................................9

*York Grp., Inc. v. Pontone*,
  2014 WL 3811014 (W.D. Pa. Aug. 1, 2014) ..............................................................9

## I. INTRODUCTION

On October 9-11, Citrix's CEO and SVP received emails claiming that their careers and reputations had been destroyed because their highly-confidential emails had "been leaked" and were "out in the dark web." Then, on October 11, one such alleged "leaked" email sent by Citrix's CEO was posted to Pastebin.com. That same day, a link to the "leaked" email was posted on TheLayoff.com, along with a statement that Citrix's CEO's "emails have been leaked" and that the leak of the emails "are going to cause serious stock issues in the next 4 weeks."

Citrix immediately began an investigation into the source of the emails and website posts. This investigation involved Citrix's Cyber Security and in-house legal teams, outside counsel, and digital forensics consultants from Stroz Friedberg. Within a few days, Citrix uncovered substantial evidence indicating that an individual or individuals associated with Workspot were likely behind the emails and website posts.

Given the deeply troubling – and potentially criminal – nature of these incidents, the need for Citrix to ensure the security of its computing network, software systems, and email service, the threats to Citrix's executives, and the implications for the integrity of the securities market, Citrix informed Workspot's counsel of the information it had learned on October 15, and requested Workspot's cooperation and assistance in investigating the matter. D.I. 113 at Ex. 1. Workspot refused to assist Citrix in its investigation, dismissed Citrix's evidence, and threatened to seek attorneys' fees from Citrix.

Citrix filed this motion for a temporary restraining order and an order to show cause the next day (the "Motion"). Citrix openly and transparently acknowledged that its investigation was still ongoing, but also described in its Motion how it had already uncovered substantial

1

evidence implicating Workspot employee(s) or agent(s) in the harassing emails and threating website posts. Citrix explained that:

- the IP Address of the first six emails is a Comcast subscriber in Fremont, California (the "Fremont IP Address"), the hometown of Puneet Chawla, Workspot's co-founder and CTO;

- on October 10, the same day an email with the subject "Patent trolls" and another email proclaiming that "Citrix email thread discussing legal patent cases have been leaked" were sent to Citrix executives, Chawla posted a tweet commenting about Citrix patent cases and describing Citrix as a patent troll;

- the IP Address of the seventh and eighth emails sent to Citrix's executives is associated with Microsoft Azure (the "Azure IP Address"), the cloud-hosting service used by Workspot;

- the content of several of the threatening emails concern information produced by Citrix to Workspot during this litigation; and

- Workspot had already admitted violating the Protective Order by revealing to Chawla and Sinha, Workspot's CEO and co-founder, details about a Citrix-Microsoft patent license agreement.

In its opposition, Workspot insists the information Citrix has uncovered is speculative and not "competent." D.I. 112 ("Opp.") at 1. Workspot and its CTO deny sending harassing emails to Citrix executives, posting threatening information to TheLayoff.com or Pastebin.com, or leaking confidential Citrix emails, and also allege that Workspot has, at all times, fully complied with the Protective Order. *Id.*; *see also* D.I. 115. But the statements of Workspot and its CTO's sworn declaration are difficult to square with evidence Citrix already submitted with its Motion and with additional evidence that has recently come to light. In particular, Citrix has learned that:

- ***according to TheLayoff.com, the IP Address associated with the posted information on TheLayoff.com is the same as the Azure IP Address*** (Declaration of Yasmin

Ghassab ("Ghassab Decl."), Exs. 1, 2; D.I. 112, Ex. 7; Declaration of David McSweeney ("McSweeney Decl.") at ¶ 14[1]);

- ***according to Microsoft, the subscriber account associated with the Azure IP Address has two registered "Admin" email addresses:*** ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ (Ghassab Decl., Exs. 1, 2; McSweeney Decl. at ¶ 14);

- ***the Fremont IP Address[2] accessed the Gibson Dunn ShareFile[3] account on September 8 and 9***, one business day before Chawla was defended at his deposition by Gibson Dunn (D.I. 87, Ex. 41 at 1; McSweeney Decl. ¶¶ 10-11);

- ***the Fremont IP Address accessed the Potter Anderson ShareFile account on September 30***, one business day after Citrix counsel emailed Potter Anderson a redacted version of the Citrix Preliminary Injunction reply brief (Ghassab Decl., Ex. 3; McSweeney Decl. ¶¶ 10-11); and

- on October 16, the day after Citrix filed its Motion, a new email was sent to Citrix's CEO using ProtonMail, an encrypted email service based in Switzerland, with the subject "Emails leaked – you need to transfer bitcoin."[4] McSweeney Decl. at ¶ 14.

At this point in Citrix's investigation, all available evidence indicates that an individual

or individuals associated with Workspot sent a series of emails to Citrix's CEO and SVP

---

[1] Citrix has compiled a chart that includes the key information uncovered in its investigation to date. This chart is attached hereto as Appendix A. Citrix also submits in conjunction with this reply brief a declaration from David McSweeney, a Vice President in the Digital Forensics and Incident Response group at Stroz Friedberg.

[2] Citrix has served a subpoena on Comcast, seeking the identity of the Comcast subscriber associated with the Fremont IP Address. D.I. 108. Comcast has indicated that it will provide a response to the subpoena by November 14. Citrix intends to supplement the record in connection with its Motion upon receipt of Comcast's subpoena response.

[3] Citrix ShareFile is a file sharing and transfer service that is built for businesses. Gibson Dunn and Potter Anderson, counsel for Workspot, are customers of Citrix ShareFile. McSweeney Decl. at ¶¶ 10-11. The Citrix ShareFile logs do not provide Citrix with any insight as to what files were accessed or downloaded, but they do reveal that the Fremont IP Address logged in to the ShareFile customer accounts for Gibson Dunn and Potter Anderson. *Id.*

[4] Citrix has not yet been able to ascertain any IP Address information associated with the October 16 email. McSweeney Decl. ¶ 14. One additional email was sent to support@citrix.com from a Guerrilla Mail account on October 23 with the subject "Why did you fire so many people?" The IP Address associated with this email is different than the Fremont and Azure IP Addresses. *Id.*

suggesting that their emails would be "leaked," that some confidential emails had already been leaked and "are out in the dark web," that internal Citrix "email conversations" concerning "Workspot got leaked," that these leaks would destroy the reputations of Citrix's CEO and SVP and lead swiftly to the end of their careers, and that Citrix executives could "work with legal[,] but at the end" they would have their faces "buried in shyt!" *Id*. Citrix's investigation also indicates that an individual or individuals associated with Workspot posted statements to TheLayoff.com claiming that Citrix's CEO's "emails have been leaked" and that the leaks were "going to cause serious stock issues," and also posted a fabricated[5] (but allegedly authentic) "leaked" email from Citrix's CEO to Pastebin.com. *Id.*

This very troubling information, coupled with the fact that Workspot counsel has already admitted disseminating key information from an "Attorneys' Eyes Only" Citrix-Microsoft patent license agreement to its co-founders Sinha and Chawla, underscores Citrix's urgent need for the Court to enter a temporary restraining order and an order for Workspot to show cause why it should not be held in contempt.

## II.   ARGUMENT

### A.   The Court Should Grant Citrix A Temporary Restraining Order

Citrix seeks a temporary restraining order because it "faces the possibility of irreparable harm," and a temporary restraining order is necessary "to preserve the status quo and prevent

---

[5] Citrix conducted a comprehensive search to locate the purported email from its CEO that had been posted on Pastebin.com on October 11. Citrix was unable to locate any such email. McSweeney Decl. at ¶ 14. It appears as though the individual who posted information about the leaking of emails, indicated these leaks would drive down Citrix's stock price, directed viewers of the post at TheLayoff.com to a purportedly leaked email from Citrix's CEO at Pastebin.com, fabricated the leaked email to damage Citrix's reputation. In fact, another email sent to Citrix's CEO on October 20 by an anonymous sender using ProtonMail states, in part, "I have no emails. No leaks. The email I sent is not real. I made it up to mess with you." McSweeney Decl. at ¶ 14.

such irreparable harm." *Crowdstrike, Inc. v. NSS Labs, Inc.*, C.A. No. 17-146-GMS (D. Del. Feb. 13, 2017). Among other things, Citrix respectfully requests that the Court order Workspot to cease and desist from uninvited communications in any form with Citrix personnel, to take down from any publicly accessible location information that has been leaked or published in violation of the Protective Order, and to preserve and provide to Citrix a copy of all such information.

1.      Workspot Has Disclosed Citrix Information In Violation Of The Protective Order And May Do So Again

Workspot offers two arguments to show why Citrix has no reasonable likelihood of succeeding on the merits of its motion. Neither argument has any merit.

First, Workspot contends that email communications between Citrix executives concerning "internal issues," "legal patent cases," competition with companies such as "Frame and Workspot," and "potential M&A" activities are not "confidential material protected under" the "[protective] order." Opp. at 5-6. This argument is nonsensical. Internal email communications between Citrix executives are highly-confidential information, and have been produced as such by Citrix to Workspot under the Protective Order. One or more individuals who are likely associated with Workspot claim to have "leaked" such emails, and have threatened to "leak" additional such emails. Workspot cannot plausibly contend that this activity is permissible or sanctioned under the Protective Order.

Second, Workspot argues that Citrix is not likely to show that anyone employed by or associated with Workspot is behind the harassing emails and threatening website posts directed at Citrix and its executives. According to Workspot, Citrix's "cobbled together" evidence is nothing more than "rank speculation." Opp. at 6. Thus, for example, Workspot claims that

Citrix's "argument to connect Workspot" to the Azure IP Address is "meritless." Workspot takes Citrix to task for "point[ing] the finger at Workspot." *Id.* at 10.[6]

Workspot's arguments are undermined by Microsoft and TheLayoff.com who have now confirmed, in response to subpoenas, that email addresses associated with ███████████████ ██████████████████████████████████ (Ghassab Decl., Exs. 1, 2), and that the Azure IP Address is connected to the individual who posted a link on TheLayoff.com to an allegedly leaked email from Citrix's CEO, and claimed that the leak of additional such emails would cause Citrix's stock price to drop (D.I. 112, Ex. 7).

Of course, this is not the only evidence that connects Workspot to the harassing emails and threatening website posts. For example, the Fremont IP Address accessed the Citrix ShareFile account of Gibson Dunn just a couple days before Chawla's deposition, a deposition defended by Gibson Dunn. McSweeney Decl. ¶¶ 10-11; D.I. 87, Ex. 41 at 1. Also, the Fremont IP Address accessed the Citrix ShareFile account of Potter Anderson just a couple days after Potter Anderson received permission to share with Workspot a redacted version of Citrix's reply brief in support of its preliminary injunction motion. *Id.*; Ghassab Decl., Ex. 3.

      2.      Citrix Is Likely To Suffer Irreparable Harm

Workspot claims that it, not Citrix, is being harmed because of Citrix's "egregious" disregard "for the facts," and Citrix's "direct attack[]" on "the values and ethics of Workspot and

---

[6] Workspot also takes issue with the authenticity of the Fremont IP Address. Workspot relies upon a declaration from Kivu Consulting to argue that a VPN "could be used to hide or discover an IP address when using the Guerrilla Mail service." Opp. at 4. In fact, "Guerrilla Mail, unlike some similar services, does not obfuscate a user's IP address when the user sends an email." McSweeney Decl. ¶ 20. Furthermore, the fact that the Fremont IP Address resolves to an individual Comcast subscriber demonstrates that the sender of the first six threatening emails was neither using a corporate nor a commercially available VPN. *Id.* ¶ 23.

Mr. Chawla." Opp. at 11. Workspot points to the content of the purportedly authentic, leaked email of Citrix's CEO on Pastebin.com as evidence that Citrix "is using this litigation to interfere with Workspot's business opportunities and injure its reputation." *Id.*

In truth, although Citrix was faced with the threatened leak of highly-confidential emails of its executives, and its executives were threatened with career-ending reputational and even physical harm, Citrix did not file this motion lightly. Citrix has been extremely cautious and deliberate in reaching any conclusions about the source of the threatening emails sent to its executives and the website posts about purportedly leaked Citrix emails. But, unlike Workspot, Citrix has not "disregarded" the facts. To the contrary, Citrix has kept Workspot apprised of facts uncovered in its investigation. These facts underscore, as noted above, that it is highly likely at least one individual, possibly including Workspot's CTO, has deliberately harassed and threatened Citrix with the leak of confidential Citrix emails.

One important fact Citrix has uncovered in its investigation (and shared with Workspot) is that the purported email from Citrix's CEO posted on Pastebin.com was almost certainly not authentic. McSweeney Decl. ¶ 14. Instead, it appears that the actor associated with the Azure IP Address fabricated the "leaked" Citrix CEO email, and then posted the fabricated email on Pastebin.com to make it appear – at least according to Workspot's counsel – as if Citrix executives were attempting "███████████████████████████████████████████

████████████████" *Id.*; Opp. at 18. It is telling that Workspot's contention that Citrix brought this litigation "█████████████████" (*id.*) is likely premised on a fabricated email created by one of its own employees.

3. The Balance Of Equities Tips In Citrix's Favor And A TRO Is In The Public Interest

Workspot acknowledges in its opposition "that the public has a strong interest in protecting confidential information from being stolen or misused." Opp. at 11. For this reason, and because the reasonable measures Citrix requests in this Motion will not harm Workspot in any significant way, each of the factors this Court must weigh favor entry of a temporary restraining order.

**B. The Court Should Grant Citrix's Motion To Show Cause**

Workspot's opposition to Citrix's motion to show cause rests on a misreading of the relief Citrix actually seeks and an attempt to rewrite the relevant legal standard.

Workspot first suggests that Citrix cannot meet its "heavy burden to show that the charged party is guilty of civil contempt." Opp. at 11-12. But Citrix is not presently seeking an order holding Workspot in contempt. Instead, as was spelled out clearly in Citrix's motion, Citrix seeks an order requiring Workspot to show why it should not be held in contempt. When a party seeks such an order, it need show only that the opposing party violated a particular order.[7] Here, Citrix has done just that. As Citrix demonstrated in its opening brief, Workspot violated the Protective Order when its counsel admittedly revealed to Workspot's co-founders information about Citrix's highly-confidential license agreement with Microsoft.[8]

---

[7] *See INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*, C.A. No. 11-1007-SLR-CJB, 2014 WL 1908286, at *4 (D. Del. Apr. 25, 2014), (report and recommendation adopted, 2014 WL 2917110 (D. Del. June 25, 2014)).

[8] Workspot's attempt to characterize its violation of the Protective Order as "compliance" with the Order is illogical. Opp. at 14. Workspot seems to be advancing the position that any inadvertent violation of the Protective Order, so long as it is followed by compliance with the post-violation protocol set out in the Protective Order, renders null and void *ab initio* the original violation. Workspot offers no caselaw in support of this position.

Workspot also argues that Citrix's show cause motion should be denied because Citrix has suggested "falsely that Workspot *deliberately* disobeyed the Protective Order." Opp. at 12 (emphasis original). This is a straw man; Citrix has never once suggested that Workspot counsel acted willfully or in bad faith in disclosing information marked as Attorneys' Eyes Only to Workspot's co-founders. To the contrary, Citrix explained in its motion that the law states unequivocally that willfulness or bad faith is not required for a finding of contempt.[9] Notably, Workspot never once addresses Citrix's argument that good faith does not preclude a finding of contempt, nor does it address the myriad case law supportive of Citrix's motion to show cause.[10]

Finally, Workspot contends that its disclosure of highly-confidential information about a Citrix-Microsoft license to Workspot's co-founders is harmless because some information about the license had already been made public and, accordingly, the disclosure of the non-public

---

[9] Thus, Citrix relies on *Harley Davidson* only for the proposition that "[i]t is not necessary to prove that the party's disobedience was willful, nor does acting in good faith preclude a finding of contempt." Mot. at 10 (*citing Harley-Davidson, Inc. v. Morris*, 19 F.3d 142 (3d Cir. 1994)). Similarly, Citrix relies on *LifeScan* to support the proposition that where violation of a protective order "risk[ed] disrupting [a party]'s commercial relationships," then despite counsel acting "in subjective good faith," a motion for order to show cause was appropriate. Mot. at 16 (citing *LifeScan Scotland, Ltd. v. Shasta Techs, LLC*, 2013 WL 4604746 (N.D. Cal. Aug. 28, 2013)). Workspot's argument that the defending parties in those cases acted deliberately rebuts nothing in Citrix's Motion.

[10] *See, e.g., Grant Heilman Photography, Inc. v. Pearson Educ., Inc.,* 2018 WL 2414984, at *3 (E.D. Pa. May 29, 2018) ("But, the moving party is not required to show the violating party willfully violated the court order in order to establish civil contempt and 'good faith is not a defense to civil contempt.'"); *York Grp., Inc. v. Pontone*, 2014 WL 3811014, at *7 (W.D. Pa. Aug. 1, 2014) ("Plaintiffs also argue that to the extent they violated the protective order, the violation was inadvertent. Plaintiffs' argument, however, is not persuasive…. 'good faith is not a defense to civil contempt…'") (citation omitted); *Polaris PowerLED Tech., LLC v. Samsung Elec. America, Inc.* No. 2-17-cv-00715 (E.D. Tex. Oct. 29, 2018) (finding contempt notwithstanding that violation of protective order was a mistake).

9

portions of the license could not give Workspot a "competitive advantage…vis á vis Citrix." Opp. at 16. This argument is easily refuted.

First, Workspot has *already* attempted to use to its competitive advantage non-public information concerning the scope and duration of Citrix patents licensed to Microsoft. This information had been guarded carefully by Citrix over several years in part to prevent Citrix's competitors from using the information against Citrix. In this case, Workspot has attempted to leverage information about the Citrix patents licensed to Microsoft to construct an argument that it is effectively sub-licensed to at least one Citrix patent because of its commercial dealings with Microsoft. D.I. 62 at 12. While Workspot's outside counsel is entitled to make this argument based on its interpretation of the Citrix-Microsoft license, Workspot's top technical and commercial executives should not be entitled to game-plan Workspot's products and services based on knowledge gleaned from the highly-confidential Citrix-Microsoft license.

Second, although Workspot claims that its knowledge of the Citrix-Microsoft agreement does not provide it with any commercial advantage, it fails to offer any explanation for the fact that the very two executives who were privy to confidential details of that agreement were the same Workspot executives who, within days of reviewing the Citrix-Microsoft agreement, entered into their own agreements with Microsoft.

## III. CONCLUSION

For the reasons set forth in Citrix's opening brief, this brief, and all supporting declarations and exhibits, Citrix respectfully requests that the Court grant this Motion, enter a temporary restraining order and an order for Workspot to show cause why it should not be held in contempt, and award Citrix its attorneys' fees and costs incurred in pursuing this Motion.

Dated:  November 6, 2018

**DLA PIPER LLP (US)**

**OF COUNSEL**:

Michael G. Strapp (admitted *Pro Hac Vice* )
Larissa Bifano (admitted *Pro Hac Vice* )
Kristoffer W. Lange (admitted *Pro Hac Vice* )
Yasmin Ghassab (admitted *Pro Hac Vice* )
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Telephone:  (617) 406-6031
michael.strapp@dlapiper.com
larissa.bifano@dlapiper.com
kris.lange@dlapiper.com
yasmin.ghassab@dlapiper.com

/s/ Denise S. Kraft
Denise S. Kraft (DE Bar No. 2778)
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, DE  19801
Telephone: (302) 468-5700
Facsimile:   (302) 394-2341
denise.kraft@dlapiper.com

*Attorneys for Plaintiff*
*Citrix Systems, Inc.*

# Appendix A

[CONFIDENTIAL FILED UNDER SEAL]

| Date/Time (all times PDT) | IP Address | Subject of Email/ Post | Text of Email/Post | Additional Information |
|---|---|---|---|---|
| 7.18.18 at 22:37:58 | 98.207.108.220 | n/a | n/a | Citrix logs indicate IP Address accessed PDF file named "Citrix Cloud – XA and XD Service Poster" from publically available ShareFile link<br><br>IP Address: Comcast Subscriber in Fremont, CA<br><br>Operating System: macOS X Version 10.13.2 running on an Intel CPU<br><br>Browser: Chrome 67.0.3396.99<br><br>McSweeney Decl., ¶ 10 |
| 9.8.18 at 17:59:03<br><br>9.9.18 at 16:38:50<br><br>9.9.18 at 17:21:43 | 98.207.108.220 | n/a | n/a | Citrix logs indicate IP Address accessing Gibson Dunn ShareFile account<br><br>IP Address: Comcast Subscriber in Fremont, CA<br><br>Operating System: macOS X Version 10.13.2 running on an Intel CPU<br><br>Browser: Chrome 69.0.3497.81<br><br>McSweeney Decl., ¶¶ 10-11 |
| 9.11.18 | n/a | n/a | n/a | Deposition of Puneet Chawla defended by Gibson Dunn<br><br>D.I. 87, Ex. 41 |

| Date/Time (all times PDT) | IP Address | Subject of Email/ Post | Text of Email/Post | Additional Information |
|---|---|---|---|---|
| 9.28.18 at 15:20 | n/a | Citrix Systems, Inc. v. Workspot, Inc. (C.A. No. 18-588-LPS) | Bindu, Apologies for the delay in getting this to you and your team, but the letter has eaten up some of the afternoon. Attached are our proposed redactions to the reply brief and declarations. Since much of this is Workspot confidential information, please let us know as soon as you can whether you have any additional redactions. We will plan to file first thing Monday morning. I hope you have a great weekend. Best regards, Brian | Email from DLA Piper to Potter Anderson providing redacted version of Citrix Reply in support of Preliminary Injunction  Ghassab Decl., Ex. 3 |
| 9.30.18 at 12:10:52  9.30.18 at 21:13:40 | 98.207.108.220 | n/a | n/a | Citrix logs indicate IP Address accessing Potter Anderson ShareFile account  IP Address: Comcast Subscriber in Fremont, CA  Operating System: iPhone OS Version 11.4.30  Browser: Mobile Safari 11.0  McSweeney Decl., ¶¶ 10-11 |

| Date/Time (all times PDT) | IP Address | Subject of Email/ Post | Text of Email/Post | Additional Information |
|---|---|---|---|---|
| 10.9.18 at 20:07:13 | 98.207.108.220 | Emails leaked to take revenge | What will happen to your career if your emails are leaked? Emails to dheeraj at Nutanix? Emails to brad at Microsoft? Emails to templeton to discuss internal issues? You will get a thanksgiving present this year! | Recipient: David Henshall<br><br>Email Service: Guerrilla Mail<br><br>IP Address: Comcast Subscriber in Fremont, CA<br><br>McSweeney Decl., ¶ 14, Fig. 1 |
| 10.10.18 at 08:00:32 | 98.207.108.220 | Patent trolls | DH: your career will end in 2 months! Your emails are out in the dark web. It's coming out as a thanksgiving gift! | Recipient: David Henshall<br><br>Email Service: Guerrilla Mail<br><br>Includes link to article regarding Microsoft's decision to "open source" its "patent portfolio"<br><br>IP Address: Comcast Subscriber in Fremont, CA<br><br>McSweeney Decl., ¶ 14, Fig. 2 |
| 10.10.18 at 08:05:23 | 98.207.108.220 | Emails leaked | Citrix email thread discussing legal patent cases have been leaked. | Recipient: Juan Rivera<br><br>Email Service: Guerrilla Mail<br><br>IP Address: Comcast Subscriber in Fremont, CA<br><br>McSweeney Decl., ¶ 14, Fig. 3 |

| Date/Time (all times PDT) | IP Address | Subject of Email/ Post | Text of Email/Post | Additional Information |
|---|---|---|---|---|
| 10.10.18 at 10:56:08 | 98.207.108.220 | email leaks | Looks like some email conversations discussing Frame and Workspot got leaked. We are hearing rumors that brianmadden.com is planning to publish those in the next month. VMware is helping push it. | Recipient: David Henshall<br><br>Email Service: Guerrilla Mail<br><br>IP Address: Comcast Subscriber in Fremont, CA<br><br>McSweeney Decl., ¶ 14, Fig. 4 |
| 10.10.18 at 17:23:21 | 98.207.108.220 | Sorry | Our emails have leaked | Recipient: David Henshall<br><br>Email Service: Guerrilla Mail<br><br>IP Address: Comcast Subscriber in Fremont, CA<br><br>McSweeney Decl., ¶ 14, Fig. 5 |
| 10.10.18 at 17:58 | n/a | n/a | The art of patent trolling! Who Is the bigger troll! | Tweet from Puneet Chawla's Twitter account responding to third-party tweet stating, "Citrix's ShareFile targeted by patent suit"<br><br>McSweeney Decl., ¶ 14, Fig. 6 |
| 10.10.18 at 23:26:57 | 104.46.110.21<br><br>D.I. 112, Ex. 7 | Emails leaked | Rumor is that David Henshall's emails have been leaked. They are going to cause serious stock issues in the next 4 weeks. | Original post to TheLayoff.com<br><br>McSweeney Decl., ¶ 14, Fig. 7<br><br>IP Address Admin:<br><br>Ghassab Decl., Exs. 1-2 |

| Date/Time (all times PDT) | IP Address | Subject of Email/Post | Text of Email/Post | Additional Information |
|---|---|---|---|---|
| 10.11.18 | n/a | Re: ▮▮▮ | ▮▮▮▮▮ | Screenshot of alleged Citrix leaked email posted on Pastebin.com<br><br>McSweeney Decl., ¶14, Fig. 8(a) |
| 10.11.18 at 00:04:10 | 98.207.108.220 | Cloud innovation | Do you track where you are getting new ideas from. Looks like you are copying everything these days. DaaS is also an original idea? You can work with legal but at the end you will have your face buried in shyt! | Recipient: Juan Rivera<br><br>Email Service: Guerrilla Mail<br><br>IP Address: Comcast Subscriber in Fremont, CA<br><br>McSweeney Decl., ¶14, Fig. 9 |
| 10.11.18 at 12:30:56 | 104.46.110.21<br><br>D.I. 112, Ex. 7 | n/a | ▮▮▮ | Reply to original post to TheLayoff.com<br><br>McSweeney Decl., ¶14, Fig. 8<br><br>IP Address Admin: ▮▮▮<br><br>Ghassab Decl., Exs. 1-2. |
| 10.11.18 at 12:31:56 | 104.46.110.21<br><br>D.I. 112, Ex. 7 | n/a | replace with paste dot bin | Reply to original post to TheLayoff.com<br><br>McSweeney Decl., ¶14, Fig. 8<br><br>IP Address Admin: ▮▮▮<br><br>Ghassab Decl., Exs. 1-2. |

| Date/Time (all times PDT) | IP Address | Subject of Email/ Post | Text of Email/Post | Additional Information |
|---|---|---|---|---|
| 10.11.18 at 12:36:47 | 104.46.110.21 | Emails leaked | You are done as the CEO. Look at this sample email! | Recipient: David Henshall<br><br>Email Service: Guerrilla Mail<br><br>Includes link to Pastebin.com<br><br>McSweeney Decl., ¶ 14, Fig. 10<br><br>IP Address Admin:<br><br><br><br>Ghassab Decl., Exs. 1-2 |
| 10.11.18 at 12:38:34 | 104.46.110.21 | Check this email | Ethical? | Recipient: Juan Rivera<br><br>Email Service: Guerrilla Mail<br><br>Includes link to Pastebin.com<br><br>McSweeney Decl., ¶ 14, Fig. 11.<br><br>IP Address Admin:<br><br><br><br>Ghassab Decl., Exs. 1-2 |

| Date/Time (all times PDT) | IP Address | Subject of Email/ Post | Text of Email/Post | Additional Information |
|---|---|---|---|---|
| 10.15.18 at 15:44 | n/a | Citrix v. Workspot – Urgent Request for Meet & Confer | Workspot Counsel: Very troubling information has come to our attention, and we request an immediate meet and confer anytime this evening or tomorrow morning before Noon EDT regarding our intent to seek expedited relief from the Court. [Portions omitted]..... Sincerely, Michael Strapp | Email from DLA Piper to Gibson Dunn and Potter Anderson, informing Workspot counsel of information uncovered in investigation (including, among other things, the use of the Guerrilla Mail service, and IP Address information) and requesting Workspot assistance D.I. 113, Ex. 1 |
| 10.16.18 at 20:40:16 | n/a | Emails leaked – you need to transfer bitcoin | Transfer needs to happen before Oct30. Wallet address next week. Keywords: layoffs patent litigation elliott cloud Google AWS Cisco Microsoft | Recipient: David Henshall Email Service: Protonmail McSweeney Decl., ¶14, Fig. 12 |
| 10.20.18 at 10:59:21 | n/a | Why did you fire employees? | Did you get sleepless nights  Now you know what it feels like when you fire people  I have no emails. No leaks. The email I sent is not real.  I made it up to mess with you.  Just want the execs at Citrix responsible for firing my friends understand the pain. | Recipient: David Henshall Email Service: Protonmail McSweeney Decl., ¶ 14, Fig. 13 |

## CERTIFICATE OF SERVICE

I, Denise S. Kraft, hereby certify that on this 6th day of November 2018, I caused a true and correct copy of the foregoing **[FILED UNDER SEAL] Citrix's Reply Brief in Support of its Motion for Temporary Restraining Order and to Show Cause Why Workspot Should Not be Held in Contempt** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification to the following attorneys of record, and is available for viewing and downloading.

David E. Moore
Stephanie E. O'Byrne
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801
dmoore@potteranderson.com
sobyrne@potteranderson.com
bpalapura@potteranderson.com

H. Mark Lyon
GIBSON DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
MLyon@gibsondunn.com

Aaron B. Frumkin
Jennifer Rho
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
afrumkin@gibsondunn.com
jrho@gibsondunn.com

Y. Ernest Hsin
GIBSON DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
ehsin@gibsondunn.com

Brian K. Andrea
Brian M. Buroker
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
bandrea@gibsondunn.com
bburoker@gibsondunn.com

*/s/ Denise S. Kraft*
Denise S. Kraft (DE Bar No. 2778)