# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CITRIX SYSTEMS, INC., | ) |
| | ) |
| Plaintiff, | ) C.A. No. 18-588-LPS |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| WORKSPOT, INC., | ) |
| | ) |
| Defendant. | ) |

## LETTER TO THE HONORABLE SHERRY R. FALLON
## FROM BINDU A. PALAPURA

OF COUNSEL:

Ronald F. Lopez
NIXON PEABODY LLP
One Embarcadero Center, 18th Floor
San Francisco, CA 94111-3600
Tel: (415) 984-8200

Jennifer Hayes
NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, CA 90071-3151
Tel: (213) 629-6179

Matthew A. Werber
Angelo J. Christopher
NIXON PEABODY LLP
70 West Madison, Suite 3500
Chicago, IL 60602-4224
Tel: (312) 977-4400

Karen A. Gibbs
1901 S. Bascom Avenue, Suite 900
Campbell, CA 95008

Dated: March 19, 2019
6116805/ 45039

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Workspot, Inc.*

March 19, 2019

**VIA ELECTRONIC-FILING**

The Honorable Sherry R. Fallon
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3556

      Re:    *Citrix Systems, Inc. v. Workspot, Inc.*, C.A. No. 18-588-LPS

Dear Magistrate Judge Fallon:

      This dispute arises out of a request by Plaintiff Citrix System Inc. ("Citrix") to discover documents that Defendant Workspot, Inc. ("Workspot") withholds as privileged. See D.I. 173, 180 and 183.

**I.**      **Background**

      Between October 9 – 11, 2018 certain Citrix executives received a series of emails allegedly sent by Workspot's former CTO, Puneet Chawla, (the "purported Chawla emails").[1] These emails became the subject of a TRO motion filed by Citrix October 16, 2018. D.I. 101.

      The Court heard Citrix's TRO motion on December 12, 2018 and denied Citrix's request for a TRO. However, the Court expressed concerns about a potentially false declaration signed by Mr. Chawla on October 30, 2018 (the "Chawla Declaration"), in which he denied sending the purported Chawla Emails. The Court ordered the parties to engage in limited discovery on this issue. D.I. 145, 110:12-16.

      On December 18, 2018, after repeated requests by Workspot to share the sealed filings with its board, the parties reached an agreement to allow Workspot's board (excluding Puneet Chawla) to review the pleadings relating to Plaintiff's motion for a TRO. D.I. 143. The board met thereafter. D.I. 143 (Notice of Subsequent development by Workspot). Mr. Chawla is no longer with Workspot. *Id*.

      Consistent with the Court's Order, Workspot engaged in substantial discovery efforts to locate and produce any documents responsive to Citrix's First Set of Requests for Production, served on December 7, 2018. Workspot and/or its technical consultants searched Workspot's server and imaged and searched Mr. Chawla's Workspot related devices. D.I. 139, ¶ 5. Workspot produced non-privileged documents to Citrix as a result of this search. In addition, Workspot provided Citrix with a privilege log detailing those documents Workspot was withholding as privileged. On January 18, 2019, pursuant to a December 21, 2018 stipulation, and Workspot's understanding of Court's guidance on the limited discovery, Workspot wrote Citrix reporting that it found no evidence showing that any other Workspot employee was involved in the purported Chawla emails. D.I. 150.

---

[1] While Workspot does not contest that Mr. Chawla appears to have been the source of the emails, at this time Workspot is not in a position to affirmatively represent that he was.

  Despite Workspot's representations, Citrix maintains it is entitled to discover certain communications relating to, or resulting from, the email incident which Workspot has withheld as privileged. On March 8, 2019 the parties entered into a stipulation setting forth procedural deadlines for this discovery dispute. D.I. 183. Pursuant to this stipulation, on March 15, 2019, Citrix identified 25 privilege log entries corresponding to 25 Workspot emails (the "25 privileged emails"). For the Court's convenience, Workspot prepared Exhibit A, which identifies the titles and affiliations of the authors and recipients frequently appearing in the 25 privileged emails. Workspot has also submitted copies of the 25 privileged emails for the Court's *in-camera* review.

## II. Analysis

  Workspot objects to producing the 25 privileged emails because they are both irrelevant and privileged. Each of Workspot's objections is addressed below.

### A. The 25 Privileged Emails Are Not Relevant

  The Court permitted discovery for the limited purpose of determining whether anyone other than Workspot's former employee, Puneet Chawla, was involved in the emails sent in mid-October 2018. D.I. 145, 47:4-7. Citrix contends that the limited expedited discovery also extends to the Chawla Declaration dated October 30, 2018. However, even if that were true, none of the 25 privileged emails are relevant to these issues.

  None of the 25 privileged emails reveal any evidence of Workspot personnel working with Mr. Chawla to send the purported Chawla emails or to falsify a declaration. Further, 11 of the 25 privileged emails– namely documents labelled Log Nos. 21, 64, 120, 251, 252, 266, 269, 288, 417, 433, 496 – are dated *after* the purported Chawla emails were sent and the Chawla Declaration was executed. Accordingly, the Court's *in camera* review should confirm that the 25 privileged emails have no continuing relevance to this dispute.

### B. Workspot Has Properly Withheld the Emails as Privileged and Attorney Work Product

  In addition to its relevance augments, Workspot objects to producing the 25 privileged emails on the basis that they were properly withheld as privileged. The 25 privileged emails can be considered in two separate groups, each of which is addressed below-in turn.

### Group I: Correspondence Exchanged Before the October 30 Declaration

  The Group I emails – comprised of documents labelled Log Nos. 7, 15, 62, 104, 125, 232, 255, 256, 260, 263, 312, 342, 346, 516 – include correspondence exchanged on or before the execution of the Chawla Declaration, the last allegedly improper act to occur. No third parties are included in any of the Group I emails and each qualifies for the attorney client privilege and/or squarely falls within the scope of the work product doctrine codified at Rule 26(b)(3), which protects "documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the

other party's attorney, consultant, surety, indemnitor, insurer, or agent)..." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661–62 (3d Cir. 2003) (quoting Fed.R.Civ.P. 26(b)(3)).

For these Group I emails, Citrix wrongly asserts the crime-fraud exception pierces Workspot's privilege. However, Citrix is unable to demonstrate that the crime-fraud exception has any bearing on these emails. According to the Third Circuit:

> A party seeking to apply the crime-fraud exception to the work product doctrine must demonstrate that there is a reasonable basis to suspect (1) that the lawyer or client was committing or intending to commit a crime or fraud, and (2) that the attorney work product was used in furtherance of that alleged crime or fraud.

*In re Grand Jury Matter*, 847 F.3d 157, 165 (3d Cir. 2017) (citations omitted). Citrix cannot demonstrate either element.

**First Element:** Even if the evidence implicates Mr. Chawla for filing a false declaration, there is no basis for contending Workspot or its attorneys committed any crime or fraud under the first element. Instead, the investigation and emails indicate any improper conduct by Mr. Chawla would have been his alone and there is no basis to suspect that *Workspot* committed any crime. Indeed, at all relevant times, Workspot was led to believe "that [Mr. Chawla] had not been involved" in the email incident. D.I. 145, 56:19-21.

**Second Element:** Assuming *arguendo* the email incident or Chawla declaration qualifies as an alleged crime or fraud by Workspot or its attorneys, Citrix is still unable to prove the second element of the crime-fraud exception test. The Third Circuit "ha[s] been clear that evidence of a crime or fraud, no matter how compelling, does not by itself satisfy both elements of the crime-fraud exception." *In re Grand Jury Matter*, 847 F.3d 157, 166 (3d Cir. 2017) (quotations omitted). In this case, none of the Group I emails reveal Workspot used the privileged communications "in furtherance" of the crime or fraud being alleged here. *In re Grand Jury Matter*, 847 F.3d at 166. Instead, each of the Group I emails reveals Workspot and its attorneys investigated the purported Chawla emails and worked to prepare its TRO opposition papers with the good faith understanding that Mr. Chawla was not involved. See e.g. Doc. No. 260, 5-7.

### Group II: Correspondence Exchanged After the October 30 Declaration

The Group II emails – comprised of documents labelled Log Nos. 21, 64, 120, 251, 252, 266, 269, 288, 417, 433 and 496 – include correspondence for which Citrix cannot plausibly assert the crime-fraud exception applies because they all occurred after the purported Chawla emails were sent and after the October 30 Chawla declaration was executed. *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 487-88 (D. Del. 2012) ("many of these documents would be outside the scope of the crime-fraud exception because they took place after the completion of the alleged fraud").

Thus, Citrix's only argument with respect to the Group II emails is that privilege has been waived because Mr. Chawla's personal attorney, Mr. Eugene Illovsky, appears in these emails. Of the 11 Group II emails, Mr. Illovsky appears only in six – namely, documents labelled Log

Nos. 251, 252, 266, 417, 433 and 496. Yet, even for those six Group II emails, Citrix's waiver assertions fail.

First, each email contains work product belonging to Workspot (created, for example, by Workspot attorneys or technical consultants) for which there was no waiver. "[A] disclosure to a third-party does not necessarily waive the protection of work product, as it does with attorney-client privilege." *Magnetar,* 886 F. Supp. 2d at 478. "To waive the protection of the work product doctrine, the disclosure must enable an adversary to gain access to the information." *Id*. "[W]hen the disclosure is … made to a non-adversary, it is appropriate to ask whether the circumstances surrounding the disclosure evidenced conscious disregard of the possibility that an adversary might obtain the protected materials." *Id*. (quoting *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1430 (3rd Cir. 1991)).

In this case, the six Group II emails involving Mr. Illovsky contain no indication that Workspot enabled an adversary to gain access to the information, or acted in conscious disregard of the possibility an adversary would access the information. While not an attorney for Workspot, Mr. Illovsky was not in an adversarial position to Workspot in the context of the six Group II emails. Instead, Workspot reasonably assumed Mr. Illovsky would help facilitate gathering evidence from Mr. Chawla and aid in Workspot's compliance with its discovery obligations. For example, documents labelled Log Nos. 252, 266 and 496 include Mr. Illovsky because they concern the efforts of Workspot's counsel and its technical consultants in arranging to have Mr. Chawla's work devices forensically imaged while Mr. Chawla happened to be overseas in India in the early December timeframe. Log No., 252, at p. 3.

To the extent these emails do not qualify for work product protection, they fall within the common interest privilege doctrine protecting "communications between individuals and entities and counsel for another person or company." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 263 F.R.D. 142, 146 (D. Del. 2009). As the purported Chawla emails were being litigated at the time of the disputed privilege log entries, both Workspot and Mr. Chawla shared a common interest in: (i) investigating and responding to Citrix's allegations, (ii) complying with discovery obligations; and (iii) ensuring evidence was preserved.

                                                        Respectfully,

                                                        */s/ Bindu A. Palapura*

                                                        Bindu A. Palapura

BAP/msb/6116805/40539
Enclosure
cc:     Clerk of the Court (via hand delivery)
          Counsel of Record (via electronic mail)