## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CITRIX SYSTEMS, INC.,

        Plaintiff,

        v.

WORKSPOT, INC.,

        Defendant.

)
)
)
)
)
)
)
)
)
)

**REDACTED PUBLIC VERSION**

C.A. No. 18-588-LPS

**JURY TRIAL DEMANDED**

## WORKSPOT'S ANSWERING BRIEF IN RESPONSE TO CITRIX'S MOTION FOR ADDITIONAL SANCTIONS

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*

*Of Counsel:*

Ronald F. Lopez
NIXON PEABODY LLP
One Embarcardero Center, 18th Floor
San Francisco, CA 94111-3600
(415) 984-8200

Jennifer Hayes
NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, CA 90071-3151
(213) 629-6179

Matthew A. Werber
Angelo J. Christopher
NIXON PEABODY LLP
70 West Madison, Suite 3500
Chicago, IL 60602-4224
(312) 977-4400

Dated: October 9, 2019

{01495127;v1 }

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF FACTS ................................................................................... 2

    A.   Workspot ................................................................................................... 2

    B.   Workspot/Citrix Litigation ....................................................................... 2

    C.   The Improper Emails and Posts ................................................................ 3

    D.   Workspot Receives Notice of Improper Emails and Posts ....................... 3

    E.   Workspot Seeks Gibson Dunn's Advice and Awaits Information ........... 5

    F.   Workspot Awaits the Microsoft and Comcast Subpoena Responses ....... 6

    G.   Workspot Receives New Information from Citrix, Comcast and Microsoft .......... 6

    H.   Workspot Stops Contesting Mr. Chawla's Culpability ............................ 7

    I.   Workspot's Board Terminates Mr. Chawla and Replaces Its Lead Counsel .......... 8

    J.   Citrix's Subsequent Investigation Did Not Reveal a Cover Up or Involvement of any Other Workspot Employee .................................... 8

III. ARGUMENT ....................................................................................................... 9

    A.   Category 1: Citrix Has Failed to Demonstrate it is Entitled to "Additional" Sanctions for the Same Emails and Posts ............................. 9

    B.   Category 2: Citrix Has Not Established it is entitled to "Additional" Sanctions for the Chawla Declaration .................................................... 13

    C.   Category 3: Citrix Has Failed to Establish it is Entitled to Sanctions for Spoliation ....................................................................................... 15

{01495127;v1 }

## TABLE OF CONTENTS
### (continued)

**Page**

D.    Category 4: Citrix Has Failed to Establish it is Entitled to "Additional" Sanctions for Alleged "Delays" By Workspot ........................................................ 20

E.    Category 5: Workspot Should Not Be Sanctioned for Objecting to Discovery ........................................................................................................... 22

F.    Citrix's Unclean Hands Should Not Be Rewarded ................................................ 23

G.    Citrix Has Failed to Articulate a Basis for Awarding the Types of "Additional" Draconian Sanctions Citrix Seeks .................................................... 24

# TABLE OF AUTHORITIES

Cases                                                                                                    Page(s)

*Air Prod. & Chemicals, Inc. v. Wiesemann*,
   2017 WL 758417 (D. Del. Feb. 27, 2017) ........................................................................ 16, 18

*Belmont v. MB Inv. Partners, Inc.*,
   708 F.3d 470 (3d Cir. 2013) ........................................................................................ 11

*Bull v. United Parcel Serv., Inc.*,
   665 F.3d 68 (3d Cir. 2012) .......................................................................................... 18

*CIGNEX Datamatics, Inc. v. Lam Research Corp.*,
   2019 WL 1118099 (D. Del. Mar. 11, 2019) ................................................................ 15

*GE Harris Ry. Elecs., L.L.C. v. Westinghouse Air Brake Co.*,
   2004 WL 5702740 (D. Del. Mar. 29, 2004) ................................................................ 5

*GN Netcom, Inc. v. Plantronics, Inc.*,
   2016 WL 3792833 (D. Del. July 12, 2016) ................................................................. 20

*Greatbatch Ltd. v. AVX Corp.*,
   179 F. Supp. 3d 370 (D. Del. 2016) ............................................................................ 24

*Harmon v. City of Santa Clara*,
   323 F.R.D. 617 (N.D. Cal. 2018) ................................................................................ 21

*In re Fine Paper Antitrust Litig.*,
   685 F.2d 810 (3d Cir. 1982) ........................................................................................ 25

*In re Horsehead Holding Corp. Sec. Litig.*,
   2018 WL 4838234 (D. Del. Oct. 4, 2018) .................................................................. 13

*Kvitka v. Puffin Co.*,
   2009 WL 385582 (M.D. Pa. Feb. 13, 2009) ............................................................... 25

*Leonard v. Stemtech Health Sciences, Inc.*,
   269 F.R.d 427 (D. Del. 2010) ..................................................................................... 22

*Leor Expl. & Prod., LLC v. Aguiar*,
   2010 WL 3782195 (S.D. Fla. Sept. 28, 2010) ........................................................... 25

{01495127;v1 }

## TABLE OF AUTHORITIES
### (continued)

Cases                                                                                          Page(s)

*McLaughlin v. Phelan Hallinan & Schmieg, LLP*,
   756 F.3d 240 (3d Cir. 2014) ................................................................................. 25

*Micron Tech., Inc. v. Rambus Inc.*,
   917 F. Supp. 2d 300 (D. Del. 2013) .................................................................... 21

*Monolithic Power Sys., Inc. v. Intersil Corp.*,
   2018 WL 6075046 (D. Del. Nov. 19, 2018) ............................................. 15, 16, 17

*Myers v. Trendwest Resorts, Inc.*,
   148 Cal. App. 4th 1403 (2007) ........................................................................ 11, 12

*Perry v. Cty. of Fresno*,
   215 Cal. App. 4th 94 (2013) .................................................................................. 12

*Pierce v. Underwood*,
   487 U.S. 552 (1988) ............................................................................................... 22

*Positran Mfg., Inc. v. Diebold, Inc.*,
   2003 WL 21104954 (D. Del. May 15, 2003) ........................................................ 25

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
   324 U.S. 806 (1945) ............................................................................................... 24

*Qantum Commc'ns Corp. v. Star Broad., Inc.*,
   473 F. Supp. 2d 1249 (S.D. Fla. 2007) ................................................................. 25

*Schmid v. Milwaukee Elec. Tool Corp.*,
   13 F.3d 76 (3d Cir. 1994) ...................................................................................... 16

*Stanley Black & Decker, Inc. v. Gulian*,
   70 F. Supp. 3d 719 (D. Del. 2014) ........................................................................ 11

*Stewart v. Wilmington Tr. SP Servs., Inc.*,
   112 A.3d 271 (Del. Ch. 2015) .......................................................................... 11, 12

*Wagner v. Sea Esta Motel I*,
   2014 WL 4247731 (D. Del. Aug. 26, 2014) .......................................................... 24

iv

## I.     INTRODUCTION

On December 12, 2018, the Court concluded that Mr. Puneet Chawla had executed a false declaration in which he denied making improper posts and sending improper emails. Likewise, Workspot's counsel acknowledged Mr. Chawla's improper actions and affirmatively stated it was not relying on the Chawla declaration or disputing his culpability. Given these findings, the Court awarded Citrix monetary sanctions for attorney's fees and costs related to its investigation. Once Citrix finally agreed to permit Workspot's Board to view the sealed filings, Mr. Chawla was promptly terminated from Workspot, as Workspot does not condone or tolerate improper conduct even from a CTO and co-founder. Workspot paid the sanctions totaling $271,963.30, a significant financial penalty to a relatively small company competing for customers in a market with large established companies.

The Court also ordered "expedited discovery" Citrix claimed was necessary "to determine 'whether there were others at Workspot who knew about Puneet Chawla's actions beforehand or who were involved in any cover up after the fact.'" D.I. 197, ¶22 (Fallon Order quoting 12/12/18 Tr. at 17:2-7). While Mr. Chawla's actions were clearly improper, the expedited discovery did not result in Citrix identifying a single piece of evidence that others at Workspot knew of Mr. Chawla's actions or covered them up. Rather, the discovery corroborates that Mr. Chawla acted alone and lied to Workspot's leadership and legal team about it.

Having no further evidence of wrongdoing and left with the same underlying facts of Mr. Chawla's actions as of the December 12 sanctions award, Citrix now attempts to turn to assertions of "spoliation of evidence," albeit with multiple Rule 37(e) elements plainly absent. For example, Citrix's claims of a "directive to spoliate evidence" merely refer to Mr. Chawla and a colleague taking two twitter posts (tweets) off of Mr. Chawla's personal twitter page. These twitter posts

1

were not "lost" under Rule 37(e), but actually attached to Citrix's October 16, 2018 Temporary Restraining Order ("TRO") motion and as Exhibit 16 to the present motion. Similarly, Citrix asserts "Workspot took no steps to preserve critical sources of evidence including Workspot's network logs," but acknowledges later in the brief that Workspot analyzed the same logs (and they were preserved and produced). Further, Citrix has not and cannot establish any "prejudice … from loss of the information" under Rule 37(e)(1). The allegedly "lost" information concerns Mr. Chawla's culpability, which is not disputed, and there has been no prejudice to Citrix (or loss of information) in the underlying patent and Lanham Act case.

Citrix's request for evidentiary and adverse inference sanctions has no basis in applicable precedent. Citrix's cited cases involve prejudice to the movant on issues material to the core claims and defenses in the case. In contrast, Mr. Chawla's actions violated Workspot's express policies, and bear no relevance to Citrix's patent and Lanham Act claims. Citrix's request for "additional" sanctions should be denied.

## II.   STATEMENT OF FACTS

### A.   Workspot

Workspot was founded in 2012 by Amitabh Sinha, Mr. Chawla and Ty Wang. Declaration of Amitabh Sinha ("Sinha Decl."), ¶¶ 1-3. During the approximate 6-year period Mr. Sinha, Workspot's Chief Executive Officer (CEO), worked with Mr. Chawla, and prior to the events at issue, he believed Mr. Chawla to be honest. Sinha Decl., ¶¶ 4-6, 17.

### B.   Workspot/Citrix Litigation

Citrix commenced this lawsuit against Workspot alleging patent infringement and false advertising under the Lanham Act. D.I. 1. Given the seriousness of the allegations of the case, Workspot invested in retaining among the most experienced and marquee law litigation firms in the Country, Gibson Dunn. Sinha Decl., ¶ 7. Workspot communicated its litigation hold/document

{01495127;v1 }

retention policies to each of its employees on April 24, 2018, with reminders on October 19, 2018 and November 19, 2018. Sinha Decl., ¶ 8. Shortly after service, Citrix filed a Motion for a Preliminary Injunction ("PI motion") (D.I. 8).

### C.    The Improper Emails and Posts

Between October 11 and 13, 2018, a series of improper emails and web posts were anonymously directed at Citrix executives. Evidence shows Mr. Chawla authored the emails and posts using his personal MacBook computer while logged into his home internet service. D.I. 262, Ex. 38; Ex. 2 at 32:5-24. Mr. Chawla also appears to have created (and later deleted) a Microsoft Azure virtual machine ("VM")[1] likely using the same personal MacBook computer at home to make the anonymous posts. D.I. 133, ¶ 8 - 11. These emails and posts were the subject of Citrix's October 16, 2016 TRO motion. D.I. 101.

### D.    Workspot Receives Notice of Improper Emails and Posts

**October 15 Notice Email:** On October 15, 2018 at around 3:45 p.m. PT, Workspot's former lead counsel at Gibson Dunn, Mark Lyons, received an email from Citrix counsel notifying counsel and Workspot of the emails[2] and posts and seeking an immediate meet and confer. D.I. 262, Ex. 13. Citrix's October 15 email offered that it suspected Mr. Chawla's involvement based on, among other things, a twitter post (tweet) from Mr. Chawla's personal twitter account calling Citrix a "troll." *Id*. The October 15 email also identified Comcast and Azure IP addresses and explained that public records traced the Comcast IP address to Fremont, CA, where Mr. Chawla lived. *Id*. Citrix also expressed concern that Mr. Chawla accessed confidential Citrix emails in violation of the protective order. *Id*.

---

[1] A Microsoft Azure virtual machine is a cloud-based computing environment that emulates a physical computer.
[2] Some of the improper emails were first disclosed with Citrix's November 6 Reply Brief. D.I. 117 at 3, fn 4.

3

**Mr. Chawla Denies Involvement:** Gibson Dunn forwarded the October 15 email to Workspot and scheduled a teleconference for 6:30 p.m. PT that night. D.I. 262, Ex. 13. Mark Lyons from Gibson Dunn led the call. Local counsel, another Gibson Dunn attorney, Mr. Sinha, Mr. Chawla and Karen Gibbs, Workspot's newly-engaged outside general counsel, were on the call. Sinha Decl., ¶ 9.

During the call, Mr. Chawla denied any involvement in sending the emails or making the posts and stated that he would sign a declaration to that effect. *Id.*, ¶ 10. Following the call, Mr. Chawla expressed his outrage at Citrix's accusations. D.I. 262, Ex. 13. In another email that night, Mr. Chawla admitted he used Comcast Internet service at home, but indicated that his home IP address differed from the IP address in Citrix's email. *Id.* Workspot's CEO Mr. Sinha believed Mr. Chawla's denial as well as his misdirection (admitting he used Comcast but providing a different IP address). Sinha Decl., ¶ 11.

**Mr. Chawla's Personal Tweets:** On or around the time of the October 15 teleconference, Gibson Dunn (who saw from Citrix's email that Mr. Chawla called Citrix a "troll" on his personal twitter account) verbally instructed Mr. Chawla to stop tweeting and publicly discussing Citrix. D.I. 262, Ex. 17 ("Don't tweet anything about Citrix"). Mr. Chawla removed the disparaging Citrix "troll" tweet from his personal page and asked a Workspot colleague to take down a responsive tweet. *Id.* Citrix now claims taking down these tweets establishes Gibson Dunn instructed Mr. Chawla to destroy evidence. D.I. 261, 3-4. Mr. Sinha recalls no such instruction[3]. Sinha Decl., ¶ 12. And, the tweets were not lost; Citrix filed copies of both tweets as exhibits to its TRO brief and the present motion. D.I. 102, Ex. R; D.I. 262, Ex. 16.

---

[3] Instead, Mr. Sinha recalls Mr. Chawla being instructed to stop tweeting or publicly commenting about Citrix, which Mr. Chawla may have interpreted as an instruction to also take down his offensive "troll" tweet. *Id.*

4

{01495127;v1 }

### E.     Workspot Seeks Gibson Dunn's Advice and Awaits Information

Immediately following the October 15 email, the parties stipulated to subpoena Comcast to determine the subscriber associated with the Comcast IP address. D.I. 106. Subpoenas were subsequently served on Comcast and Microsoft. D.I. 108; Werber Decl., Ex. A. Workspot also requested copies of the improper emails and any other information implicating Mr. Chawla's involvement. Werber Decl., Ex. B, 2-4. On October 21, 2018, Ms. Gibbs asked Mr. Lyon at Gibson Dunn if there are any other investigative steps Workspot should be taking. Werber Decl., Ex. A ████████████████████████████████████████████████████████████████ Mr. Lyon responded that █████████████████████████████████████████████████████ ███████████████████████████" *Id.*; Sinha Decl., ¶ 13.

Workspot counsel had also sought copies of Citrix's October 16 sealed TRO filings that could be shared with Workspot leadership. Werber Decl., Ex. C at 7. Despite multiple reminders, Citrix waited until October 22 to share redacted copies. *Id.* at 1-6. The redactions concealed the IP addresses and other investigative details. *Id.*, Ex. D. Upon reviewing the redacted brief, Mr. Sinha understandably expressed confusion over Citrix claiming (erroneously) that Workspot employees accessed confidential Citrix emails from Citrix's document production. *Id.*, Ex. E ("█████████ ███████████████████████████████████████████████").

Workspot also engaged a third party forensic investigation firm, Kivu, to assist in its investigation. In the short time window prior to the October 30 TRO opposition deadline, Gibson Dunn recommended that Kivu focus on analysis of Guerilla Mail demonstrating that IP address fields cannot always be relied on. D.I. 262, Ex. 28. Citrix complains Workspot waited until after October 30 to have Kivu review Azure logs, but there is no dispute the logs were both preserved and inspected after Microsoft's subpoena response was shared in November. D.I. 133, ¶ 8 – 11; D.I. 261, 5 (Citrix acknowledging Kivu inspected the logs "several weeks later"); D.I. 262, Ex. 40.

{01495127;v1 }

On October 28, Gibson Dunn confirmed that nothing further was needed from Workspot for Kivu's investigation. D.I. 262, Ex. 29.

### F.    Workspot Awaits the Microsoft and Comcast Subpoena Responses

Workspot also understood querying volumes of Azure logs for the presence of an IP address presented significant logistical challenges when only the IP address was known. A targeted search requires both the IP address and the subscriber ID. Workspot managed more than one-hundred Azure subscriptions (for itself and its customers) in October 2018. Sinha Decl., ¶ 15. As of October 30 filing date, Workspot did not know which Azure subscription to investigate. *See* D.I. 161, Ex. 2; Werber Decl., Ex. F at 9-10.

Instead of seeking an extension to file the TRO answering brief in order to receive the Comcast and Microsoft subpoena responses and investigate the network logs, Gibson Dunn recommended answering the TRO motion with the Chawla declaration and a Kivu declaration, despite Ms. Gibbs asking if Workspot should "████████████" D.I. 262, Ex. 20. On October 30, 2018, Workspot filed its TRO Answering Brief with the Chawla declaration. D.I. 112; D.I. 115. In his sworn declaration, Mr. Chawla denied responsibility for the emails and posts. D.I. 115.

### G.    Workspot Receives New Information from Citrix, Comcast and Microsoft

On November 2, 2018, counsel for Citrix disclosed two critical facts related to the investigation previously unknown to Workspot. First, Citrix indicated Workspot may not have accessed and leaked confidential Citrix emails after all. Werber Decl., Ex. F at 7-8. Second, and perhaps even more alarmingly, counsel indicated that Citrix had leveraged its access to data associated with Gibson Dunn and Potter Anderson's ShareFile accounts **without permission** to determine that the same IP address associated with Mr. Chawla had accessed their accounts during a certain timeframe. Werber Decl., Ex. F at 2-4; *see infra* Section III.F. While Citrix has avoided disclosing to Workspot and the Court when it learned these important facts, evidence points to

6

Citrix having known at least one week prior to Workspot filing its TRO opposition brief and the Chawla declaration on October 30.

On November 1, 2018, Microsoft responded to the subpoena, identifying Mr. Chawla's user ID and a 32-digit Azure subscription ID, informing Workspot which Azure subscription to investigate. *See* D.I. 117, D.I. 118, Ex. 1. Workspot then investigated the Azure logs potentially at issue. D.I. 262, Ex. 40. Citrix filed the Comcast subpoena response November 13. D.I. 126, Ex. 1.

### H.    Workspot Stops Contesting Mr. Chawla's Culpability

Although Workspot initially believed Mr. Chawla's denials, the Comcast and Microsoft subpoena responses and Azure logs pointed to Mr. Chawla. On December 7, 2018, Workspot formally withdrew any reliance on the Chawla declaration and voluntarily filed a supplemental Kivu declaration acknowledging that the data in Workspot's Azure activity logs was consistent with Microsoft's subpoena response identifying Mr. Chawla's user ID. D.I. 133; D.I. 131, fn 3. The supplemental Kivu declaration also indicated that a person with Mr. Chawla's user ID acted to delete the VM on October 16 between 3:43 a.m. and 4:00 a.m. UTC (which translates to October 15 between 8:43 pm and 9:00 pm PDT) – just hours after Gibson Dunn forwarded Citrix's "notice" email to Mr. Chawla around 4:37 p.m. PDT on October 15. D.I. 133, ¶ 10.

At the TRO hearing, Workspot counsel conceded that "the evidence is starting to pile and point towards Mr. Chawla" and added "[w]e're not challenging, for purposes of this motion, that Mr. Chawla is involved." D.I. 145, 27:24-25. The Court awarded Citrix financial sanctions (which ultimately totaled $271,963.30) and Workspot stipulated to additional restrictions on Mr. Chawla as Workspot conducted its internal investigation. D.I. 139; D.I. 197; D.I. 150. The Court also ordered the "expedited discovery" Citrix sought to determine "whether there were others at Workspot who knew … or who were involved in any cover up ..." D.I. 197, ¶ 22 (quoting 12/12/18 Tr. at 17:2-7).

7

## I.     Workspot's Board Terminates Mr. Chawla and Replaces Its Lead Counsel

Citrix refused to let Workspot leadership access the sealed TRO filings or evidence until November 26, when Citrix finally authorized Workspot's CEO, Mr. Sinha (and only Mr. Sinha), to review the sealed TRO papers, but only at Gibson Dunn's offices. Werber Decl., Ex. G. Mr. Sinha reviewed the TRO papers and evidence the next day. Sinha Decl., ¶ 16. Following Mr. Sinha's review of the TRO papers, Mr. Chawla was reprimanded and admonished. *Id.*, ¶ 18.

Following the December 12 hearing, Workspot also believed that it was imperative that Workspot's Board of Directors review the TRO papers so that the Board could investigate Mr. Chawla's conduct and determine an appropriate course of action. *Id.*, ¶¶ 20-21. Workspot requested that Gibson Dunn obtain permission from Citrix counsel. *Id.*

On December 18, 2018, after repeated requests by Workspot, Citrix's counsel finally provided redacted versions of the complete TRO briefing for Workspot counsel to share with the Board of Directors (excluding Mr. Chawla). Werber Decl., Ex. H. The following week, on December 26, 2018, Workspot's Board of Directors met to discuss the TRO evidence. Sinha Decl., ¶ 22. The same day, the Board removed Mr. Chawla from the Board, and terminated his employment. *Id.*; D.I. 143. Workspot also worked with Mr. Chawla's personal attorney to identify and collect the Workspot devices remaining in Mr. Chawla's possession. D.I. 262, Ex. 2 at 31:3-4, 33:4-9, 35:4-6, 44:6-8.

Workspot lost faith in Gibson Dunn. Sinha Decl., ¶ 24. Workspot sought out new counsel and replaced Gibson Dunn with Nixon Peabody, who appeared on January 28, 2019. D.I. 154.

## J.     Citrix's Subsequent Investigation Did Not Reveal a Cover Up or Involvement of any Other Workspot Employee

As part of expedited discovery, Califorensics (a third party forensic consultant jointly selected by the parties) inspected five Workspot devices potentially used by Mr. Chawla in or

around the relevant timeframe. Werber Decl., Ex. I; D.I. 262, Ex. 15. Califorensics also inspected Mr. Chawla's personal MacBook pursuant to a subpoena and enforcement proceeding in the N.D. Cal. where Workspot is not a party. Of the five Workspot devices and one personal MacBook, Citrix focuses only on the MacBook, which Mr. Chawla testified he had been using during the relevant time period.[4] D.I. 261, 10; D.I. 262, Ex. 2 at 32:5-12.

In relation to the expedited discovery, Workspot produced over 300 previously withheld documents from its privilege log. Rather than revealing evidence of a cover up or the involvement of others, the evidence corroborated that Mr. Chawla acted alone and repeatedly lied to Workspot's leadership. D.I. 262, Ex. 13; Ex. 35. Notably, Magistrate Fallon concluded "[t]hese emails **do not suggest an intention to cover up** the alleged falsity of the Mr. Chawla declaration" upon reviewing many of the same privileged communications. D.I. 197, ¶ 38 (emphasis added).

Citrix deposed Mr. Chawla in July 2019. *See* D.I. 262, Ex. 2. Mr. Chawla invoked his Fifth Amendment rights in response to all questions about the emails and posts.

## III.    ARGUMENT

Citrix contends Workspot should be sanctioned for actions that fall into five categories: (1) Mr. Chawla's emails and posts; (2) the Chawla declaration; (3) alleged spoliation; (4) alleged "delays" in taking action; and (5) objecting to discovery. Each category will be addressed in turn.

### A.    Category 1: Citrix Has Failed to Demonstrate it is Entitled to "Additional" Sanctions for the Same Emails and Posts

Citrix brought the improper emails and posts authored and sent by Mr. Chawla to the Court's attention in the TRO motion and the emails and posts and Mr. Chawla's false declaration were the subject of extensive discussion during the December 12, 2018 TRO hearing. *See* D.I. 145,

---

[4] Citrix has not asserted that Mr. Chawla used any of the five Workspot devices for any improper actions.

6:8-60:7, 108:8-112:18. While Mr. Chawla's actions in relation to the emails and posts were clearly improper and not authorized or condoned, they do not form the basis for awarding "additional" sanctions.

**"Additional" Sanctions Should Not Be Based on the Same Facts:** Workspot understands the Court invited Citrix to seek "additional sanctions" based on the results of the expedited discovery to determine "whether there were others at Workspot who knew about Puneet Chawla's actions beforehand or who were involved in any cover up after the fact." D.I. 145, 17:2-7; 110:5-17 ("Once the discovery is completed, the plaintiffs are permitted, should they think they have a basis at that point to do so, to file a motion for additional sanctions").

Yet, after receiving the benefit of hundreds of privileged communications and a third party forensic inspection, Citrix has failed to offer any evidence others knew of Mr. Chawla's actions or covered them up. In fact, after reviewing a subset of the same privileged communications (identified by Citrix as "representative") Magistrate Fallon correctly concluded "[t]hese emails **do not suggest an intention to cover up** the alleged falsity of the Chawla declaration." D.I. 197, ¶ 38 (emphasis added). If anything, the evidence corroborates that Mr. Chawla lied to Workspot's leadership and attempted to conceal his involvement. D.I. 262, Ex. 13, Ex. 35.

Further, Citrix has failed to articulate any further prejudice from the emails and posts *not already subject to the Court's original sanction*, which included fifty-percent of the reasonable costs and fees Citrix incurred for the partially successful[5] TRO motion and related investigation through December 12, 2018. D.I. 145, 111:18-23. Citrix refers to being "forced to divert substantial manpower and technical resources" to investigate, but these internal efforts were

---

[5] While not expressly stated, Workspot understands the Court awarded 50% of Citrix's costs and fees for the TRO motion because the TRO motion itself was denied. D.I. 145, 108:6-7. The Court found in Workspot's favor on the alleged Protective Order violations. *Id.*, 108:10-109:22.

included in Citrix's fee petition. D.I. 261, 17; D.I. 197, ¶ 58 – 60.[6] In other words, costs and fees

for the days prior to when Workspot stopped contesting Mr. Chawla's culpability on December 7

fall within the timeframe included in the prior sanction award. D.I. 131; D.I. 133. An award of

"additional" sanctions should not be based on facts previously offered *and not contested by*

*Workspot* by the time of the December 12 sanctions award. D.I. 145 at 27:24-25.

**Mr. Chawla's Unilateral Actions Cannot Be Imputed:** Having found no evidence others

were involved in Mr. Chawla's conduct and unable to identify alleged "prejudice" not already

addressed, Citrix resorts to a throwaway imputation footnote trying to bind the company to Mr.

Chawla's actions while at home. D.I. 261, 13 n.19. There, Citrix asserts imputation is proper

because Mr. Chawla was a corporate officer. *Id.* There is no further analysis other than a cite to

Delaware authority, *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271 (Del. Ch. 2015). *Id.*

Citrix's footnote theory is without merit.

The evidence demonstrates Mr. Chawla acted outside his "scope of employment" as CTO,

a first hurdle under California's imputation standard.[7] *Myers v. Trendwest Resorts, Inc.*, 148 Cal.

App. 4th 1403, 1428-29 (2007). As CTO, Mr. Chawla's job was to build and operate Workspot's

products and services, not to send inappropriate emails or make posts from his home about

individuals at another company. Sinha Decl., ¶¶ 4, 23. Indeed, his actions violated, among other

things, Workspot's policies on Use of Social Media, as stated in the Workspot Employee

---

[6] Magistrate Fallon declined to award the portion of Citrix's fee petition corresponding to "fees from in-house counsel and in-house investigative efforts." D.I. 197, ¶ 60. Citrix did not object.

[7] Citrix offers no choice of law analysis and assumes that Delaware state law applies. D.I. 261, 13 n.19. The "issue of imputation is determined by state law," where the forum state's choice of law rules govern. *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 494 (3d Cir. 2013); *Stanley Black & Decker, Inc. v. Gulian*, 70 F. Supp. 3d 719, 733 (D. Del. 2014) (Stark, J.). Applying Delaware choice of law rules, the state "with the most significant relationship to the occurrence and the parties" is likely California where Mr. Chawla's unilateral actions were committed.

11

Handbook. *Id.*, ¶ 23; Werber Decl., Ex. J, 21-23 (covering "personal" postings and prohibiting authoring content to "defame or disparage" others or otherwise act contrary to "professional discretion").

In considering whether actions fall within the scope of employment, California courts ask if the actions were foreseeable or "not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Myers*, 148 Cal. App. 4th at 1428. Here, Mr. Chawla's conduct was so "unusual" and "startling" Workspot still cannot reconcile it or understand his motivations even today. Sinha Decl., ¶¶ 16-17; *Perry v. Cty. of Fresno*, 215 Cal. App. 4th 94, 104 (2013) (writing and mailing fraudulent "letters using the information gathered from the jail computer system for totally non-work-related purposes, must be considered unusual or startling").

Even under Citrix's proffered Delaware authority, *Stewart*, corporate officers must be "acting within the scope of their authority" for imputation, a fact Citrix cannot, and has not attempted to, establish.[8] The facts are clear – Mr. Chawla's personal actions at home from his personal computer are not in any way tied to the patent and Lanham Act allegations and fell far outside the scope of his employment.[9]

---

[8] Unlike the present case, the scope of authority prong was not in dispute in *Stewart* because the corporate officer happened to be the CEO, chairman <u>and sole shareholder</u>. Under those circumstances the "principal-agent distinction virtually disappear[ed]." *Stewart*, 112 A.3d at 311.
[9] Having failed to offer anything other than conclusory and incorrect imputation analysis under the wrong choice of law, Citrix should not now be permitted a re-do of its opening brief on reply. L.R. 7.1.3(c)(2); *In re Horsehead Holding Corp. Sec. Litig., No.* CV 16-292-LPS-CJB, 2018 WL 4838234, at *17 (D. Del. Oct. 4, 2018), report and recommendation adopted, No. CV 16-292-LPS-CJB, 2019 WL 1409454 (D. Del. Mar. 28, 2019) (moving parties "are not permitted to save for their reply brief arguments that they should have more clearly made in their opening brief").

**B.      Category 2: Citrix Has Not Established it is entitled to "Additional"
Sanctions for the Chawla Declaration**

Next, Citrix turns to seeking "additional" sanctions for the same previously sanctioned
Chawla declaration. This time, however, Citrix claims Workspot "knowingly filed Chawla's
perjurious declaration." D.I. 261, 13. Citrix is incorrect.

**Workspot Did Not Know Mr. Chawla's Sworn Denial Was False:** Citrix's claim that
Workspot "knowingly" filed a false declaration is incorrect. Magistrate Fallon reviewed privileged
communications and concluded they revealed no "intention to cover up the alleged falsity of the
Chawla declaration." D.I. 197, ¶ 38 (emphasis added). Indeed, Mr. Chawla lied to and misled
Workspot's leadership and legal team from the start. *See supra*, Section II.D.

On October 16, the following day the October 15 letter from Citrix counsel, Mr. Chawla
claimed ignorance by offering to "do some testing to understand how guerrilla mail works." D.I.
262, Ex. 35. When counsel recommended that he refrain from testing Guerrilla mail, Mr. Chawla
falsely claimed "I have not done any testing," knowing he had sent a "test" email just 8 days earlier.
*Id.*, Ex. 1. All told, much of Workspot's investigation in the days leading up to the October 30
filing deadline largely (and regrettably) depended on Mr. Chawla falsely maintaining he was not
involved. Sinha Decl., ¶ 13.

**The Statement Regarding Investigating IP Addresses is Not Sanctionable:** Citrix also
takes issue with paragraph 6 of the Chawla declaration for stating "[w]hen Citrix allows the IP
addresses apparently associated with the emails at issue to be shared with Workspot, we intend to
investigate whether those IP addresses were used in the Workspot cloud." D.I. 261, 6. Citrix claims
this statement conflicts with Mr. Chawla having previously received the IP addresses in the
October 15 email, and an October 29 email where Mr. Chawla claimed he had started investigating
IP addresses. *Id.*, 6 (citing Ex. 33, Ex. 14, Ex. 29).

13

The portion of paragraph 6 – "we intend to investigate whether those IP addresses were used in the Workspot cloud" – accurately reflects what happened. During the weeks following the October 30 declaration (after receiving details on the Azure IP address and subscription ID from Microsoft), Workspot searched the Azure logs and confirmed the Azure IP address had, in fact, been used in the Workspot cloud. D.I. 262, Ex. 40; D.I. 133; Sinha Decl., ¶ 15.

Citrix also points to Mr. Chawla reporting in an email that Workspot was already investigating the IP addresses. D.I. 261, 6 (citing Ex. 33). However, as noted in Ex. 33, Mr. Chawla reported that Workspot needed more time to perform the investigation because " ███████████ ████████████████████████ " D.I. 162, Ex. 33. Workspot believed that Mr. Chawla was correct because the Azure subscription ID from Microsoft was needed to complete the investigation of the network logs. Sinha Decl., ¶ 15. At Mr. Sinha's direction, Mr. Yoza reviewed the Azure network logs, but that occurred in November after Microsoft's subpoena response providing additional subscription ID information. D.I. 262, Ex. 40; Sinha Decl., ¶ 15.

The phrase "[w]hen Citrix allows the IP addresses apparently associated with the emails at issue to be shared with Workspot" related to Citrix restricting Workspot's internal access to information. Citrix prevented Workspot's outside counsel from sharing, among other things, (1) actual copies of the improper emails and (2) the fact that the IP addresses were discovered from the email headers. Werber Decl., Ex. B, pp. 2-3 (email regarding the same designated as "Outside Counsel Eyes' Only"). As revealed in Citrix's analysis, email headers provide technical details such as the sending IP address. D.I. 119, ¶ 14 ("███████████████████████ ████████ "); D.I. 115, ¶ 14 (███████████████████████████████████); Werber Decl., Ex. D, ¶ 14 (reference to email header redacted).

{01495127;v1 }

Citrix also redacted the IP addresses from the October 22 copy of the TRO brief Workspot counsel was permitted to share with Workspot. D.I. 102; Ex. 14 (forwarding email); Werber Decl., Ex. C, p. 4. Citrix also heavily redacted the declaration of its cyber security engineer. *See* D.I. 103. Werber Decl., Ex. D. Citrix's redactions indicated the IP addresses could not be shared internally at Workspot.[10] D.I. 103. Workspot's caution over confidentiality was understandable – the TRO motion was premised on alleged protective order violations (which were later refuted). D.I. 102; D.I. 251; Sinha Decl., ¶ 14. While paragraph 6 of the Chawla declaration was imprecisely worded,[11] there was no intent to mislead the Court because at the time, Workspot's internal knowledge was limited to Mr. Chawla and Mr. Sinha having seen the IP address numbers in Citrix's October 15, 2018 email – other associated information was restricted or unavailable.

## C.    Category 3: Citrix Has Failed to Establish it is Entitled to Sanctions for Spoliation

Citrix identifies a list of unilateral actions taken by Mr. Chawla and claims these actions constitute sanctionable acts of spoliation. D.I. 261, 13-14. Workspot did not spoliate evidence.

**Required Spoliation Elements:** Fed. R. Civ. P. 37(e) governs the alleged spoliation of "lost" ESI that "cannot be restored or replaced through additional discovery." FED. R. CIV. P. 37(e). Courts may issue limited curative measures "upon finding prejudice to another party" or impose more severe evidentiary sanctions "only upon finding party acted with the intent to deprive another party of the information's use in the litigation." *Monolithic Power Sys., Inc. v. Intersil Corp.*, No. CV 16-1125-LPS, 2018 WL 6075046, at *1 (D. Del. Nov. 19, 2018); *CIGNEX Datamatics, Inc. v. Lam Research Corp.*, No. CV 17-320 (MN), 2019 WL 1118099, at *2 (D. Del. Mar. 11, 2019). As detailed below, multiple elements are absent here.

---

[10] It was not until November 26 that Mr. Sinha was permitted to review Citrix's sealed motion papers, and he was only permitted to do so in Gibson Dunn's offices. Sinha Decl. ¶ 16.

[11] As Citrix points out, paragraph 6 appears to have been drafted by Gibson Dunn. D.I. 261, 6.

**Citrix Has Made No Showing of Prejudice or Relevance:** Each of Citrix's spoliation assertions suffers from this fatal flaw. Citrix has not shown that any of Mr. Chawla's alleged acts of spoliation caused "prejudice" to Citrix, as required for sanctions by Rule 37(e)(1). Nor can it. To the extent Mr. Chawla spoliated any evidence, he did so to hide evidence of his culpability, <u>unsuccessfully</u>. Workspot stopped contesting Mr. Chawla's responsibility prior to the TRO hearing, and the Court's sanction award is based on Mr. Chawla's submission of the false declaration. D.I. 145, 27:24-25, 111:18-23. A finding of prejudice requires "plausible, concrete suggestions as to what that evidence might have been" in relation to an **issue in "**dispute" in the underlying case. *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 80 (3d Cir. 1994) ("no dispute that Schmid's hand was cut by the blade of the saw"). Citrix has not articulated any such issue.[12] As explained below, each individual act of alleged spoliation fails for additional reasons as well.

**Mr. Chawla's "Troll" Tweets Were Not Lost:** According to Citrix, "Workspot counsel affirmatively instructed Chawla to delete information" (referring to the Citrix tweets). D.I. 261, 16. First, Citrix's entire spoliation analysis for the "troll" tweets collapses because no ESI was "lost" under Rule 37(e). The tweets were attached to Citrix's TRO motion and, again, to the present motion. D.I. 102, Ex. R; D.I. 262, Ex. 16; *Air Prod. & Chemicals*, 2017 WL 758417, at *2 ("a court cannot award sanctions when emails from one source has been lost, but the same emails are available from another source"). Indeed, had Citrix genuinely harbored concerns over "lost" tweets, it would have turned to other options, such as conferring with Workspot to recover the tweets or pursuing the same from Twitter. This did not happen. *See, e.g., Monolithic Power Sys.*,

---

[12] Indeed, there is no indication that the allegedly spoliated ESI relates to any claims or defenses in this case. *Monolithic Power*, 2018 WL 6075046, at *2 (noting evidence destroyed "would have little, if any, relevance to the claims that must be resolved in this case"); *Air Prod. & Chemicals, Inc. v. Wiesemann*, No. CV 14-1425-SLR, 2017 WL 758417, at *3 (D. Del. Feb. 27, 2017) (motion for sanctions denied where allegedly lost ESI "was not relevant to the claims and defenses").

{01495127;v1 }

2018 WL 6075046, at * 3 (moving party "could have sought, but did not seek, the substance of the messages from other sources, which appear to have been available").

Second, there was no "directive to spoliate evidence" as Citrix characterizes it, establishing "intent to deprive another party" of ESI under Rule 37(e)(2). D.I. 261, 14. Gibson Dunn (who saw from Citrix's email that Mr. Chawla called Citrix a "troll" on his personal twitter account) verbally instructed Mr. Chawla to stop tweeting and publicly discussing Citrix. D.I. 262, Ex. 14; Ex. 17 ("Don't tweet anything about Citrix"); Sinha Decl., ¶ 12. Mr. Chawla responded by taking the disparaging Citrix "troll" tweet off his personal page and asked a Workspot colleague to do the same. D.I. 262, Ex. 17.[13]

**Network Logs Were Preserved:** Citrix's claim that Workspot instructed Kivu "not to collect [and] preserve and analyze Workspot's network logs" is incorrect. D.I. 261, 5. Workspot's GC Karen Gibbs sought to confirm the logs "█████████████████████████" Werber Decl., Ex. O. Moreover, the logs were preserved and inspected by Kivu, as Citrix acknowledges elsewhere in its brief. D.I. 261, 5 ("Several weeks later, Kivu would finally review Workspot network logs"). Citrix has no spoliation claim for the network logs.

**Citrix's Personal MacBook and iPhone Assertions Fail:** Citrix's claim regarding Mr. Chawla's alleged wiping of his personal MacBook and his personal counsel's failure to hand over his personal iPhone also fail under Rule 37(e). As Mr. Chawla testified at his deposition, the MacBook and iPhone were his personal devices, not Workspot's. Even the authority Citrix proffers

---

[13] Citrix's claim that "Workspot **initially** sought to conceal" the alleged "deletion advice" in a prior version of its privilege log also fails. D.I. 261, 14 (emphasis added). Just weeks after the release of the referenced prior version of the privilege log, new lead counsel recognized that the subject line "remove patent troll tweet" (authored by Mr. Chawla, not counsel) was not privileged. The redaction was removed in a March 25, 2019 filing. D.I. 192.

acknowledges the ESI must be "in the party's control" for spoliation to occur. D.I. 261, n.24 (citing *v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012)); *Cotton v. Costco Wholesale Corp.*, No. 12-2731-JWL, 2013 U.S. Dist. LEXIS 103369, at *18 (D. Kan. July 24, 2013) (text messages on personal cell phones likely outside employer's "possession, custody, or control").

Moreover, Citrix has not demonstrated Workspot "acted with the intent to deprive" under Rule 37(e). Mr. Chawla's purported "wipe" of his personal MacBook occurred on October 16, 2018, just one day after Workspot first received notice of the improper emails and posts. D.I. 262, Ex. 15.[14] Workspot, who first learned of the improper emails and posts just one day before, had no knowledge of Mr. Chawla unilaterally acting to conceal evidence on his *personal* device to protect himself. *Air Prod. & Chemicals, Inc.*, 2017 WL 758417 at *2 (noting in denying sanctions that an "incident was totally unauthorized [by the employer] and it was a unilateral decision"). Indeed, Mr. Chawla expressly violated Workspot's standing instruction to preserve evidence related to the litigation. Sinha Decl., ¶ 8. Citrix fails to explain what "reasonable steps" Workspot could have taken in the span of mere hours to prevent Mr. Chawla's unilateral actions, presumably in his own home, with respect to his personal MacBook. FED. R. CIV. P. 37(e).

Citrix's position regarding the iPhone is even more remote. Upon his termination, Workspot identified all company-owned devices Mr. Chawla used and collected them for inspection through his personal counsel. D.I. 185, Ex. 5 at 2-3. The Workspot devices he handed over included an HTC smartphone not alleged to have been used for any improper actions. Werber Decl., Ex. I. The iPhone, however, is the subject of the enforcement proceeding in the Northern District of California where Mr. Chawla is represented by separate counsel. *See* D.I. 261, 9-10.

---

[14] Mr. Chawla's counsel reported to Nixon Peabody that the MacBook Pro stopped working and Mr. Chawla attempted to do a reinstall of the operating system that was unsuccessful.

{01495127;v1 }

Following Mr. Chawla's deposition in July 2019, Citrix claimed that Mr. Chawla's personal counsel's failure to hand over the iPhone violated a court order in the California enforcement proceeding. *Id.*, 11. Yet, tellingly, Citrix has not taken any action against Mr. Chawla in that proceeding. Further, Citrix counsel conceded in a July 29, 2019 email that Citrix's concerns over the iPhone were directed at Mr. Chawla's personal counsel, not Workspot. Werber Decl., Ex. K.

**Citrix's Assertions Regarding the Deletion of the VM Fail:** Citrix's claim regarding Mr. Chawla's deletion of the Azure VM also fails under Rule 37(e). D.I. 261, 3. Certain granular details on specific actions that took place inside the VM may have been lost when Mr. Chawla unilaterally deleted it. Still, the most relevant information relating to the VM was preserved and analyzed – namely, the Azure logs produced by Workspot showing that Mr. Chawla created and deleted a VM associated with the Azure IP address during the relevant timeframe. D.I. 133, ¶ 8-10. Not only did Mr. Chawla fail in covering his tracks, the Azure log information Workspot preserved was used for the supplemental Kivu declaration. D.I. 133, ¶ 8-10.

Further, like the other spoliation allegations, Citrix can hardly establish Workspot "acted with the intent to deprive" under Rule 37(e)(2) in relation to the VM. Mr. Chawla deleted the VM on October 16, 2018 between 3:43 am and 4:00 am UTC, (which translates to October 15 between 8:43 pm and 9:00 pm PDT) – just hours after Gibson Dunn forwarded Citrix's "notice" email to Mr. Chawla around 4:37 PM PDT on October 15. D.I. 133; Ex. 14. Mr. Chawla flatly denied any responsibility to Workspot and later (unsuccessfully) attempted to cover his tracks outside of Workspot's knowledge at the time. *See supra*, Section II.D. Improper "intent to deprive" on Workspot's part during a five-hour time window cannot be inferred from these facts.

***GN Netcom* is Inapposite**: Citrix's reliance on *GN Netcom, Inc. v. Plantronics, Inc.*, No. CV 12- 1318-LPS, 2016 WL 3792833 (D. Del. July 12, 2016) is misplaced. *GN Netcom* concerned

19

multiple custodians who "intentionally deleted thousands of emails" <u>including evidence of anti-competitive activity in an antitrust lawsuit</u>. *Id*. at \*6 (quoting an executive as stating "'Team, please be careful about competitive statements like what was said below. I would suggest everyone immediately delete this message, thanks'"). Also relevant to the court's decision was that the executive's deletion activities "were not undertaken for personal reasons." *Id*. at \*7.

Unlike this case, *GN Netcom* concerned multiple custodians conspiring to delete **competition related emails in an antitrust lawsuit** from the company servers, prejudicing the plaintiff's ability to prosecute its claims. *Id*. In contrast, the present case involved a lone actor removing ESI from his personal devices and accounts and the ESI bore no relation to the underlying patent and Lanham Act claims. Finally, while the *GN Netcom* defendant expressly admitted he deleted ESI "for purposes of protecting the business," Mr. Chawla deleted ESI on his personal device to hide his unilateral actions, protect himself, not get fired and to point the finger at others (unsuccessfully). *GN Netcom* does not support additional sanctions against Workspot.

**D.     Category 4: Citrix Has Failed to Establish it is Entitled to "Additional" Sanctions for Alleged "Delays" By Workspot**

Citrix next argues Workspot "initially failed to investigate Citrix's allegations" and did not take immediate action after learning Mr. Chawla's wife received a notice from Comcast about the subpoena on November 6, 2018.[15] D.I. 261, 14. These types of assertions boil down to Citrix claiming too much time passed before Workspot stopped contesting Mr. Chawla's culpability. Citrix's assertions regarding alleged delays by Workspot fail for several reasons.

---

[15] Citrix also asserts Ms. Gibbs "wrote that Workspot would not investigate" and Workspot "obstructed Citrix's attempt to probe the unlawful conduct" with only a cryptic cite to two exhibits which offer no evidence to support such a claim. D.I. 261, 4, 14 (citing Exs. 19 & 20). Citrix mischaracterizes these cited emails, and at no time did Workspot act to prevent Citrix from subpoenaing ISPs or taking other appropriate investigative steps.

First, assuming *arguendo* Workspot acted too slowly, Citrix has failed to articulate any prejudice from the alleged delay *not already subject to the Court's original sanction*, which included 50% of the reasonable costs and fees Citrix incurred for the TRO motion and investigation through December 12.[16] *See supra*, Section III.A.

Second, none of the evidence Citrix offers reveals any instance where Workspot declined to follow counsel's advice on investigating the allegations and addressing information received. In fact, Workspot reasonably asked if " ███████████████████████████████ " Werber Decl., Ex. A. Gibson Dunn responded that Workspot's options were limited " ██████ ███████████████████████████████ " and that Workspot was " ████████ ████████████████████ " *Id.*; see e.g. *Harmon v. City of Santa Clara*, 323 F.R.D. 617, 626 (N.D. Cal. 2018) (declining to sanction party "because she reasonably relied on her counsel's advice …. [a]fter all, these kinds of questions are precisely why one hires an attorney"); *Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, 316 (D. Del. 2013) (noting that sanctioned party "did not always follow" the advice of outside counsel).

Third, the timing of many of Workspot's actions resulted from when information became known. Workspot was charged with investigating a full host of assertions beyond the Chawla emails, including purported leaks of Citrix emails (and opposing a PI motion), yet Citrix waited until November 2 to tell Workspot that actual Citrix emails may not have been leaked after all. Werber Decl., Ex. F. And, Citrix waited until November 26 to finally agree to allow only Mr. Sinha – and no one else at Workspot – access to the sealed TRO papers, inclusive of the technical

---

[16] Workspot stopped contesting Mr. Chawla's culpability before the December 12 hearing and acknowledged the declaration should not be relied on. D.I. 131, 6, fn 3. This contradicts Citrix asserting Workspot "has neither withdrawn the declaration nor acknowledged that it contains false statements." D.I. 261, 13.

exhibits – even though Citrix knew well beforehand that the filings did not contain confidential Citrix information. Werber Decl., Ex. G; Sinha Decl., ¶ 16. Workspot indicated it would no longer contest Mr. Chawla's culpability the following week. D.I. 131, 6, fn 3; Sinha Decl., ¶ 19.

Fourth, Citrix's motion seeks sanctions against two parties besides Workspot: Workspot's counsel and Mr. Chawla. D.I. 261, 20 ("Citrix requests the Court issue the following sanctions against Workspot and Workspot's counsel and Chawla"). However, neither Gibson Dunn, Workspot's lead counsel at the time of the events, nor Mr. Chawla are parties to this case. As discussed above, Mr. Chawla took unilateral actions without the knowledge of Workspot and mislead and misdirected both Workspot and Gibson Dunn.

### E.      Category 5: Workspot Should Not Be Sanctioned for Objecting to Discovery

Citrix further contends Workspot should be sanctioned for "requiring Citrix to file two motions to compel." D.I. 261, 19 fn.25 (referring to motions seeking (i) privileged communications and (ii) forensic examination of Mr. Chawla's Workspot devices). Citrix asserts that, by objecting to producing privileged communications, Workspot violated this Court's December 12 order for the parties to conduct discovery. D.I. 261, 8 fn.11. Other than a reference to Rule 37(b)(2)(A), Citrix offers no authority or analysis. *Id*. Not only did Citrix not seek fees as part of the motions, some of Workspot's objections were sustained. D.I. 197, ¶¶ 37-38, 43. See e.g. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) ("the test for avoiding the imposition of attorney's fees for resisting discovery ... is whether the resistance was 'substantially justified'" or if "there is 'genuine dispute'"); *Leonard v. Stemtech Health Sciences, Inc.*, 269 F.R.d 427 (D. Del. 2010) (denying fees for motion to compel because "[d]efendant acted in good faith and with substantial justification"). Workspot complied with the order and produced the privileged documents.

As to the forensic examination, not long after Magistrate Fallon granted the request, the parties agreed on a neutral consultant (Califorensics) and shared the costs. D.I. 262, Ex. 55.

22

Califorensics found evidence suggesting Mr. Chawla "wiped" his MacBook Pro (D.I. 262, Ex. 15), but, as explained above, the MacBook Pro was Mr. Chawla's personal device (handed over by Mr. Chawla's attorney) subject to a subpoena and enforcement proceeding in the N.D. Cal. where Workspot is not a party. But, Califorensics did not find any evidence (and Citrix has not asserted) that Mr. Chawla used any of the five Workspot devices for any improper actions. Werber Decl., Ex. F. All told, Citrix's motion practice did not result in Citrix offering a single piece of evidence that others at Workspot were involved, or knew of Mr. Chawla's actions or covered them up.

### F.    Citrix's Unclean Hands Should Not Be Rewarded

During its investigation, Citrix leveraged its internal access its customer's (Gibson Dunn's and Potter Anderson's) ShareFile data to learn information about Mr. Chawla's home IP address. Citrix employees performed a brute force "search across *all*[17] ShareFile Information Services (IIS) logs" to identify whether either of the two identified IP addresses accessed a ShareFile account. D.I. 119 at ¶ 10 (emphasis added). Citrix found that the Fremont IP address, later confirmed to be Mr. Chawla's home IP address, accessed three ShareFile accounts, two of which were owned by Workspot's litigation counsel: Gibson Dunn and Potter Anderson. *Id.*

However, Citrix has been elusive as to when it discovered this critical information; its forensic expert identifies precise dates for all of Citrix's investigative activities except for the ShareFile analysis. *See* D.I. 119 at ¶¶ 8, 10, 13. Based on the date range Citrix used for its search (1/1/2018 – 10/23/2018), the logical conclusion is that Citrix learned this information on October 23, 2018 or shortly thereafter – a full week before Workspot's TRO opposition brief and the

---

[17] While Citrix does not state so, the amount of data in these logs must have been staggering given that ShareFile claims to have "more than 65,000 corporate customers and 22 million users around the globe." Werber Decl., Ex. L.

{01495127;v1 }

Chawla declaration were filed, on October 30. Yet, Workspot counsel first learned about the ShareFile analysis on November 2, 2018.

That Citrix delayed divulging its ShareFile findings until after Workspot's TRO opposition was filed was not a coincidence. During oral argument, Citrix's counsel attempted to justify the delay, arguing that "once we found it, we didn't just call up Workspot or decide this is relevant" because Citrix needed to ask "is this relevant?" and "[d]oes the time frame matter?" and "[d]oes it matter that we're seeing this IP address?" D.I. 145, 35:3:15. Counsel's explanation is not credible. It knew from the start the information was relevant and that the timeframe and IP address *did matter*. Citrix did not just stumble upon this information: it searched voluminous ShareFile logs for a ***specific IP address*** it believed to be associated with Mr. Chawla, confined that search to a ***specific time frame***, and directly linked that IP address with ***specific ShareFile accounts*** owned by Workspot's litigation counsel. The Court should take this gamesmanship into account when considering Citrix's sanctions demand. *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) (unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant").

### G.  Citrix Has Failed to Articulate a Basis for Awarding the Types of "Additional" Draconian Sanctions Citrix Seeks

Citrix's requests for evidentiary and adverse inference sanctions are wholly unsupported by any applicable precedent. The cases Citrix relies on involve prejudice to the movant on issues material to the core claims and defenses in the case.[18] In this case, Mr. Chawla's personal posts

---

[18] *Greatbatch Ltd. v. AVX Corp.*, 179 F. Supp. 3d 370, 377 (D. Del. 2016) (Stark, J.) (sanction for withholding core technical documents in patent case); *Wagner v. Sea Esta Motel I,* No. CV 13-81-RGA, 2014 WL 4247731, at *1 (D. Del. Aug. 26, 2014) (sanction for destruction of "the central piece of physical evidence in" the case); *Positran Mfg., Inc. v. Diebold, Inc.*, No. 02-466 GMS, 2003 WL 21104954, at *4 (D. Del. May 15, 2003) (sanction for destroying notes that were "at a

24

and emails outside the scope of his employment bear no direct relevance to Citrix's patent and Lanham Act claims. During oral argument, counsel for Citrix represented that "[m]any of those false advertisements were promulgated by Puneet Chawla." D.I. 145 at 32:14-15. Tellingly, Citrix has apparently abandoned this argument and fails to allege how Mr. Chawla's actions have any relevance to the issues for trial. This is because counsel's allegation is unsupported by the record.[19] In sum, Citrix has failed to offer any basis for introducing evidence of Mr. Chawla's actions to a jury charged with deciding patent and Lanham Act claims 18 months from now.

Workspot has been sanctioned $271,963.30 for the Citrix investigation relating to Mr. Chawla's unilateral actions. This was a significant penalty for Workspot and addressed Mr. Chawla's wrongful conduct. Sinha Decl., ¶ 25. Workspot's Board of Directors terminated Mr. Chawla and removed him from the Board, given that Workspot does not condone or tolerate the kind of improper conduct that occurred – even from a CTO and co-founder.

---

minimum, relevant to the central issues in the case"); *GE Harris Ry. Elecs., L.L.C. v. Westinghouse Air Brake Co.*, No. CIV.A. 99-070-GMS, 2004 WL 5702740, at *2 (D. Del. Mar. 29, 2004) (employee "destroyed all documents implicating his involvement" in contract bid); *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 244 (3d Cir. 2014) (sanctioned party withheld documents relating to one of plaintiff's original claims); *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 823 (3d Cir. 1982) (party sanctioned for failing to answer interrogatories); *Qantum Commc'ns Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1270-78 (S.D. Fla. 2007) (sanctioned party lied under oath and failed to produce documents regarding the case's "key issue," because "the need for sanctions is heightened when the misconduct relates to the pivotal or 'linchpin' issues"); *Kvitka v. Puffin Co.*, No. 1:06-CV-0858, 2009 WL 385582, at *3 (M.D. Pa. Feb. 13, 2009) (sanctioning plaintiff for deleting emails "directly related to her claims" preventing defendant "from defending against" them); *Leor Expl. & Prod., LLC v. Aguiar*, No. 09-60136-CIV, 2010 WL 3782195, at *1 (S.D. Fla. Sept. 28, 2010) (sanctioning defendant for hacking plaintiffs email account to obtain "attorney-client privileged communications concerning" the case).

[19] *See* Werber Decl., Ex. M, pp. 6-7 (inviting Citrix to supplement its interrogatory responses to identify the supposedly "many" alleged false advertisements "promulgated by Puneet Chawla"); *Id.*, Ex. N (confirming that counsel's representation during the hearing was merely based on testimony that many Workspot employees collaborated on advertisements).

25

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

_____

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Of Counsel:*

Ronald F. Lopez
NIXON PEABODY LLP
One Embarcardero Center, 18th Floor
San Francisco, CA  94111-3600
(415) 984-8200

*Attorneys for Defendant*

Jennifer Hayes
NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, CA  90071-3151
(213) 629-6179

Matthew A. Werber
Angelo J. Christopher
NIXON PEABODY LLP
70 West Madison, Suite 3500
Chicago, IL  60602-4224
(312) 977-4400

Dated:  October 9, 2019

{01495127;v1 }