# Exhibit A

# REDACTED IN ITS ENTIRETY

# Exhibit B

# REDACTED IN ITS ENTIRETY

# Exhibit C



---------- Forwarded message ---------
From: Kraft, Denise <denise.kraft@dlapiper.com>
Date: Wed, Oct 24, 2018 at 4:24 PM
Subject: RE: [EXT] Citrix Systems Inc. v. Workspot, Inc., Case No. 1:18-cv-00588-LPS
To: Palapura, Bindu A. <bpalapura@potteranderson.com>
CC: Lyon, H. Mark <MLyon@gibsondunn.com>, Hsin, Y. Ernest <EHsin@gibsondunn.com>, Moore, David
E. <dmoore@potteranderson.com>, Biggs, Brian <Brian.Biggs@dlapiper.com>, Ghassab, Yasmin
<Yasmin.Ghassab@dlapiper.com>, Strapp, Michael G. <Michael.Strapp@dlapiper.com>,
karengibbslaw@gmail.com <karengibbslaw@gmail.com>


Bindu

We are preparing a stipulation to extend the deadline to submit a public version while the parties confer and would like
to file it tomorrow.   We are available to meet and confer tomorrow at the following times:  9 am-10 am, 1:30-4 pm, and
5-6:30 pm.



Please let us know what time works for Workspot's counsel.



Thanks

1

Denise

---

**From:** Palapura, Bindu A. <bpalapura@potteranderson.com>
**Sent:** Wednesday, October 24, 2018 5:59 PM

---

**To:** Kraft, Denise <denise.kraft@dlapiper.com>; karengibbslaw@gmail.com
**Cc:** 'Lyon, H. Mark' <MLyon@gibsondunn.com>; Hsin, Y. Ernest <EHsin@gibsondunn.com>; Moore, David E.
<dmoore@potteranderson.com>; Biggs, Brian <Brian.Biggs@dlapiper.com>; Ghassab, Yasmin
<Yasmin.Ghassab@dlapiper.com>; Strapp, Michael G. <Michael.Strapp@dlapiper.com>
**Subject:** RE: [EXT] Citrix Systems Inc. v. Workspot, Inc., Case No. 1:18-cv-00588-LPS

---

**[EXTERNAL]**

---

Denise -  Citrix is the party seeking redactions, so it has the burden to demonstrate why each redaction is appropriate.
Citrix's TRO/contempt filing misrepresents facts and is inappropriate for a number of reasons. Workspot does not
believe any redactions are necessary and the full briefing should be a matter of public record.  For instance, Mike
Fernandez's name is already on the docket, Citrix represented to the Court that certain information was already
"leaked" to the public, and we see nothing confidential in the emails to Citrix's executives.  These are just a few
examples and not meant to be an exhaustive list.  Nonetheless, we are willing to confer on the issue once Citrix has
provided an explanation for any redactions it intends to pursue.  Workspot is amenable to extending the deadline to
submit a public version so the parties can confer.

Regards,

Bindu

---

**From:** Kraft, Denise [mailto:denise.kraft@dlapiper.com]
**Sent:** Wednesday, October 24, 2018 3:43 PM
**To:** Palapura, Bindu A. <bpalapura@potteranderson.com>; karengibbslaw@gmail.com
**Cc:** 'Lyon, H. Mark' <MLyon@gibsondunn.com>; Hsin, Y. Ernest <EHsin@gibsondunn.com>; Moore, David E.
<dmoore@potteranderson.com>; Brian.Biggs@dlapiper.com; Ghassab, Yasmin <Yasmin.Ghassab@dlapiper.com>;
Strapp, Michael G. <Michael.Strapp@dlapiper.com>
**Subject:** RE: [EXT] Citrix Systems Inc. v. Workspot, Inc., Case No. 1:18-cv-00588-LPS

Bindu

Please explain in what manner the redactions are overbroad so that we can attempt to narrow the issues before filing the motion.  We can then meet and confer on the specific redaction issues Workspot raises.  The redactions are due today, so we need to deal with this issue quickly.

Thanks

Denise

**From:** Palapura, Bindu A. <bpalapura@potteranderson.com>
**Sent:** Wednesday, October 24, 2018 3:24 PM
**To:** Kraft, Denise <denise.kraft@dlapiper.com>; karengibbslaw@gmail.com
**Cc:** 'Lyon, H. Mark' <MLyon@gibsondunn.com>; Hsin, Y. Ernest <EHsin@gibsondunn.com>; Moore, David E. <dmoore@potteranderson.com>; Biggs, Brian <Brian.Biggs@dlapiper.com>; Ghassab, Yasmin <Yasmin.Ghassab@dlapiper.com>; Strapp, Michael G. <Michael.Strapp@dlapiper.com>
**Subject:** Re: [EXT] Citrix Systems Inc. v. Workspot, Inc., Case No. 1:18-cv-00588-LPS

**[EXTERNAL]**

Denise:

We  have reviewed Citrix's proposed redactions and believe they are overbroad.  Please explain the basis for Citrix's redactions.   To the extent Citrix plans to maintain all of its proposed redactions, it will need to move the Court and show good cause.  Thanks.

Regards,

Bindu

**From:** Kraft, Denise <denise.kraft@dlapiper.com>
**Sent:** Monday, October 22, 2018 4:37:57 PM
**To:** Palapura, Bindu A.
**Cc:** 'Lyon, H. Mark'; Hsin, Y. Ernest; Moore, David E.; Brian.Biggs@dlapiper.com; Ghassab, Yasmin; Strapp, Michael G.
**Subject:** RE: [EXT] Citrix Systems Inc. v. Workspot, Inc., Case No. 1:18-cv-00588-LPS

**CONFIDENTIAL DOCUMENTS ATTACHED INVOLVING SEALED DOCUMENTS SUBMITTED TO THE COURT**


Bindu

Attached are Citrix's redactions to the TRO brief, motion and proposed order and declarations of Strapp and Fernandez.  The exhibits to the brief and declarations are not included as they are being redacted in their entirety.


Please let me know by 3 pm tomorrow if Workspot has any additional redactions, if we do not hear from you with regard to any additional redactions, we will file the public version with the redactions as shown.


You may show to your client what we intend to file as the public version.


Best


Denise

---

**From:** Strapp, Michael G.
**Sent:** Friday, October 19, 2018 3:34 PM
**To:** Palapura, Bindu A.; Kraft, Denise
**Cc:** 'Lyon, H. Mark'; Hsin, Y. Ernest; Moore, David E.; Biggs, Brian; Ghassab, Yasmin
**Subject:** RE: [EXT] Citrix Systems Inc. v. Workspot, Inc., Case No. 1:18-cv-00588-LPS


Bindu – we should be able to get you a redacted brief on Monday.


Regards,


Michael


**Michael Strapp**
Partner

**T** +1 617.406.6031
**F** +1 617.406.6100
**M** +1 917.518.3828
**E** michael.strapp@dlapiper.com

DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
United States
www.dlapiper.com

---

**From:** Palapura, Bindu A. <bpalapura@potteranderson.com>
**Sent:** Friday, October 19, 2018 3:29 PM
**To:** Kraft, Denise <denise.kraft@dlapiper.com>
**Cc:** 'Lyon, H. Mark' <MLyon@gibsondunn.com>; Hsin, Y. Ernest <EHsin@gibsondunn.com>; Moore, David E. <dmoore@potteranderson.com>; Biggs, Brian <Brian.Biggs@dlapiper.com>; Strapp, Michael G. <Michael.Strapp@dlapiper.com>; Ghassab, Yasmin <Yasmin.Ghassab@dlapiper.com>
**Subject:** RE: [EXT] Citrix Systems Inc. v. Workspot, Inc., Case No. 1:18-cv-00588-LPS

**[EXTERNAL]**

---

Do you have an ETA on the redacted brief?  Thanks.

---

**From:** Kraft, Denise [mailto:denise.kraft@dlapiper.com]
**Sent:** Thursday, October 18, 2018 5:28 PM
**To:** Palapura, Bindu A. <bpalapura@potteranderson.com>
**Cc:** 'Lyon, H. Mark' <MLyon@gibsondunn.com>; Hsin, Y. Ernest <EHsin@gibsondunn.com>; Moore, David E. <dmoore@potteranderson.com>; Brian.Biggs@dlapiper.com; Strapp, Michael G. <Michael.Strapp@dlapiper.com>; Ghassab, Yasmin <Yasmin.Ghassab@dlapiper.com>
**Subject:** RE: [EXT] Citrix Systems Inc. v. Workspot, Inc., Case No. 1:18-cv-00588-LPS

Bindu

We are working diligently to redact the brief so that you can show it to your client.  However, the redactions are taking more time than usual due to law enforcement considerations.

Thanks


Denise

---

**From:** Palapura, Bindu A. <bpalapura@potteranderson.com>
**Sent:** Thursday, October 18, 2018 3:45 PM
**To:** Kraft, Denise <denise.kraft@dlapiper.com>; Biggs, Brian <Brian.Biggs@dlapiper.com>
**Cc:** 'Lyon, H. Mark' <MLyon@gibsondunn.com>; Hsin, Y. Ernest <EHsin@gibsondunn.com>; Moore, David E. <dmoore@potteranderson.com>
**Subject:** RE: [EXT] Citrix Systems Inc. v. Workspot, Inc., Case No. 1:18-cv-00588-LPS


**[EXTERNAL]**

---

Denise – Following up on the request below.  I didn't see a redacted version come through yesterday.  Thanks.

---

**From:** Kraft, Denise [mailto:denise.kraft@dlapiper.com]
**Sent:** Wednesday, October 17, 2018 7:47 AM
**To:** Palapura, Bindu A. <bpalapura@potteranderson.com>; Brian.Biggs@dlapiper.com
**Cc:** 'Lyon, H. Mark' <MLyon@gibsondunn.com>; Hsin, Y. Ernest <EHsin@gibsondunn.com>; Moore, David E. <dmoore@potteranderson.com>
**Subject:** Re: [EXT] Citrix Systems Inc. v. Workspot, Inc., Case No. 1:18-cv-00588-LPS


Bindu

We are redacting and plan to get back to you later today.


Thanks


Denise

---

**From:** Palapura, Bindu A.

**Sent:** Wednesday, October 17, 2018 2:52 AM

**To:** Biggs, Brian; Kraft, Denise

**Cc:** 'Lyon, H. Mark'; Hsin, Y. Ernest; Moore, David E.

**Subject:** FW: [EXT] Citrix Systems Inc. v. Workspot, Inc., Case No. 1:18-cv-00588-LPS

**[EXTERNAL]**

Denise/Brian:

Please let us know as soon as possible, what portions of the brief can be shown to the client.  I'm out of the office until Thursday, so please copy all here with your response.  Thanks.

Regards,

Bindu

**From:** mail@sf-notifications.com [mailto:mail@sf-notifications.com]
**Sent:** Tuesday, October 16, 2018 9:54 PM
**To:** Palapura, Bindu A. <bpalapura@potteranderson.com>
**Subject:** [EXT] Citrix Systems Inc. v. Workspot, Inc., Case No. 1:18-cv-00588-LPS

Bindu,

Simone Braxton has sent you files.                                    Expires 1/14/19

A note from Simone :
Counsel:

On behalf of Denise S. Kraft, attached please find as-filed: (i) [FILED UNDER SEAL] Plaintiff's Motion For
A Temporary Restraining Order and to Show Cause Why Workspot Should Not Be Held in Contempt; (ii)

[FILED UNDER SEAL] Brief in Support of Motion; (iii) [FILED UNDER SEAL] Declaration of Mike Fernandez; and (iv) [FILED UNDER SEAL] Declaration of Michael G. Strapp, e-filed today in the U.S.D.C. for the District of Delaware.

* The above was sent via email but was returned undelivered. Therefore, sending to everyone via Sharefile.

Simone Braxton
Paralegal

T +1 302.468.5649
F +1 302.394.2341
E simone.braxton@dlapiper.com

**Download**

Trouble with the above link? You can copy and paste the following URL into your web browser:
https://dlapiper.sharefile.com/d-ffcb1fd398464770

ShareFile is a tool for sending, receiving, and organizing your business files online. It can be used as a password-protected area for sharing information with clients and partners, and it's an easy way to send files that are too large to e-mail.

Powered By Citrix ShareFile 2018

Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

--
Karen A. Gibbs
Law Office of Karen A.Gibbs

# Exhibit D

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

CITRIX SYSTEMS, INC.,

          Plaintiff,

    v.

WORKSPOT, INC.

          Defendant.

C.A. No. 1:18-cv-00588-LPS

 

## DECLARATION OF ███████

I, ███████ hereby declare as follows:

1)    I am ███████ Cyber Security Engineer at Citrix Systems, Inc. ("Citrix"). In this role, I serve as one of the individuals responsible for Citrix's Cyber Security operations and am a member of Citrix's Global Security Organization. I am personally familiar with Citrix's security systems and operations.

2)    Between October 9, 2018 at 11:07 PM EDT and October 11, 2018 at 3:39 PM EDT, individual(s) using ███████ sent five emails to ███████ and three emails to ███████.

3)    ███████

███████.

4)    An Internet Protocol (IP) address is a unique string of numbers assigned to each device connected to a computer network that uses the Internet Protocol for communication. Upon receipt of the emails sent to ███████ I began investigating the IP address of the original sender of the emails.

1

5)   Upon review of ███████████████████████, I identified a ██████ ██████████████████████ which includes the IP address of the original sender.

6)   The first six emails sent to ██████████████████ originated from IP address ████████. This IP address is in ████████████. The Internet Service Provider (ISP) and organization associated with the IP address is ████████████ ██████████████ I determined this information by using publicly-available IP tracing tools, including ████████████████. Attached as Exhibits A and B are screenshots of the results received when the IP address ████████████ is entered in search queries available at ████████████████████.

7)   A ████████████████████ in the seventh and eighth emails sent to ████ ████████████ revealed that these emails originated from IP address ████████. This IP address is in ████████████. The ISP associated with the IP address is ████████ █████████████████████████████████████. I determined this information by using publicly-available IP tracing tools, including ████████████ ██████. Attached as Exhibits C and D are screenshots of the results received when the IP address████████ is entered in search queries available at ████████████ ████████.

8)   Citrix's investigation into the nature of the Citrix emails ████████████ ████████ and the identity of the sender(s) of the emails and website posts referenced above is ongoing. Citrix has taken certain steps to mitigate risks and threats to the company and to the specific executives who have been targeted.

2

I declare under penalty of perjury that the foregoing is true and correct.



Executed this 16th day of October 2018
in Fort Lauderdale, Florida

# EXHIBIT A

## CERTIFICATE OF SERVICE

I, Denise S. Kraft, hereby certify that on this 16th day of October 2018, I caused a true and correct copy of the foregoing **[FILED UNDER SEAL] Declaration of** ▮▮▮▮▮▮▮▮ to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification to the following attorneys of record, and is available for viewing and downloading.

David E. Moore
Stephanie E. O'Byrne
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801
dmoore@potteranderson.com
sobyrne@potteransderson.com
bpalapura@potteranderson.com

H. Mark Lyon
GIBSON DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
MLyon@gibsondunn.com

Aaron B. Frumkin
Jennifer Rho
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
afrumkin@gibsondunn.com
jrho@gibsondunn.com

Y. Ernest Hsin
GIBSON DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
ehsin@gibsondunn.com

Brian K. Andrea
Brian M. Buroker
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
bandrea@gibsondunn.com
bburoker@gibsondunn.com

*/s/ Denise S. Kraft*
Denise S. Kraft (DE Bar No. 2778)

Exhibit E

# REDACTED IN ITS ENTIRETY

Exhibit F



---------- Forwarded message ---------
From: **Lyon, H. Mark** <MLyon@gibsondunn.com>
Date: Mon, Nov 5, 2018 at 1:08 PM
Subject: Re: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Investigation Update
To: Strapp, Michael G. <Michael.Strapp@dlapiper.com>, Hsin, Y. Ernest <EHsin@gibsondunn.com>, Scott
Czerwonka <sczerwonka@wlblaw.com>, Kraft, Denise <denise.kraft@dlapiper.com>, [EXT] Palapura, Bindu
<bpalapura@potteranderson.com>, Rho, Jennifer <JRho@gibsondunn.com>, POTTERANDERSON:Dave
Moore <dmoore@potteranderson.com>, karengibbslaw@gmail.com <karengibbslaw@gmail.com>
Cc: Biggs, Brian <Brian.Biggs@dlapiper.com>, Ghassab, Yasmin <Yasmin.Ghassab@dlapiper.com>,
Christofferson, Eric <Eric.Christofferson@dlapiper.com>


Counsel for Citrix,


The email below does not accurately describe our prior discussions, nor are your characterizations of our
refusals to provide information correct.


However, as mentioned below, Citrix did again raise the question during Friday's call whether Workspot is
willing to provide information in response to the five, enumerated requests set out in Mr. Strapp's email of
October 15, 2018.   During that call, I noted that, while Workspot is conducting its own investigation, the very
labor-intensive and invasive demands (including Citrix's demand for a formal declaration from counsel)
contemplated by Citrix's many requests is excessive, particularly until the parties have first received responses
to subpoenas seeking to identify the source of those IP addresses, which Workspot agreed Citrix could serve on
the ISPs involved.  This is the same position previously stated during our October 16 call:  we should be
investigating based on facts, not speculation.  Of course, rather than wait to obtain such information from the
ISPs, Citrix opted to file its TRO motion.


As I've noted previously, it appears that Citrix has withheld and continues to withhold from Workspot
information that Citrix has obtained as part of its own investigations, greatly hampering Workspot's ability to
efficiently and effectively conduct its own investigation of the issues.  Indeed, despite repeated requests for
information such as the actual emails allegedly sent to Citrix executives (including all metadata associated with
those emails), information regarding the nature of your investigations to date, information received from the

ISPs in response to your subpoenas (which we have learned has been at least partially withheld), and permission for Workspot's CEO to have access to the source emails behind the allegations so that Workspot could conduct an effective investigation, Citrix has remained silent and refused to provide Workspot with a response.

Nevertheless, as you suggest, we have been conducting investigations into the matters asserted, and I write to let you know that, based on our investigations to date, and apart from the single inadvertent disclosure of very limited information regarding the Citrix/Microsoft license which is one of the subjects of Citrix's TRO motion, no one at Workspot has had access to any Citrix confidential information produced in this litigation.  Based on our investigations to date, only outside counsel for Workspot (and their staff, retained experts, and third-party deposition-related personnel) have had any access to Citrix confidential information produced in this litigation.

With regard to your request regarding Sharefile activity, we are investigating whether Citrix has breached its confidentiality and other obligations by accessing and using the information Citrix collects from Sharefile repositories established by counsel for Workspot in this litigation in a manner that is contractually prohibited.  We will consider your new requests for information regarding access to any Sharefile repositories and get back to you, but as you withheld that information until last Friday afternoon, we have not yet been able to fully investigate the situation.

We also continue to investigate the remaining relevant issues set out in Mr. Strapp's October 15th email, and are willing to discuss working with Citrix going forward to provide information we discover, but such exchange needs to be a two-way street.  Citrix cannot continue to selectively withhold and refuse to provide Workspot with relevant information that Workspot needs for its own investigations and defense (both of this litigation and the motions brought by Citrix) in an apparent attempt to gain tactical advantage.

**H. Mark Lyon**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1881 Page Mill Road, Palo Alto, CA 94304-1211
Tel +1 650.849.5307 • Fax +1 650.849.5333
MLyon@gibsondunn.com • www.gibsondunn.com

**From:** "Strapp, Michael G." <Michael.Strapp@dlapiper.com>
**Date:** Monday, November 5, 2018 at 11:40 AM
**To:** "H. Lyon*" <MLyon@gibsondunn.com>, "Y. Hsin*" <EHsin@gibsondunn.com>, Scott Czerwonka <sczerwonka@wlblaw.com>, "Kraft, Denise" <denise.kraft@dlapiper.com>, Bindu Palapura <bpalapura@potteranderson.com>, Jennifer Rho* <JRho@gibsondunn.com>, "POTTERANDERSON:Dave Moore" <dmoore@potteranderson.com>, "'karengibbslaw@gmail.com'" <karengibbslaw@gmail.com>
**Cc:** "Biggs, Brian" <Brian.Biggs@dlapiper.com>, "Ghassab, Yasmin" <Yasmin.Ghassab@dlapiper.com>, "Christofferson, Eric" <Eric.Christofferson@dlapiper.com>
**Subject:** RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Investigation Update

[External Email]

Workspot Counsel:

Just a few days after Citrix first learned of harassing emails and threatening website posts concerning leaks of emails sent by Citrix's CEO and SVP, Citrix counsel brought to your attention all information it was aware of that indicated the potential involvement of individuals associated with Workspot in the malicious conduct. This information was laid out, in detail, in an October 15 email.

In that same email, Citrix requested Workspot's assistance in investigating the circumstances surrounding the emails and website posts.  When we discussed these requests the next day, you not only refused to assist Citrix in conducting an investigation, you also dismissed the evidence Citrix had uncovered as speculative and unfounded, and you threatened to seek attorneys' fees if Citrix sought relief from the Court.

Since we spoke on October 15, Citrix has reiterated its request for cooperation from Workspot in its investigation, but has been met with an uncompromising refusal by Workspot to assist Citrix.

Citrix now, once again, requests that Workspot counsel provide Citrix with assistance in the ongoing investigation.  In particular, Citrix requests that Gibson Dunn and Potter Anderson, as sole administrators of their Citrix ShareFile accounts, provide Citrix with information about the individual who accessed the Gibson Dunn ShareFile account on 9.8.18 at 5:59:03 pm PDT, and 9.9.2018 at 4:38:50 pm and 5:21:43 pm PDT; and the individual who accessed the Potter Anderson ShareFile account on 9.30.18 at 12:10:52 pm and 9:13:40 pm PDT.

Citrix does not have access to this information, nor, contrary to the assertion in your November 2 email, does Citrix track or monitor ShareFile activity.  While Citrix does keep routine logs of information that apply to every one of its customers in the usual course of business pursuant to, and in accordance with, its Terms of Service (https://www.citrix.com/content/dam/citrix/en_us/documents/buy/enterprise-saas-eusa.pdf), that

information is stored to authenticate and validate users of the ShareFile service, not for purposes of monitoring or tracking information stored or accessed in ShareFile accounts.

Workspot counsel has presumably conducted its own investigation over the past three weeks.  Given your access to Workspot employees and your ability to obtain information from Gibson Dunn and Potter Anderson ShareFile account information, Workspot is in an excellent position to uncover and confirm the identity of the actor(s) associated with the harassing emails and threatening website posts.

To that end, please let us know whether Workspot will share with Citrix the results thus far of its investigation.  In particular, please let us know whether Workspot will investigate the identity of the individual who accessed the Gibson Dunn and Potter Anderson ShareFile accounts on the dates and times listed above and then share that information with Citrix.

Sincerely,

**Michael Strapp**
Partner

**T** +1 617.406.6031
**F** +1 617.406.6100
**M** +1 917.518.3828
**E** michael.strapp@dlapiper.com



DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
United States
www.dlapiper.com

---

**From:** Lyon, H. Mark <MLyon@gibsondunn.com>
**Sent:** Friday, November 2, 2018 11:00 PM
**To:** Strapp, Michael G. <Michael.Strapp@dlapiper.com>; Hsin, Y. Ernest <EHsin@gibsondunn.com>; Scott Czerwonka <sczerwonka@wlblaw.com>; Kraft, Denise <denise.kraft@dlapiper.com>; [EXT] Palapura, Bindu <bpalapura@potteranderson.com>; Rho, Jennifer <JRho@gibsondunn.com>; POTTERANDERSON:Dave Moore <dmoore@potteranderson.com>; 'karengibbslaw@gmail.com' <karengibbslaw@gmail.com>
**Cc:** Biggs, Brian <Brian.Biggs@dlapiper.com>; Ghassab, Yasmin <Yasmin.Ghassab@dlapiper.com>;

Christofferson, Eric <Eric.Christofferson@dlapiper.com>
**Subject:** Re: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Investigation Update

[EXTERNAL]

Counsel for Citrix:

During our initial telephonic conference on October 16 regarding the issues of emails sent to Citrix executives, I asked whether you had provided us with all of the information you had available from your investigation that might indicate the source of those emails.   You stated that, apart from what was set out in your letter of October 15, you had no additional information.  Following up on our call this afternoon, we have concerns that Citrix did not provide us with all of the information it obtained from its investigation.  As a result, we ask again, as we did in our earlier discussions, that Citrix provide us with all of the information it has obtained to date from its investigations so that Workspot is not prejudiced in its ability to investigate the issues due to Citrix's selective withholding of information.

In addition, we request that you promptly (1) identify when Citrix began investigating whether the server associated with the Comcast IP address had accessed a Sharefile server, such as those used by Gibson Dunn and/or Potter Anderson, (2) when Citrix first learned of information that might indicate the server associated with the Comcast IP address had in fact done so, (3) whether, before filing Citrix's motion for TRO, anyone had inquired whether Mr. Henshall recognized the email or recalled sending the email in question to Mr. Hough, and (4) whether, after filing Citrix's motion for TRO, anyone has since made that inquiry to Mr. Henshall (and if so, when).

Given the serious nature of this investigation by both Citrix and Workspot, please let us know the answers to these questions as soon as possible.

In addition, we are troubled by the apparent monitoring by Citrix of private Sharefile servers used by Gibson Dunn and Potter Anderson, which may mean Citrix is in breach of its contractual obligations.  We are particularly troubled to the extent that such monitoring provides information regarding communications with clients, and even more particularly if Citrix has directly, and without proper process, obtained non-public information about any communications with clients in this case.  We reserve, and expressly do not waive, the right to object to any use of this information in this proceeding and are considering all other available options.

We look forward to your prompt response to our questions noted above.

**H. Mark Lyon**


GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1881 Page Mill Road, Palo Alto, CA 94304-1211
Tel +1 650.849.5307 • Fax +1 650.849.5333
MLyon@gibsondunn.com • www.gibsondunn.com

---

**From:** "Strapp, Michael G." <Michael.Strapp@dlapiper.com>
**Date:** Friday, November 2, 2018 at 10:51 AM
**To:** "Y. Hsin*" <EHsin@gibsondunn.com>, Scott Czerwonka <sczerwonka@wlblaw.com>, "Kraft, Denise" <denise.kraft@dlapiper.com>, Bindu Palapura <bpalapura@potteranderson.com>, Brian Buroker* <BBuroker@gibsondunn.com>, Jennifer Rho* <JRho@gibsondunn.com>, "H. Lyon*" <MLyon@gibsondunn.com>, "POTTERANDERSON:Dave Moore" <dmoore@potteranderson.com>, "'karengibbslaw@gmail.com'" <karengibbslaw@gmail.com>
**Cc:** "Biggs, Brian" <Brian.Biggs@dlapiper.com>, "Ghassab, Yasmin" <Yasmin.Ghassab@dlapiper.com>, "Christofferson, Eric" <Eric.Christofferson@dlapiper.com>
**Subject:** RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Investigation Update


[External Email]

Workspot Counsel,


We would like to share some important information that has come to light as part of our investigation.  Please let me know if you can join a call this afternoon at 4 pm Eastern.


I will circulate an invite and dial-in for that time.


Thanks,


Michael

**Michael Strapp**
Partner

**T** +1 617.406.6031
**F** +1 617.406.6100
**M** +1 917.518.3828
**E** michael.strapp@dlapiper.com



DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
United States
www.dlapiper.com

---

**From:** Hsin, Y. Ernest <EHsin@gibsondunn.com>
**Sent:** Friday, November 2, 2018 12:30 PM
**To:** Strapp, Michael G. <Michael.Strapp@dlapiper.com>; Scott Czerwonka <sczerwonka@wlblaw.com>;
Kraft, Denise <denise.kraft@dlapiper.com>; [EXT] Palapura, Bindu <bpalapura@potteranderson.com>;
Buroker, Brian M. <BBuroker@gibsondunn.com>; Rho, Jennifer <JRho@gibsondunn.com>; Lyon, H. Mark
<MLyon@gibsondunn.com>; POTTERANDERSON:Dave Moore <dmoore@potteranderson.com>;
'karengibbslaw@gmail.com' <karengibbslaw@gmail.com>
**Cc:** Biggs, Brian <Brian.Biggs@dlapiper.com>; Ghassab, Yasmin <Yasmin.Ghassab@dlapiper.com>;
Christofferson, Eric <Eric.Christofferson@dlapiper.com>
**Subject:** RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Microsoft Subpoena

[EXTERNAL]

---

Counsel,

This is to confirm that the parties agreed yesterday to table the issue of redactions of public versions of the
briefs, declarations, and exhibits for Citrix's Motion for TRO and Workspot's Opposition until November
16th.  Citrix is preparing a draft stipulation to that effect.

In the meantime, however, in order for Workspot to be able to conduct a full investigation, we request that
Citrix agree that Amitabh Sinha, Workspot's CEO, be able to view the Guerrilla Mail emails that were sent to
Henshall and Rivera, as well as the email from Henshall ████████████████████████.  Please let us
know as soon as possible if Citrix agrees to this request.

Furthermore, with respect to the issue of discovery relating to the email from Henshall to Hough, Citrix represented yesterday for the first time that it has not yet been able to locate that email and is searching for it, but could not provide a date by which that search would be complete. You represented, however, that Citrix will provide Workspot with results of Citrix's search as soon as possible. In addition, you confirmed that the parties are at an impasse regarding Workspot's request that Citrix search for and produce communications to and from Henshall, Hough, and ███████████████████████ that contain the words "Workspot" or ████████

Regards,

Ernie

**Y. Ernest Hsin**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8224 • Fax +1 415.374.8436
EHsin@gibsondunn.com • www.gibsondunn.com

---

**From:** Strapp, Michael G. <Michael.Strapp@dlapiper.com>
**Sent:** Thursday, November 1, 2018 1:44 PM
**To:** Scott Czerwonka <sczerwonka@wlblaw.com>; Kraft, Denise <denise.kraft@dlapiper.com>; [EXT] Palapura, Bindu <bpalapura@potteranderson.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Rho, Jennifer <JRho@gibsondunn.com>; Hsin, Y. Ernest <EHsin@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; POTTERANDERSON:Dave Moore <dmoore@potteranderson.com>; 'karengibbslaw@gmail.com' <karengibbslaw@gmail.com>
**Cc:** Biggs, Brian <Brian.Biggs@dlapiper.com>; Ghassab, Yasmin <Yasmin.Ghassab@dlapiper.com>; Christofferson, Eric <Eric.Christofferson@dlapiper.com>
**Subject:** RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Microsoft Subpoena

8

[External Email]

Counsel,

With respect to our earlier discussion about the issue of confidentiality as it concerns Microsoft's subpoena response, please note that Microsoft has requested in the cover letter to its response that the parties "accord the information the highest level of confidentiality protection available under the compulsory process."

Regards,

Michael

**Michael Strapp**
Partner

**T** +1 617.406.6031
**F** +1 617.406.6100
**M** +1 917.518.3828
**E** michael.strapp@dlapiper.com



DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
United States
www.dlapiper.com

---

**From:** Scott Czerwonka <sczerwonka@wlblaw.com>
**Sent:** Thursday, November 1, 2018 2:40 PM
**To:** Kraft, Denise <denise.kraft@dlapiper.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; bburoker@gibsondunn.com; jrho@gibsondunn.com; ehsin@gibsondunn.com; MLyon@gibsondunn.com; Moore, David E. <dmoore@potteranderson.com>
**Cc:** Strapp, Michael G. <Michael.Strapp@dlapiper.com>; Biggs, Brian <Brian.Biggs@dlapiper.com>; Ghassab, Yasmin <Yasmin.Ghassab@dlapiper.com>
**Subject:** RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Microsoft Subpoena

**[EXTERNAL]**

---

Counsel --  Please see attached letter and documents from Microsoft, which I received this afternoon.

Regards,

Scott

Scott B. Czerwonka

Wilks, Lukoff & Bracegirdle, LLC

4250 Lancaster Pike, Suite 200

Wilmington, DE  19805

(302) 230-5154

---

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.
* * *
To ensure compliance with Treasury Department regulations, we inform you that, unless otherwise indicated in writing, any U.S. Federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or applicable state and local provisions or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

---

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

---

Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure,

dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

Exhibit G



---------- Forwarded message ---------
From: **Palapura, Bindu A.** <bpalapura@potteranderson.com>
Date: Mon, Nov 26, 2018 at 4:23 PM
Subject: RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Open Issues
To: Strapp, Michael G. <Michael.Strapp@dlapiper.com>, Kraft, Denise <denise.kraft@dlapiper.com>, Moore, David E. <dmoore@potteranderson.com>, Karen Gibbs <karengibbslaw@gmail.com>, Lyon, H. Mark <MLyon@gibsondunn.com>, Hsin, Y. Ernest <EHsin@gibsondunn.com>
Cc: Biggs, Brian <Brian.Biggs@dlapiper.com>, Christofferson, Eric <Eric.Christofferson@dlapiper.com>, Ghassab, Yasmin <Yasmin.Ghassab@dlapiper.com>


Further correspondence will follow relating to today's' call, however, this email confirms that, despite numerous prior requests since Citrix asserted its allegations, Citrix only today gave permission for Workspot's CEO Dr. Amitabh Sinha to see unredacted TRO papers so that, on behalf of Workspot, Dr. Sinha may finally understand the allegations against Workspot and Dr. Puneet Chawla.  As agreed, to avoid further delay, Dr. Sinha will access the documents at Gibson Dunn only.  We are proceeding accordingly.

From: Strapp, Michael G. [mailto:Michael.Strapp@dlapiper.com]
Sent: Monday, November 26, 2018 9:55 AM
To: Palapura, Bindu A. <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Kraft, Denise <denise.kraft@dlapiper.com<mailto:denise.kraft@dlapiper.com>>; Moore, David E. <dmoore@potteranderson.com<mailto:dmoore@potteranderson.com>>; Karen Gibbs <karengibbslaw@gmail.com<mailto:karengibbslaw@gmail.com>>; Lyon, H. Mark <MLyon@gibsondunn.com<mailto:MLyon@gibsondunn.com>>; Hsin, Y. Ernest <EHsin@gibsondunn.com<mailto:EHsin@gibsondunn.com>>
Cc: Biggs, Brian <Brian.Biggs@dlapiper.com<mailto:Brian.Biggs@dlapiper.com>>; Christofferson, Eric <Eric.Christofferson@dlapiper.com<mailto:Eric.Christofferson@dlapiper.com>>; Ghassab, Yasmin <Yasmin.Ghassab@dlapiper.com<mailto:Yasmin.Ghassab@dlapiper.com>>
Subject: [EXT] RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Open Issues


Bindu,

We are available to meet and confer at 1:30 pm this afternoon.  Agenda items we would like to cover during our call include:

·     Our request for the information outlined in our October 15 email.  You indicate that Workspot has been conducting an investigation for several weeks.  Although you have accused Citrix of "selective withholding of information," we note Workspot has provided us with no information whatsoever with respect to its investigation.

·     Clarification and further information regarding the issues raised in your November 12 email about ShareFile access.

·     Details regarding exactly what information Workspot intends to provide to Mr. Sinha in connection with the TRO briefing and what safeguards it plans to take to ensure that this information is not disseminated further within Workspot.

·     The timing and page-limits for Workspot's sur-reply brief and a date for a hearing on the TRO motion.

·     Whether Workspot will agree that the imposition of sanctions against Workspot are appropriate in light of the facts that have been developed to date in connection with the TRO motion.

·     Clarification regarding the statements in your November 16 email regarding your call with Denise.

·     The basis for the requests set out in Mark's November 2 email.

·     Citrix's ESI preservation demand and its request for an opportunity for its consultants to inspect forensic images of computers used by residents of the address of the Fremont IP Address subscriber as set out in our November 16 and November 19 emails.

We will circulate an invite and dial-in.

Regards,

Michael


Michael Strapp
Partner

T +1 617.406.6031
F +1 617.406.6100
M +1 917.518.3828
E michael.strapp@dlapiper.com <mailto:michael.strapp@dlapiper.com>

[DLA Piper Logo]

DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
United States
www.dlapiper.com <http://www.dlapiper.com>

From: Palapura, Bindu A. <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>
Sent: Monday, November 26, 2018 9:14 AM
To: Palapura, Bindu A. <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Kraft,

Denise <denise.kraft@dlapiper.com<mailto:denise.kraft@dlapiper.com>>; Moore, David E.
<dmoore@potteranderson.com<mailto:dmoore@potteranderson.com>>; Karen Gibbs
<karengibbslaw@gmail.com<mailto:karengibbslaw@gmail.com>>; Lyon, H. Mark
<MLyon@gibsondunn.com<mailto:MLyon@gibsondunn.com>>; Hsin, Y. Ernest
<EHsin@gibsondunn.com<mailto:EHsin@gibsondunn.com>>
Cc: Biggs, Brian <Brian.Biggs@dlapiper.com<mailto:Brian.Biggs@dlapiper.com>>; Christofferson, Eric
<Eric.Christofferson@dlapiper.com<mailto:Eric.Christofferson@dlapiper.com>>; Ghassab, Yasmin
<Yasmin.Ghassab@dlapiper.com<mailto:Yasmin.Ghassab@dlapiper.com>>; Strapp, Michael G.
<Michael.Strapp@dlapiper.com<mailto:Michael.Strapp@dlapiper.com>>
Subject: RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Open Issues

[EXTERNAL]
_____
Denise – Following up on my email below.  Please let us know when your team is available to confer
today.  Thanks.

From: Palapura, Bindu A. [mailto:bpalapura@potteranderson.com]
Sent: Tuesday, November 20, 2018 1:02 PM
To: Kraft, Denise <denise.kraft@dlapiper.com<mailto:denise.kraft@dlapiper.com>>; Moore, David E.
<dmoore@potteranderson.com<mailto:dmoore@potteranderson.com>>; Karen Gibbs
<karengibbslaw@gmail.com<mailto:karengibbslaw@gmail.com>>; Lyon, H. Mark
<MLyon@gibsondunn.com<mailto:MLyon@gibsondunn.com>>; Hsin, Y. Ernest
<EHsin@gibsondunn.com<mailto:EHsin@gibsondunn.com>>
Cc: Biggs, Brian <Brian.Biggs@dlapiper.com<mailto:Brian.Biggs@dlapiper.com>>; Christofferson, Eric
<Eric.Christofferson@dlapiper.com<mailto:Eric.Christofferson@dlapiper.com>>; Ghassab, Yasmin
<Yasmin.Ghassab@dlapiper.com<mailto:Yasmin.Ghassab@dlapiper.com>>; Strapp, Michael G.
<Michael.Strapp@dlapiper.com<mailto:Michael.Strapp@dlapiper.com>>
Subject: RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Open Issues

Denise – Unfortunately, we are not available today, but can be available on Monday (noon to 2pm ET) to
confer.  Let us know if that works.  Thanks.

From: Kraft, Denise [mailto:denise.kraft@dlapiper.com]
Sent: Tuesday, November 20, 2018 11:28 AM
To: Palapura, Bindu A. <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Moore,
David E. <dmoore@potteranderson.com<mailto:dmoore@potteranderson.com>>; 'Karen Gibbs'
<karengibbslaw@gmail.com<mailto:karengibbslaw@gmail.com>>; 'Lyon, H. Mark'
<MLyon@gibsondunn.com<mailto:MLyon@gibsondunn.com>>; 'Hsin, Y. Ernest'
<EHsin@gibsondunn.com<mailto:EHsin@gibsondunn.com>>
Cc: Biggs, Brian <Brian.Biggs@dlapiper.com<mailto:Brian.Biggs@dlapiper.com>>; Christofferson, Eric
<Eric.Christofferson@dlapiper.com<mailto:Eric.Christofferson@dlapiper.com>>; Ghassab, Yasmin
<Yasmin.Ghassab@dlapiper.com<mailto:Yasmin.Ghassab@dlapiper.com>>; Strapp, Michael G.
<Michael.Strapp@dlapiper.com<mailto:Michael.Strapp@dlapiper.com>>
Subject: [EXT] RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Open Issues

Bindu
After further conferring with my team with regard to Citrix's investigation, the description below is not entirely
accurate.  We are available to discuss in detail the specifics during a meet and confer on the topic with all
counsel, which Michael proposed yesterday and which I had also suggested on our call Friday to make sure that
we are all on the same page with regard to the Citrix investigation.

3

Thanks and please let us know your availability for a meet and confer today per Michael's email of yesterday.

Denise

From: Palapura, Bindu A. <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>
Sent: Friday, November 16, 2018 1:32 PM
To: Strapp, Michael G. <Michael.Strapp@dlapiper.com<mailto:Michael.Strapp@dlapiper.com>>; Kraft, Denise <denise.kraft@dlapiper.com<mailto:denise.kraft@dlapiper.com>>; Moore, David E. <dmoore@potteranderson.com<mailto:dmoore@potteranderson.com>>
Cc: 'Karen Gibbs' <karengibbslaw@gmail.com<mailto:karengibbslaw@gmail.com>>; 'Lyon, H. Mark' <MLyon@gibsondunn.com<mailto:MLyon@gibsondunn.com>>; 'Hsin, Y. Ernest' <EHsin@gibsondunn.com<mailto:EHsin@gibsondunn.com>>; Biggs, Brian <Brian.Biggs@dlapiper.com<mailto:Brian.Biggs@dlapiper.com>>; Christofferson, Eric <Eric.Christofferson@dlapiper.com<mailto:Eric.Christofferson@dlapiper.com>>; Ghassab, Yasmin <Yasmin.Ghassab@dlapiper.com<mailto:Yasmin.Ghassab@dlapiper.com>>
Subject: RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Open Issues

[EXTERNAL]
_____

Denise:

Good talking to you earlier.  Here's a summary of the key points from our call.  Let me know if I missed anything.

Supplemental TRO Briefing:
We discussed each sides proposal for supplemental briefing.  Workspot does not oppose Citrix submitting a 3 page supplement on Monday.  However, as I indicated, Workspot believes that the Court should have at its disposal all relevant information from both parties' investigations prior to deciding Citrix's TRO motion.  Accordingly, we believe December 17th is a reasonable deadline for our surreply given the status of Workspot's investigation and the possibility of subpoenaing additional third parties—which we just learned that Citrix is not planning to pursue.   Further, we requested seven pages given the volume of new material in Citrix's reply, the potential new arguments in Citrix's supplement, and additional information that may be uncovered.  You indicated that you would follow up with your team and get back to us on the page limit and timing.   However, to keep the ball moving, we agreed to submit a stipulation today setting forth the parties' agreement regarding Citrix's supplement and informing the Court that Citrix does not oppose Workspot's request for a surreply and that parties are working out the page limit and timing.  Please send over a stipulation at your convenience.

Citrix's Investigation:
We discussed the status of Citrix's investigation and whether Citrix planned to subpoena Guerilla Mail, Proton Mail, and Digital Ocean.  You stated that Citrix's investigation is complete and that Workspot has all the information and evidence in Citrix's possession.  You also confirmed that Citrix does not intend to subpoena the additional third parties listed earlier because Citrix believes it has put forth sufficient evidence in support of its motion.  We asked why Citrix chose not to subpoena these entities, given they are similarly situated as Comcast and Microsoft.  You indicated that you would follow up with your team and see if you could provide additional information.

Access to Briefing:
We discussed our long pending request to provide Mr. Sinha with full access to all the TRO briefing.  As I indicated, our investigation has been hampered by the fact that we have been unable to fully disclose this information to Workspot's CEO (or anyone at Workspot).  Our understanding of Citrix's proposal (in M.

Strapp's 11/14 email) is that access is contingent on Workspot agreeing in advance that the exhibits to the TRO pleadings remain under seal (i.e. we give up our rights to contest the merit of unredacting those exhibits).  However, you indicated that you would get back to us on whether that provision means simply that the parties agree to keep the material under seal until we've had an opportunity to confer once briefing is complete.  If that interpretation is correct, I believe we have an agreement – access would be limited to Mr. Sinha and we agree to keep the material under seal, reserving our right to oppose redactions at a later time.

Mark Lyon's 11/2 Email (attached here):
We discussed the 11/2 email and the fact that we had yet to receive a response from Citrix.  You indicated that you would follow up with your team on getting Workspot a response.

Thanks again for your time.

Regards,
Bindu


From: Palapura, Bindu A.
Sent: Thursday, November 15, 2018 9:39 PM
To: 'Strapp, Michael G.' <Michael.Strapp@dlapiper.com<mailto:Michael.Strapp@dlapiper.com>>; Kraft, Denise <denise.kraft@dlapiper.com<mailto:denise.kraft@dlapiper.com>>; Moore, David E. <dmoore@potteranderson.com<mailto:dmoore@potteranderson.com>>
Cc: Karen Gibbs <karengibbslaw@gmail.com<mailto:karengibbslaw@gmail.com>>; 'Lyon, H. Mark' <MLyon@gibsondunn.com<mailto:MLyon@gibsondunn.com>>; 'Hsin, Y. Ernest' <EHsin@gibsondunn.com<mailto:EHsin@gibsondunn.com>>; Biggs, Brian <Brian.Biggs@dlapiper.com<mailto:Brian.Biggs@dlapiper.com>>; Christofferson, Eric <Eric.Christofferson@dlapiper.com<mailto:Eric.Christofferson@dlapiper.com>>; Ghassab, Yasmin <Yasmin.Ghassab@dlapiper.com<mailto:Yasmin.Ghassab@dlapiper.com>>
Subject: RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Open Issues

Michael:
This email responds to your email from yesterday afternoon.
Issue 1:  As the record demonstrates, Workspot took the allegations in your October 15th email very seriously, and promptly began its investigation into the matter.  As we have repeatedly told you, Workspot's investigation, which includes both internal and third party analysis is still ongoing.  Instead of throwing out speculative claims, Workspot intends to conduct its investigation carefully and release its findings once they have been fully vetted.  Unfortunately, Citrix's selective withholding of information it obtained has prejudiced Workspot's ability to investigate the issues.  So any purported delay is of Citrix's own making.  Specifically, regarding items 1-4 below, Workspot will respond once its investigation is complete.  Regarding item 5, why does Citrix believe it is entitled to that information?  First, it is unclear to us what relevance that has to Citrix's TRO motion.  Second, much of what Citrix seeks is privileged.
Issue 2: We are reviewing your follow-on questions and will respond.
Issue 3:  We confirm receipt of Citrix's redacted reply brief.
Issue 4: To be clear, our request is to provide Mr. Sinha with unredacted copies of all briefs, exhibits and supporting declarations associated with the TRO motion.  Workspot has been prejudiced by Citrix's refusal to allow our client to see the "threatening emails" that Citrix claims Workspot employee(s) allegedly sent.  We understand that Citrix is now willing to agree to this request if Workspot agrees to the two conditions set forth below.  Workspot is willing to agree to condition (1) and limit sharing of this information only with Amitabh Sinha.  However, please explain how condition 2 is tied to the merits of Workspot's request?  The parties agreed to table the redaction discussion until the TRO briefing is complete.  Thus, we believe the second condition is improper.

Issues 5 and 6:  Citrix's proposal for supplemental briefing is unacceptable, particularly given the amount of new material in Citrix reply brief, Citrix's continued withholding of relevant information, and the apparently incomplete nature of Citrix's own investigation.  Specifically, we have yet to receive any response from Citrix to Mark Lyon's Nov. 2nd email (attached hereto).  As previously stated, we have concerns that Citrix did not provide us with (and continues to withhold from us) all of the information it obtained from its investigation. We reiterate our request that you promptly (1) identify when Citrix began investigating whether the server associated with the Comcast IP address had accessed a Sharefile server, such as those used by Gibson Dunn and/or Potter Anderson, (2) when Citrix first learned of information that might indicate the server associated with the Comcast IP address had in fact done so, (3) whether, before filing Citrix's motion for TRO, anyone had inquired whether Mr. Henshall recognized the email or recalled sending the email in question to Mr. Hough, and (4) whether, after filing Citrix's motion for TRO, anyone has since made that inquiry to Mr. Henshall (and if so, when).  Given the information is in Citrix's possession, we expect a response without further delay. Moreover, with respect to Issue 6, my email to Brian should have said Guerrilla Mail (in reference to the October 23rd email) not ProtonMail.  Nonetheless, please confirm whether Citrix is planning to subpoena Digital Ocean, ProtonMail, and Guerilla Mail like it did the other third parties?  If so, when does it plan to issue the subpoenas?  If not, please explain immediately why Citrix appears intent on performing an incomplete investigation.

Workspot can agree that Citrix's three-page supplemental brief be due on November 19th.  However, in light of the outstanding issues described above for Issues 5 and 6, Workspot cannot agree to the timing or page limits suggested by Citrix for Workspot's surreply and the hearing on the TRO motion.  Workspot instead proposes that its surreply be limited to no more than seven pages (approximately half of the total number of pages in Citrix's reply and supplemental brief, both of which are based on new "evidence" not included in Citrix's TRO motion).  Workspot further proposes that, assuming Citrix can answer the questions posed in Mr. Lyon's email and also share with Workspot discovery obtained from Digital Ocean, ProtonMail and Guerilla Mail by the week of December 3rd, then Workspot will file its surreply by December 17th.   This also assumes that Mr. Sinha is permitted to see Citrix's unredacted Reply brief and the "threatening emails," and that the issue of Workspot's request for emails to and from Messrs. Henshall and Hough are resolved by the Court (which we have no reason to believe will not occur in the timeframe we suggest).  In short, we believe that the Court should have at its disposal all relevant information from both parties' investigations prior to deciding Citrix's TRO motion.  If Citrix disagrees with this fundamental principle, please explain why.


Regards,
Bindu

From: Strapp, Michael G. [mailto:Michael.Strapp@dlapiper.com]
Sent: Wednesday, November 14, 2018 1:58 PM
To: Palapura, Bindu A. <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Kraft, Denise <denise.kraft@dlapiper.com<mailto:denise.kraft@dlapiper.com>>; Moore, David E. <dmoore@potteranderson.com<mailto:dmoore@potteranderson.com>>
Cc: Karen Gibbs <karengibbslaw@gmail.com<mailto:karengibbslaw@gmail.com>>; 'Lyon, H. Mark' <MLyon@gibsondunn.com<mailto:MLyon@gibsondunn.com>>; 'Hsin, Y. Ernest' <EHsin@gibsondunn.com<mailto:EHsin@gibsondunn.com>>; Biggs, Brian <Brian.Biggs@dlapiper.com<mailto:Brian.Biggs@dlapiper.com>>; Christofferson, Eric <Eric.Christofferson@dlapiper.com<mailto:Eric.Christofferson@dlapiper.com>>; Ghassab, Yasmin <Yasmin.Ghassab@dlapiper.com<mailto:Yasmin.Ghassab@dlapiper.com>>
Subject: [EXT] RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Open Issues

Bindu,

I write concerning several open issues in connection with Citrix's TRO motion.

First, in my October 15 email, we requested the following from Workspot:

1.      The identity of Workspot employees (including in-house counsel), or any other individuals associated with, or acting on behalf of Workspot that have been provided any Citrix confidential material or information produced in this case, including the identify of Workspot employees that have received access (or obtained without authorization access) to any databases, fileshares, or document repositories containing any Citrix confidential material.

2.      The identity of any Workspot employees, or any other individuals associated with, or acting on behalf of Workspot, who have sent any emails to David Henshall or Juan Rivera in the last two weeks from any email account.

3.      The identity of any Workspot employees, or any other individuals associated with, or acting on behalf of Workspot, who have posted information to PasteBin.com<http://PasteBin.com> or TheLayoff.com<http://TheLayoff.com> in the last two weeks.

4.      The identity of any Workspot employees, or any other individuals associated with, or acting on behalf of Workspot (or on behalf of any individual associated with Workspot), who have accessed, or who own any devices associated with the following IP addresses:  98.207.108.220<http://98.207.108.220> (Comcast service subscriber, located in Fremont, California); and 104.46.110.21<http://104.46.110.21> (Microsoft Azure user, Boydton, Virginia).

5.      Confirmation that counsel has fully informed and reviewed with Workspot's full Board of Directors and the representatives of Workspot's venture capital investors this situation, the gravity of a violation of the Court's Protective Order, and that potential that this implicates criminal conduct.

Nearly a month later, we have not yet received a definitive response as to whether Workspot will provide any of this information.  Please get back to us without any further delay.

Second, as mentioned in my email to you yesterday, the information you provided regarding the Gibson Dunn and Potter Anderson ShareFile accounts raises several questions.  Please provide a response to each of the questions detailed in my email below.

Third, you have requested a redacted version of the TRO Reply brief to share with Workspot.  A redacted version of the brief is attached.  Please understand that this version of the brief is solely provided to you to share with your client.  This is not to be shared or distributed outside of Workspot.  Also, please note that this version of the brief is not necessarily the same version we agree should be e-filed with the Court.

Fourth, you have requested "that Citrix agree that Amitabh Sinha, Workspot's CEO, be able to view the Guerrilla Mail emails that were sent to Henshall and Rivera, as well as the email from Henshall to Hough that was posted to pastebin."  Citrix will agree to this request on two conditions:  (1) Workspot must agree in advance in writing that this information will be shared only with Amitabh Sinha; and (2) Workspot must agree in advance that the parties will jointly request that the exhibits to the TRO pleadings that correspond to this information remain under seal.

Fifth, Citrix proposes the following briefing and hearing schedule for the TRO Motion:

·       Citrix will file a supplemental brief no longer than three pages this Monday, November 19;

·       Workspot will file a sur-reply brief no longer than four pages on Monday, November 26;

·       The parties will jointly request that the hearing be scheduled for a date no later than Wednesday, December 12.

Sixth, in your email to Brian last night, you write that an IP Address associated with emails sent using ProtonMail belongs to Digital Ocean.  That is incorrect.  As noted in Citrix's filings, it has been unable to ascertain an IP Address associated with the emails sent using ProtonMail.

Regards,

Michael

Michael Strapp
Partner

T +1 617.406.6031
F +1 617.406.6100
M +1 917.518.3828
E michael.strapp@dlapiper.com <mailto:michael.strapp@dlapiper.com>

[DLA Piper Logo]

DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
United States
www.dlapiper.com <http://www.dlapiper.com>

From: Strapp, Michael G.
Sent: Tuesday, November 13, 2018 5:12 PM
To: 'Palapura, Bindu A.' <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Kraft, Denise <denise.kraft@dlapiper.com<mailto:denise.kraft@dlapiper.com>>; Moore, David E. <dmoore@potteranderson.com<mailto:dmoore@potteranderson.com>>
Cc: Karen Gibbs <karengibbslaw@gmail.com<mailto:karengibbslaw@gmail.com>>; 'Lyon, H. Mark' <MLyon@gibsondunn.com<mailto:MLyon@gibsondunn.com>>; 'Hsin, Y. Ernest' <EHsin@gibsondunn.com<mailto:EHsin@gibsondunn.com>>; Biggs, Brian <Brian.Biggs@dlapiper.com<mailto:Brian.Biggs@dlapiper.com>>; Christofferson, Eric <Eric.Christofferson@dlapiper.com<mailto:Eric.Christofferson@dlapiper.com>>; Ghassab, Yasmin <Yasmin.Ghassab@dlapiper.com<mailto:Yasmin.Ghassab@dlapiper.com>>
Subject: RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Microsoft Subpoena

Bindu,

Thank you for the information you've provided below.  There are a few points, however, that remain unclear based on your response.

We requested information about the individual who accessed the Potter Anderson ShareFile accounts on certain dates and times.  In response, you write that Potter Anderson generated a Report, but that the Report "does not reflect that the IP address in question (98.207.108.220<http://98.207.108.220>) accessed  Potter Anderson's Citrix Sharefile during this timeframe."  Is there any reason that you did not respond directly to Denise's question about whether any particular individual accessed the Potter Anderson ShareFile?  Is this information that you are willing to provide?

On a related point, with respect to the Potter Anderson ShareFile, your email below indicates that you investigated whether the IP address in question (98.207.108.220; the "Fremont IP Address") accessed the ShareFile account.  With respect to the Gibson Dunn ShareFile, however, your email indicates that you investigated whether Puneet Chawla accessed the ShareFile account.  Is the fact that you seem to use the Fremont IP Address and Puneet Chawla interchangeably in your email because you have confirmed that the home address of the Comcast subscriber associated with the Fremont IP Address is Puneet Chawla's home address? If so, when did you confirm this fact?

Finally, as noted in the McSweeney Declaration at paragraphs 11-12, Citrix's internal investigation indicates that while an actor associated with the Fremont IP Address "accessed" the Potter Anderson and Gibson Dunn ShareFile accounts, that actor logged-in to the Gibson Dunn ShareFile account, but not the Potter Anderson ShareFile account.  To that end, could you please confirm whether any individual accessed the Potter Anderson ShareFile on the dates and times in question (regardless of whether that access was associated with an actual login to the ShareFile account).

Regards,

Michael




Michael Strapp
Partner

T +1 617.406.6031
F +1 617.406.6100
M +1 917.518.3828
E michael.strapp@dlapiper.com <mailto:michael.strapp@dlapiper.com>

[DLA Piper Logo]

DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
United States
www.dlapiper.com <http://www.dlapiper.com>

From: Palapura, Bindu A. <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>
Sent: Monday, November 12, 2018 7:21 PM
To: Kraft, Denise <denise.kraft@dlapiper.com<mailto:denise.kraft@dlapiper.com>>; Moore, David E. <dmoore@potteranderson.com<mailto:dmoore@potteranderson.com>>
Cc: Karen Gibbs <karengibbslaw@gmail.com<mailto:karengibbslaw@gmail.com>>; 'Lyon, H. Mark'

<MLyon@gibsondunn.com><mailto:MLyon@gibsondunn.com>>; 'Hsin, Y. Ernest'
<EHsin@gibsondunn.com><mailto:EHsin@gibsondunn.com>>; Strapp, Michael G.
<Michael.Strapp@dlapiper.com><mailto:Michael.Strapp@dlapiper.com>>; Biggs, Brian
<Brian.Biggs@dlapiper.com><mailto:Brian.Biggs@dlapiper.com>>
Subject: RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Microsoft Subpoena

[EXTERNAL]
_____
Counsel:

Potter Anderson and Gibson Dunn conducted an investigation of their respective sharefile logs and provide the
following update:

Potter Anderson
Potter Anderson used the Administrative Console within the Potter Anderson Citrix Sharefile Subscription to
generate a Usage Report covering the relevant time period.  The Report does not reflect that the IP address in
question (98.207.108.220<http://98.207.108.220>) accessed  Potter Anderson's Citrix Sharefile during this
timeframe.

Gibson Dunn
Gibson Dunn used the Administrative Console within the Gibson Dunn Citrix ShareFile Subscription to
generate a Usage Report covering the relevant time period.  The Report does not reflect any accesses to Gibson
Dunn's ShareFile account at the specific dates/times listed in Citrix's request.  However, the Report indicates
that Puneet Chawla's login credentials were used to login to Gibson Dunn's Citrix ShareFile Subscription on
9/8/18 5:59:25 PM PT and on 9/9/18 at 4:39:13 PM PT.  The Report does not reflect any login around 5:21:43
pm PT on 9/9/18.

Regards,
Bindu

From: Palapura, Bindu A.
Sent: Thursday, November 08, 2018 9:58 AM
To: 'Kraft, Denise' <denise.kraft@dlapiper.com><mailto:denise.kraft@dlapiper.com>>; Moore, David E.
<dmoore@potteranderson.com><mailto:dmoore@potteranderson.com>>
Cc: Tarantino, Nicole M. <ntarantino@Potteranderson.com><mailto:ntarantino@Potteranderson.com>>; 'Lyon,
H. Mark' <MLyon@gibsondunn.com><mailto:MLyon@gibsondunn.com>>; Hsin, Y. Ernest
<EHsin@gibsondunn.com><mailto:EHsin@gibsondunn.com>>; Strapp, Michael G.
<Michael.Strapp@dlapiper.com><mailto:Michael.Strapp@dlapiper.com>>; Biggs, Brian
<Brian.Biggs@dlapiper.com><mailto:Brian.Biggs@dlapiper.com>>
Subject: RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Microsoft Subpoena

Denise:

Workspot has always been and remains willing to assist with investigating this issue.  However, that has been
made very difficult by Citrix's failure to be forthcoming with all information in its possession, as demonstrated
by the new information it its reply brief.  Nonetheless, we are willing to provide the Sharefile information
requested (i.e. "information about the individual who accessed the Gibson Dunn ShareFile account on 9.8.18 at
5:59:03 pm PDT, and 9.9.2018 at 4:38:50 pm and 5:21:43 pm PDT; and the individual who accessed the Potter
Anderson ShareFile account on 9.30.18 at 12:10:52 pm and 9:13:40 pm PDT"), to the extent that information is
available.  This should not be interpreted as agreement that Citrix's use of data relating to Gibson's and Potter's
use of ShareFile was proper.  But in the meantime, the law firms are investigating and will provide an update by

Monday.  Because Citrix's issue is now resolved, we will go ahead and file the discovery letter.

Regards,
Bindu

From: Kraft, Denise [mailto:denise.kraft@dlapiper.com]
Sent: Tuesday, November 06, 2018 6:09 PM
To: Palapura, Bindu A. <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Moore,
David E. <dmoore@potteranderson.com<mailto:dmoore@potteranderson.com>>
Cc: Tarantino, Nicole M. <ntarantino@Potteranderson.com<mailto:ntarantino@Potteranderson.com>>; 'Lyon,
H. Mark' <MLyon@gibsondunn.com<mailto:MLyon@gibsondunn.com>>; Hsin, Y. Ernest
<EHsin@gibsondunn.com<mailto:EHsin@gibsondunn.com>>; Strapp, Michael G.
<Michael.Strapp@dlapiper.com<mailto:Michael.Strapp@dlapiper.com>>; Biggs, Brian
<Brian.Biggs@dlapiper.com<mailto:Brian.Biggs@dlapiper.com>>
Subject: [EXT] RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Microsoft Subpoena

Bindu
The position Workspot is taking is unreasonable in unilaterally filing a discovery dispute letter while refusing to
agree to Citrix's request regarding a discovery dispute issue that has been raised and discussed for over 3 weeks
now.  Citrix has been raising the question of whether Workspot will assist with the investigation since at least
Oct 15.  That is significantly more time than the issue Workspot raised only days ago with regard to showing
confidential redacted material to Mr. Sinha at Workspot.

Whether Workspot will assist us is a yes or no answer with regard to both: (1) the overall investigation
(requested since Oct 15); and (2) the Sharefile information requested (which is actually a narrowing of the first
request on Oct 15 because it requests targeted information under the umbrella of the Oct 15 request for
assistance).

Please clarify if your email below means that Workspot and its counsel need to conduct the investigation before
you will answer our questions regarding whether you are willing to assist.

Further, with regard to timing, please indicate what amount of time Worskpot believes is required to respond in
a "timely fashion."

Thanks

Denise

From: Palapura, Bindu A. <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>
Sent: Tuesday, November 06, 2018 5:31 PM
To: Kraft, Denise <denise.kraft@dlapiper.com<mailto:denise.kraft@dlapiper.com>>; Moore, David E.
<dmoore@potteranderson.com<mailto:dmoore@potteranderson.com>>
Cc: Tarantino, Nicole M. <ntarantino@Potteranderson.com<mailto:ntarantino@Potteranderson.com>>; Strapp,
Michael G. <Michael.Strapp@dlapiper.com<mailto:Michael.Strapp@dlapiper.com>>; Biggs, Brian
<Brian.Biggs@dlapiper.com<mailto:Brian.Biggs@dlapiper.com>>; 'Lyon, H. Mark'
<MLyon@gibsondunn.com<mailto:MLyon@gibsondunn.com>>; Hsin, Y. Ernest
<EHsin@gibsondunn.com<mailto:EHsin@gibsondunn.com>>
Subject: RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Microsoft Subpoena

[EXTERNAL]

_____

Denise,

We do not agree that the issue you added is ripe.  In fact, our last correspondence to you addressed this issue as follows:

With regard to your request regarding Sharefile activity, we are investigating whether Citrix has breached its confidentiality and other obligations by accessing and using the information Citrix collects from Sharefile repositories established by counsel for Workspot in this litigation in a manner that is contractually prohibited.  We will consider your new requests for information regarding access to any Sharefile repositories and get back to you, but as you withheld that information until last Friday afternoon, we have not yet been able to fully investigate the situation.

As indicated, we are working through your issue, and plan to respond in a timely fashion.  If we reach an impasse on Citrix's letter, we will join in a joint submission on that issue.  There is no dispute, however, that our issue is ripe.  As such, we will file our proposed letter today.

Regards,
Bindu

From: Kraft, Denise [mailto:denise.kraft@dlapiper.com]
Sent: Tuesday, November 06, 2018 3:48 PM
To: Moore, David E. <dmoore@potteranderson.com<mailto:dmoore@potteranderson.com>>
Cc: Palapura, Bindu A. <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Tarantino, Nicole M. <ntarantino@Potteranderson.com<mailto:ntarantino@Potteranderson.com>>; Strapp, Michael G. <Michael.Strapp@dlapiper.com<mailto:Michael.Strapp@dlapiper.com>>; Brian.Biggs@dlapiper.com<mailto:Brian.Biggs@dlapiper.com>
Subject: [EXT] RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Microsoft Subpoena

Dave
Your wording is fine but we are adding Citrix's discovery issue that was again raised and discussed at the meet and confer on Nov 1, and which was followed-up by the attached email sent yesterday by Michael Strapp to Mark Lyons.  In particular, the below request contained in the email:

Citrix now, once again, requests that Workspot counsel provide Citrix with assistance in the ongoing investigation.  In particular, Citrix requests that Gibson Dunn and Potter Anderson, as sole administrators of their Citrix ShareFile accounts, provide Citrix with information about the individual who accessed the Gibson Dunn ShareFile account on 9.8.18 at 5:59:03 pm PDT, and 9.9.2018 at 4:38:50 and 5:21:43 pm PDT; and the individual who accessed the Potter Anderson ShareFile account on 9.30.18 at 12:10:52 and 9:13:40 pm PDT.

Workspot has failed to give assurances that Gibson Dunn and Potter Anderson, as sole administrators of their Citrix ShareFile accounts, is providing or willing to provide assistance to Citrix with regard to information about the individual who accessed the Gibson Dunn ShareFile account on 9.8.18 at 5:59:03 pm PDT, and 9.9.2018 at 4:38:50 pm and 5:21:43 pm PDT; and the individual who accessed the Potter Anderson ShareFile account on 9.30.18 at 12:10:52 pm and 9:13:40 pm PDT.

I have attached a redlined revised draft that raises the Citrix issue with the Court.

If the language is acceptable, then please accept Citrix's revisions and file.

Thanks

Denise

From: Moore, David E. <dmoore@potteranderson.com<mailto:dmoore@potteranderson.com>>
Sent: Tuesday, November 06, 2018 3:06 PM
To: Kraft, Denise <denise.kraft@dlapiper.com<mailto:denise.kraft@dlapiper.com>>; Biggs, Brian
<Brian.Biggs@dlapiper.com<mailto:Brian.Biggs@dlapiper.com>>
Cc: Palapura, Bindu A. <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Tarantino,
Nicole M. <ntarantino@Potteranderson.com<mailto:ntarantino@Potteranderson.com>>
Subject: RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Microsoft Subpoena

[EXTERNAL]
_____
Can we please get a response on this?  I believe all agreed the issue was ripe on the earlier call.

Dave

From: Moore, David E.
Sent: Tuesday, November 06, 2018 10:32 AM
To: denise.kraft <denise.kraft@dlapiper.com<mailto:denise.kraft@dlapiper.com>>;
Brian.Biggs@dlapiper.com<mailto:Brian.Biggs@dlapiper.com>
Cc: Palapura, Bindu A. <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Tarantino,
Nicole M. <ntarantino@Potteranderson.com<mailto:ntarantino@Potteranderson.com>>
Subject: RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Microsoft Subpoena

Denise, Brian

Checking back on this. We would like to get this on file today. Thanks.

Dave

From: Moore, David E.
Sent: Friday, November 02, 2018 3:22 PM
To: denise.kraft <denise.kraft@dlapiper.com<mailto:denise.kraft@dlapiper.com>>;
Brian.Biggs@dlapiper.com<mailto:Brian.Biggs@dlapiper.com>
Cc: Palapura, Bindu A. <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Tarantino,
Nicole M. <ntarantino@Potteranderson.com<mailto:ntarantino@Potteranderson.com>>
Subject: FW: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Microsoft Subpoena

I am writing with regard to the ripe discovery impasse referenced in Ernie's email below.  Please see the
attached letter requesting a discovery conference.  I am not certain who attended yesterday's meet and confer on
behalf of your side, so please feel free to edit.

Dave

From: Hsin, Y. Ernest [mailto:EHsin@gibsondunn.com]
Sent: Friday, November 02, 2018 12:30 PM
To: Strapp, Michael G. <Michael.Strapp@dlapiper.com<mailto:Michael.Strapp@dlapiper.com>>; Scott
Czerwonka <sczerwonka@wlblaw.com<mailto:sczerwonka@wlblaw.com>>; denise.kraft
<denise.kraft@dlapiper.com<mailto:denise.kraft@dlapiper.com>>; Palapura, Bindu A.

<bpalapura@potteranderson.com><mailto:bpalapura@potteranderson.com>>; Buroker, Brian M.
<BBuroker@gibsondunn.com><mailto:BBuroker@gibsondunn.com>>; Rho, Jennifer
<JRho@gibsondunn.com><mailto:JRho@gibsondunn.com>>; Lyon, H. Mark
<MLyon@gibsondunn.com><mailto:MLyon@gibsondunn.com>>; Moore, David E.
<dmoore@potteranderson.com><mailto:dmoore@potteranderson.com>>;
'karengibbslaw@gmail.com'<mailto:karengibbslaw@gmail.com>'
<karengibbslaw@gmail.com><mailto:karengibbslaw@gmail.com>>
Cc: Brian.Biggs@dlapiper.com<mailto:Brian.Biggs@dlapiper.com>>; Ghassab, Yasmin
<Yasmin.Ghassab@dlapiper.com><mailto:Yasmin.Ghassab@dlapiper.com>>; Christofferson, Eric
<Eric.Christofferson@dlapiper.com><mailto:Eric.Christofferson@dlapiper.com>>
Subject: [EXT] RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Microsoft Subpoena

Counsel,

This is to confirm that the parties agreed yesterday to table the issue of redactions of public versions of the briefs, declarations, and exhibits for Citrix's Motion for TRO and Workspot's Opposition until November 16th.  Citrix is preparing a draft stipulation to that effect.

In the meantime, however, in order for Workspot to be able to conduct a full investigation, we request that Citrix agree that Amitabh Sinha, Workspot's CEO, be able to view the Guerrilla Mail emails that were sent to Henshall and Rivera, as well as the email from ███████████████████████████.  Please let us know as soon as possible if Citrix agrees to this request.

Furthermore, with respect to the issue of discovery relating to the email from Henshall to Hough, Citrix represented yesterday for the first time that it has not yet been able to locate that email and is searching for it, but could not provide a date by which that search would be complete.  You represented, however, that Citrix will provide Workspot with results of Citrix's search as soon as possible.  In addition, you confirmed that the parties are at an impasse regarding Workspot's request that Citrix search for and produce communications to and from Henshall, Hough, and ██████████████████ that contain the words "Workspot" or ███████

Regards,

Ernie


Y. Ernest Hsin

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8224 • Fax +1 415.374.8436
EHsin@gibsondunn.com<mailto:EHsin@gibsondunn.com> •
www.gibsondunn.com<http://www.gibsondunn.com>



From: Strapp, Michael G. <Michael.Strapp@dlapiper.com<mailto:Michael.Strapp@dlapiper.com>>

Sent: Thursday, November 1, 2018 1:44 PM
To: Scott Czerwonka <sczerwonka@wlblaw.com><mailto:sczerwonka@wlblaw.com>>; Kraft, Denise
<denise.kraft@dlapiper.com><mailto:denise.kraft@dlapiper.com>>; [EXT] Palapura, Bindu
<bpalapura@potteranderson.com><mailto:bpalapura@potteranderson.com>>; Buroker, Brian M.
<BBuroker@gibsondunn.com><mailto:BBuroker@gibsondunn.com>>; Rho, Jennifer
<JRho@gibsondunn.com><mailto:JRho@gibsondunn.com>>; Hsin, Y. Ernest
<EHsin@gibsondunn.com><mailto:EHsin@gibsondunn.com>>; Lyon, H. Mark
<MLyon@gibsondunn.com><mailto:MLyon@gibsondunn.com>>; POTTERANDERSON:Dave Moore
<dmoore@potteranderson.com><mailto:dmoore@potteranderson.com>>;
'karengibbslaw@gmail.com<mailto:karengibbslaw@gmail.com>'
<karengibbslaw@gmail.com><mailto:karengibbslaw@gmail.com>>
Cc: Biggs, Brian <Brian.Biggs@dlapiper.com><mailto:Brian.Biggs@dlapiper.com>>; Ghassab, Yasmin
<Yasmin.Ghassab@dlapiper.com><mailto:Yasmin.Ghassab@dlapiper.com>>; Christofferson, Eric
<Eric.Christofferson@dlapiper.com><mailto:Eric.Christofferson@dlapiper.com>>
Subject: RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Microsoft Subpoena

[External Email]
Counsel,

With respect to our earlier discussion about the issue of confidentiality as it concerns Microsoft's subpoena
response, please note that Microsoft has requested in the cover letter to its response that the parties "accord the
information the highest level of confidentiality protection available under the compulsory process."

Regards,

Michael

Michael Strapp
Partner

T +1 617.406.6031
F +1 617.406.6100
M +1 917.518.3828
E michael.strapp@dlapiper.com <mailto:michael.strapp@dlapiper.com>

[DLA Piper Logo]

DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
United States
www.dlapiper.com <http://www.dlapiper.com>

From: Scott Czerwonka <sczerwonka@wlblaw.com><mailto:sczerwonka@wlblaw.com>>
Sent: Thursday, November 1, 2018 2:40 PM
To: Kraft, Denise <denise.kraft@dlapiper.com><mailto:denise.kraft@dlapiper.com>>; Palapura, Bindu A.
<bpalapura@potteranderson.com><mailto:bpalapura@potteranderson.com>>;
bburoker@gibsondunn.com<mailto:bburoker@gibsondunn.com>;
jrho@gibsondunn.com<mailto:jrho@gibsondunn.com>;
ehsin@gibsondunn.com<mailto:ehsin@gibsondunn.com>;
MLyon@gibsondunn.com<mailto:MLyon@gibsondunn.com>; Moore, David E.

<dmoore@potteranderson.com<mailto:dmoore@potteranderson.com>>
Cc: Strapp, Michael G. <Michael.Strapp@dlapiper.com<mailto:Michael.Strapp@dlapiper.com>>; Biggs, Brian
<Brian.Biggs@dlapiper.com<mailto:Brian.Biggs@dlapiper.com>>; Ghassab, Yasmin
<Yasmin.Ghassab@dlapiper.com<mailto:Yasmin.Ghassab@dlapiper.com>>
Subject: RE: Citrix v. Workspot, C.A. No. 1:18-cv-00588-LPS -- Microsoft Subpoena

[EXTERNAL]

_____
Counsel --  Please see attached letter and documents from Microsoft, which I received this afternoon.

Regards,
Scott

Scott B. Czerwonka
Wilks, Lukoff & Bracegirdle, LLC
4250 Lancaster Pike, Suite 200
Wilmington, DE  19805
(302) 230-5154


_____
This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you
have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then
delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to
any other person. Thank you for your cooperation.
* * *
To ensure compliance with Treasury Department regulations, we inform you that, unless otherwise indicated in
writing, any U.S. Federal tax advice contained in this communication (including any attachments) is not
intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal
Revenue Code or applicable state and local provisions or (2) promoting, marketing or recommending to another
party any tax-related matters addressed herein.
Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the
sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby
notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this
communication, or any of its contents, is strictly prohibited. If you have received this communication in error,
please reply to the sender and destroy all copies of the message. To contact us directly, send to
postmaster@dlapiper.com<mailto:postmaster@dlapiper.com>. Thank you.
_____
This message may contain confidential and privileged information. If it has been sent to you in error, please
reply to advise the sender of the error and then immediately delete this message.

_____
Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the
sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby
notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this
communication, or any of its contents, is strictly prohibited. If you have received this communication in error,
please reply to the sender and destroy all copies of the message. To contact us directly, send to
postmaster@dlapiper.com<mailto:postmaster@dlapiper.com>. Thank you.
Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com<mailto:postmaster@dlapiper.com>. Thank you.
Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com<mailto:postmaster@dlapiper.com>. Thank you.
Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com<mailto:postmaster@dlapiper.com>. Thank you.
Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com<mailto:postmaster@dlapiper.com>. Thank you.

# Exhibit H

| | |
|---|---|
| **From:** | Bill Portelli [bportelli@ceoquest.com] |
| **Sent:** | 12/19/2018 7:15:15 PM |
| **To:** | Amitabh Sinha [amitabh@workspot.com] |
| **Subject:** | Re: FW: TRO briefs to be shared with BOD |

thx

On Wed, Dec 19, 2018 at 11:14 AM Amitabh Sinha <amitabh@workspot.com> wrote:

**From:** "Hsin, Y. Ernest" <EHsin@gibsondunn.com>
**Date:** Tuesday, December 18, 2018 at 3:47 PM
**To:** Amitabh Sinha <amitabh@workspot.com>, Maryam Alexandrian <maryam.alexandrian@workspot.com>
**Cc:** Karen Gibbs <karen.gibbs@workspot.com>, "H. Lyon" <MLyon@gibsondunn.com>,
"POTTERANDERSON:Dave Moore" <dmoore@potteranderson.com>
**Subject:** TRO briefs to be shared with BOD

Amitabh and Maryam,

Best,

Ernie

**Y. Ernest Hsin**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8224 ▪ Fax +1 415.374.8436
EHsin@gibsondunn.com ▪ www.gibsondunn.com

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

--
**Bill Portelli**
Managing Director
CEO Quest
408-202-7396
bportelli@ceoquest.com

# Exhibit I



555 Capitol Mall, Suite 235 • Sacramento, CA 95814
Tel 916.449.2820 • Fax 916.449.2821

## [137-01] SUMMARY REPORT

Date:          March 6th, 2019

Subject:       [137-01] – Forensic Review for Chawla Workspot Devices; Forensic Review for
               Chawla Personal Devices – Summary Report

### Devices Examined

The following key identifies devices examined by Capitol Digital & Califorensics:

| Califorensics Evidence Number | Device Name in Protocol | Serial Number | Personal / Workspot | Keyword Responsive | Evidence of Wiping | Exhibit A Items Located |
|---|---|---|---|---|---|---|
| 137-01-01 | n/a (Apple MacBook Pro) | C2QPQ038G971 | Personal | False | True | False |
| 137-01-02 | Lenovo Laptop, Model Yoga 20344 | CB29371402 | Workspot | True | False | False |
| 137-01-03 | Leadtech Research Zero Client | L13050005887 | Workspot | n/a | n/a | n/a |
| 137-01-04 | 2018 MS Surface 2 | 034002583557 | Workspot | True | False | False |
| 137-01-05 | HTC cellphone, Model 0P6B120 One M8 | HT44LWM05416 | Workspot | True | False | False |
| 137-01-06 | Samsung Tablet, Model GT-P8110 Nexus 10 | R32CC01DR9L | Workspot | False | False | False |

*Privileged and Confidential Attorney Work Product*

<u>Files Produced</u>

The following key identifies files produced by Capitol Digital & Califorensics:

| Filename | Source | Description |
|---|---|---|
| **137-01_SummaryReport.pdf** | n/a | Summary of devices and files relating to this report production |
| **137-01_ExhibitA_SearchResults.xlsx** | n/a | Response to request for communications in Exhibit A |
| **137-01-01_Report.pdf** | 137-01-01 | Forensic report |
| **137-01-01_Oct9-16,2018.xlsx** | 137-01-01 | File listing of items within requested time range |
| **137-01-02_Report.pdf** | 137-01-02 | Forensic report |
| **137-01-02_KeywordFiles.xlsx** | 137-01-02 | File listing of items responsive to keywords |
| **137-01-02_KeywordFiles.zip** | 137-01-02 | Export of items responsive to keywords |
| **137-01-02_KeywordFiles_FailedExport.txt** | 137-01-02 | Log of keyword responsive items that errored on export |
| **137-01-03_Report.pdf** | 137-01-03 | Forensic report |
| **137-01-04_Report.pdf** | 137-01-04 | Forensic report |
| **137-01-04_KeywordFiles.xlsx** | 137-01-04 | File listing of items responsive to keywords |
| **137-01-04_KeywordFiles.zip** | 137-01-04 | Export of items responsive to keywords |
| **137-01-04_KeywordFiles_FailedExport.txt** | 137-01-04 | Log of keyword responsive items that errored on export |
| **137-01-04_Oct9-16,2018.xlsx** | 137-01-04 | File listing of items within requested time range |
| **137-01-05_Report.pdf** | 137-01-05 | Forensic report |
| **137-01-05_KeywordFiles.xlsx** | 137-01-05 | Report of items responsive to keywords |
| **137-01-06_Report.pdf** | 137-01-06 | Forensic report |

Exhibit J

# Workspot

EMPLOYEE HANDBOOK

DocuSign Envelope ID: 88B61A7B-C873-4051-B167-66742FCC57E4
Workspot

WELCOME ....................................................................................................................5
    Letter To The Employee ..................................................................................... 5
EMPLOYMENT POLICIES ............................................................................................6
    About This Handbook ........................................................................................ 6
    Employment Is At Will ........................................................................................ 6
    Open-Door Reporting Policy .............................................................................. 6
        Protection Against Retaliation.................................................................. 7
        Confidentiality and Safety ........................................................................ 7
    Equal Employment Practices ............................................................................. 8
        Equal Employment Opportunity ............................................................... 8
        Disabilities/Reasonable Accommodation Requests ................................ 8
        Unlawful Harassment and Discrimination are Prohibited ........................ 8
        Sexual Harassment Defined .................................................................... 8
        Additional Enforcement Information ......................................................... 9
    Workplace Violence ........................................................................................... 9
        Purpose and Scope ................................................................................. 9
        Definition of Workplace Violence ............................................................. 9
        No-Violence Policy................................................................................. 11
        What To Expect From The Company ...................................................... 11
    Search Policy ................................................................................................... 11
EMPLOYMENT PRACTICES AND PROCEDURES .....................................................12
    Employment Status .......................................................................................... 12
        Employee Classifications ....................................................................... 12
    Immigration Compliance ................................................................................... 12
    Job Duties ........................................................................................................ 12
    Overtime .......................................................................................................... 13
    Meal and Rest Periods ..................................................................................... 13
    Salary Pay Policy ............................................................................................. 13
    Performance Evaluations .................................................................................. 13
    Personnel Records ........................................................................................... 14
    Voluntary Terminations ..................................................................................... 14
    Reductions In Force ......................................................................................... 14
    Background Checks .......................................................................................... 14
STANDARDS OF CONDUCT .......................................................................................15
    Prohibited Conduct .......................................................................................... 15
    Off-Duty Conduct ............................................................................................. 15
    Drug And Alcohol Abuse .................................................................................. 16
        Prohibited Acts ...................................................................................... 16
        Testing Program .................................................................................... 16
    Punctuality And Attendance ............................................................................. 17
BUSINESS ETHICS .....................................................................................................18
    General Requirements ...................................................................................... 18
    Conflicts Of Interest ......................................................................................... 18
FACILITIES ..................................................................................................................20
    Use Of Equipment ........................................................................................... 20
    Internet And Electronic Mail Use ...................................................................... 20
        Acceptable Uses of the Internet............................................................. 21
        Unacceptable Use of the Internet .......................................................... 21

Employee Responsibilities ................................................................. 21
Computer And System Security .......................................................... 21
Use Of Social Media And Social Networking ............................................... 22
Personal Blogging ............................................................................ 22
Corporate Blogging .......................................................................... 22
Other General Guidelines ................................................................. 23
Employee Property ...................................................................................... 24
Security ....................................................................................................... 24
Solicitation/Distribution Of Literature ......................................................... 25
Telephone And Cellular Phone Use ............................................................ 25
Health And Safety ....................................................................................... 25
Communicable Diseases ............................................................................. 26
EMPLOYEE BENEFITS ................................................................................ 27
Suite of Employee Benefits ........................................................................ 27
Insurance Benefits ...................................................................................... 27
Disability Insurance ......................................................................... 27
Family Temporary Disability Insurance (Paid Family Leave Benefits) ........... 27
Unemployment Compensation ........................................................ 27
Social Security ................................................................................. 27
Workers' Compensation ................................................................... 28
Leaves Of Absence .................................................................................... 28
General Provisions .......................................................................... 28
Family And Medical Leave ............................................................... 28
Employee Eligibility ......................................................................... 29
Reasons for Leave ........................................................................... 29
Length of Leave ............................................................................... 29
Notice and Certification ................................................................... 30
Compensation During Leave ........................................................... 31
Benefits During Leave ..................................................................... 31
Reinstatement ................................................................................. 31
Pregnancy Disability Leave ........................................................................ 32
Leave Available ............................................................................... 32
Notice and Certification Requirements ............................................ 32
Compensation During Leave ........................................................... 32
Benefits During Leave ..................................................................... 32
Reinstatement ................................................................................. 32
Workers' Compensation Disability Leave .................................................... 33
Notice and Certification Requirements ............................................ 33
Compensation During Leave ........................................................... 33
Benefits During Leave ..................................................................... 33
Reinstatement ................................................................................. 33
Military Leave (Active and Reserve) ........................................................... 33
Other Time Off ............................................................................................ 34
Time Off For Family Members Of Military Personnel – Employers with 25 or More Employees .. 34
Organ and Bone Marrow Donor Leave ....................................................... 34
Voting Time Off ........................................................................................... 35
Time Off For Volunteer Firefighters, Reserve Peace Officers Or Emergency Rescue Personnel 35
Time Off For Parents' School Or Day Care Activities –  Employers of 25 or More Employees at One
Location ...................................................................................................... 35
Time Off For Adult Literacy Programs –  Employers of 25 or More Employees ........................... 35
Time Off For Domestic Violence Or Sexual Assault Victims ....................................... 36

Time Off For Crime Victims And Family Members Of Crime Victims ............................................ 36
Time Off for Civil Air Patrol Leave – Employers of 15 or More Employees................................... 37
Paid Time Off (PTO)..........................................................................................................................37
Holidays ............................................................................................................................................37

# WELCOME

### LETTER TO THE EMPLOYEE

Welcome to Workspot (hereinafter referred to as the "Company").  We are excited to have you as a member of our team because we believe you have the training, ability, experience and cultural fit to be of great value to our business.  We encourage you to continue to develop your talents and capabilities to the greatest extent, to broaden your experience, and to achieve your full potential in our organization.

This employee handbook contains information about the employment policies and practices of the Company.  We expect each employee to read this handbook carefully as it is a valuable reference for understanding your job and your new Company.  It was carefully developed to promote a safe and stimulating environment in which we can all share and progress.  It was designed with your best interests in mind.  In return, we hope you will help us grow and succeed by fully applying your talents and energies.

We believe that success cannot be achieved without clear and honest communication.  We'd like to highlight our Open-Door Reporting Policy and emphasize that we are always open to hearing your suggestions and concerns.  If you ever have a suggestion, question, or concern, please feel free to discuss it with your manager.  Throughout this handbook, we also reference Authorized Senior Officers of the Company with whom you may wish to discuss issues.  The Authorized Senior Officers are:  Amitabh Sinha and Puneet Chawla.  We encourage you to take the initiative to promote any change you feel is needed, since we all must work together to make this a world-class organization.

Welcome Aboard!

Amitabh Sinha
Chief Executive Officer

# EMPLOYMENT POLICIES

### ABOUT THIS HANDBOOK

This employee handbook contains information about the employment policies and practices of the Company. We expect each employee to read this handbook carefully as it is a valuable reference for understanding your job.  All previously issued handbooks and any inconsistent policy statements – oral or written – are superseded.

Except for the employment-at-will policy, the Company reserves the right to revise, delete or add to any and all policies, procedures, work rules or benefits stated in this handbook.  All such revisions, deletions or additions may be made at any time with or without notice, but they must be in writing and must be signed by an Authorized Senior Officer of the Company.  No oral statements or representations can change or alter the provisions of this handbook.

Not all Company policies and procedures are set forth in this handbook.  We have summarized only some of the more important ones.  If you have any questions or concerns about this handbook or any other policy or procedure, please ask your manager.

### EMPLOYMENT IS AT WILL

Employment at the Company is at will.  This means that employment may be terminated for any or no reason, with or without cause or notice, at any time by you or the Company.  Nothing in this handbook or in any other document or oral statement shall limit the right to terminate employment at will.

This employment-at-will policy may be revised, modified, deleted or superseded only by a written employment agreement signed by an Authorized Senior Officer of the Company, which expressly revises, modifies, deletes or supersedes the employment-at-will policy.  Unless your employment is covered by such a written signed employment agreement, this employment-at-will policy is the sole and entire agreement between you and the Company as to the duration of employment and the circumstances under which employment may be terminated.  Nothing in this employee handbook, or in any other personnel document, including benefit plan descriptions, creates, or is intended to create a contract, promise or representation of continued employment for any employee.  No manager has any authority to enter into a contract of employment – express or implied – with any employee.

With the exception of employment at will, all terms and conditions of employment with the Company may be modified at the sole discretion of the Company with or without cause or notice at any time.  No implied contract concerning any employment-related decision or term or condition of employment can be established by any other statement, conduct, policy or practice.  Examples of the types of terms and conditions of employment that are within the sole discretion of the Company include, but are not limited to, the following:  promotions; demotions; transfers; hiring decisions; compensation; benefits; qualifications; discipline; terminations; layoffs or recalls; rules; hours and schedules; work assignments; job duties and responsibilities; production standards; subcontracting; reduction, cessation, or expansion of operations; sale, relocation, merger, or consolidation of operations; determinations concerning the use of equipment, methods, or facilities; or any other terms and conditions.

### OPEN-DOOR REPORTING POLICY

At some time during your employment, you may have a matter regarding your employment that you wish to address such as a complaint, suggestion, or question about your job, your working conditions or the treatment you are receiving.  The Company has an Open-Door Reporting Policy by which we commit to making time to discuss any matter that is important to you.  This Open-Door Reporting Policy is also to be used to report any violation of the Company policies described in this document including minor violations as well as serious violations such as discrimination, workplace violence, retaliation and sexual harassment claims.  We commit

DocuSign Envelope ID: 88B61A7B-C873-4051-B16Z-66742FCC57E4

to ensure that the matter is handled delicately, professionally and with confidentiality that doesn't conflict with an investigation or with applicable regulation.  We ask that you please first bring any matter to our attention in order to address the matter and reach successful resolution internally.  Control of the matter and our options become limited once outside parties are involved.  We ask that you take your concerns first to your manager, following these steps:

- In a timely manner, preferably within a week of the occurrence, bring the situation to the attention of your manager, who will investigate and provide a solution or explanation.  Please report the occurrence with relevant details.

- If the problem is not resolved or you feel uncomfortable discussing it with your manager, you may put it in writing and present it to an Authorized Senior Officer of the Company, who will investigate and provide a solution or explanation.  It is recommended that you bring this matter to an Authorized Senior Officer of the Company as soon as possible after you believe that your manager has not resolved the matter.

We take all of your employee matters very seriously.  The Company's Open-Door Reporting Policy provides for a timely, thorough and objective investigation of any claim, appropriate disciplinary action against one found to have engaged in prohibited actions, and appropriate remedies if warranted under the circumstances.  Appropriate action will also be taken to deter any future violation of Company policies.  If a complaint is substantiated, appropriate disciplinary action, up to and including discharge, will be taken.

Failure to report policy violations (particularly serious violations such as any threats or acts of violence, discrimination or sexual harassment) is itself a violation of this policy, and may subject any employees involved to discipline up to and including discharge.

### PROTECTION AGAINST RETALIATION

The Company will not retaliate against any employee for filing a complaint and will not knowingly permit retaliation by management employees or coworkers.  The Company is particularly interested in doing what it can to prevent and correct incidents of unlawful discrimination, workplace violence and harassment.  Retaliation against anyone for reporting an actual or suspected violation of a policy in good faith will not be tolerated and will subject the individual engaging in the retaliation to discipline up to termination.  Appropriate action will also be taken to deter any future retaliation.  Applicable law also prohibits retaliation against any employee by another employee or by the Company for reporting, filing, testifying, assisting or participating in any manner in any investigation, proceeding or hearing conducted by the Company or a federal or state enforcement agency.  Please report any complaints about retaliation in accordance with the Company's Open-Door Reporting Policy.

Retaliation against any employee as a result of their bringing forward any questions, concerns or complaints about accounting or auditing matters, recording of information, record retention, or in any other manner concerning the honesty and integrity of the Company's operation is also strictly prohibited.  Please understand that by reporting these types of incidents to the Company, employees are assisting the Company to prevent and correct behavior that is inappropriate for the workplace.  Therefore, employees are expected to bring these types of issues and complaints to the Company's attention.

### CONFIDENTIALITY AND SAFETY

These provisions on the Open-Door Reporting Policy are intended to protect the safety and rights of all employees, and are in no way intended to infringe on an employee's privacy.  The primary goal of these guidelines is to encourage an open, ongoing dialogue with the affected employee, and those within the Company who need to know, so that the Company can take reasonable steps to protect workplace safety.  The Company's goal is to handle all situations with utmost sensitivity to the particular situation, while meeting the ultimate goal of protecting employees.  The Company will endeavor to protect the privacy and confidentiality of all parties involved to the extent possible consistent with a thorough investigation and applicable regulation.

**EQUAL EMPLOYMENT PRACTICES**

**EQUAL EMPLOYMENT OPPORTUNITY**

The Company is an equal opportunity employer and makes employment decisions on the basis of merit. In accordance with applicable law, the Company prohibits discrimination based on race, color, gender, religion, creed, sex, pregnancy, marital status, age, national origin or ancestry, physical or mental disability, medical condition, veteran status, sexual orientation, genetic information or characteristics or any other consideration protected by federal, state or local laws. All such discrimination is unlawful.

**DISABILITIES/REASONABLE ACCOMMODATION REQUESTS**

It is the policy of this Company to offer employment to qualified disabled people based solely on their ability to perform essential functions of the job. The Company will reasonably accommodate a qualified person's disability, in accordance with the Americans with Disabilities Act (ADA) and similar or equivalent state laws, as long as it does not cause undue hardship to the Company and/or does not pose a direct threat to the health and safety of individuals.

Any applicant or employee who requires an accommodation in order to perform the essential functions of the job should contact an Authorized Senior Officer and request such an accommodation. The individual with the disability should specify in writing what barriers or limitations make it difficult for him or her to perform the job. The Company will conduct an investigation regarding these barriers or limitations and will then identify possible accommodations, if any, that will help to eliminate the barrier(s) or limitation(s). If the accommodation is reasonable and will not impose an undue hardship on the Company and/or a direct threat to the health and/or safety of the individual or others, the Company will make the accommodation. The Company may also propose an alternative accommodation(s). The Company will also make reasonable accommodations for conditions related to pregnancy, childbirth or related medical conditions, if requested with the advice of the employee's health care provider, as required by law.

**UNLAWFUL HARASSMENT AND DISCRIMINATION ARE PROHIBITED**

The Company is committed to providing a work environment free of unlawful harassment and discrimination. Therefore, in accordance with applicable law, the Company prohibits harassment and discrimination because of race, color, sex or gender, national origin, ancestry, religion, creed, physical or mental disability, medical condition, marital status, sexual orientation, age, genetic information or any other basis protected by federal, state or local law. The Company also prohibits harassment or discrimination based upon the perception that a person has, or is associated with a person who has, any of these characteristics. The Company's policy prohibits harassment and discrimination of employees, applicants, and persons providing services pursuant to contract. The Company is committed to taking all reasonable steps to prevent harassment and discrimination from occurring.

Any Company employee, including any manager, who is found to have engaged in unlawful harassment or discrimination is subject to disciplinary action up to and including discharge from employment. An employee who engages in harassment or discrimination may be held personally liable for monetary damages. The Company will not pay damages assessed personally against an employee.

**SEXUAL HARASSMENT DEFINED**

Federal law defines sexual harassment as unwanted sexual advances, requests for sexual favors or visual, verbal or physical conduct of a sexual nature when: (1) submission to such conduct is made a term or condition of employment; or (2) submission to or rejection of such conduct is used as basis for employment decisions affecting the individual; or (3) such conduct has the purpose or effect of unreasonably interfering with an employee's work performance or creating an intimidating, hostile or offensive working environment.

Other applicable law defines sexual harassment as unwanted sexual advances or visual, verbal or physical conduct of a sexual nature. This definition includes many forms of offensive behavior. The following is a partial list:

– Unwanted sexual advances.

– Offering employment benefits in exchange for sexual favors.

– Making or threatening reprisals after a negative response to sexual advances.

– Visual conduct: leering, making sexual gestures, displaying sexually suggestive objects or pictures, cartoons, e-mails, websites or posters.

– Verbal and written conduct: making or using derogatory comments, e-mails, letters, epithets, slurs, sexually explicit jokes, comments about an employee's body or dress.

– Verbal sexual advances or propositions.

– Verbal abuse of a sexual nature, graphic verbal commentary about an individual's body, sexually degrading words to describe an individual, suggestive or obscene letters, notes or invitations.

– Physical conduct: touching, assaulting, impeding or blocking movements.

It is unlawful for males to sexually harass females or other males, and for females to sexually harass males or other females. Sexual harassment on the job is unlawful whether it involves coworker harassment, harassment by a manager, or by persons, including customers, clients, partners, or suppliers, doing business with or for the Company.

### ADDITIONAL ENFORCEMENT INFORMATION

In addition to the Company's internal complaint procedure (see the Company's Open-Door Reporting Policy), employees should also be aware that the federal Equal Employment Opportunity Commission (EEOC) and the state equivalent agency where the employee works (for example, in California, the California Department of Fair Employment and Housing) investigate and prosecute complaints of harassment or discrimination in employment. Employees who believe that they have been harassed or discriminated against may file a complaint with either of these agencies. The EEOC accepts complaints from employees regarding harassment and discrimination within 180 days of the incident. State agencies also accept complaints from employees. The amount of time for submitting a complaint to a state agency varies by state (for example, in California, a complaint is accepted for up to one year after the alleged incident of harassment or discrimination). Both the EEOC and the state equivalent agency in the state where the employee works serve as neutral fact finders and attempt to help the parties voluntarily resolve disputes. For more information, contact an Authorized Senior Officer. You may also contact the nearest office of the EEOC or state equivalent agency, as listed in the telephone directory.

## WORKPLACE VIOLENCE

### PURPOSE AND SCOPE

The Company is concerned about the well-being and personal safety of its employees and anyone doing business with the Company. Consequently, the Company strictly prohibits workplace violence. Acts of violence and/or threats of violence, whether expressed or implied toward individuals in the Company workplace, are prohibited and will not be tolerated. All reports of incidents will be taken seriously and will be addressed appropriately. This prohibition against threats and acts of violence (including domestic violence) applies to all persons involved in the operation of the Company, including but not limited to, the Company personnel, contract and temporary workers, and anyone else on the Company property.

### DEFINITION OF WORKPLACE VIOLENCE

Workplace violence is any conduct that is severe, offensive or intimidating enough to make an individual reasonably fear for his/her personal safety or the safety of family, friends or property. Examples of workplace

DocuSign Envelope ID: 88B61A7B-C873-4051-B16Z-66742FCC57E4

violence include, but are not limited to, threats or acts of violence or behavior that causes a reasonable fear or intimidation response that occurs:

– On Company premises, no matter what the relationship is between the Company and the perpetrator or victim of the behavior.

– Off Company premises, where the perpetrator is someone who is acting as an employee or representative of the Company at the time, where the victim is an employee who is exposed to the conduct because of work for the Company, or where there is a reasonable basis for believing that violence may occur against the targeted employee or others in the workplace.

Examples of conduct that may be considered threats or acts of violence under this policy include, but are not limited to the following:

– Threatening physical or aggressive contact directed toward another individual or engaging in behavior that causes a reasonable fear of such contact.

– Threatening an individual or his/her family, friends, associates or property with physical harm or behavior that causes a reasonable fear of such harm.

– Intentional destruction or threat of destruction of the Company's or another's property.

– Harassing or threatening physical, verbal, written or electronic communications, including verbal statements, phone calls, emails, letters, faxes, website materials, diagrams or drawings, gestures and any other form of communication that causes a reasonable fear or intimidation response in others.

– Stalking.  Stalking is defined as a pattern of conduct over a period of time, however short, which may make someone fearful and evidences a continuity of purpose and includes physical presence, telephone calls, emails and any other type of correspondence sent by any means.

– Veiled threats of physical harm or like intimidation or statements, in any form, that lead to a reasonable fear of harm or an intimidation response.

– Communicating an endorsement of the inappropriate use of firearms or weapons of any kind.

– Possession illegally, or while on Company premises, or at personally close proximity to yourself or to colleagues or to other business associates during Company business, or in any manner unwelcome to colleagues or to other business associates of weapons of any type, whether licensed or not, and particularly firearms.  The only exception is local, state, and federal law enforcement officers acting in the line of duty.

– Domestic violence. Domestic violence is defined as a pattern of coercive tactics carried out by an abuser against an intimate partner (the victim) with the goal of establishing and maintaining power and control over the victim.  Where the abuser's tactics include any of the above-described conduct on Company premises, this policy applies.  Where such tactics include any of the above-described behaviors off Company premises, this policy applies where the abuser is someone who is acting as an employee or representative of the Company at the time, where the victim is an employee who is exposed to the conduct because of work for the Company, or where there is a reasonable basis for believing that violence may occur against the victim or others in the workplace. The term "intimate partner" includes people who are legally married to each other, people who were once married to each other, people who have had a child together, people who live together or who have lived together, and people who have or have had a dating or sexual relationship, including same sex couples.

Workplace violence does not refer to occasional comments of a socially acceptable nature.  Such comments may include references to legitimate sporting activities, popular entertainment or current events.  Rather, it refers to behavior that is personally offensive, threatening or intimidating.

DocuSign Envelope ID: 88B61A7B-C873-4051-B16Z-66742FCC57E4

*Workspot*

### NO-VIOLENCE POLICY

Any employee who commits workplace violence will be subject to disciplinary action up to and including termination of employment and may also be subject to legal action, as appropriate.  Additionally, where an employee is convicted of a crime of violence or threat of violence under any criminal code provision, the Company reserves the right to determine whether the conduct involved may adversely affect the legitimate business interests of the Company, and may implement corrective action up to and including discharge as a result.  Any employee convicted of such a crime must report the conviction to the Company absent a court order to the contrary.  Failure to do so is a violation of this policy and subjects the employee to disciplinary action, including termination from employment.

### WHAT TO EXPECT FROM THE COMPANY

All incidents of violence and threats of violence that are reported will be taken seriously and investigated.  The Company will decide whether its workplace violence policy has been violated and whether preventive or corrective action is appropriate.  Any person who engages in a threat or violent action on Company property may be removed from the premises as quickly as safety permits and may be required, at the Company's discretion, to remain off Company premises pending the outcome of an investigation into the incident.

When threats are made or acts of violence are committed by a Company employee, a judgment will be made by the Company as to what actions are appropriate, including possible medical evaluation and/or possible disciplinary action.  Once a threat has been substantiated, the Company typically puts the threatmaker on notice that he/she will be held accountable for his/her actions and then follows through with the implementation of a decisive and appropriate response.

Under this policy, decisions may be needed to prevent a threat from being carried out, a violent act from occurring or a threatening situation from developing.  No existing Company policy or procedure should be interpreted in a manner that prevents the above from occurring.  On the contrary, the Company retains complete discretion to act according to the circumstances presented.

### SEARCH POLICY

The Company reserves the right to conduct workplace inspections, with or without notice, for purposes of enforcing all policies and complying with applicable law.  Any refusal to permit an inspection upon request will be subject to disciplinary action, up to and including termination of employment.  The discovery of any violation of any Company policy as a result of such a search will result in disciplinary action, up to and including termination of employment.  Any illegal activity discovered during an inspection is subject to referral to the appropriate law enforcement authorities.

In addition, in order to ensure the safety and security of employees and to protect the Company's legitimate business interests, the Company reserves the right to question and inspect or search any employee or other individual entering onto or leaving Company premises.  The inspection or search may include any packages or items that the individual may be carrying, including briefcases, handbags, knapsacks, shopping bags, etc. These items are subject to inspection and search at any time, with or without prior notice.  The Company will not tolerate any employee's refusal to submit to a search.

*Employee Handbook*                                                                                           *Rev:  August 2018*

# EMPLOYMENT PRACTICES AND PROCEDURES

**EMPLOYMENT STATUS**

**EMPLOYEE CLASSIFICATIONS**

Employees at the Company are classified as full-time non-exempt, part-time non-exempt, temporary, or exempt.

### Full-Time Non-Exempt Employees

Full-time non-exempt employees are those who are normally scheduled to work and who do work a schedule of 30 or more hours per week.  Full-time non-exempt employees are eligible for all employee benefits described in this handbook.

### Part-Time Nonexempt Employees

Part-time non-exempt employees are those who are scheduled to and do work less than 30 hours per week. Part-time non-exempt employees may be assigned a work schedule in advance or may work on an as needed basis.  Part-time non-exempt employees are not eligible for employee benefits, except as required by applicable law.

### Temporary Employees

Temporary employees are those who are employed for short-term assignments.  Short-term assignments will generally be periods of 6 months or less.  Temporary employees are not eligible for employee benefits, except as required by applicable law, and may be classified as exempt or non-exempt on the basis of job duties and compensation.

### Exempt Employees

Exempt employees are those whose job assignments meet the federal and state requirements for overtime exemption.  Exempt employees are compensated on a salary basis and are not eligible for overtime pay. Generally, executive, administrative, professional and certain sales employees are overtime exempt.  Exempt employees are eligible for all employee benefits described in this handbook.

**IMMIGRATION COMPLIANCE**

The Company will comply with applicable immigration law, including, but not limited to, the Immigration Reform and Control Act of 1986 and the Immigration Act of 1990.  As a condition of employment, every individual must provide satisfactory evidence of his or her identity and legal authority to work in the United States.

**JOB DUTIES**

Your manager will explain your job responsibilities and the standards which will be expected.  Because flexibility is necessary, your job responsibilities may change at any time during your employment.  One of the most important job duties of all Company employees is the expectation that you will maintain loyalty to the Company.  As part of your job, you are expected to perform all duties and assignments with the Company's legitimate business interests in mind.  You are also expected not to take any actions that would directly conflict with the Company's legitimate business interests.

In addition to your regularly assigned job responsibilities and duties, from time to time, you may be asked to work on special projects or to assist with other work important to the operation of your department or the

DocuSign Envelope ID: 88B61A7B-C873-4051-B167-66742FCC57E4

*Workspot*

Company.  Your cooperation and assistance in performing additional work is expected.  The Company reserves the right, at any time, with or without notice, to alter or change job responsibilities, reassign or transfer job positions, or assign additional job responsibilities.

### OVERTIME

As necessary, employees may be required to work overtime.  A manager must previously authorize all overtime work.  The Company provides compensation for all overtime hours worked by non-exempt employees in accordance with state and federal law.  Exempt employees are expected to work as much of each work day as is necessary to complete their job responsibilities.  No overtime or additional compensation is provided to exempt employees.  For overtime purposes, our work week begins at 12:01 a.m. on Sunday and ends at midnight on the Saturday of the same week.

### MEAL AND REST PERIODS

Non-exempt employees are assigned a work schedule by their manager, which includes meal and rest periods, as provided by applicable law.  As part of the work schedule, non-exempt employees will be provided with, and expected to take, an unpaid meal period of at least thirty (30) minutes.  This meal period is to be taken approximately in the middle of the non-exempt employee's workday.  Non-exempt employees are also provided with, and expected to take, paid ten (10) minute rest periods for each four hours of work or major portion thereof.  Rest periods are to be taken as near the middle of the four hour period as possible.  Managers will schedule non-exempt employees' meal and rest periods. If an employee's work day lasts beyond ten hours in one day, the Company will provide non-exempt employees with additional meal and rest period(s) as required by law.

Employees are expected to observe their assigned working hours and the time allowed for meal and rest periods.  Failure by non-exempt employees to take assigned meal and rest periods, without proper authorization by the employee's manager, will result in discipline.  Employees should remain on the premises during their ten minute rest periods.  Employees may leave the premises during their meal periods.  If employees are prevented from taking their off-duty meal or rest periods, they may utilize the Company's Open-Door Reporting Policy to notify management.

### SALARY PAY POLICY

In general, exempt employees will receive their salary for any week in which the employee performs any work.  However, an exempt employee's salary may be reduced in certain situations.  For example, an exempt employee's salary may be reduced for complete days of absence due to unpaid vacations, holiday or personal business, before sick leave benefits accrue or after they are exhausted, and incomplete initial and final weeks of work.  An exempt employee's salary will not be reduced due to partial weeks of work due to service as a juror, witness or in the military, or for lack of work.

This salary pay policy is intended to comply with the salary pay requirements of the Fair Labor Standards Act, as well as state law, and shall be construed in accordance with these laws.  Exempt employees are encouraged to bring any questions concerning their salary pay to an Authorized Senior Officer so that any inadvertent error can be corrected.

### PERFORMANCE EVALUATIONS

Your manager will periodically review your performance and discuss the review with you.  You will receive at least an annual performance evaluation.  The frequency of performance evaluations may vary depending upon, among other things, length of service, job position, past performance, changes in job duties or recurring performance problems.

Your performance evaluations will include a review of the quality and quantity of the work you perform, your knowledge of your job, your initiative, your work attitude and your attitude towards others.  The performance evaluation should help you become aware of the progress you are making, the areas in which you need to

DocuSign Envelope ID: 88B61A7B-C873-4051-B16Z-66742ECC57E4

*Workspot*

improve, and objectives or goals for future work performance.  Salary increases and promotions are solely within the discretion of the Company and depend upon many factors in addition to your individual performance.

## PERSONNEL RECORDS

The information recorded in the Company's personnel records is extremely important.  Please make sure that your personal data is accurate and up to date.  As an employee of the Company you may inspect your personnel file, as provided by law, in the presence of a Company representative at a mutually convenient time.  Copies of documents in your file may be made upon a written or oral request.  The Company will attempt to comply with your request within 21 days of you making it.  You may add your version of any disputed item to the file.

The Company will restrict disclosure of your personnel file to authorized individuals.  The Company will release relevant personnel file information to appropriate third parties such as attorneys, employee benefits providers, etc.  Disclosure of personnel information to other outside sources will be limited; however, the Company will cooperate with requests from authorized law enforcement or local, state or federal agencies conducting investigations.

Health/medical records are not included in your personnel file.  These records are confidential.  The Company will safeguard them from disclosure and will divulge such information only when legally appropriate or if granted by written permission by you the employee.

## VOLUNTARY TERMINATIONS

If you decide to leave your employment with the Company, we ask that you give us at least two weeks written notice.  We prefer and hope that you will give us more ample notice than two weeks.  We would appreciate this additional notice as this will give us the opportunity to make the necessary adjustments given the ensuing vacancy and ease with the transition.  All Company-owned property (e.g., computers, keys, passwords, identification badges, credit cards) must be returned at the time of termination.

## REDUCTIONS IN FORCE

While the Company hopes to continue growing and providing employment opportunities, changes in operations, the economy, business conditions, consumer demand and other factors can create a need to restructure or reduce the number of people employed.  If it becomes necessary to restructure our operations or reduce the number of employees, the Company will make efforts to provide as much advance notice as possible, so as to minimize the impact on those affected.  Employees subject to layoff will be informed of the nature of the layoff and the foreseeable duration of the layoff, whether short-term or indefinite, if possible.

## BACKGROUND CHECKS

The Company recognizes the importance of maintaining a safe workplace with employees who are honest, trustworthy, qualified, reliable, and nonviolent, and who do not present a risk of serious harm to their co-workers or others.  For purposes of furthering these concerns and interests, the Company reserves the right to investigate an individual's prior employment history, personal references, and educational background, as well as other relevant information.  Consistent with legal requirements, the Company also reserves the right to obtain and to review an applicant's or an employee's credit report, criminal history, and other relevant information, and to use such information when making employment decisions.

# STANDARDS OF CONDUCT

### PROHIBITED CONDUCT

The Company is committed to guarding employee security, personal safety, and welfare as well as Company assets and operations.  The following conduct is prohibited and will not be tolerated by the Company.  This list of prohibited conduct is illustrative only.  Other types of conduct deemed by the Company to be detrimental to security, personal safety, employee welfare and the Company's interests may also be prohibited.

- Falsification of employment records, employment information, or other Company records.
- Possessing, distributing, selling, transferring, using or being under the influence of alcohol, an illegal drug, or a controlled substance during work time.
- Theft, deliberate or careless damage of any Company property or the property of any employee.
- Removing or borrowing Company property without prior authorization.
- Unauthorized use of Company equipment, time, materials, or facilities.
- Taking, copying, or otherwise misusing Company information, including employment records and business records.
- Provoking a fight or fighting during working hours or on Company property.
- Participating in horseplay or practical jokes on Company time or on Company property.
- Bringing firearms or any other dangerous weapons or materials onto Company property at any time.
- Engaging in criminal conduct whether or not related to job performance.
- Insubordination, including but not limited to failure or refusal to obey the orders or instructions of a manager or member of management, or the use of abusive or threatening language toward a manager or member of management.
- Making false, vicious, profane or malicious statements toward or concerning the Company or any of its employees at any time during working hours or on Company property.
- Failure to notify a manager when unable to report to work.
- Unexcused absences and tardiness.
- Failure to obtain permission to leave work for any reason during normal working hours.
- Sleeping or malingering on the job.
- Working overtime without authorization or refusing to work assigned overtime.
- Wearing offensive, unprofessional or inappropriate styles of dress or hair while working.
- Violation of any safety, health, security or Company policy, rule, or procedure.
- Committing a fraudulent act or a breach of trust in any circumstances.

### OFF-DUTY CONDUCT

The Company will not take any adverse employment action against any employee for engaging in lawful conduct occurring during nonworking hours away from the Company's premises.  However, under certain circumstances, if an employee's personal conduct begins to adversely affect either his or her performance on the job, or begins to make it impossible for him or her to carry out any one or all of his or her job duties while at work, appropriate discipline up to and including discharge may be appropriate.  For this reason, you should be aware of the following policies.  Illegal off-duty conduct, which adversely affects the Company's legitimate business interests or your ability to perform your job, will not be tolerated.

DocuSign Envelope ID: 88B61A7B-C873-4051-B167-66742FCC57E4

*Workspot*

In accordance with the foregoing, the following types of outside employment are prohibited:

–   Employment which conflicts with your work schedule, duties and responsibilities or creates an actual conflict of interest.

–   Employment which impairs or has a detrimental effect on your work performance with the Company.

–   Employment which requires you to conduct work or related activities on Company property, during Company working hours or using Company facilities and/or equipment.

–   Employment which directly or indirectly competes with the business or the interests of the Company.

For the purposes of this policy, self-employment is considered outside employment.  If you wish to engage in outside employment which may create a conflict of interest, you must submit a detailed written request to an Authorized Senior Officer. If the request is authorized, the Company shall in no way assume any responsibility for your outside employment.  Specifically, the Company shall not provide workers' compensation coverage or any other benefit for injuries occurring from or arising out of such outside employment.  Authorization to engage in such outside employment can be revoked at any time.

### DRUG AND ALCOHOL ABUSE

The Company maintains zero tolerance for drug and alcohol abuse by its employees.  The use of any illegal drug intoxicants or controlled substances is strictly prohibited.  Illicit drug use and indiscriminate alcohol consumption puts everyone at risk and cannot be tolerated.  In keeping with our efforts to promote health and safety and protect the interests of our employees, clients, and the Company, we cannot allow anyone to use, possess, sell, manufacture, purchase, or be under the influence of alcohol, illegal drugs, intoxicants, or controlled substances at any time on Company premises, in Company vehicles, or while on Company business.  Furthermore, the involvement of employees in these activities off the job raises significant concerns for the Company and will be treated with equal severity.

### PROHIBITED ACTS

The Company strictly prohibits the following:

–   Possessing, using, or being under the influence of alcohol or an illegal drug, intoxicant, or controlled substance during working hours or while on Company business;

–   Driving a vehicle on Company business while under the influence of alcohol or an illegal drug, intoxicant, or controlled substance;

–   Distributing, selling, manufacturing, or purchasing of—or attempting to distribute, sell, manufacture, or purchase—an illegal drug, intoxicant, or controlled substance during working hours, while on Company business, or while on Company-owned or occupied premises;

–   Testing positive on a required or requested drug or alcohol test or screen;

–   Refusing either to take or to release information regarding a required or requested drug or alcohol test or screen;

–   Violating any Company rule or policy regarding alcohol and drug use.

#### TESTING PROGRAM

The Company may require drug and/or alcohol testing:

–   When required by a state or federal law or regulation.

–   After an offer of employment, but before the applicant commences employment.

–   When a reasonable suspicion exists that any employee is under the influence of any illegal drug, intoxicant, or controlled substance while on the job, or is otherwise in violation of this policy.

Reasonable suspicion means suspicion based on information regarding, among other things, the appearance, behavior, speech, attitude, mood, and/or breath odor of any employee.

– When any employee is found in possession of alcohol or any illegal drug, intoxicant, or controlled substance in violation of Company policy, or when any of those items are found in an area controlled or used by the employee, such as a desk or locker.

– When an accident, near-miss, or incident occurs in which safety precautions are violated or careless acts are performed, and a reasonable suspicion exists that the employee involved is under the influence of alcohol or any illegal drug, intoxicant, or controlled substance.

– After any employee has participated in a rehabilitation program.

The testing required by the Company will involve an initial screening test. If that test result is positive, the positive result will be confirmed using a different testing methodology. The test results will be kept as confidential as possible.

Employees suspected of possessing alcohol, illegal drugs, intoxicants, or controlled substances are subject to inspection and search, with or without notice. Employees' personal belongings, including any bags, purses, briefcases, and clothing, and all Company property, are also subject to inspection and search, with or without notice. Employees who violate this policy or who are suspected of violating this policy (as determined at the Company's discretion) will be removed from the workplace immediately and will be subject to disciplinary action. The Company may also bring the matter to the attention of appropriate law enforcement authorities. Any conviction for criminal conduct involving illegal drugs, intoxicants, or controlled substances, whether on or off duty, or any violation of the Company's drug abuse policy, may lead to disciplinary action, up to and including employment termination.

An employee's conviction on a charge of sale, distribution, manufacturing—or attempted sale, distribution, or manufacturing—or possession of any controlled substance while off Company property will not be tolerated because that conduct, even though off duty, reflects adversely on the Company. In addition to reflecting adversely on the Company, the Company must keep people who are involved with illegal drugs, intoxicants, and controlled substances off premises owned or occupied by the Company in order to keep those substances off the premises.

The use of prescription drugs and/or over-the-counter drugs may also affect an employee's job performance and seriously impair that employee's value to the Company. Any employee who is using prescription or over-the-counter drugs that may impair his or her ability to safely perform the job or may affect the safety or well being of others must submit a physician's statement that the prescription drug use will not affect job safety. The employee is not required to identify the medication or the underlying illness.

## PUNCTUALITY AND ATTENDANCE

The Company considers regular and timely attendance as an essential function of all jobs at the Company. As an employee of the Company you are expected to be regular in attendance and punctual. Any tardiness or absence can cause problems for your fellow employees and your manager. When you are absent, others may have to perform your workload, just as you must assume the workload of others who are absent.

Employees are expected to report to work as scheduled, on time and prepared to start work. Employees are also expected to remain at work for their entire work schedule, except for meal periods or when required to leave on authorized Company business. Late arrival, early departure or other absences from scheduled hours are disruptive and must be avoided. Excessive absenteeism or tardiness may lead to disciplinary action, up to and including termination of employment. The Company has complete discretion to determine when absences or tardies are excessive and what, if any, disciplinary action to take. If you fail to report for work without any notification to your manager, you may be considered to have abandoned your employment with the Company.

# BUSINESS ETHICS

The Company expects all officers, directors and employees to exercise the highest degree of professional business ethics in all actions they undertake on behalf of the Company.  In furtherance of that objective, the Company expects its officers, directors and employees to act in accordance with the policies herein at all times.

### GENERAL REQUIREMENTS

– The Company and its employees shall comply with all applicable legal requirements of the United States and each state or foreign country in which the Company conducts its business.

– The use of assets of the Company for any unlawful or improper purpose is strictly prohibited.

– No undisclosed or unrecorded fund or asset of the Company shall be established or maintained for any purpose.

– No false or misleading entries shall be made for any reason in the books, records or any financial documents of the Company, or any materials prepared for or submitted to its accountants or independent auditors, and no employee shall engage in any arrangement that results in such prohibited act.  In addition, all employees dealing with or providing information or documentation to the Company's accountants or auditors must provide complete and accurate information to the accountants or auditors and must immediately report any request, suggestion or threat that they do otherwise to an Authorized Senior Officer.

– No payment on behalf of the Company shall be approved without adequate supporting documentation, or made with the intention or understanding that any part of such payment is to be used for any purpose other than that described by the documents supporting the payment.

– We expect employees to display utmost integrity in anything they write, whether for internal or external use.  As a result, all internal records, records, memoranda and other documents must be accurate, complete and truthful and must be maintained in that condition without any alteration, covering up, falsification or other change which would mislead someone reviewing the record about its original contents or meaning.  Any employee who is asked or directed to engage in such prohibited conduct should report the issue immediately to an Authorized Senior Officer.

– No confidential information concerning the Company shall be used or revealed within or outside the Company without proper authorization and purpose.

– The use of Company employees, materials or equipment for personal purposes is prohibited, unless specifically authorized.

– Compliance with established internal control procedures is required at all times.

### CONFLICTS OF INTEREST

The Company expects the undivided loyalty of its employees in the conduct of Company business.  It is important that employees be free from any financial interests or other relationships that might conflict with the best interests of the Company.  Accordingly, each employee shall avoid any investment or other interest in another business which would directly conflict with the proper performance of his/her duties or responsibilities for the Company, or which might interfere with his/her independence of judgment with respect to transactions between the Company and such other business

If an employee finds that he or she has, or is considering the assumption of, a financial interest or outside relationship which might involve a conflict of interest, or if the employee is in doubt as to the proper application of this policy, he or she should promptly make all the facts known to an Authorized Senior Officer and refrain from any exercise of responsibility in any manner which might reasonably be considered to be affected by any adverse interest.

DocuSign Envelope ID: 88B61A7B-C873-4051-B167-66742FCC57E4

# FACILITIES

### USE OF EQUIPMENT

All Company property—including desks, storage areas, work areas, lockers, file cabinets, computer systems, office telephones, cellular telephones, modems, facsimile machines, duplicating machines, and vehicles— must be used properly and maintained in good working order.  Employees who lose, steal, or misuse Company property may be personally liable for replacing or fixing the item and may be subject to discipline, up to and including discharge.

The Company reserves the right, at all times and without prior notice, to inspect and search all Company property for the purpose of determining whether this policy or any other policy of has been violated, or when an inspection and investigation is necessary for purposes of promoting safety in the workplace or compliance with state and federal laws.  These inspections may be conducted during or outside of business hours and in the presence or absence of the employee.

The Company's technical resources, such as its computer system, voice mail system, and e-mail, are provided for use in the pursuit of Company business and are to be reviewed, monitored, and used only in that pursuit, except as provided in this policy.  As a result, computer data, voice mail messages, and email transmissions are readily available to numerous persons.  If, during the course of your employment, you perform or transmit work on Company computer systems or other technical resources, your work may be subject to the investigation, search, and review of others in accordance with this policy.  In addition, any electronically stored communications that you either send to or receive from others may be retrieved and reviewed when doing so serves the legitimate business interests and obligations of the Company.

Employees are otherwise permitted to use Company equipment for occasional, non-work purposes with permission from their manager.  Nevertheless, employees have no right of privacy as to any information or file maintained in or on Company property or transmitted or stored through Company computer systems, voice mail, e-mail, or other technical resources.  All bills and other documentation related to the use of Company equipment or property are the property of the Company and may be reviewed and used for purposes that the Company considers appropriate.

Employees may access only files or programs, whether computerized or not, that they have permission to enter.  Computer software is protected from unauthorized copying and use by federal and state law; unauthorized copying or use of computer software exposes both the Company and the individual employee to substantial fines and/or imprisonment.  Therefore, employees may not load personal software onto the Company's computer system without approval by an Authorized Senior Officer or the most senior manager of the Company's internal information technology operations, and may not copy software from the Company for personal use.  Unauthorized review, duplication, dissemination, removal, installation, damage, or alteration of files, passwords, computer systems or programs, or other property of the Company, or improper use of information obtained by unauthorized means, may be grounds for disciplinary action up to and including discharge.

Messages stored and/or transmitted by Company voice mail or Company e-mail must not contain content that may reasonably be considered offensive or disruptive to any employee.  Offensive content would include, but not be limited to, sexual comments or images, racial slurs, gender-specific comments or any comments or images that would offend someone on the basis of his or her age, sexual orientation, religious or political beliefs, national origin, or disability.

### INTERNET AND ELECTRONIC MAIL USE

Internet, World Wide Web, and Intranet access has been provided to Company employees for the benefit of the Company's business interests.  This access enables employees to connect to information and other resources around the world.  All employees are required to maintain and enhance the Company's public

DocuSign Envelope ID: 88B61A7B-C873-4051-B167-66742FCC57E4

image, and to use these resources in a productive manner in accordance with the following guidelines. Violations of any guidelines listed above may result in disciplinary action up to and including termination. In addition, the Company may advise appropriate legal officials of any illegal violations.

### ACCEPTABLE USES OF THE INTERNET

Employees accessing the Internet, World Wide Web and/or the Company's own Intranet are representing the Company when doing so. Accordingly, all such communications should be for professional, business reasons and should not be for personal use. Each employee is responsible for ensuring that they use their Internet access privilege in an effective, ethical and lawful manner. Online forums may be used to conduct official Company business, or to gain technical or analytical advice. Electronic mail may be used for non-confidential business contacts.

### UNACCEPTABLE USE OF THE INTERNET

The Internet, World Wide Web and/or the Company's Intranet should not be used for personal gain or advancement of individual views. Solicitation of non-Company business, or any use of the Internet for personal gain, is strictly prohibited. Use of the Internet must not disrupt the operation of the Company network or the networks of other users, and must not interfere with an employee's productivity. Copyrighted materials belonging to entities other than this Company may not be transmitted by employees on the Internet. Employees are not permitted to copy, transfer, rename, add or delete information or programs belonging to other users unless given express permission to do so by the owner of such information or programs. Failure to observe copyright or license agreements may result in disciplinary action from the Company or legal action by the copyright owner.

Employees should be aware that harassment of any kind is prohibited. No messages with derogatory or inflammatory remarks about an individual or group's age, disability, gender, race, religion, national origin, physical attributes, sexual preference or any other classification protected by federal, state or local law will be transmitted.

### EMPLOYEE RESPONSIBILITIES

Employees will be given an electronic mail password when granted access to the Internet or the Company's electronic mail system. Employees may change these passwords from time to time, however, all passwords must be made known to the Company. Because your system may need to be accessed by the Company when you are absent, the IT administrator will further be able to access all Company computer equipment, electronic mail and Internet accounts.

Each employee is responsible for the content of all text, audio or images that they place or send over the Internet. All messages communicated on the Internet should have your name attached. No messages will be transmitted under an assumed name. Employees or other users may not attempt to obscure the origin of any message. Employees who wish to express personal opinions on the Internet are encouraged to obtain their own user names on other Internet systems.

To prevent computer viruses from being transmitted through the system, employees must exercise strong caution when downloading any software onto their computer or any drive in that computer, and must consult an Authorized Senior Officer or the most senior manager of the Company's internal information technology operations should there be any question of what is proper conduct in this regard.

### COMPUTER AND SYSTEM SECURITY

All computers and the data stored on them are and remain at all times the property of the Company. As such, all messages created, sent or retrieved over the Internet or the Company's electronic mail system are the property of the Company, and should be considered public information. The Company reserves the right to retrieve and read any message composed, sent, or received on the Company's computer equipment and electronic mail system. Employees should be aware that, even when a message is deleted or erased, it is

DocuSign Envelope ID: 88B61A7B-C873-4051-B167-66742FCC57E4

*Workspot*

still possible to recreate the message; therefore, ultimate privacy of a message cannot be ensured to anyone. Accordingly, Internet and electronic mail messages are public communication and are not private. Furthermore, all communications including text and images can be disclosed to law enforcement or other third parties without prior consent of the sender or the receiver.

### USE OF SOCIAL MEDIA AND SOCIAL NETWORKING

The Company understands that some employees may wish to post writings, audio or video files, or other content to wikis, blogs, social networking sites, or elsewhere on the internet. While the Company respects employees' rights to personal expression, internet postings can affect the Company. Even "personal" postings, depending on the content, can affect the Company and its reputation. Therefore, the Company has expectations of any employee who posts on the internet to act with professional discretion.

#### PERSONAL BLOGGING

The Company understands that some employees may wish to create and maintain personal web logs or "blogs" or otherwise post on Facebook, Twitter and elsewhere on the internet, and/or post comments and content on the internal website. While the Company respects your right to personal expression, and views your postings on the internet as your personal project, you must also understand that your personal postings could adversely affect the Company. Therefore, you must follow these guidelines when engaging in such activity:

- Personal Expression. Personal postings contain the views of a particular employee, not the Company; however, readers may not immediately appreciate this concept. If you choose to discuss the Company, your employment or the industry in any way, you must identify yourself as a Company employee and make it clear that the views expressed are your personal views and do not necessarily reflect the views of the Company.

- Protect Our Brand and Our Customers. As part of protecting the Company, please ensure that you do not post photos of company documents, white boards of brainstorming sessions, or other sensitive materials. In addition, do not post any materials that unlawfully defame or disparage the Company, co-workers, customers, clients, or others. In fact, you must not reference the customers/clients we work with in any manner, whether positive or negative. It is essential that we respect their privacy. As far as your co-workers, please do not reference or post video or audio files of coworkers or discuss other co-workers' personal information without their approval; they may prefer to keep a low profile. In short, respect everyone's privacy rights. Once again, it is all about judgment. We respect employee's freedom of expression. Just think about the consequences of what is posted.

- Company Time and Company Equipment. Comply with the Use of Equipment and Internet and Electronic Mail Use policies while using Company equipment and/or systems.

#### CORPORATE BLOGGING

Corporate blogging is publicly posting information at the Company's direction to blogs or other internet sites maintained or owned by the Company and which may or may not be available to the public, or blogging to other sites as a Company representative. Some employees may be provided the opportunity to blog on behalf of the Company. Any corporate blogging must be within the following guidelines:

- Authorization. Only employees who have received prior approval from the Authorized Senior Officer(s) listed in this handbook may post corporate blogging content.

- Personal Expression. Even though authorized bloggers are blogging at the direction of the Company, the Company wishes to maintain a level of separation between views of

the authorized blogger and the official views of the Company. Therefore, not only must the authorized blogger disclose that he or she is employed by the Company, he or she should always include a disclaimer explaining that the views expressed in the corporate blogging content do not necessarily reflect the views of the Company.

- Posting Review/Approval. The process for reviewing corporate blogging content of a particular posting, including whether review and approval is necessary, will depend on the nature of the posting. Typically, postings by an authorized blogger to a blog owned or maintained by the Company will not require prior review and approval. However, the Company encourages authorized bloggers to seek the guidance of the Authorized Senior Officer(s) listed in this handbook should they have any questions about the propriety of any portion of an intended posting. Typically, for postings to blogs not owned or maintained by the Company, the opportunity must be screened and approved by the Authorized Senior Officer(s) listed in this handbook. If an opportunity is accepted, the content of the posting must also be reviewed and approved by the Authorized Senior Officer(s) listed in this handbook.

- Ownership. By posting as an authorized blogger, an employee acknowledges and agrees that all corporate blogging content will be the sole and exclusive property of the Company, and the employee assigns to the Company all of the employee's right, title and interest in and to all corporate blogging content, including all intellectual property rights therein. At the Company's request, the employee will execute documents and take such further acts as the Company may reasonably request to assist the Company in acquiring, perfecting and maintaining its intellectual property rights and other legal protections for the corporate blogging content.

- Company Time and Company Equipment. The Use of Equipment and Internet and Electronic Mail Use policies uses of the Company electronic assets and information systems. Comply with these policies at all times while using Company equipment and/or systems to create or update your postings. When blogging for the Company, authorized bloggers may blog during regular work hours with prior approval.

### OTHER GENERAL GUIDELINES

When employees speak directly to the world in a public forum, without the benefit of direct leadership oversight, the Company may face higher risks, but that is balanced against the higher rewards that may come from blogging and engaging in social networking. In addition to the guidelines set forth above, any time you post, please consider the following:

- Respect Your Audience. While you may disagree with other viewpoints, always maintain a high level of respect and professionalism. At all times, harassment of others will not be tolerated. Postings must not violate any Company policies. Assume that people, including other employees and customers, are reading your postings, and can access them even after you delete them.

- Protect Confidential/Trade Secret Information. You should consider anything you post as accessible by anyone and you cannot rely on the restricted content features of some websites which are enabled, for example, to protect against access by hackers, etc. You must refrain from disclosing confidential, proprietary, sensitive or trade secret information of the Company and third parties. This includes, but is not limited to, information about Company business strategy, financial and operational data, images of our private property which are normally not accessible to the public (such as pictures of our buildings and inside headquarters work areas), and other information designated in the handbook or elsewhere as private Company data. Such disclosures threaten the Company's intellectual property rights, privacy rights, ongoing business with third parties, and compliance with applicable laws. Additionally, the Company may have certain rights in

DocuSign Envelope ID: 88B61A7B-C873-4051-B16Z-66742FCC57E4

*Workspot*

any inventions or concepts you create that relate to the Company's business; you should consult with the Authorized Senior Officer(s) listed in this handbook before making any such disclosures.

- Refer Company-Related Media Inquiries To The Company.  At times, a posting can attract the attention of the media.  If the media contacts you about a Company-related posting and asks for information or comment from the Company, do not say "No comment."  Simply refer the media to the Authorized Senior Officer(s) listed in this handbook.

- Do Not Break The Law.  In addition to protecting Company secrets and intellectual property, do not engage in any unlawful activity.

- Use Good Judgment.  Think about what you write before posting it.  Speak the truth, and back up your opinions with facts.  If you reference someone else's ideas or content, given them credit for it.  Finally, remember to log off whenever you are finished commenting on a web page or walk away from a computer, to avoid allowing someone else to post while you remain logged on and having that posting attributed to you.

The Company, in its discretion, will determine whether a particular blog or posting violates Company policy.  As with all other policies, violation of this policy may result in corrective action, including separation of your employment.  The Company further reserves the right to ask that employees remove or modify posted content, and/or to refrain from commenting on topics relating to the Company, if legally required or advisable for business reasons, and to avail itself of other remedies available to it for postings by former employees which violate the Company's rights.  If you ever have a question about whether material is appropriate to post, feel free to inquire with the Authorized Senior Officer(s) listed in this handbook.

The Company is not responsible for the accuracy, completeness, appropriateness, legality or applicability of any postings, including but not limited to anything said, depicted or written by users.  The Company may, at its option, establish limits concerning postings.  The Company does not endorse any postings (except by authorized Company officials) or any opinion, recommendation, or advice expressed therein.  This policy is intended to be interpreted in a manner that is consistent with applicable law.

## EMPLOYEE PROPERTY

Employees are urged not to bring valuables to work.  If necessary to do so, all valuables should be kept in a secure location.  The Company assumes no responsibility for the loss, theft or damage of employee personal property.

## SECURITY

Security of Company facilities as well as the welfare of our employees requires that every individual be constantly alert to security risks.  In this regard please note the following:

- Immediately notify your manager of suspicious persons, or persons acting in a suspicious manner, in or around the facility.

- Immediately notify a manager of the loss of keys, security passes or identification badges.

- Do not lend keys, security passes, or identification badges to anyone who is not authorized to possess them.

- Do not disclose computer passwords, electronic door codes, or any other security access information to anyone who is not authorized to have that information.

DocuSign Envelope ID: 88B61A7B-C873-4051-B16Z-66742FCC57E4

*Workspot*

## SOLICITATION/DISTRIBUTION OF LITERATURE

The Company has established rules applicable to all employees which govern solicitation or distribution of written material during working time and entry onto the premises and work areas. All employees are expected to comply strictly with these Company rules.

– No employee shall solicit or promote support for any cause or organization during his or her working time or during the working time of the employee or employees at whom such activity is directed.

– No employee shall distribute or circulate any written or printed material in work areas at any time, or during his or her working time or during the working time of the employee or employees at whom such activity is directed.

– Under no circumstances will non-employees be permitted to solicit or to distribute written material for any purpose on Company property.

– Off duty employees are not permitted in areas not open to the public.

As used in this policy, "working time" includes all time for which an employee is paid and/or is scheduled to be performing services for the Company.

## TELEPHONE AND CELLULAR PHONE USE

It is important that the telephone lines be kept available for business purposes. Personal calls, both incoming and outgoing are not permitted, except in emergencies. Employees should limit personal telephone calls to personal time and to use personal telephones. Any personal long-distance calls should be charged to the employee's home telephone or personal credit card.

Employees whose job responsibilities include regular or occasional driving and who are issued a Company cellular telephone for business-related work use are expected to put safety first before all other concerns. Employees whose job responsibilities do not specifically include driving as an essential function, but who are issued a Company-provided cellular telephone for business use, are also expected to abide by the provisions herein.

It is recommended that employees who are driving during the course of their Company work refrain from using their phone while driving. Special care should be taken in situations where there is traffic, inclement weather, or the employee is driving in an unfamiliar area. Employees who are charged with traffic violations resulting from their use of personal or Company-issued cellular telephones while driving will be solely responsible for all liabilities, fines, etc., that result.

## HEALTH AND SAFETY

The health and safety of employees and others on Company property are of critical concern to the Company. We strive to attain the highest possible level of safety in all activities and operations. The Company also intends to comply with all health and safety laws applicable to our business.

To this end, the Company must rely upon our employees to ensure that work areas are kept safe and free of hazardous conditions. Employees should be conscientious about work place safety including proper operating methods and known dangerous conditions or hazards. Employees should report any unsafe conditions or potential hazards to a manager immediately, even if you believe you have corrected the problem. If you suspect a concealed danger is present on Company premises, or in a product, facility, piece of equipment, process or business practice for which the Company is responsible, bring it to the attention of your manager immediately. Managers should arrange for the correction of any unsafe condition or concealed danger immediately and should contact an Authorized Senior Officer regarding the problem.

Periodically, the Company may issue rules and guidelines governing work place safety and health. The Company may also issue rules and guidelines regarding the handling and disposal of hazardous substances and waste. All employees should familiarize themselves with these rules and guidelines as strict compliance

DocuSign Envelope ID: 88B61A7B-C873-4051-B16Z-66742FCC57E4

*Workspot*

will be expected.  Failure to strictly comply with rules and guidelines regarding health and safety or negligent work performance which endangers health and safety will not be tolerated.

Additionally, the Company has developed a written Injury and Illness Prevention Program as required by law. It is your responsibility to read, understand and observe the Injury and Illness Prevention Program provisions applicable to your job.

Any work place injury, accident or illness must be reported to your manager as soon as possible, regardless of the severity of the injury or accident.  If medical attention is required immediately, managers will assist employees in medical care, after which the details of the injury or accident must be reported.

### COMMUNICABLE DISEASES

In order to help keep the Company safe, we need your help.  If you are (a) diagnosed with an illness that is communicable in our workplace such as active TB (Tuberculosis) or SARS (Severe Acute Respiratory Syndrome), or (b) if you believe you may have been exposed to a person so diagnosed, or (c) if you have recently visited a location in which there has been an outbreak of such an illness and you do not feel well or are exhibiting any symptoms of the illness in question, you must report this to an Authorized Senior Officer. This information will be kept confidential to the extent reasonably possible but, obviously, full confidentiality cannot be guaranteed under these circumstances.

DocuSign Envelope ID: 88B61A7B-C873-4051-B167-66742FCC57E4

*Workspot*

# EMPLOYEE BENEFITS

### SUITE OF EMPLOYEE BENEFITS

The Company is pleased with the competitive benefit offering that is currently in place.  However, we are always open to suggestions as to how to improve our benefit offering and will work to understand the feasibility of incorporating suggestions into the employee benefit offering.

### INSURANCE BENEFITS

#### DISABILITY INSURANCE

If in California, you are covered by California State Disability Insurance (SDI).  SDI may be payable when you cannot work because of illness or injury not caused by employment at the Company or when you are entitled to temporary workers' compensation at a rate less than the daily disability benefit amount.

#### FAMILY TEMPORARY DISABILITY INSURANCE (PAID FAMILY LEAVE BENEFITS)

California employees are covered by California's Paid Family Leave (PFL) benefit.  The PFL fund is administered by the California Employment Development Department (EDD), not the Company, which means that employees must apply to the EDD to receive this benefit.  Through the PFL fund, the EDD will provide eligible employees with a wage supplement for a maximum of six weeks within a 12-month period.  PFL benefits may be available from the EDD for a leave of absence:

- For the birth or placement of a child, as defined by the PFL law, for adoption or foster care within one year of the birth or placement of the child; or
- To care for an immediate family member (spouse, registered domestic partner, child or parent, as defined by the PFL law) who is seriously ill and requires care.

PFL benefits will be coordinated with an otherwise authorized leave of absence.  In such circumstances, the use of PFL benefits and/or paid time off during the leave period will not extend the length of the leave beyond what is required by applicable law and/or Company policy.  Employee benefits do not accrue during a leave of absence unless otherwise required by law or applicable Company policies.

The EDD mandates a seven (7) day waiting period before an eligible employee may receive PFL benefits. Accrued PTO must be used by the employee during the waiting period.   The EDD does not mandate a seven (7) day waiting period before an eligible employee receives PFL benefits for the purpose of bonding with a newborn child if the employee applies for PFL benefits immediately after recovering from a pregnancy-related disability and SDI benefits have ended.

#### UNEMPLOYMENT COMPENSATION

The Company contributes to the Unemployment Insurance Fund on behalf of its employees.  In the event your employment with the Company ends, you may be entitled to benefits in accordance with this Fund.

#### SOCIAL SECURITY

Social Security is an important part of every employee's retirement benefit.  The Company pays a matching contribution to each employee's Social Security taxes.

DocuSign Envelope ID: 88B61A7B-C873-4051-B16Z-66742FCC57E4

*Workspot*

### WORKERS' COMPENSATION

At no cost to you, you are protected by Workers' Compensation Insurance while an employee at the Company. The policy covers you in case of occupational injury or illness by providing, among other things, medical care, compensation and vocational rehabilitation.

To ensure that you receive any workers' compensation benefits to which you may be entitled, you will need to:

– Immediately report any work-related injury to your manager.

– Complete in writing the appropriate forms and send them to the appropriate parties.

– Seek medical treatment and follow-up care if required.

The Company is required by law to notify the workers' compensation insurance company of any concerns of false or fraudulent claims. Any person who makes or causes to be made any knowingly false or fraudulent material statement or material misrepresentation for the purpose of obtaining or denying workers' compensation benefits or payments is guilty of a felony. A violation of this law is punishable by imprisonment for one to five years, or by a fine not exceeding $50,000.00 or double the value of the fraud, whichever is greater, or both. Additional civil penalties may also be assessed.

## LEAVES OF ABSENCE

### GENERAL PROVISIONS

The Company may grant a leave of absence in certain circumstances. It is important to request any leave in writing as far in advance as possible, to keep in touch with your supervisor during your leave, and to give prompt notice if there is any change in your return date.

You may not obtain other employment or apply for unemployment insurance while you are on a leave of absence. Acceptance of other employment while on leave may be treated as a voluntary resignation from employment with the Company.

PTO, holidays and other benefits will not accrue while you are on a leave of absence unless otherwise required by law. Upon return from a leave of absence, you will be credited with the full employment status that existed prior to the start of the leave. While you will retain your original date of hire, you will not receive length of service credit for the time you were on leave, unless otherwise required by law.

### FAMILY AND MEDICAL LEAVE

If the Company meets federal and/or state law requirements for family and medical leave coverage, the Company will grant family and medical leave in accordance with the requirements of applicable law in effect at the time the leave is granted. Although the federal and state laws sometimes have different names, the Company refers to these types of leaves collectively as "FMLA Leave." No greater or lesser leave benefits will be granted than those set forth in such state or federal laws. In certain situations, the federal law requires that provisions of state law apply. In any case, employees will be eligible for the most generous benefits available under applicable law.

Please contact your supervisor as soon as you become aware of the need for a FMLA Leave. Employees are expected to provide prompt notice to the Company of any change(s) to an employee's return to work date. Accepting or continuing other employment while on leave that is contrary to the restrictions indicated by your FMLA certification, or filing for unemployment insurance benefits while on leave may be treated as a voluntary resignation from employment.

### EMPLOYEE ELIGIBILITY

To be eligible for FMLA Leave benefits, you must:  (1) have worked for the Company for a total of at least 12 months; (2) have worked at least 1,250 hours over the previous 12 months as of the start of the leave; and (3) work at a location where at least 50 employees are employed by the Company within 75 miles, as of the date the leave is requested.

### REASONS FOR LEAVE

State and federal laws allow FMLA Leave for various reasons.  Because an employee's rights and obligations may vary depending upon the reason for the FMLA Leave, it is important to identify the purpose or reason for the leave.  FMLA Leave may be used for one of the following reasons:

(1)     the birth, adoption, or foster care of an employee's child within 12 months following birth or placement of the child ("Bonding Leave");

(2)     to care for an immediate family member (spouse, registered domestic partner, child, or parent with a serious health condition ("Family Care Leave");

(3)     an employee's inability to work because of a serious health condition ("Serious Health Condition Leave");

(4)     a "qualifying exigency," as defined under the FMLA, arising from a spouse's, child's, or parent's active duty or call to active duty in a foreign country as a member of the military reserves, National Guard or Armed Forces ("Military Emergency Leave"); or

(5)     to care for a spouse, child, parent or next of kin (nearest blood relative) who is (a) an Armed Forces member (including the military reserves and National Guard) undergoing medical treatment, recuperation, or therapy, is otherwise in an outpatient status, or is otherwise on the temporary disability retired list—with a serious injury or illness incurred or aggravated in the line of duty while on active duty that may render the individual medically unfit to perform his or her military duties; or (b) a person who, during the five (5) years prior to the treatment necessitating the leave, served in the active military, Naval, or Air Service, and who was discharged or released therefrom under conditions other than dishonorable (a "veteran" as defined by the Department of Veteran Affairs) and who has a qualifying injury or illness incurred or aggravated in the line of duty while on active duty that manifested itself before or after the member became a veteran ("Military Caregiver Leave").

### LENGTH OF LEAVE

The maximum amount of FMLA Leave will be twelve (12) workweeks in any 12-month period when the leave is taken for:  (1) Bonding Leave; (2) Family Care Leave; (3) Serious Health Condition Leave; and/or (4) Military Emergency Leave.  However, if both spouses (or registered domestic partners) work for the Company and are eligible for leave under this policy, the spouses (or registered domestic partners) will be limited to a total of 12 workweeks off between the two of them when the leave is for Bonding Leave or to care for a parent using Family Care Leave.  A 12-month period begins on the date of your first use of FMLA Leave.  Successive 12-month periods commence on the date of your first use of such leave after the preceding 12-month period has ended.

The maximum amount of FMLA Leave for an employee wishing to take Military Caregiver Leave will be a combined leave total of twenty-six (26) workweeks in a single 12-month period.  A "single 12-month period" begins on the date of your first use of such leave and ends 12 months after that date.

If both spouses work for the Company and are eligible for leave under this policy, the spouses will be limited to a total of 26 workweeks off between the two when the leave is for Military Caregiver Leave only or is for a combination of Military Caregiver Leave, Military Emergency Leave, Bonding Leave and/or Family Care Leave taken to care for a parent.

Under some circumstances, you may take FMLA Leave intermittently—which means taking leave in blocks of time, or by reducing your normal weekly or daily work schedule.  Leave taken intermittently may be taken in increments of no less than one hour.

To the extent required by law, some extensions to leave beyond an employee's FMLA entitlement may be granted when the leave is necessitated by an employee's work-related injury/illness or a "disability" as defined under the Americans with Disabilities Act and/or applicable state or local law.   In addition, in some circumstances and in accordance with applicable law, an extension to FMLA Leave may be granted when the leave is taken to care for a registered domestic partner and/or a registered domestic partner's child.  Certain restrictions on these benefits may apply.

NOTICE AND CERTIFICATION

(i)     **Bonding, Family Care, Serious Health Condition and Military Family Care Leave Requirements**

Employees are required to provide:

1.     when the need for the leave is foreseeable, 30 days advance notice or such notice as is both possible and practical if the leave must begin in less than 30 days normally this would be the same day the employee becomes aware of the need for leave or the next business day);

2.     when the need for leave is not foreseeable, notice within the time prescribed by the Company's normal absence reporting policy, unless unusual circumstances prevent compliance, in which case notice is required as soon as is otherwise possible and practical;

3.     when the leave relates to medical issues, a completed Certification of Health-Care Provider form within 15 calendar days (for Military Caregiver Leave, an invitational travel order or invitational travel authorization may be submitted in lieu of a Certification of Health-Care Provider form);

4.     periodic recertification (upon request); and

5.     periodic reports during the leave.

Certification forms are available from your supervisor.  At the Company's expense, the Company may also require a second or third medical opinion regarding your own serious health condition.  Employees are expected to cooperate with the Company in obtaining additional medical opinions that the Company may require.

When leave is for planned medical treatment, you must try to schedule treatment so as not to unduly disrupt the Company's operation.  Please contact your supervisor prior to scheduling planned medical treatment.

(ii)     **Military Emergency Leave**

Employees are required to provide:

6.     as much advance notice as is reasonable and practicable under the circumstances;

7.     a copy of the covered military member's active duty orders when the employee requests leave; and

8.     a completed Certification of Qualifying Exigency form within 15 calendar days, unless unusual circumstances exist to justify providing the form at a later date.

Certification forms are available from your supervisor.

*Employee Handbook*                                                                                      *Rev:  August 2018*

(iii)     **Failure to Provide Certification and to Return from Leave**

Absent unusual circumstances, failure to comply with these notice and certification requirements may result in a delay or denial of the leave.  If you fail to return to work at your leave's expiration and have not obtained an extension of the leave, the Company may presume that you do not plan to return to work and have voluntarily terminated your employment.

### COMPENSATION DURING LEAVE

Generally, FMLA Leave is unpaid.  However, you may be eligible to receive benefits through Statesponsored or Company-sponsored wage-replacement benefit programs.  If you are eligible to receive these benefits, you may also choose to supplement these benefits with the use of accrued PTO, to the extent permitted by law and Company policy.  All such payments will be integrated so that you will receive no more than your regular compensation during this period.  If you are not eligible to receive any of these wagereplacement benefits, the Company may require you to use accrued PTO to cover some or all of the FMLA Leave.  The use of paid benefits will not extend the length of your FMLA Leave.

### BENEFITS DURING LEAVE

The Company will continue making contributions for your group health benefits during your leave on the same terms as if you had continued to work.  This means that if you want your benefits coverage to continue during your leave, you must also continue to make any premium payments that you are now required to make for yourself or your dependents.  Employees taking Bonding Leave, Family Care Leave, Serious Health Condition Leave, and Military Emergency Leave will generally be provided with group health benefits for a 12 workweek period.  Employees taking Military Caregiver Leave may be eligible to receive group health benefits coverage for up to a maximum of 26 workweeks.  In some instances, the Company may recover premiums it paid to maintain health coverage if you fail to return to work following a FMLA Leave.

If you are on a FMLA Leave but are not entitled to continued paid group health insurance coverage, you may continue your coverage through the Company in conjunction with federal and/or state COBRA guidelines by making monthly payments to the Company for the amount of the relevant premium.  Please contact your supervisor for further information.

Your length of service as of the leave will remain intact, but accrued benefits such as PTO will not accrue while on an unpaid FMLA Leave.

### REINSTATEMENT

Under most circumstances, you will be reinstated to the same position held at the time of the leave or to an equivalent position with equivalent pay, benefits, and other employment terms and conditions.  However, you have no greater right to reinstatement than if you had been continuously employed rather than on leave.  For example, if you would have been laid off had you not gone on leave, or if your position has been eliminated during the leave, then you will not be entitled to reinstatement.

Prior to being allowed to return to work, an employee wishing to return from a Serious Health Condition Leave must submit an acceptable release from a health care provider.  For an employee on intermittent FMLA leave, such a release may be required if reasonable safety concerns exist regarding the employee's ability to perform his or her duties, based on the serious health condition for which the employee took the intermittent leave.

"Key employees," as defined by law, may be subject to reinstatement limitations in some circumstances.  If you are a "key employee," you will be notified of the possible limitations on reinstatement at the time you request a leave.

### PREGNANCY DISABILITY LEAVE

The Company will grant an unpaid Pregnancy Disability Leave to employees disabled on account of their pregnancy, childbirth, or related medical conditions.

#### LEAVE AVAILABLE

If an employee is disabled due to pregnancy, childbirth, or related medical condition, the employee may take up to a maximum of four months leave. As an alternative, the Company may transfer the employee to a less strenuous or hazardous position if, under the advice of her physician, the employee so requests and if the transfer can be reasonably accommodated.

Leave taken under the Pregnancy Disability Leave policy runs concurrently with family and medical leave under federal law, but not with family and medical leave under California law.

#### NOTICE AND CERTIFICATION REQUIREMENTS

If an employee needs to take a Pregnancy Disability Leave, the employee must provide the Company with 30 days' advance notice if the need for the leave is foreseeable. If the leave is not foreseeable, the employee must provide advance notice as soon as practicable. In addition, the employee must provide the Company with a health-care provider's statement certifying the last day the employee can work and the expected date of return.

#### COMPENSATION DURING LEAVE

A Pregnancy Disability Leave is without pay. However, an employee may take accrued PTO during the leave. All such payments will be integrated with any state disability or other wage reimbursement benefits that the employee may receive. At no time will the employee receive a greater total payment than her regular compensation.

#### BENEFITS DURING LEAVE

The Company will maintain, for up to a maximum of four months, any group health insurance coverage that you were provided before the leave was taken and on the same terms as if you had continued to work. In some instances, the Company may recover premiums it paid to maintain health coverage if you fail to return to work following your Pregnancy Disability Leave for reasons other than taking additional leave afforded under the California Family Rights Act or not returning due to a circumstance beyond your control.

If you are not entitled to continued paid group health insurance coverage, you may continue your coverage through the Company in conjunction with federal and/or state COBRA guidelines by making monthly payments to the Company for the amount of the relevant premium. You should contact your supervisor for further information.

#### REINSTATEMENT

In most circumstances, upon submitting an acceptable health-care provider release to return to work, the employee will be offered the same position held at the time of the leave. However, you will not be entitled to any greater right to reinstatement than if you had been employed continuously rather than on leave. For example, if you would have been laid off if you had not gone on leave, and there is no equivalent position available, then you will not be entitled to reinstatement. Similarly, if your position is filled during the leave in order to avoid undermining the Company's ability to operate safely and efficiently, and there is no equivalent position available, then reinstatement will be denied.

DocuSign Envelope ID: 88B61A7B-C873-4051-B16Z-66742FCC57E4

### WORKERS' COMPENSATION DISABILITY LEAVE

The Company will grant a workers' compensation disability leave if you have an occupational illness or injury in accordance with state law.  As an alternative, the Company may offer you modified work.  Leave taken under the workers' compensation disability policy runs concurrently with family and medical leave under both federal and state law.

#### NOTICE AND CERTIFICATION REQUIREMENTS

You must report as soon as possible all workplace accidents, injuries and illnesses no matter how minor to your supervisor.  In addition, you must provide the Company with a certification from a health-care provider of your workplace injury or illness, your inability to work, and/or your work restrictions, and the expected duration of your restrictions and/or inability to work.

#### COMPENSATION DURING LEAVE

Workers' compensation disability leaves are without pay.  However, you may take accrued PTO time off during the leave.  All such payments will be integrated with any state disability, workers' compensation, or other wage reimbursement benefits for which you may be eligible.  At no time will you receive a greater total payment than your regular compensation.

#### BENEFITS DURING LEAVE

If you are taking a workers' compensation disability leave, the Company will maintain your group health coverage if such insurance was provided before the leave was taken and on the same terms as if you had continued to work.

Under certain circumstances, an employee's workers' compensation disability leave may end, but the employee may still be entitled to the remaining portion of his or her family and medical leave under federal or state law.  In these circumstances, the Company will maintain the employee's group health insurance coverage for the remaining portion of the employee's family and medical leave—up to a maximum of 12 workweeks per 12-month period as required by law—if such insurance was provided before the leave was taken and on the same terms as if the employee had continued to work.  In some instances, the Company may recover premiums it paid to maintain health insurance coverage for an employee who fails to return to work following the family and medical leave.

Employees on family and medical leave, which extends beyond a workers' compensation disability leave, who do not receive continued paid coverage, or whose paid coverage ceases after 12 workweeks, may continue their group health insurance coverage through the Company in conjunction with federal and/or state COBRA guidelines by making monthly payments to the Company for the amount of the relevant premium.  Employees should contact their supervisor for further information.

#### REINSTATEMENT

Upon the submission of a medical certification that you are able to return to work, you will be considered for reinstatement in accordance with applicable law.  If you are disabled due to an industrial injury, the Company will attempt to accommodate you.  If you are returning from a workers' compensation disability leave that runs concurrently with a family and medical leave, then the provisions of the Family and Medical Leave policy will also apply.  In all circumstances, you must submit an acceptable health care provider statement certifying your release to work.  You should also provide as much notice as possible regarding the date of your return to work.

### MILITARY LEAVE (ACTIVE AND RESERVE)

Leave without pay is provided to you in accordance with applicable law when you enter military service of the Armed Forces of the United States or are in the Armed Forces Reserves.  You are afforded reemployment

DocuSign Envelope ID: 88B61A7B-C873-4051-B167-66742FCC57E4

*Workspot*

rights and retain full seniority benefits for all prior service upon reemployment in accordance with the Uniformed Services Employment and Reemployment Rights Act and the California Military and Veterans Code.  You must notify your supervisor of your need for military leave as soon as possible.  You also need to bring your official military service orders to them for review prior to commencement of the leave.

### OTHER TIME OFF

### TIME OFF FOR FAMILY MEMBERS OF MILITARY PERSONNEL – EMPLOYERS WITH 25 OR MORE EMPLOYEES

The Company provides employees who are spouses and registered domestic partners of certain military personnel up to ten (10) days of unpaid leave during any period when that military personnel member is on leave from deployment during a period of military conflict.

An employee is eligible for leave under this policy if he or she:

- Is the spouse or registered domestic partner of a person who: (1) is a member of the Armed Forces of the United States who has been deployed during a period of military conflict to an area designated as a combat theater or combat zone by the President of the United States, or (2) is a member of the National Guard or of the Reserves who has been deployed during a period of military conflict;

- Works for the Company for an average of 20 or more hours per week;

- Provides the Company with notice of his or her intention to take leave within two business days of receiving notice that his or her spouse or registered domestic partner will be on leave from deployment; and

- Submits written documentation to the Company certifying that the spouse or registered domestic partner will be on leave from deployment during the time the leave is requested.

"Military conflict" means either a period of war declared by the United States Congress, or a period of deployment for which a member of a reserve component is ordered to active duty either by the Governor or the President of the United States.

Leave taken under this policy will not affect an employee's right to any other benefits, although an employee may elect to use accrued paid time off during the time off.  The Company will not discriminate against, or tolerate discrimination against, any employee who requests and/or takes leave under this policy.

### ORGAN AND BONE MARROW DONOR LEAVE

Employees may take a paid leave of absence for medically necessary donations of an organ or bone marrow. Organ donors will receive up to 30 days of leave during any one-year period for the purpose of donating their organs to another person.  Bone marrow donors will receive up to five days of leave during any one-year period for the purpose of donating their bone marrow to another person.  Employees must provide the Company with written verification that they are organ or bone marrow donors and that there is a medical necessity for the donation.  The Company may require a bone marrow donor to use his or her PTO time during any absence for bone marrow donation.  The Company may also require an organ donor to use up to two weeks of PTO time during the organ donor's leave.  Bone marrow and organ donors may take leave on an intermittent basis, if medically necessary.

The Company will not retaliate against any employee for requesting or utilizing leave for the donation of an organ or bone marrow.  The Company will continue making contributions for your group health benefits during your leave on the same terms as if you had continued to work.  Likewise, employees will continue to accrue PTO during bone marrow or organ donation leave.  The Company will return the organ or bone marrow donor to his or her original position upon completion of the leave, as long as the position continues to exist.

*Employee Handbook*                                                                                         *Rev:  August 2018*

### VOTING TIME OFF

If you cannot vote before or after working hours in statewide public elections, then you will be allowed sufficient time off to go to the polls. The Company will pay you for up to the first two hours of absence from regularly scheduled work which is necessary to vote in a statewide public election. Any additional time off will be without pay. You must give reasonable notice of the need to have time off to vote and must give at least three days' notice when three days' notice is possible.

## TIME OFF FOR VOLUNTEER FIREFIGHTERS, RESERVE PEACE OFFICERS OR EMERGENCY RESCUE PERSONNEL

If you are a registered volunteer firefighter, reserve peace officer, or emergency rescue personnel who intends to perform emergency duty during work hours, please alert a representative of the Company so that we are aware of the fact that you may have to take time off to perform emergency duty. In the event you need to take time off for this type of emergency duty, please alert your supervisor before leaving the Company premises.

In addition, if the Company has 50 or more employees, if you are a volunteer firefighter, you may be permitted to take a temporary leave of absence up to 14 calendar days per year to engage in fire or law enforcement training. All time off for these purposes is unpaid.

## TIME OFF FOR PARENTS' SCHOOL OR DAY CARE ACTIVITIES – EMPLOYERS OF 25 OR MORE EMPLOYEES AT ONE LOCATION

If you are a parent, guardian or grandparent with custody of a child in kindergarten or grades 1-12, or a licensed day care center, and work at a location where the Company employs 25 or more employees, you may take off up to eight hours each calendar month (up to a maximum of 40 hours each school year), per child, provided you give reasonable notice to the Company of your planned absence. Employees wishing to take such leave may utilize their PTO time. The Company requires documentation from the school noting the date and time of your visit.

If both parents of a child work for the Company, only one parent -- the first to provide notice -- may take the time off, unless the Company approves both parents taking time off simultaneously.

You may also be granted time off to attend a school conference involving the possible suspension of your child. Please contact your supervisor if time off is needed for this reason.

## TIME OFF FOR ADULT LITERACY PROGRAMS – EMPLOYERS OF 25 OR MORE EMPLOYEES

The Company will make reasonable accommodations for any employee who reveals a literacy problem and requests that the Company assist him or her in enrolling in an adult literacy program, unless undue hardship to the Company would result.

The Company will also assist employees who wish to seek literacy education training by providing employees with the location of local literacy programs.

The Company will take reasonable steps to safeguard the privacy of any employee who identifies himself or herself as an individual with a literacy problem. An employee who wishes to identify himself or herself as such an individual can contact the Authorized Senior Officer(s) listed in this handbook directly. Further, individuals who are performing satisfactorily will not be subject to termination of employment because they have disclosed literacy problems.

While the Company encourages employees to improve their literacy skills, the Company will not reimburse employees for the costs incurred in attending a literacy program.

## TIME OFF FOR DOMESTIC VIOLENCE OR SEXUAL ASSAULT VICTIMS

The Company recognizes and values the importance of a healthy and safe home environment for all its employees and their families.  The Company prohibits discrimination or retaliation against an employee if he or she is the victim of domestic violence or sexual assault and if he or she takes time off from work for: medical attention, legal assistance, services from a shelter, program or rape crisis center, psychological counseling, safety planning, including temporary or permanent relocation.  If you are a victim of domestic violence or sexual assault, you may take time off from work to obtain or attempt to obtain a temporary restraining order, a restraining order, injunctive relief, or other forms of relief to help ensure the health, safety, or welfare of your child or yourself.

If you wish to take time off under this policy, you must give reasonable notice of the need for time off for one of the above listed activities unless advance notice is not feasible.  In the event that an unscheduled event or emergency occurs, which requires your immediate absence, please alert your supervisor before leaving the Company premises.

The Company may require that you provide verification that the absence from work was due to domestic violence or sexual assault.  The types of verification the Company may require include:  police reports, court orders or other evidence that the employee appeared in court, other documentation from a medical professional, domestic violence advocate, health care provider, counselor that demonstrate you are under treatment for the injuries or abuse.  Confidentiality of the situation will be maintained to the greatest extent possible if you request time off for these reasons.

Employees may use accrued benefits, such as existing paid time off, to receive compensation during the leave of absence.

FOR EMPLOYERS OF 25 OR MORE EMPLOYEES:  In addition, if you are domestic violence or sexual assault victim, you may also take time off from for:  medical attention from injuries caused by the domestic violence or sexual assault, services from a shelter, program or rape crisis center, psychological counseling, safety planning, or other actions taken to increase safety from future violence or assault, including temporary or permanent relocation (collectively called "violence or assault services").  Time off from violence or assault services is limited a total of 12 workweeks in a 12 month period

## TIME OFF FOR CRIME VICTIMS AND FAMILY MEMBERS OF CRIME VICTIMS

The Company prohibits discrimination against an employee who wishes to take time off from work for the purpose of attending judicial proceedings related to certain crimes committed against the employee, the employee's immediate family member, the employee's registered domestic partner, or the domestic partner of the child's parent.  Employees are eligible to take time off for crimes including:  a violent felony, as defined in subdivision (c) of Section 667.5 of the Penal Code; a serious felony, as defined in subdivision (c) of Section 1192.7 of the Penal Code; and a felony provision of law proscribing theft or embezzlement.

Before an employee may be absent from work for this purpose, the employee must provide his or her supervisor with a copy of the notice of each scheduled proceeding that is provided to the victim by the agency responsible for providing notice, unless advance notice is not feasible.  In the event that an unscheduled judicial proceeding occurs, which requires your immediate absence, please alert your supervisor before leaving Company premises.  The Company may require that the employee provide verification that the absence from work was due to attendance at the unscheduled judicial proceeding.  The types of verification the Company may require include documentation evidencing the judicial proceeding from any of the following entities:  the court or government agency setting the hearing; the district attorney or prosecuting attorney's office; or the victim/witness office that is advocating on behalf of the victim.  Confidentiality of the situation, including the employee's request for the time off, will be maintained to the greatest extent possible if an employee requests time off for these reasons.

Employees may use accrued benefits, such as accrued PTO, to receive compensation during the time taken off from work Under this policy, "immediate family member" is defined as an employee's spouse,

registered domestic partner, child, stepchild, brother, stepbrother, sister, stepsister, mother, stepmother, father, or stepfather.

### TIME OFF FOR CIVIL AIR PATROL LEAVE – EMPLOYERS OF 15 OR MORE EMPLOYEES

Employees who have been employed 90 days or more are permitted to request up to ten (10) calendar days of unpaid leave per year to respond to an emergency operational mission of the California Wing of the Civil Air Patrol.  Such leave is limited to three (3) days for each emergency operational mission, unless the government entity that authorized the mission extends it and the Company approves the additional time off.  Upon expiration of the leave, an employee will generally be reinstated to his or her position with equivalent seniority, benefits, pay and other terms and conditions of employment.

Employees requesting time off must notify their direct supervisor as soon as possible after learning the intended dates upon which such leave will begin and end.  Approval of any leave request is conditioned upon certification from the proper Civil Air Patrol Authority of the employee's eligibility to take such leave.  Failure to provide the required certification will result in denial of leave.

Employees may, but are not required to, elect to substitute any accrued unused paid time off, for otherwise unpaid Civil Air Patrol Leave.

### PAID TIME OFF (PTO)

The Company values the hard work of employees and believes that employees deserve and need time off.  PTO will not be accrued but shall be granted as work schedules allow and at the discretion of your manager.

Please note that unless pre-approved by your manager, after you have been absent for two consecutive weeks (10 work days) or more you will be considered to be on an unpaid leave of absence.

### HOLIDAYS

The Company observes the following paid holidays:

– New Year's Day

– Martin Luther King Day

– President's Day

– Memorial Day

– Independence Day

– Labor Day

– Thanksgiving Day

– Day After Thanksgiving

– Christmas Day

When a holiday falls on a Saturday or Sunday, it is usually observed on the preceding Friday or the following Monday.  However, the Company may recognize the holiday on another day or grant individual days instead of closing.  Holiday observance will be announced in advance.  Part Time and Temporary employees will not be paid holiday pay.

## EMPLOYEE HANDBOOK ACKNOWLEDGMENT AND AGREEMENT

This is to acknowledge that I have received and read a copy of the Workspot (hereinafter referred to as the "Company") Employee Handbook and understand that it sets forth the terms and conditions of my employment as well as the duties, responsibilities and obligations of employment with the Company. I understand and agree to abide by and be bound by the rules, policies and standards set forth in the Employee Handbook.

I also acknowledge that my employment with the Company is not for a specified period of time and can be terminated at any time for any or no reason, with or without cause or notice, by me or by the Company. I acknowledge that no statements or representations regarding my employment can alter the foregoing. As to the circumstances in which employment may be terminated, this is the entire agreement between me and the Company; there are no oral or collateral agreements of any kind. I also acknowledge that no manager or employee has the authority to enter into an employment agreement—express or implied—providing for employment other than at will.

I also acknowledge that, except for the policy of at-will employment, the Company reserves the right to revise, delete, and add to the provisions of this Employee Handbook. All such revisions, deletions, or additions must be in writing and must be signed by an Authorized Senior Officer of the Company as defined in this Employee Handbook. No oral statements or representations can change the provisions of this Employee Handbook. I also acknowledge that, except for the policy of at-will employment, terms and conditions of employment with the Company may be modified at the sole discretion of the Company with or without cause or notice at any time. No implied contract concerning any employment-related decision or term and condition of employment can be established by any other statement, conduct, policy, or practice.

I understand that the foregoing agreement concerning my employment-at-will status and the Company's right to determine and modify the terms and conditions of employment is the sole and entire agreement between me and the Company concerning the duration of my employment, the circumstances under which my employment may be terminated, and the circumstances under which the terms and conditions of my employment may change. This foregoing agreement may be revised, modified, deleted or superseded only by a written employment agreement signed by an Authorized Senior Officer of the Company as defined in this Employee Handbook, which expressly revises, modifies, deletes or supersedes this foregoing agreement. I further understand that this agreement supersedes all prior inconsistent handbooks, policy statements, agreements, understandings, and representations concerning my employment with the Company.

DocuSigned by:

*Puneet Chawla*

Employee's Signature

August 16, 2018

Date Signed

Puneet Chawla

Employee's Name (please print)

TO BE PLACED IN EMPLOYEE'S PERSONNEL FILE

# Exhibit K

## Christopher, Angelo

| | |
|---|---|
| **From:** | Kim, Joy <joy.kim@dlapiper.com> |
| **Sent:** | Monday, July 29, 2019 2:27 PM |
| **To:** | Werber, Matthew; Eugene Illovsky; Moore, David E.; Palapura, Bindu A.; Christopher, Angelo; Lopez, Ronald; Karen Gibbs; Hayes, Jennifer |
| **Cc:** | Strapp, Michael G.; Biggs, Brian; Kraft, Denise; Christofferson, Eric; Valentine, Andrew; Souza, Mary Ann |
| **Subject:** | RE: Citrix v. Workspot - Meet and Confer re Forensic Imaging |

Matt,

Thank you for your response. Your understanding is correct. We just wanted to offer the opportunity as a courtesy.

Best,

Joy

**From:** Werber, Matthew <mwerber@nixonpeabody.com>
**Sent:** Monday, July 29, 2019 12:07 PM
**To:** Kim, Joy <joy.kim@us.dlapiper.com>; Eugene Illovsky <Eugene@boersch-illovsky.com>; Moore, David E. <dmoore@potteranderson.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Christopher, Angelo <achristopher@nixonpeabody.com>; Lopez, Ronald <rflopez@nixonpeabody.com>; Karen Gibbs <karen.gibbs@workspot.com>; Hayes, Jennifer <jenhayes@nixonpeabody.com>
**Cc:** Strapp, Michael G. <Michael.Strapp@us.dlapiper.com>; Biggs, Brian <Brian.Biggs@us.dlapiper.com>; Kraft, Denise <denise.kraft@us.dlapiper.com>; Christofferson, Eric <Eric.Christofferson@us.dlapiper.com>; Valentine, Andrew <Andrew.Valentine@us.dlapiper.com>; Souza, Mary Ann <MaryAnn.Souza@us.dlapiper.com>
**Subject:** RE: Citrix v. Workspot - Meet and Confer re Forensic Imaging

**[EXTERNAL]**

Hi Joy. We are checking on availability. In the meantime, while the letter was addressed to both NP and Eugene, we understand the concerns in the letter and M&C request (relating to Mr. Chawla's personal device) were directed to Eugene only. If this understanding is incorrect, please let us know.

Thank you

- Matt

**From:** Kim, Joy <joy.kim@dlapiper.com>
**Sent:** Monday, July 29, 2019 11:18 AM
**To:** Eugene Illovsky <Eugene@boersch-illovsky.com>; Moore, David E. <dmoore@potteranderson.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Werber, Matthew <mwerber@nixonpeabody.com>; Christopher, Angelo <achristopher@nixonpeabody.com>; Lopez, Ronald <rflopez@nixonpeabody.com>; Karen Gibbs <karen.gibbs@workspot.com>; Hayes, Jennifer <jenhayes@nixonpeabody.com>
**Cc:** Strapp, Michael G. <michael.strapp@dlapiper.com>; Biggs, Brian <brian.biggs@dlapiper.com>; Kraft, Denise <denise.kraft@dlapiper.com>; Christofferson, Eric <eric.christofferson@dlapiper.com>; Valentine, Andrew

<andrew.valentine@dlapiper.com>; Souza, Mary Ann <maryann.souza@dlapiper.com>
**Subject:** RE: Citrix v. Workspot - Meet and Confer re Forensic Imaging

[EXTERNAL E-MAIL]

Eugene,

Are you available at 2 pm PDT tomorrow? If so, I will circulate a dial-in.

Workspot counsel—please let me know if anyone is planning to join tomorrow's call.

Best,

Joy

**From:** Eugene Illovsky <Eugene@boersch-illovsky.com>
**Sent:** Friday, July 26, 2019 10:20 AM
**To:** Kim, Joy <joy.kim@us.dlapiper.com>; Moore, David E. <dmoore@potteranderson.com>; Palapura, Bindu A.
<bpalapura@potteranderson.com>; Werber, Matthew <mwerber@nixonpeabody.com>; Christopher, Angelo
<achristopher@nixonpeabody.com>; Lopez, Ronald <rflopez@nixonpeabody.com>; Karen Gibbs
<karen.gibbs@workspot.com>; Hayes, Jennifer <jenhayes@nixonpeabody.com>
**Cc:** Strapp, Michael G. <Michael.Strapp@us.dlapiper.com>; Biggs, Brian <Brian.Biggs@us.dlapiper.com>; Kraft, Denise
<denise.kraft@us.dlapiper.com>; Christofferson, Eric <Eric.Christofferson@us.dlapiper.com>; Valentine, Andrew
<Andrew.Valentine@us.dlapiper.com>; Souza, Mary Ann <MaryAnn.Souza@us.dlapiper.com>
**Subject:** Re: Citrix v. Workspot - Meet and Confer re Forensic Imaging

**[EXTERNAL]**

Joy:

Early next week, after I speak with Mr. Chawla, will work.  How about Tuesday, early afternoon PDT?

Can Citrix please provide a copy of the deposition transcript?

Thanks,

Eugene

**From:** "Kim, Joy" <joy.kim@dlapiper.com>
**Date:** Friday, July 26, 2019 at 9:34 AM
**To:** Eugene Illovsky <Eugene@boersch-illovsky.com>, "Moore, David E." <dmoore@potteranderson.com>,
"Palapura, Bindu A." <bpalapura@potteranderson.com>, "Werber, Matthew"
<mwerber@nixonpeabody.com>, "Christopher, Angelo" <achristopher@nixonpeabody.com>, "Lopez, Ronald"
<rflopez@nixonpeabody.com>, Karen Gibbs <karen.gibbs@workspot.com>, "Hayes, Jennifer"
<jenhayes@nixonpeabody.com>
**Cc:** "Strapp, Michael G." <michael.strapp@dlapiper.com>, "Biggs, Brian" <brian.biggs@dlapiper.com>, "Kraft,
Denise" <denise.kraft@dlapiper.com>, "Christofferson, Eric" <eric.christoffer@dlapiper.com>, "Valentine,
Andrew" <andrew.valentine@dlapiper.com>, "Souza, Mary Ann" <maryann.souza@dlapiper.com>
**Subject:** Citrix v. Workspot - Meet and Confer re Forensic Imaging

Counsel:

Please see attached.  Please let us know your availability to meet and confer today or early next week.

Best,

Joy

**Joy G. Kim**
Associate

**T** +1 415.836.2539
**F** +1 415.659.7339
**M** +1 415.361.8012
**E** joy.kim@dlapiper.com



DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
United States
www.dlapiper.com

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

# Exhibit L

Citrix ShareFile Company Info | Cloud-Based File Sharing | ShareFile

▽             LOGIN          HELP CENTER            SEARCH

  LOGIN          MENU ☰

# Hello. We are ShareFile and we are pretty neat.

Learn more about us and what we are all about.

## Here's a little about us.

We are a secure, cloud-based content collaboration platform that makes it easier for businesses to get work done on any device, anytime. We bring business-class file sharing, streamlined workflows and real-time collaboration all together in one place—so users can work the way they want.

Since 2005, Citrix ShareFile® has helped more than 65,000 corporate customers and 22 million users around the globe securely access, share and collaborate on files and data.

ShareFile is owned by Citrix Systems ↗.

▽    ☰ LOGIN    HELP CENTER    🔍 SEARCH

☰ LOGIN    MENU ☰

reseller opportunities to customize ShareFile for every business need.

**LEARN MORE** ➡



## Integrations

Citrix technology partners integrate with the ShareFile product through a rich API.



## Enterprise reseller

Partner with Citrix ShareFile to access enterprise sales tools and licensing.



## Referral Program

Start getting generous rewards for referring our industry-leading solutions to your customers and colleagues.

## Contact Information



120 South West Street
Raleigh, NC 27603



1.800.441.3453
Australia: 1.800.089.572
International: +1.919.745.6111

✉    Sales: sales@sharefile.com

▽   LOGIN   HELP CENTER   SEARCH

LOGIN   MENU ≡



*"I'm surrounded by energetic and innovative individuals who value being part of this team as much as I do."*

### Caroline Bell-Luehrs

Content Marketing Manager



*"I like working at Citrix because of the opportunity to work with incredibly intelligent people trying to solve challenging problems."*

### Eli Encarnacion

Senior Software Engineer



*"My coworkers make me laugh and brighten my day, and there's so much energy working downtown in the 'coolest up and coming district!'"*

### Steph Styers

Search Marketing Programs Manager

▽     ᐯ LOGIN     HELP CENTER     🔍 SEARCH

ᐯ LOGIN     MENU ☰

Consistently named a "best place to work" by Glassdoor, PC Mag, Triangle Business Journal and more Citrix emphasizes innovation, creativity and passion. We also offer great benefits, opportunities for growth, and a fun and collaborative work environment in one of the most innovative office spaces in North Carolina. We love working at Citrix, and we know you will, too!

VIEW OPENINGS

**SHAREFILE**

Pricing
Features
Enterprise
Virtual Data Room
About ShareFile
Become a Partner
Resource Center
ShareFile Blog ☑
Careers ☑
Contact Sales

**HELP CENTER**

Training
Technical Help
Enterprise Help
Community Forums ☑
Events & Webinars
FAQs

LOGIN

HELP CENTER

SEARCH

LOGIN

MENU

© 2019 Citrix Systems, Inc. All rights reserved.

Terms of Service | Privacy Policy | Cookie Preferences | Sitemap

# Exhibit M



**Matthew A. Werber**
*Counsel*
T 312-977-4458
mwerber@nixonpeabody.com

70 W. Madison Street, Suite 3500
Chicago, IL 60602-4224
(312) 977-4400

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

April 18, 2019

<u>VIA EMAIL</u>
Denise S. Kraft
DLA PIPER LLP
1201 North Market Street, Suite 2100
Wilmington, DE 19801

**RE:  Citrix v. Workspot**

Dear Denise:

We write regarding deficiencies in Citrix's April 5, 2019 responses to Workspot's interrogatories. Each issue is addressed below in turn.

**I.       Issues Applicable to Multiple Responses**

      **A.       Verifications**

Citrix failed to verify its interrogatory answers under oath. Please confirm Citrix will promptly address this deficiency.

      **B.       Objecting to Contention Interrogatories as Premature**

Citrix objects to each of the interrogatories as "premature" with reference to "expert opinion(s)" not due to be served until later in the procedural schedule. Please note that the Court's Scheduling Order expressly contemplates responding to contention interrogatories "early in the case":

> The Court encourages the parties to serve and respond to contention interrogatories **early in the case**. In the absence of agreement among the parties, contention interrogatories, if filed, shall first be addressed by the party with the burden of proof.

D.I. 160, p. 5 (emphasis added). Workspot served the contention interrogatories referenced in this letter to discover and ascertain the contentions, facts and evidence Citrix relies on in support of the infringement, Lanham Act and common law claims Citrix maintains in this case. These contention interrogatories address claims for which Citrix has the burden of proof.

4852-9777-6532 2

Denise S. Kraft
April 18, 2019
Page 2

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

The scheduling order continues by instructing that the "adequacy of all interrogatory answers shall be judged by the level of detail each party provides; i.e., the more detail a party provides, the more detail a party shall receive." *Id.* None of Citrix's present responses to the contention interrogatories addressed below provides sufficient detail, and each will need to be amended or supplemented if the referenced contentions are to be maintained.

### C.     Fed. R. Civ. P. 33(d)

Your responses rely extensively on the option to produce business records pursuant to Rule 33(d).  While Rule 33(d) permits a party to respond to an interrogatory by pointing to business records from which the answer to the interrogatory can be ascertained, use of this subpart is appropriate only "if the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d). *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. CV 04-1371-JJF, 2005 WL 8136574, at *1–2 (D. Del. Oct. 11, 2005). Citrix's reliance on Rule 33(d) is insufficient in each of the instances addressed below. These deficiencies must be addressed in amended or supplemental interrogatory answers.

## II.     Responses to Individual Interrogatories

### A.     Interrogatory No. 2

This interrogatory asks for "each and every instance in which the Patents-in-Suit and any related patents or patent applications (foreign and domestic) have been licensed, offered to be licensed, or have been attempted to be licensed." Your response states: "Citrix identifies the following documents which provide information responsive to this Interrogatory, to the extent such documents are found within Citrix's possession, custody or control: CTX00098056; CTX00098073; CTX00098087; and CTX00098098."

Merely stating that "Citrix identifies … information responsive to this Interrogatory" is non-responsive and insufficient. For example, this statement, while apparently literally true, leaves open the possibility that additional licenses are presently known to Citrix. Citrix must "fully" answer the interrogatory propounded, as Rule 33 requires. See Rule 33(b)(3) ("Each interrogatory must … be answered separately and fully in writing under oath"). If Citrix knows of additional licenses, licensing offers and licensing attempts based on information available, Citrix must identify all others in a supplement. Alternatively, if the four cited documents identify "each and every" license, licensing offer and licensing attempt known to Citrix based on information available, Citrix must amend or supplement its answer with a statement under oath to that effect.

### B.     Interrogatory Nos. 3 - 4

These interrogatories ask Citrix to provide the factual and legal bases for its contention that Workspot induces infringement by customers or others. Citrix responds to each, in relevant part,

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

by identifying its "Complaint, Initial Disclosures, and Initial Infringement Contentions"
together with its "Motion for Preliminary Injunction [briefing] and its Response to Preliminary
Injunction Interrogatory No. 6." No other information is identified or provided.

These responses are non-responsive and improper, and Citrix's apparent reliance on Rule 33(d)
is deficient. Below we address each document referenced in these responses.

**Initial Disclosures:** Citrix's initial disclosures appear to be nonresponsive because they make
no reference whatsoever to allegations of induced infringement, much less factual or legal bases
in support of the same. If there is specific responsive information recited within the initial
disclosures Citrix intended to identify, please serve a supplemental answer under oath with a
statement to that effect consistent with the requirements of Rule 33(d), which requires that the
burden is the same, or supplement with an appropriately detailed narrative. Otherwise, Citrix
should serve an amended answer that does not include a reference to its apparently non-
responsive initial disclosures. Please write back by indicating how Citrix wishes to proceed.

**Motion for Preliminary Injunction ("PI") Briefing:** Citrix's PI briefing appears to be
nonresponsive because it makes no reference whatsoever to allegations of induced infringement,
much less factual or legal bases in support of the same. If there is specific responsive
information recited within this briefing that Citrix intended to identify, please serve a
supplemental answer under oath with a statement to that effect consistent with the requirements
of Rule 33(d), which requires that the burden is the same, or supplement with an appropriately
detailed narrative. Otherwise, Citrix should serve an amended answer that does not include a
reference to the apparently non-responsive PI briefing. Please write back by indicating how
Citrix wishes to proceed.

**Response to PI Interrogatory No. 6:** Citrix's Response to PI Interrogatory No. 6 appears to be
nonresponsive because it makes no reference whatsoever to allegations of induced infringement,
much less factual or legal bases in support of the same. If there is specific responsive
information recited within this response, or within the documents referenced therein, that Citrix
intended to identify, please serve a supplemental answer under oath with a statement to that
effect consistent with the requirements of Rule 33(d), which requires that the burden is the
same, or supplement with an appropriately detailed narrative. Otherwise, Citrix should serve an
amended answer that does not include a reference to the similarly non-responsive response to PI
Interrogatory No. 6. Please write back by indicating how Citrix wishes to proceed.

**The Complaint and Initial Infringement Contentions ("IICs"):** The Complaint asserts
induced infringement for the '018 and '843 patents only, and these assertions identify a single
exhibit – namely Exhibit 19 (VDI Reinvented). By the time of the IICs (served more than 10
months later on March 1, 2019) – and after Citrix had the benefit of (i) reviewing Workspot's
source code and technical documents, (ii) deposing Workspot witnesses, (iii) interacting with
the test account Workspot provided, and (iv) briefing and arguing the PI motion – it appears
Citrix no longer asserts the inducement doctrine for the '018 patent and that its reliance on the

Denise S. Kraft
April 18, 2019
Page 4

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

inducement doctrine for the '843 patent has been reduced to one isolated reference. See IICs at p. 148 of 159. Because Citrix's interrogatory answers provide no explanation to the contrary, can Workspot assume the later-served IICs comprise the latest, most accurate recitation of the factual and legal bases for Citrix's inducement allegations?

If Citrix instead intended to convey that the responsive information should be determined from both the Complaint and IICs combined, and Citrix wishes to continue to rely on Rule 33(d), a supplemental or amended answer must be served in compliance with Rule 33(d), which requires that the burden is the same.

****

All told, unless Citrix intends to withdraw its allegations that Workspot has induced infringement of the '018 and '843 Patents, Citrix must supplement its response to this interrogatory by answering fully and disclosing sufficient detail for Workspot to meaningfully understand and assess the factual and legal bases Citrix's assertions rely on.

## C.    Interrogatory No. 5

This interrogatory asks Citrix to provide the factual and legal bases for its contentions that Workspot is or has contributing to infringement. Citrix responds, in relevant part, by identifying its "Complaint, Initial Disclosures, and Initial Infringement Contentions" together with its "Motion for Preliminary Injunction [briefing] and its Response to Preliminary Injunction Interrogatory No. 6." No other information is identified or provided.

This response is improper and non-responsive, and Citrix's apparent reliance on Rule 33(d) is deficient. Below we address each document referenced in these responses.

**Initial Disclosures, PI Briefing, Response to PI Interrogatory No. 6 and IICs:** Citrix's response to this interrogatory identifies Citrix's (i) Initial Disclosures, (ii) PI Briefing, (iii) Response to PI Interrogatory No. 6 and (iv) IICs, yet none of these documents make any reference whatsoever to allegations of contributory infringement, much less factual or legal bases in support of the same. In other words, four of the five documents Citrix identifies (everything except the complaint) are non-responsive. This is entirely improper.

If there is specific responsive information recited within these documents that Citrix intended to identify, please serve a supplemental answer under oath with a statement to that effect consistent with the requirements of Rule 33(d), which requires that the burden is the same, or supplement with an appropriately detailed narrative. Otherwise, Citrix should serve an amended answer that does not include a reference to these apparently non-responsive documents. Please write back by indicating how Citrix wishes to proceed.

**The Complaint:** Of the several identified, the Complaint is the only document that includes a reference to Citrix's contributory infringement allegations. However, the Complaint's

Denise S. Kraft
April 18, 2019
Page 5

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

discussion of the contributory infringement doctrine is confined to three paragraphs (with no exhibit citations), which comprise, at most, a summary recitation of the contributory infringement doctrine in relation to the '843 patent only. See Complaint at ¶¶ 91, 93, 96.

****

All told, unless Citrix intends to withdraw its allegations of contributory infringement of the '843 patent, Citrix must supplement its response to this interrogatory by answering fully and disclosing sufficient detail for Workspot to meaningfully understand and assess the factual and legal bases Citrix's assertions rely on.

### D.     Interrogatory No. 6

This interrogatory asks Citrix to provide the factual and legal bases for its contentions that Workspot is willfully infringing the Patents-in-Suit. Citrix responds, in relevant part, by identifying its "Complaint, Initial Disclosures, and Initial Infringement Contentions" together with its "Motion for Preliminary Injunction [briefing] and its Response to Preliminary Injunction Interrogatory No. 6." No other information is identified or provided.

This response is improper and non-responsive, and Citrix's apparent reliance on Rule 33(d) is deficient. Below we address each document referenced in these responses.

**Initial Disclosures, PI Briefing, Response to PI Interrogatory No. 6 and IICs:** Citrix's response to this interrogatory identifies Citrix's (i) Initial Disclosures, (ii) PI Briefing, (iii) Response to PI Interrogatory No. 6 and (iv) IICs, yet none of these documents make any reference whatsoever to allegations of willful infringement, much less factual or legal bases in support of the same. In other words, four of the five documents Citrix identifies (everything except the complaint) are non-responsive. This is entirely improper.

If there is specific responsive information recited within these documents that Citrix intended to identify, please serve a supplemental answer under oath with a statement to that effect consistent with the requirements of Rule 33(d), which requires that the burden is the same, or supplement with an appropriately detailed narrative. Otherwise, Citrix should serve an amended answer that does not include a reference to these apparently non-responsive documents. Please write back by indicating how Citrix wishes to proceed.

**The Complaint:** Of the several identified, the Complaint is the only document that includes a reference to Citrix's willful infringement allegations. If the totality of the factual and legal bases supporting Citrix's willful infringement allegations is confined to the basic recitations in the complaint, please write back and confirm this is the case. Otherwise, if additional responsive information is available, please respond with a supplemental answer under oath.

Denise S. Kraft
April 18, 2019
Page 6

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

### E.      Interrogatory No. 7

This interrogatory asks Citrix to, among other things, identify "each alleged false, deceptive and unsubstantiated statement of fact" upon which Citrix's Lanham Act and common law claims are based and, for each, state all facts and contentions as to whether Citrix alleges the statement is false, deceptive, misleading and/or unsubstantiated.

Citrix responds by identifying its complaint, preliminary injunction motion papers and Responses to PI Interrogatory Nos. 1, 3. Citrix continues by asserting generally that each statement "is either false, deceptive, misleading and/or unsubstantiated and create a reasonable likelihood of confusion, deception, and misunderstanding."

This response is improper and non-responsive, and Citrix's apparent reliance on Rule 33(d) is deficient. Below we address each document referenced in these responses.

**Responses to PI Interrogatory No. 1:** Citrix's responses to PI Interrogatory No. 1 appear to be nonresponsive because they make no reference whatsoever to alleged false statements of fact or the like. PI Interrogatory No. 1 asked Citrix to identify the "market for which Citrix alleges the Accused Products compete." If there is specific responsive information recited within these responses, or within the documents referenced therein, that Citrix intended to identify, please serve a supplemental answer under oath with a statement to that effect consistent with the requirements of Rule 33(d), which requires that the burden is the same, or supplement with an appropriately detailed narrative. Otherwise, Citrix should serve an amended answer that does not include a reference to these responses. Please write back by indicating how Citrix wishes to proceed.

**Responses to PI Interrogatory No. 3:** Citrix's supplemental response to PI Interrogatory No. 3 (asking for instances in which a Citrix customer has complained) identifies three documents -- CTX00007841; CTX00007851; CTX00007867 (all appearing to be raw data exports). Even if these documents are relevant to customer complaints Citrix has received and, thus purportedly relevant to PI Interrogatory No. 3, Citrix's response to the present interrogatory provides no explanation whatsoever as to how or why these three documents answer the present inquiry. If Citrix wishes to rely on Rule 33(d) and cite these documents, Citrix should serve a supplement specifically identifying these documents and providing an explanation so the burden is the same. Otherwise, Citrix should serve an amended answer that does not include a reference to this separate and apparently irrelevant interrogatory response. Please write back by indicating how Citrix wishes to proceed.

**Complaint and PI Briefing:** First, while Citrix's complaint and PI briefing identify certain alleged false or misleading statements of fact, it is unclear whether these two documents identify the totality of alleged false or misleading statements of fact known to Citrix. For example, Citrix counsel represented at the PI hearing that "[m]any of th[e] false advertisements were promulgated by Puneet Chawla." D.I. 145, p. 32. Yet, of the various statements referenced

4852-9777-6532 2

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

in the complaint, Mr. Chawla's name appears as the author of only one – see Complaint, Ex. 16. Notably, Citrix declined to offer this statement in support of its PI motion. If there are, in fact, "many" alleged false statements "promulgated by Puneet Chawla," as Citrix represented in open court, Citrix must amend or supplement its response and specifically identify what these "many" are. Alternatively, if the totality of alleged false or misleading statements presently known to Citrix is confined to those statements referenced in the complaint and PI briefing, please respond in writing confirming that is the case.

Next, Citrix's representation in the response that "[e]ach of the False and Misleading Statements is either false, deceptive, misleading and/or unsubstantiated" is non-responsive and improper. While generally representing that dozens of statements are "false, deceptive, misleading and/or unsubstantiated" may arguably suffice in a complaint, doing so at this stage of the case, and after Citrix has taken discovery and deposed witnesses on the statements is insufficient and improper. For example, a statement cannot be literally false and "misleading" (which, in false advertising parlance, refers to literally true but misleading) at the same time. The statement must be one or the other. See e.g. *AstraZeneca LP v. Tap Pharm. Prod., Inc.*, 444 F. Supp. 2d 278, 295 (D. Del. 2006).

Further, Citrix stated at the PI hearing that certain statements are "unsubstantiated" under *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578 (3d Cir. 2002). At least under Citrix's reading and application of *Novartis* (which Workspot disputes), allegedly "unsubstantiated" statements are treated differently than literally false statements, for example, because the burden shifts. D.I. 146, p. 63 ("once [Citrix] come[s[] forward to suggest or to show there was no substantiation, [Workspot is] forced to respond and rebut that proof"). Under these circumstances, Citrix's response to Interrogatory No. 7 should specifically identify the statements for which Citrix contends *Novartis* applies along with supporting facts and evidence. Finally, nowhere has Citrix's indicated whether Citrix contends the statements are presently false or merely false at a previous time.

****

All told, Citrix must supplement its response to this interrogatory by answering fully and disclosing sufficient detail for Workspot to meaningfully understand and assess the factual and legal bases Citrix's Lanham Act and common law claims rely on.

### F.    Interrogatory No. 8

This interrogatory asks Citrix to, among other things, identify facts and evidence that customers actually relied on, were deceived by, and/or were misled by the statements of fact and that the statements caused monetary damages. Citrix responds by identifying its complaint, preliminary injunction motion papers and Responses Preliminary Injunction Interrogatory Nos. 1, 3. Citrix continues by asserting generally that each statement "is either false, deceptive, misleading and/or unsubstantiated and create a reasonable likelihood of confusion, deception, and misunderstanding as set forth in Citrix's Complaint and Motion for Preliminary Injunction."

Denise S. Kraft
April 18, 2019
Page 8

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

This response is improper and non-responsive, and Citrix's apparent reliance on Rule 33(d) is deficient. Below we address each document referenced in these responses.

**Responses to PI Interrogatory No. 1:** Citrix's responses to PI Interrogatory No. 1 appear to be nonresponsive because they make no reference whatsoever to alleged false statements of fact or the like. PI Interrogatory No. 1 asked Citrix to identify the "market for which Citrix alleges the Accused Products compete." If there is specific responsive information recited within these responses, or within the documents referenced therein, that Citrix intended to identify, please serve a supplemental answer under oath with a statement to that effect consistent with the requirements of Rule 33(d), which requires that the burden is the same, or supplement with an appropriately detailed narrative. Otherwise, Citrix should serve an amended answer that does not include a reference to this separate and apparently irrelevant interrogatory response. Please write back by indicating how Citrix wishes to proceed.

**Responses to PI Interrogatory No. 3:** Citrix's supplemental response to PI Interrogatory No. 3 (asking for instances in which a Citrix customer has complained) identifies three documents -- CTX00007841; CTX00007851; CTX00007867 (all appearing to be raw data exports). Even if these documents are relevant to customer complaints Citrix has received and, thus purportedly relevant to PI Interrogatory No. 3, Citrix's response to the present interrogatory provides no explanation whatsoever how or why these three documents answer the present inquiry. If Citrix wishes to rely on Rule 33(d) and cite these documents, Citrix should serve a supplement specifically identifying these documents and providing an explanation so the burden is the same. Otherwise, Citrix should serve an amended answer that does not include a reference to this separate and apparently irrelevant interrogatory response. Please write back by indicating how Citrix wishes to proceed.

**Complaint and PI Briefing:** Workspot's complaint and PI briefing does not appear to identify any specific facts or evidence that customers actually relied on, were deceived by, and/or were misled by the statements of fact. Nevertheless, if the totality of responsive facts and evidence presently known to Citrix are confined to what is identified in the in the complaint and PI briefing, please respond in writing confirming that is the case, so Workspot can be no notice that Citrix is not aware of any specific facts of evidence to support such an assertion. If additional responsive information is presently known, Citrix should promptly supplement.

Next, Citrix represents the statements "create a reasonable likelihood of confusion, deception, and misunderstanding." If Citrix also contends that the statements also created <u>actual</u> alleged confusion, deception or misunderstanding, please promptly indicate so in a supplement with supporting evidence.

****

4852-9777-6532 2

Denise S. Kraft
April 18, 2019
Page 9

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

All told, Citrix must supplement its response to this interrogatory by answering fully and disclosing sufficient detail for Workspot to meaningfully understand and assess the factual and legal bases Citrix's Lanham Act and common law claims rely on.

### G.    Interrogatory No. 9

This interrogatory asks Citrix to, among other things, describe the facts and circumstances of the conception, reduction to practice for each of the Patents-in-Suit, including "identifying the earliest date by which the inventor conceived the claimed invention and "the earliest date by which the inventor reduced to practice the claimed invention." Citrix responds by identifying "the patents-in-suit and file histories as providing relevant information relating to conception and reduction to practice." Citrix also incorporated its PI Motion briefing.

Most patentees maintain documents and information on conception and reduction to practice beyond what is recited in the patent and file history. Nevertheless, if the present response comprises the entirety of responsive information presently known to Citrix, please write back to confirm that is the case. Citrix should also confirm that it does not intend to claim invention dates that are earlier than the filing dates appearing on the face of the patents.

### H.    Interrogatories 10 and 11

Interrogatories 10 and 11 seek discovery of prior art known to Citrix or instances where others have contended that claims of the Patents-In-Suit are invalid. Citrix responds by identifying the patents, file histories and invalidity contentions served in this case. If Citrix's responses to these interrogatories intend to convey that no additional responsive information is presently known beyond the materials already exchanged in this proceeding, please write back and confirm that is the case.

### I.    Interrogatories 12 and 13

These interrogatories ask Citrix to, among other things, provide factual and legal bases for contending the claims are the Patents-in-Suit are not anticipated or obvious, including any secondary considerations or other objective indicia of non-obviousness. Your response to each of these interrogatories states "Citrix will respond to this Interrogatory more fully as contemplated by the timing of the Court-ordered schedule."

Please write back with a date certain for when Citrix expects to respond to this interrogatory substantively. The scheduling order contemplates that parties will respond to contention interrogatories, such as these, early in the case.

\* \* \* \*

Denise S. Kraft
April 18, 2019
Page 10

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

Please respond substantively to the issues raised in this letter by April 26, 2019, including a confirmation that any supplemental or amended interrogatory answers addressing these deficiencies will be served on or before May 3, 2019.

We write without waiver of our rights and privileges, all of which are expressly reserved.


Sincerely,

/s/

Matthew A. Werber
Counsel

MAW
cc:      Counsel of Record

4852-9777-6532 2

Exhibit N

| | |
|---|---|
| **From:** | Werber, Matthew |
| **Sent:** | Tuesday, April 30, 2019 10:00 PM |
| **To:** | Biggs, Brian; Kraft, Denise |
| **Cc:** | Moore, David E.; Palapura, Bindu A.; Karen Gibbs; Lopez, Ronald; Hayes, Jennifer; Christopher, Angelo; Ikegami, Yuko; Strapp, Michael G.; Kim, Joy; Valentine, Andrew |
| **Subject:** | RE: Citrix v. Workspot - Citrix RFP Responses |

Brian and Michael:

Thank you for speaking with us. Below is our brief recap of the call. Please let us know if your recollection of the call differs from what's stated below.

**1. Workspot's RFP and Interrogatory Responses:**
Thank you for agreeing to a two-week extension to respond to the latest set of interrogatories. We will serve responses on or before May 17. RFP responses will be served this Friday.

**2. Interrogatories:**
- Your April 26 letter confirms that Citrix will agree to supplement at least Interrogatory Nos. 3 – 9 based on discovery to date. We asked for a date certain on the supplements for these interrogatories and you responded that we should expect them on or before May 17.
- You stated that, in the meantime, the Complaint provides the most detailed recitation of Citrix's false advertising allegations. Those litigated during the PI proceedings were confined to a smaller representative subset.
- Your reference to Mr. Chawla at the PI hearing (in relation to the false advertising allegations) generally related to your recollection of deposition testimony stating that the blog entries resulted from a collaborative effort among multiple individuals.
- We discussed the scope of Workspot's prior production of advertising materials for the PI motion. I reviewed the production and confirmed my understanding that Workspot's prior production was comprehensive and not limited to the representative advertisements for the PI motion.

**3. RFPs:**
- 11: Please let us know if there are non-US filings on related applications not publicly available.
- 12 and 63 – 68: These requests primarily concern discovery on potential on-sale or public disclosure activity occurring before the priority dates of the asserted patents. You indicated that you would search for documents sufficient to show the technical features of requested products (including details beyond publicly available user guides) that were first made, used or sold prior to the priority dates of the asserted patents as well as documents sufficient to show

when such products were first made, used or sold and how they operated. RFP 12 also concerns secondary considerations evidence – you agreed to produce documents relating to secondary considerations.

- 14: You confirmed you don't recall seeing any pre-suit correspondence between Workspot and Citrix regarding the asserted patents. The pre-suit correspondence we are aware of concerned Workspot's advertising.

- 20, 24 – 26: You will confirm your understanding that Citrix has not identified any non-privileged materials responsive to these requests. Including, for example, possible business correspondence with actual or potential investors or licensees not subject to privilege.

- 42: You will report back as to whether any of the inventors still work for Citrix, and whether you have access to, or information on, their publications.

- 61 – 62: You represented we should see email correspondence responsive to these requests in the Citrix production. We will review more closely and follow-up as necessary.

- 70 – 71: You asked for more information on why we believe the 01Communique lawsuit is relevant to the asserted patents in this case. We will review and report back to you.

## 4. New Patent

You agreed we will not need to serve new sets of RFPs and Interrogatories specifically referring to the new patent in order to expect discovery on the new Citrix patent. When we should expect to start receiving such discovery on the new patent was not addressed during the call.

## 5. ESI Discovery / Emails

The parties previously engaged in email discovery using key words and search terms in connection with the PI litigation. We will each circle back with our respective teams and discuss in a subsequent meet and confer what, if anything, we may wish to accomplish in ESI / Email discovery going forward, including if email discovery produced to-date suffices.

## 6. Priv. Log

The parties previously exchanged privilege logs in connection with the PI litigation. Both sides agreed to supplement priv. logs as needed, but the deadline for doing so will be negotiated in a later conference. We left open the question of whether Workspot will agree that certain pre-suit investigation communications will need to be logged. We will circle back with our team and report back.

- Matt

---

**From:** Biggs, Brian
**Sent:** Tuesday, April 23, 2019 4:31 PM
**To:** Werber, Matthew ; Kraft, Denise
**Cc:** Moore, David E. ; Palapura, Bindu A. ; Karen Gibbs ; Lopez, Ronald ; Hayes, Jennifer ; Christopher, Angelo ; Ikegami,

Yuko ; Strapp, Michael G. ; Kim, Joy ; Valentine, Andrew
**Subject:** RE: Citrix v. Workspot - Citrix RFP Responses

[EXTERNAL E-MAIL]

Hi Matt,

Thanks for following up. We plan to respond to Workspot's correspondence regarding Citrix's interrogatory responses this week, and suggest that we meet and confer on both the Interrogatories and RFPs together. To that end, we propose a meet and confer Tuesday afternoon ET. Does, say, 2pm ET / 11am PT work for you? We are generally available thereafter.

Thanks,
Brian

**Brian Biggs**
**T** +1 302.468.5661
**F** +1 302.778.7813
**M** +1 302.388.6903
**E** brian.biggs@dlapiper.com



DLA Piper LLP (US)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801-1147
United States
www.dlapiper.com

---

**From:** Werber, Matthew <mwerber@nixonpeabody.com>
**Sent:** Tuesday, April 23, 2019 1:57 PM
**To:** Kraft, Denise <denise.kraft@us.dlapiper.com>
**Cc:** Moore, David E. <dmoore@potteranderson.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Karen Gibbs <karen.gibbs@workspot.com>; Lopez, Ronald <rflopez@nixonpeabody.com>; Hayes, Jennifer <jenhayes@nixonpeabody.com>; Christopher, Angelo <achristopher@nixonpeabody.com>; Ikegami, Yuko <yikegami@nixonpeabody.com>; Strapp, Michael G. <Michael.Strapp@us.dlapiper.com>; Biggs, Brian <Brian.Biggs@us.dlapiper.com>; Kim, Joy <joy.kim@us.dlapiper.com>; Valentine, Andrew <Andrew.Valentine@us.dlapiper.com>
**Subject:** RE: Citrix v. Workspot - Citrix RFP Responses

[EXTERNAL]

Hi Denise:

Following up on my email below, please let us know your availability Thursday. Also, another topic (hopefully non-controversial) concerns agreeing that the requests previously served extend to the fifth patent presently being added to the case.

- Matt

**From:** Werber, Matthew
**Sent:** Monday, April 22, 2019 2:34 PM
**To:** 'Kraft, Denise' <denise.kraft@dlapiper.com>
**Cc:** 'Moore, David E.' <dmoore@potteranderson.com>; 'Palapura, Bindu A.' <bpalapura@potteranderson.com>; 'Karen Gibbs' <karen.gibbs@workspot.com>; Lopez, Ronald <rflopez@nixonpeabody.com>; Hayes, Jennifer <jenhayes@nixonpeabody.com>; Christopher, Angelo <achristopher@nixonpeabody.com>; Ikegami, Yuko <yikegami@nixonpeabody.com>; 'Strapp, Michael G.' <Michael.Strapp@dlapiper.com>; 'Biggs, Brian' <Brian.Biggs@dlapiper.com>; 'Kim, Joy' <joy.kim@dlapiper.com>; 'Valentine, Andrew' <andrew.valentine@dlapiper.com>
**Subject:** Citrix v. Workspot - Citrix RFP Responses

Hi Denise:

We write to follow-up regarding the RFP responses Citrix served April 5. Citrix expressed it would be willing to meet and confer regarding several of the requests. Would this Thursday, April 25 at 1 pm CT / 2 pm ET work on your end to schedule a call? We have other times available Thursday as well depending on your availability. When we do speak, we would also like to discuss matters such as ESI discovery (custodians and key words) and when we should expect to start receiving documents and a privilege log.

- Matt
Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

# Exhibit O

# REDACTED IN ITS ENTIRETY