# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CITRIX SYSTEMS, INC., | ) |
| | ) |
| Plaintiff, | ) C.A. No. 18-588-LPS |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| WORKSPOT, INC., | ) **REDACTED PUBLIC VERSION** |
| | ) |
| Defendant. | ) |

## LETTER TO THE HONORABLE SHERRY R. FALLON
## FROM STEVEN J. BALICK

OF COUNSEL:

Ronald F. Lopez
NIXON PEABODY LLP
One Embarcadero Center, 18th Floor
San Francisco, CA 94111-3600
Tel: (415) 984-8200

Jennifer Hayes
NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, CA 90071-3151
Tel: (213) 629-6179

Matthew A. Werber
Angelo J. Christopher
NIXON PEABODY LLP
70 West Madison, Suite 3500
Chicago, IL 60602-4224
Tel: (312) 977-4400

Karen A. Gibbs
1901 S. Bascom Avenue, Suite 900
Campbell, CA 95008

Dated: November 7, 2019

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Tel: 302-654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant Workspot, Inc.*

Dear Judge Fallon:

Pursuant to the Court's order on the crime fraud exception, Workspot produced attorney client communications relating to communications between Workspot's former counsel Gibson Dunn and Workspot. As part of its second sanctions motion seeking additional evidentiary sanctions Citrix then introduced these communications into the Court record. In opposition, Workspot relied on the Citrix record (and Mr. Sinha's declaration is largely based on this record) to oppose the second sanctions motion. There has been no additional waiver relating to other communications and Citrix's motion should be denied.

## I. Background

The Court ordered the production of approximately 300 previously withheld attorney-client communications over Workspot's objections. D.I. 197, 252. This discovery bears no relevance to the underlying patent and Lanham Act claims at issue in this case. Rather, the communications relate to the October 30, 2018 Chawla declaration and were produced pursuant to "expedited discovery" Citrix claimed was necessary "to determine 'whether there were others at Workspot who knew about Puneet Chawla's actions beforehand or who were involved in any cover up after the fact.'" D.I. 197, ¶22 (quoting 12/12/18 Tr. at 17:2-7).[1] Upon reviewing a subset of communications Citrix identified as representative, this Court noted "[t]hese emails do not suggest an intention to cover up the alleged falsity of the Mr. Chawla declaration." D.I. 197, ¶ 38 (emphasis added).

On August 28, 2019 Citrix briefed a motion seeking additional sanctions (hereinafter the "second sanctions motion" D.I. 261 ("Op. Br.")) – not only against Workspot but also against Workspot's former lead counsel Gibson Dunn) – on grounds subject to dispute, as set forth in Workspot's answering brief D.I. 275 ("Ans. Br."). In support of its second sanctions motion, Citrix filed the declaration of Michael Strapp offering 13 different attorney-client email chains Workspot was compelled to produce. D.I. 262, Exs. 14, 19-23, 28-29, 32-33, 35, 39-40, 43. Citrix's second sanctions motion relies extensively on those attorney-client email chains and offers numerous characterizations (and mischaracterizations) of the legal advice and direction Gibson Dunn provided to support its sanctions request.

Workspot's answering brief disputes Citrix's version of events with citation back to, and discussion of, many of the same email chains Citrix filed with the second sanctions motion. D.I. 275. Citrix now claims that Workspot waived privilege by introducing an "advice of counsel" defense based on much of the same advice and correspondence Citrix offered. Whether this is an "advice of counsel defense" typically associated with a legal issue, it is certainly a defense based on a correct and fair reading of the record.

## II. Discussion

---

[1] Despite having the privileged emails, Citrix elected only to take Mr. Chawla's deposition before filing the sanctions motion. As part of its request to Workspot for additional privileged communications following the filing of Workspot's opposition brief to the second sanctions motion, Citrix also claimed it wanted to take Mr. Sinha's deposition as well. Ex. A (attached hereto). Citrix abandoned this request as part of its letter briefing to the Court and Workspot would oppose any such renewed request.

A party may waive privilege by voluntarily and intentionally injecting privileged communications into a litigation. *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994). However, courts are less inclined to find waiver in instances when it is the party claiming waiver (rather than the party claiming privilege) who injected the communications into the litigation. See e.g. *Wilmington Savings Fund Soc. FSB v. Houston Casualty Co.*, 2018 WL 5043756, at *7 (D. Del. July 30, 2018) ("The parties' submissions suggest that HCC is the party attempting to place the communications at-issue, and thus, WSFS has not waived the privilege"); *Parker v. Prudential Ins. Co.*, 900 F.2d 772, 776 n.3 (4th Cir. 1990) ("it was Prudential, not Mrs. Parker, who attempted to insert the advice of her counsel into the proceedings").

For similar reasons, courts are hesitant to find that involuntary disclosures compelled by court order constitute a waiver. *Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 350641, at *1 (N.D. Cal. Feb. 2, 2008) ("[i]n general, a disclosure compelled by a court order like the piercing orders in this case does not waive the attorney-client and work product privileges"); *Leonen v. Johns-Manville*, 135 F.R.D. 94, 99 (D.N.J. 1990) ("in the instant case, since defendant objected to the discovery and only produced the documents pursuant to a court order, defendant's disclosure cannot be considered voluntary").

### A. Each Cited Instance of Alleged "Waiver" Lacks Merit

Citrix's motion offers seven instances of alleged waiver each falling into one of two categories: (i) advice Citrix (not Workspot) placed in issue; and (ii) communications lacking any privileged content. Each is addressed below.

#### 1. Advice Citrix (not Workspot) Placed at Issue

**Advice Related to a Social Media Post:** Citrix's claim that Workspot waived privilege by mentioning "advice related to a social media post" is illustrative. D.I. 284, 2 (citing Ans. Br., 4, 17; Sinha Decl. ¶¶ 9, 12). Among the documents the Court compelled Workspot to disclose on Citrix's motion (and over Workspot's objection) was Ex. 17 to Citrix's Strapp Declaration (D.I. 262, Ex. 17, hereinafter "Strapp Ex. 17"), which is an October 2018 email chain referring to a Twitter post ("tweet") Mr. Chawla removed from his personal twitter page. See Ans. Br., 4, 16. After successfully compelling its production in unredacted form, Citrix offered Strapp Ex. 17 for its second sanctions motion to support the assertion that Gibson Dunn "instructed" Workspot "to [d]estroy [e]vidence." Op. Br., 3-4.

Workspot's answering brief responded by explaining the evidence revealed no instruction to "destroy" evidence but instead only an instruction to Mr. Chawla to stop tweeting about Citrix on his personal page or publicly discussing Citrix. Ans. Br., 4, 16. In doing so, Workspot cited back to Strapp Ex. 17 offered in Citrix's opening brief. *Id.* (citing D.I. 262, Ex. 17 ("Don't tweet anything about Citrix")). Workspot also offered paragraph 12 of Mr. Sinha's declaration, which discloses no more than Strapp Ex. 17. Sinha, ¶ 12 ("I recall Mr. Chawla being instructed by Gibson Dunn to stop tweeting or publicly commenting about Citrix").

Citrix's present motion also cites Sinha Par. 9, which discusses the same teleconference where Mr. Chawla was told to stop tweeting about Citrix. Sinha Par. 9, however, discloses no

The Honorable Sherry R. Fallon
November 7, 2019
Page 3

more information than correspondence Citrix introduced into the record. See e.g. Strapp Ex. 13, 35.

Having convinced the Court to compel production of these privileged communications over Workspot's objections, and having relied on these communications in its own briefing with mischaracterizations of the advice in the exhibits, Citrix can hardly claim Workspot is the party who injected them into the litigation. See e.g. *Parker*, 900 F.2d at 776 n.3 ("it was Prudential, not Mrs. Parker, who attempted to insert the advice of her counsel into the proceedings").

**Advice Relating to Preparing the Chawla Declaration and Failing to Seek an Extension:** Citrix's claim that Workspot waived privilege by relying on correspondence relating to preparation of the Chawla declaration and declining to seek an extension fails for similar reasons. D.I. 284, 2-3 (citing Ans. Br., 5, 15, n. 11). The "disclosure" Citrix relies on is confined to (i) Workspot discussing October 2018 correspondence Citrix offered in support of the second sanction motion and (ii) Workspot citing a sentence from Citrix's sanctions brief regarding a change to the declaration. Ans. Br., 5 (citing Strapp. Ex. 20); Ans. Br., 15, n. 11 (citing Op. Br., 6). Citrix offers no authority finding a party waived privilege by merely citing back to an exhibit introduced by an adverse party or citing back to the adverse party's brief.

**Advice Related to Further Investigative Steps:** Citrix's claim that Workspot waived privilege by mentioning advice relating to an alleged "decision not to investigate Citrix's allegations" also fails. D.I. 284, 2 (citing Ans. Br., 5, 21; Sinha Decl. ¶¶ 13-14). Citrix cited numerous attorney-client communications in claiming "Workspot and its counsel" did not investigate Citrix's allegations. Op. Br., 4 (citing Strapp Ex. 21-23). Workspot responded with citation to a separate, but related, October 2018 email chain Workspot was compelled to produce showing Workspot's general counsel contacting Gibson Dunn to confirm there were no  and Gibson Dunn responding that Workspot was                       Ans. Br., 5, 21 (citing D.I. 276, Ex. A). Again, it was Citrix, not Workspot who caused this correspondence to be disclosed in this litigation. See e.g. See e.g. *Leonen*, 135 F.R.D. at 99 ("in the instant case, since defendant objected to the discovery and only produced the documents pursuant to a court order, defendant's disclosure cannot be considered voluntary").

Workspot also offered paragraphs 13-14 of Mr. Sinha's declaration, which discloses no more than the correspondence Workspot was compelled to produce. D.I. 276, Ex. A; Sinha Decl. ¶¶ 13-14                                                                                                              )

2.  **Communications Lacking Privileged Content**

**Litigation Hold:** Paragraph 8 of the Sinha declaration and page 18 of Workspot's answering brief refer to Workspot placing a litigation hold per counsel's recommendation. D.I. 284, 3 (citing Sinha Decl., ¶ 8, Ans. Br., 18). Basic facts such as the presence of a litigation hold and categories of documents employees are asked to preserve are generally not considered privileged. See e.g. *Major Tours, Inc. v. Colorel*, 2009 WL 2413631, at *2 (D.N.J. Aug. 4, 2009) ("Despite the fact that plaintiffs typically do not have the automatic right to obtain copies of a

defendant's litigation hold letters, plaintiffs are entitled to know which categories of electronic storage information employees were instructed to preserve and collect, and what specific actions they were instructed to undertake to that end").

**TRO Hearing Attendance**: Paragraph 20 of the Sinha declaration merely conveys practical advice Mr. Sinha received "that it was not necessary" for him to cancel a previously planned India trip to attend a hearing when Workspot's COO was available to attend instead. See Sinha Decl., ¶ 20.

**Mr. Sinha's Loss of Confidence in Gibson Dunn:** Mr. Sinha declaring he lost confidence in Gibson Dunn is simply a personal conclusion concerning why Workspot elected to change counsel. See Sinha Decl., ¶ 24.

**Not Formally Withdrawing the Chawla Declaration:** Finally, paragraph 19 of the Sinha declaration discloses what Mr. Sinha "understood at that time" in relation to footnote 3 of Workspot's TRO sur-reply and falls well short of a subject matter waiver. See Sinha Decl., ¶ 19.

### B. The Scope of the Waiver is Limited if a Waiver Occurred

To the extent a waiver occurred, the scope should be limited and not extend to the hundreds of log entries Citrix identifies in the footnotes of its motion. Per FRE 502 a waiver extends to undisclosed information only if "(1) the waiver [was] intentional: (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."

As discussed above, the subject matter of the alleged privilege disclosures concern advice and direction Workspot received as it investigated and responded to Citrix's TRO motion. See II(A)(1) above. The exchanges are almost exclusively confined to the October 2018 timeframe when the TRO opposition and Chawla declaration (both dated October 30) were prepared.

The log entries Citrix requests, however, include dozens dated not only after the October 30 opposition papers but after the December 12 TRO hearing when the last of the legal advice relating to investigating and opposing the TRO could have been conceivably received. See e.g. D.I. 284, Ex. 4, Log. Nos. 216-217 (dated 1/7/2019 and concerning "discovery requests"). Other exemplary communications falling outside the subject matter at issue concern Workspot's outside counsel relationship (not the TRO motion), as Workspot previously explained in correspondence to Citrix. *Id.*, Log Nos. 551-553; Ex. B attached, p. 2 (letter to Citrix dated August 20, 2019). Seeking correspondence falling outside the scope of the alleged waiver runs contrary to FRE 502. See e.g. *Kickflip, Inc. v. Facebook, Inc.*, 2015 WL 13446263, at *4 (D. Del. Jan. 21, 2015) ("expanding the waiver and discovery . . . as Facebook requests, would unduly risk requiring Kickflip to disclose communications outside of the subject matter of what is disclosed in the Declaration").[2]

---

[2] The forgoing are mere examples of the larger collection of log entries Citrix improperly seeks. Workspot is prepared to discuss additional entries at the telephone hearing.

The Honorable Sherry R. Fallon
November 7, 2019
Page 5

                                        Respectfully,

                                        */s/ Steven J. Balick*

                                        Steven J. Balick

cc:    Clerk of the Court (via hand delivery)
        Counsel of Record (via electronic mail)