# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CITRIX SYSTEMS, INC.,

                Plaintiff,

      v.

WORKSPOT, INC.

                Defendant.

C.A. No. 18-00588-LPS

PUBLIC VERSION

## CITRIX'S OPENING BRIEF IN SUPPORT OF ITS
## MOTION FOR SANCTIONS

# <u>TABLE OF CONTENTS</u>

**Page**

I.    STATEMENT OF FACTS ............................................................................................1

     A.    Chawla Sends Harassing, Threatening Emails to Senior Citrix Executives ...........1

     B.    Citrix Informs Workspot Counsel of Its Suspicions, and Workspot's Counsel Obstructs Citrix's Investigation and Instructs Its Client to Destroy Evidence. ...........................................................................................................3

     C.    Citrix Files a Motion for Temporary Restraining Order and Chawla Sends Citrix's Executives More Harassing Emails..........................................................4

     D.    Workspot's Initial "Investigation" ..................................................................5

     E.    Workspot Files Its Answering Brief and Chawla's Perjured Declaration .............6

     F.    Citrix Uncovers More Evidence Linking Chawla to the Bad Acts........................6

     G.    Workspot Learns that Chawla is Responsible for the Harassing Emails ...............7

     H.    Workspot's Limited Efforts to Preserve Data Relating to Chawla's Devices ...........................................................................................................7

     I.    The Court Condemns Chawla's False Declaration During the TRO Hearing ..........................................................................................................8

     J.    Citrix's Motions to Compel Forensic Imaging....................................................9

     K.    Forensic Examination Reveals Chawla Destroyed Evidence...............................10

     L.    Chawla Destroys Additional Evidence And Violates A Court Order...................11

II.    ARGUMENT ............................................................................................................11

     A.    Legal Standard ...............................................................................................11

     B.    Workspot's Egregious Conduct Has Undermined the Judicial Process................12

     C.    Sanctions Should Be Imposed ..........................................................................15

III.    CONCLUSION ........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Belmont v. MB Inv. Partners, Inc.*,
  708 F.3d 470 (3d Cir. 2013) .............................................................................. 13

*Bull v. United Parcel Serv., Inc.*,
  665 F.3d 68 (3d Cir. 2012) ................................................................................ 17

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ............................................................................................ 11

*GE Harris Ry. Elecs., L.L.C. v. Westinghouse Air Brake Co.*,
  No. 99-070-GMS, 2004 WL 5702740 (D. Del. Mar. 29, 2004) ........................ 18

*GN Netcom, Inc. v. Plantronics, Inc.*,
  No. CV 12-1318-LPS, 2016 WL 3792833 (D. Del. July 12, 2016) (Stark, J.) .......... 15, 16, 20

*Greatbatch Ltd. v. AVX Corp.*,
  179 F. Supp. 3d 370 (D. Del. 2016) (Stark, J.) ............................................. 11, 17

*In re Fine Paper Antitrust Litig.*,
  685 F.2d 810 (3d Cir. 1982) .............................................................................. 18

*In re Intel Microprocessor Antitrust Litig.*,
  562 F. Supp. 2d 606 (D. Del. 2008) ............................................................. 13, 19

*In re Winstar Commc'ns, Inc.*,
  348 B.R. 234 (Bankr. D. Del. 2005) .................................................................. 13

*Klein v. Stahl GmbH & Co. Maschinefabrik*,
  185 F.3d 98 (3d Cir. 1999) ................................................................................ 12

*Kvitka v. Puffin Co., L.L.C.*,
  No. 1:06-CV-0858, 2009 WL 385582 (M.D. Pa. Feb. 13, 2009) ...................... 17

*Leor Exploration & Prod., LLC v. Aguiar*,
  No. 9-60136-CIV, 2010 WL 3782195 (S.D. Fla. Sept. 28, 2010) ..................... 16

*Mackler Prods., Inc. v. Turtle Bay Apparel Corp.*,
  153 F. Supp. 2d 504 (S.D.N.Y. 2001) ............................................................... 14

*Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*,
  886 F. Supp. 2d 466 (D. Del. 2012) .................................................................. 12

*McLaughlin v. Phelan Hallinan & Schmieg, LLP*,
   756 F.3d 240 (3d Cir. 2014) ..............................................................18

*Micron Tech., Inc. v. Rambus Inc.*,
   917 F. Supp. 2d 300 (D. Del. 2013) ..........................................12, 18

*OptimusCorp. v. Waite*,
   No. 8773-VCP, 2015 WL 5147038 (Del. Ch. Aug. 26, 2015) ... BA_Cite_E38112_00057219

*Positran Mfg., Inc. v. Diebold, Inc.*,
   No. 2-466-GMS, 2003 WL 21104954 (D. Del. May 15, 2003) ............................19

*Qantum Commc'ns Corp. v Star Broad., Inc.*,
   473 F. Supp. 2d 1249 (S.D. Fla. 2007).........................................16, 18

*Quiroga v. Hasbro, Inc.*,
   934 F.2d 497 (3d Cir. 1991) ..............................................................13

*Rad Servs., Inc. v. Aetna Cas. & Sur. Co.*,
   808 F.2d 271 (3d Cir. 1986) ..............................................................13

*Riley v. City of New York*,
   No. 10-cv-2513 (MKB), 2015 WL 541346 (E.D.N.Y. Feb. 10, 2015).................19

*Schmid v. Milwaukee Elec. Tool Corp.*,
   13 F.3d 76 (3d Cir. 1994) ..............................................................12, 17

*Stewart v. Wilmington Tr. SP Servs., Inc.*,
   112 A.3d 271 (Del. Ch. 2015), *aff'd*, 126 A.3d 1115 (Del. 2015).........................13

*Tedesco v. Mishkin*,
   629 F. Supp. 1474 (S.D.N.Y. 1986).................................................14

*Wagner v. Sea Esta Motel I*,
   No. 13-81-RGA, 2014 WL 4247731 (D. Del. Aug. 26, 2014).............................17

**Other Authorities**

Fed. R. Civ. P. Rule 37..........................................................................*passim*

Puneet Chawla, Workspot's Co-Founder, Board Member and Chief Technical Officer, emailed Citrix's executives threatening to leak confidential Citrix documents, warning Citrix's Senior Vice President that he would suffer physical harm, and demanding that Citrix turn over a ransom payment of bitcoin. When Citrix sought Workspot's assistance to halt Chawla's illegal conduct, Workspot destroyed evidence, coordinated the filing of (and subsequently refused to withdraw) Chawla's perjured declaration, misled the Court, blocked Citrix from obtaining discovery the Court had ordered Workspot to provide, and forced Citrix to expend months of time and hundreds of thousands of dollars to stop Chawla's conduct and uncover the pervasive and widespread wrongdoing of Workspot and its counsel. Workspot should be sanctioned under this Court's inherent authority and Rule 37 of the Federal Rules of Civil Procedure.

## I.    STATEMENT OF FACTS

### A.    Chawla Sends Harassing, Threatening Emails to Senior Citrix Executives

In early October 2018, Chawla created an anonymous Guerrilla Mail[1] account and sent an email to his work email address with the subject line "Test." The account's originating Internet Protocol ("IP") address was 98.207.108.220, an IP address associated with a subscription to Comcast Cable at Chawla's home address under Chawla's wife's name (the "Comcast IP Address"). *See* Ex. 1[2]; Ex. 2, 77:11-79:9 (Chawla asserting Fifth Amendment regarding creation of a Guerrilla Mail account; references to Chawla asserting Fifth Amendment at his deposition are described hereinafter as "5th"). Chawla later created another anonymous email account

---

[1] Guerrilla Mail is a service that provides temporary email addresses. Users can send emails anonymously without registering to use the service.

[2] All citations to "Ex." are to the Declaration of Michael Strapp ("Strapp Decl.") filed herewith, unless otherwise stated.

through ProtonMail.[3] Ex. 2, 129:7-13 (5th).

Shortly after creating a Guerrilla Mail account, Chawla began sending threatening emails

to Citrix CEO David Henshall and Senior Vice President Juan Rivera[4]:

- On October 9 at 11:07 pm,[5] Chawla emailed Henshall from the Guerrilla Mail email address he used in his "test" email. Chawla warned Henshall that his emails would be "leaked" as "a thanksgiving present this year!" Ex. 3; Ex. 2, 101:10-103:16 (5th).

- On October 10 at 11:00 am, Chawla sent Henshall an email with the subject "Patent trolls," again threatening to leak Citrix emails. Ex. 4; Ex. 2, 103:21-105:21 (5th).

- On October 10 at 11:05 am, Chawla emailed Rivera informing him that Citrix emails discussing "legal patent cases have been leaked." Ex. 5; Ex. 2, 105:24-107:4 (5th).

- On October 10 at 1:56 pm, Chawla threatened Henshall that Citrix emails about Workspot would be leaked. Ex. 6; Ex. 2, 107:9-109:15 (5th).

- On October 10 at 8:23 pm, Chawla sent Henshall another email informing him that Citrix's internal "emails have leaked." Ex. 7; Ex. 2, 109:18-111:11 (5th).

- On October 11 at 3:04 am, Chawla threatened Rivera that he could "work with legal but at the end you will have your face buried in shyt!" Ex. 8; Ex. 2, 111:14-113:6 (5th).

- On October 11 at 2:26 am, Chawla posted to TheLayoff.com: "Rumor is that David Henshall's emails have been leaked. They are going to cause serious stock issues in the next 4 weeks." Ex. 9; Ex. 2, 113:9-114:19 (5th). An hour later, Chawla replied to his original post with a new post directing readers to a URL at pastebin.com (the "Pastebin URL"). *Id.*; Ex. 2, 114:20-116:16 (5th). The posts to TheLayoff.com came from a computing device tied to IP address 104.46.110.21 (the "Azure IP Address"). [6]

---

[3] ProtonMail is an email service protected under Swiss privacy laws.

[4] Unless otherwise noted, all emails sent from Chawla to Henshall and Rivera were sent from a computing device that utilized the Comcast IP Address.

[5] All times referenced herein are Eastern Daylight Time.

[6] On October 10 at 10:36 pm, four hours before posting to TheLayoff.com, Chawla created a virtual machine ("VM") through Microsoft's Azure cloud computing service that was linked to his puneet@workspot.com email address and to the Azure IP Address. Ex. 36; Ex. 2, 77:19-24. A VM is an operating system or application environment that emulates a physical computer and its capabilities. Chawla used the VM to post to TheLayoff.com and to send threatening emails to Citrix's CEO and SVP on the afternoon of October 11. Chawla shortly thereafter deleted the VM, but was initially unsuccessful in deleting the related VM infrastructure, including the public

███████████████████████████████

- A fabricated email purportedly from Henshall regarding a potential acquisition of Workspot was uploaded to the Pastebin URL on October 11. The fabricated email stated, ████████████████████ ████████████████████████████ Ex. 10; Ex. 2, 116:19-119:9.

- On October 11 at 3:37 pm, Chawla emailed Henshall with a link to the Pastebin URL. He wrote, "You are done as the CEO." Ex. 11; Ex. 2, 120:9:123:2 (5th). Chawla sent a similar email to Rivera a couple minutes later. Ex. 12; Ex. 2, 124:12-126:22 (5th). Both of these emails came from a device tied to the Azure IP Address.

### B. Citrix Informs Workspot Counsel of Its Suspicions, and Workspot's Counsel Obstructs Citrix's Investigation and Instructs Its Client to Destroy Evidence.

On October 15, Citrix wrote to Workspot counsel and requested an immediate conference regarding Chawla's emails and posts. Ex. 13, WKSPT_0106184-86. Citrix provided Workspot with detailed evidence specifically implicating Chawla as the source of the emails and posts, including a Chawla tweet referring to Citrix as a patent troll tweeted at almost the exact time Chawla sent Henshall an email with the subject "Patent trolls." *Id.*; Ex. 2, 202:18-203:1. Citrix disclosed the Comcast and Azure IP Addresses, and asked Workspot counsel to identify any Workspot employee who had sent emails to Henshall or Rivera, posted to Pastebin or TheLayoff.com, or used the Comcast or Azure IP addresses. Ex. 13, WKSPT_0106185-86.

Within an hour of receiving Citrix's allegations, Workspot counsel forwarded Citrix's correspondence to Sinha (Workspot's CEO) and Chawla. Ex. 14. In an ultimately unsuccessful attempt to hide his unlawful activity, Chawla destroyed relevant evidence the very next day, including his laptop's hard drive and the infrastructure for the VM he had created. D.I. 133, ¶ 10; Ex. 15. Workspot's counsel also instructed Chawla to delete his tweet calling Citrix a patent troll, Ex. 16; Ex. 2, 208:1-209:3, and Chawla followed counsel's advice.[7] Ex. 13,

---

IP address, disk network interface, and security group. D.I. 133, ¶¶ 8-10. The related VM infrastructure was deleted on October 16. *Id.*

[7] Immediately after deleting his patent troll tweet, Chawla also changed the status of his Twitter account to private.

█████████████████████

WKSPT_0106183. After Chawla deleted the patent troll tweet, he instructed Harry Labana, a

Workspot executive, to delete Labana's response to Chawla's tweet, which instruction Labana

followed. Ex. 17, Ex. 2, 91:15-92:1 (5th), Ex. 18.

Workspot and its counsel neither investigated Citrix's allegations nor preserved relevant

evidence. On October 24, more than a week after Citrix filed its TRO Motion, Workspot's in-

house counsel defiantly wrote that Workspot would not investigate Citrix's allegations. Ex. 19.

That same day, she also remarked that ███████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████ Ex. 20.

Instead of investigating Citrix's allegations, Workspot pointed the finger at Citrix.

Chawla and Sinha, for example, suggested that Citrix had not done enough to investigate its own

employees. *See* Exs. 21-23. Workspot's counsel similarly argued that Citrix did "not even

address the possibility that these emails may have come from [disgruntled Citrix] employees."

D.I. 112 at 8.

### C. Citrix Files a Motion for Temporary Restraining Order and Chawla Sends Citrix's Executives More Harassing Emails

After Citrix filed its TRO Motion on October 16, Chawla sent more extortionate and

duplicitous emails:

- On October 16 at 11:40 pm, Chawla sent Henshall an email with the subject "Emails leaked - you need to transfer bitcoin." Chawla wrote, "Transfer needs to happen before Oct30. Wallet address next week." Ex. 24; Ex. 2, 127:1-130:2 (5th).

- On October 20, in an attempt to make it seem that his emails had actually been sent by a disgruntled Citrix employee, Chawla wrote to Henshall, "Why did you fire employees?.... I have no emails. No leaks. The email I sent is not real. I made it up to mess with you. Just want the execs at Citrix for firing my friends understand the pain." Ex. 25; Ex. 2, 130:6-132:13 (5th).

- In a similar vein, on October 23, Chawla sent an email with the subject "Why did you fire so many people?" Ex. 26; Ex. 2, 132:18-133:18 (5th).

### D.  Workspot's Initial "Investigation"

Workspot eventually retained a forensic analyst, Kivu Consulting. D.I. 116, D.I. 133. Kivu initially proposed an investigation comprising three phases: (1) collection and preservation of all evidence; (2) a "review of available network logs for evidence of access to or the use of Guerrilla Mail"; and (3) an analysis and reporting of its findings. Ex. 27. Remarkably, Workspot and its counsel instructed Kivu not to collect and preserve evidence or conduct any actual investigation of Workspot's systems or network logs. Rather, Workspot and its counsel limited Kivu's assignment to analyzing how Guerrilla Mail works. Counsel wrote, █████████████████████

██████████████████████████████████████████████████

████████████ Ex. 28, WKSPT_0106199[8] (emphasis added). ████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████ *Compare* Ex. 30, WKSPT_0113970 *with* Ex. 31, WKSPT_0113832.

Rather than asking Kivu to collect, preserve and analyze Workspot network logs, Workspot counsel asked Sinha and Chawla to "████████████████████████

████████████████" Ex. 32. ████████████████████████████

█████████████████████████████████ Several weeks later, Kivu would finally review Workspot network logs and learn that Chawla had spoliated relevant evidence. D.I. 133, ¶¶ 5-11.

---

[8] On October 28, two days before Workspot's deadline to file its TRO Opposition, Workspot in-house counsel asked outside counsel to ████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████ *Id.*

### E. Workspot Files Its Answering Brief and Chawla's Perjured Declaration

Workspot counsel and Chawla exchanged drafts of Chawla's declaration before Workspot filed its Opposition to the TRO Motion. Ex. 29. Chawla suggested adding to an initial draft the statement that "⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛" *Id.* In the final version of his declaration, however, Chawla wrote that "*[w]hen Citrix allows the IP addresses apparently associated with the emails at issue to be shared with Workspot, we intend to investigate* whether those IP addresses were used in the Workspot cloud." Ex. 34 (D.I. 115).

Chawla misled the Court when he indicated that Workspot was not aware of the IP addresses associated with his emails. *See* Ex. 33. Chawla and Sinha had learned about the Comcast and Azure IP Addresses more than two weeks before Chawla filed his declaration because Workspot counsel had forwarded the addresses to Chawla and Sinha within an hour of receiving the IP addresses from Citrix counsel. Ex. 14.[9] In fact, two days before his declaration was filed, Chawla informed Workspot counsel that Workspot was already investigating whether the IP addresses were used in the Workspot cloud. Ex. 29. Thus, Workspot *and its counsel* knew that Chawla was misleading the Court when he submitted a sworn declaration suggesting that Workspot had not learned about the Comcast or Azure IP addresses.

### F. Citrix Uncovers More Evidence Linking Chawla to the Bad Acts

In the final version of his declaration, Chawla claimed under penalty of perjury that "I have never sent any emails—using any email service—to Mr. Henshall or Mr. Rivera," and "I

---

[9] Two days after Citrix filed its TRO Motion, Chawla asked Workspot counsel whether counsel would share "the different IPs called out in the Citrix filing." Ex. 35. Workspot counsel responded by confirming that "the IP addresses [Citrix] identified in the filing are the same ones [Citrix] identified in the email to me which we forwarded to you and Amitabh." *Id.*

have never posted any threats to Citrix or Mr. Henshall on TheLayoff.com or Pastebin.com." Ex. 34 (D.I. 115). Citrix obtained subpoena responses from Comcast, TheLayoff.com, and Microsoft demonstrating that these statements are false. For example, TheLayoff.com confirmed that Chawla's offending posts were tied to the Azure IP Address. *See* Ex. 36. Microsoft responded to Citrix's subpoena, stating that the Azure IP Address was tied to Chawla's Workspot email address. Ex. 37; Ex. 2, 77:19-24. And, as detailed below, Comcast confirmed that the Comcast IP Address was tied to Chawla's home residence. Ex. 38.

### G. Workspot Learns that Chawla is Responsible for the Harassing Emails

On November 5, Workspot's in-house counsel asked Sinha and Chawla whether either of them had received a letter from Comcast in response to Citrix's subpoena to Comcast. Ex. 39. Chawla acknowledged that same day that he and his wife had received such a letter, and Chawla informed counsel that he was going to meet with his own criminal defense attorney. *Id.* Workspot concealed these facts from Citrix and the Court. Indeed, despite mounting evidence that Chawla had committed perjury, Workspot waited more than a month before informing the Court it no longer intended to rely upon Chawla's declaration. *See* D.I. 131 at 6 n.3.

### H. Workspot's Limited Efforts to Preserve Data Relating to Chawla's Devices

Workspot failed to take affirmative steps to preserve relevant data or evidence. Workspot's counsel did not seek to image any VMs, workstations, or computing devices Chawla used during the relevant October timeframe until nearly one month *after* Workspot received the Comcast subpoena results. Ex. 40, WKSPT_0106173. Workspot only arranged for Chawla's work laptop to be imaged on December 7, *after* Citrix explicitly requested a forensic image. Ex. 41; Ex. 40, WKSPT_0106173. By the time Workspot sought to image Chawla's work laptop, Chawla was on vacation in India. Ex. 2, 52:12-24; 215:13-18. Because he was in India, Workspot counsel asked Chawla to coordinate the forensic imaging of his own laptop. Ex. 42.

Once a forensic image was made of his laptop in India, Chawla was provided a hard drive

containing a copy of the image. Ex. 43. When Chawla asked whether he should upload the

forensic image, Chawla was informed that **Workspot did not want to analyze the data**. *Id.*[10]

### I.     The Court Condemns Chawla's False Declaration During the TRO Hearing

At the December 12 hearing on Citrix's TRO motion, the Court expressed serious

concerns regarding Chawla's false declaration:

> On the TRO motion, it's hard to exaggerate how troubled I am by these
> allegations as to what allegedly Mr. Chawla did. Most particularly, it
> seems to me that he filed a false and arguably perjurious declaration with
> the Court that, among other things, not only wasted the parties' time and
> resources but wasted my time and resources as I evaluated what to do with
> this TRO. At one point, that declaration seems to be and the defendant
> argued it was the most important evidence. And when someone signs a
> declaration under oath, I tend to believe it and treat it as very important
> evidence. . . our system will completely collapse if people are regularly
> submitting false or perjurious declarations.

Ex. 44, 4:25-5:16.[11]

At the hearing, Workspot's counsel misrepresented key facts. Counsel stated they had

"been very limited in our ability to share this with the people that are involved. Up until just a

couple of weeks ago, Mr. Sinha, the CEO of Workspot, was not able to see these allegations and

understand what was at issue. We have never been able to share them directly with Mr. Chawla.

So this is a problem for us, and we're trying to get to the bottom of this, but we have been very

---

[10] Kivu's affiliate in India informed Chawla, "⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛
⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛
⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛" Ex.
43.

[11] The Court ordered the parties to conduct discovery, and stated that once discovery was
complete "plaintiffs are permitted, should they think they have a basis at that point to do so, to
file a motion for additional sanctions." Ex. 44, 110:5-17. The Court also ordered Workspot to
pay, as an initial sanction, "50 percent of the costs that the plaintiffs have incurred to date in
connection with the filing of the TRO motion." *Id.*, 111:18-23.

limited in what we can say and not say." *Id.*, 24:24-25-6. In fact, Sinha and Chawla were well aware of Citrix's claims—Workspot's counsel forwarded Citrix's detailed allegations to them on October 15. *See* Ex. 14, Ex. 2, 94:5-95:4 (5th).[12]

Workspot counsel also told the Court that Workspot had punished Chawla, explaining that "between the reprimands and the restrictions placed upon him, including not using anything other than particular equipment that we are then going to monitor . . . we think that we are placing appropriate controls on him." Ex. 44, 28:9-16. Yet, Workspot failed to preserve, monitor or image Chawla's devices, and Chawla spoliated evidence. Furthermore, Workspot has yet to identify any restrictions it had imposed on Chawla other than offering him "guidance" not to interact with anyone at Citrix. Ex. 2, 208:16-21; 209:7-14. Tellingly, Chawla was permitted to take a month-long vacation in India with his work laptop weeks after Workspot knew Chawla had filed a perjured declaration. Workspot did not terminate Chawla and remove him from its Board of Directors until December 26, 2018. D.I. 143; Ex. 2, 15:9-17; 199:20-200:1.

### J. Citrix's Motions to Compel Forensic Imaging

Although the Court ordered the parties to conduct expedited discovery, Workspot initially produced only four documents and a privilege log containing over 500 entries in response to Citrix's focused discovery requests. Exs. 45-47. Workspot and Chawla counsel also refused to produce forensic images of Chawla's devices. Exs. 48-50. Left with no other choice, Citrix filed motions in this Court and in California to compel the production of documents and forensic imaging of Chawla's personal and work-related devices. D.I. 185; Ex. 51.

On March 28, Magistrate Judge Fallon granted Citrix's motion to compel, finding that

---

[12] Workspot counsel also provided Sinha and Chawla a redacted version of Citrix's TRO Motion only days after the Motion was filed. Counsel noted that the redacted version of the TRO Motion would be sufficient for Sinha and Chawla to review and understand Citrix's allegations. Ex. 20.

Workspot's initial examination did not encompass "all means of examining deleted information to determine the relevant data points pertaining to potential spoliation." D.I. 197, ¶ 24.[13]

Similarly, on April 2, the Northern District of California granted Citrix's motion and ordered Chawla to turn over for forensic imaging "personal devices that Mr. Chawla used to browse the Internet and send emails between October 9, 2018 and October 16, 2018[.]" Ex. 52 at 8.[14]

### K.     Forensic Examination Reveals Chawla Destroyed Evidence

On May 6, Califorensics, a forensic consulting firm jointly selected by the parties, provided counsel with a summary of its examinations of Chawla's devices[15] and a list of files on those devices. Califorensics' examination indicated Chawla deleted the hard drive of his MacBook laptop on October 16, one day after Chawla learned that Citrix suspected he had sent harassing emails to Citrix's CEO and SVP.[16] During his deposition, Chawla invoked the Fifth

---

[13] Magistrate Judge Fallon also found that "Citrix's reservations about the thoroughness of Workspot's investigative efforts are supported by the record before the court. Specifically, after being notified of the allegations against Mr. Chawla on October 15, 2018, Workspot took no steps to obtain the work-issued devices in Mr. Chawla's possession…. Workspot reviewed Mr. Chawla's devices only in response to Citrix's document requests, which were served on December 7, 2018." D.I. 197, ¶¶ 25-26.

[14] Pursuant to the orders of the Delaware and California Courts granting Citrix's motions, the parties and Chawla's personal counsel engaged in an extensive meet and confer process to (1) select a neutral third party vendor to conduct the forensic imaging and (2) negotiate the terms of the forensic review protocol. Strapp Decl., ¶ 54. The parties selected Califorensics as the neutral vendor. *Id.*

[15] Eugene Illovsky, Chawla's personal counsel, informed Citrix that Chawla would only be "providing a Mac Laptop to Califorensics" for inspection. Ex. 53. Citrix's counsel asked Chawla's counsel to confirm "that the **only** personal device 'that Mr. Chawla used to browse the Internet and send emails between October 9, 2018 and October 16, 2018' is a Mac Laptop." Ex. 54. In response, Mr. Illovsky stated, "that is the only device in Mr. Chawla's possession, custody, or control that he used for that purpose in that time period." Ex. 55.

[16] Specifically, Califorensics found the "MacBook Pro does not contain artifacts from use"; the hard drive contained "installation files consistent with a new installation of MacOS 10.13.6"; the hard drive was named "Mac HD," whereas a hard drive on a new Apple device is named "Macintosh HD"; and the "timestamps included … may be consistent with [a] scenario … in which a clean version of MacOS was installed on a USB thumb drive on 2018-10-01 21:55:13

Amendment to avoid testifying about whether he used his MacBook Pro to send harassing emails to Henshall and Rivera and post to TheLayoff.com and Pastebin. Ex. 2, 62:18-63:5.

### L. Chawla Destroys Additional Evidence And Violates A Court Order

In response to Citrix's document subpoena served on January 11, Chawla withheld and appears to have deleted several relevant, responsive emails that he sent from his Workspot email account to his Gmail email account in December 2018. *See, e.g.*, Ex. 2, 184:22-186:1; 245:15-247:5; 292:7-23; Exs. 13, 21, 23, 28, 39-40. Moreover, in direct violation of the April 2 Order of the California court, Chawla never provided to Califorensics the iPhone he used during the relevant October timeframe to send email and browse the Internet. *See* Ex. 2, 43:18-21; 69:1-14; 206:17-22; 298:11-25.[17]

## II. ARGUMENT

### A. Legal Standard

A court has the inherent power to sanction a party "for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991); *Greatbatch Ltd. v. AVX Corp.*, 179 F. Supp. 3d 370, 379 (D. Del. 2016) (Stark, J.). Courts have broad discretion to craft an appropriate remedy where one is not already authorized by rule or statute. *Klein v. Stahl GmbH & Co. Maschinefabrik*, 185 F.3d 98, 108 (3d Cir. 1999).

Under Rule 37, the Court may issue sanctions for a party's failure to obey an order to provide or permit discovery and for failure to preserve electronically stored information ("ESI")

---

(UTC) and then installed to the MacBook Pro hard drive on 2018-10-16 23:44:51 (UTC)." Ex. 15.

[17] Citrix reserves the right to seek additional sanctions based upon any new information it receives from Chawla or Workspot including, but not limited to, information from the iPhone Chawla did not provide to Califorensics in violation of the California Court's Order and documents that Workspot counsel has improperly withheld from production.

"that should have been preserved in the anticipation or conduct of litigation." Fed. R. Civ. P.

37(b)(2)(A), (e); *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 480

(D. Del. 2012) ("[W]here a party neglects the duty to preserve evidence, or actively obstructs it,

a court has the authority to impose sanctions.").[18] Rule 37 requires "the court [to] order the

disobedient party, the attorney advising that party, or both to pay the reasonable expenses,

including the attorney's fees, caused by the failure, unless the failure was substantially justified

or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Where

spoliation of evidence was in bad faith, the "spoliator carries a 'heavy burden' to show lack of

prejudice because 'a party who is guilty of intentionally [destroying] documents . . . should not

easily be able to excuse the misconduct by claiming that the vanished documents were of

minimal import.'" *Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, 319 (D. Del. 2013)

(citation omitted).

### B. Workspot's Egregious Conduct Has Undermined the Judicial Process

The conduct of Workspot, its counsel and its co-founder, including actions taken to

threaten, harass and extort Citrix executives, lie about this conduct to the Court, obstruct Citrix's

inquiry, and destroy evidence, appear to be unprecedented in this Court. The egregiousness of

this conduct requires serious sanctions, both to compensate Citrix and to deter Workspot and

others from committing similar bad acts. *Quiroga v. Hasbro, Inc*., 934 F.2d 497, 505 (3d Cir.

1991); *see also In re Intel Microprocessor Antitrust Litig.*, 562 F. Supp. 2d 606, 611 (D. Del.

---

[18] The Third Circuit applies a three-part test to determine appropriate sanctions for spoliation of evidence: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).

2008). As the Court previously explained, "our system will completely collapse if people are regularly submitting false or perjurious declarations." Ex. 44, 5:14-16.

Given the severity of the misconduct, the Court should exercise its inherent authority and its authority under Rule 37 to impose sanctions on Workspot.[19] With the aim of intimidating Citrix, Chawla threatened to leak confidential Citrix emails to damage Citrix's stock price. With the express purpose of intimidating a Citrix witness, Chawla threatened to physically harm a Citrix executive who had testified in this case. And in an extortion attempt, Chawla demanded that Citrix make payment of bitcoin. Workspot cannot contest these facts; the evidence Citrix has amassed is unrebutted by Workspot, Workspot's counsel, or Chawla.[20]

Compounding these illegal acts, Workspot undermined the judicial process by knowingly filing Chawla's perjurious declaration. Workspot's counsel, *to this day*, has neither withdrawn the declaration nor acknowledged that it contains false statements. Ex. 2, 146:21-23 (5th). These acts are especially egregious because Chawla's declaration included at least one statement

---

[19] As Workspot's co-founder, CTO, and Board Member, Chawla's action are imputed to Workspot. *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 494 (3d Cir. 2013) (issue of imputation governed by state law); *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 303 (Del. Ch. 2015) ("Delaware law adheres to this general rule of imputation—of holding a corporation liable for the acts and knowledge of its agents—even when the agent acts fraudulently or causes injury to third persons through illegal conduct."), *aff'd*, 126 A.3d 1115 (Del. 2015).

[20] At his deposition, Chawla invoked the Fifth Amendment approximately 200 times concerning his threatening emails, Internet posts, and his declaration. *See, e.g.*, Ex. 2, 138:2-154:3. The Court should accordingly draw adverse inferences against Chawla, Workspot and Workspot's counsel. *Rad Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271 (3d Cir. 1986) (after two Rad managers invoked the Fifth, court instructed jury that it could "infer that the witnesses would have answered Aetna's questions adversely to RAD"). The fact that Chawla no longer works for Workspot is irrelevant. *Id.* at 275 ("the mere fact that the witness no longer works for the corporate party should not preclude as evidence his invocation of the Fifth Amendment"); *In re Winstar Commc'ns, Inc.*, 348 B.R. 234, 280 (Bankr. D. Del. 2005) ("This Court may and chooses to draw negative adverse inferences" against Lucent based on silence of two former employees, because "[b]oth were employees of Lucent when the relevant actions occurred.").

***Workspot counsel*** knew to be misleading when Workspot filed the declaration. *See Mackler Prods., Inc. v. Turtle Bay Apparel Corp.*, 153 F. Supp. 2d 504, 508 (S.D.N.Y. 2001) (sanctioning attorney where counsel instructed witness to present false evidence and another witness gave false testimony, with counsel's knowledge); *Tedesco v. Mishkin*, 629 F. Supp. 1474, 1479-80 (S.D.N.Y. 1986) (granting sanctions of reasonable costs and fees and punitive sanctions after finding attorney aided witness in committing perjury).

Workspot's counsel further undermined the judicial process by instructing Chawla to delete his "patent troll" tweet, despite the obvious fact this information was relevant. Ex. 13, WKSPT_0106183. Chawla relayed his counsel's advice to a fellow Workspot employee. Ex. 17. Workspot initially sought to conceal this "advice" in its privilege log by redacting the phrase "remove patent troll tweet," even while acknowledging that the directive to spoliate evidence "reflects advice of counsel." Ex. 46 at 35 (Log Nos. 341, 342, 346); D.I. 192 at 2; *see also* Exs. 17, 18.

What is more, Workspot's inaction facilitated Chawla's destruction of relevant evidence. Workspot took no steps to preserve critical sources of evidence including Workspot's network logs, Chawla's devices and the VMs created by Chawla on Workspot's network. Instead of investigating Citrix's allegations and preserving relevant evidence, Workspot and its counsel accused Citrix employees of sending harassing emails to Citrix executives even as Chawla was wiping his MacBook laptop clean and deleting the VM infrastructure he had used to transmit his menacing missives.

Just as troubling, Workspot and its counsel initially failed to investigate Citrix's allegations and then obstructed Citrix's attempt to probe the unlawful conduct. *See* Exs. 19, 20. Workspot instructed Kivu in late October not to collect, preserve and analyze Workspot's

network logs. Ex. 28, WKSPT_0106199. Then, when Workspot learned on November 5 that the

Comcast IP Address was tied to Chawla's home address, it took no action to inform Citrix or the

Court about this critical fact.

Workspot's counsel also undermined the judicial process by making material

misrepresentations to this Court. At the December 12 hearing, Workspot counsel falsely stated

"[u]p until just a couple of weeks ago, Mr. Sinha, the CEO of Workspot, was not able to see

these allegations and understand what was at issue." Ex. 44, 24:25-25:3; *see also id.*, 7:22-8:5.

Workspot counsel also suggested Chawla was punished despite no evidence that Workspot

levied any such punishment at the time.

### C. Sanctions Should Be Imposed

The panoply of wrongdoing by Workspot and its counsel are remarkable and troubling.

While no case found presents the same constellation of facts, a handful of cases guide the form

sanctions here should take. For example, in *GN Netcom, Inc. v. Plantronics, Inc.*, No. CV 12-

1318-LPS, 2016 WL 3792833 (D. Del. July 12, 2016) (Stark, J.), this Court granted sanctions for

spoliation of evidence because a Plantronics executive deleted approximately 40% of his emails

and instructed other employees to delete their emails. *Id.* at *2. Although Plantronics undertook

extensive measures to preserve relevant information for the litigation, such as issuing litigation

holds, conducting training sessions, and engaging a vendor to backup files, restore back-up tapes

and image devices, this Court found that these steps did not absolve Plantronics of "all

responsibility for the failure of a member of its senior management to comply with his document

preservation obligations." *Id.* at *6. This Court was "not convinced" that Plantronics had taken

all reasonable steps to recover the deleted emails. *Id.* at *7.[21]

---

[21] Just as the actions of Plantronics' Senior Vice President were imputed to Plantronics, Chawla's misconduct should be imputed to Workspot. *See GN Netcom*, 2016 WL 3792833, at

Plantronics' actions to preserve and restore deleted ESI far exceed any measures taken by Workspot. Upon learning of Citrix's detailed allegations on October 15, Workspot's counsel took *no* immediate steps to preserve evidence. Instead, Workspot counsel affirmatively instructed Chawla to *delete* information. Whereas Plantronics hired a forensic consultant to investigate and attempt to recover deleted information, Workspot hired a forensic consultant, but then instructed the consultant *not to investigate relevant sources of information* because Workspot feared information the consultant would uncover "████████████████████ ████████████████" Ex. 28, WKSPT_0106199. [22]

Because the facts here are at least as egregious as those in *GN Netcom*, appropriate sanctions should, at minimum, include those that were granted in *GN Netcom*, including (1) fees and costs incurred by Citrix; (2) punitive sanctions; (3) a directive to Citrix to propose evidentiary sanctions; and (4) an instruction that the jury may draw an adverse inference that information destroyed was unfavorable to Workspot and favorable to Citrix. *Id.* at *13-14.[23]

---

*6-7 (citing *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 137 (S.D. Fla. 1987) ("We can only assume that Mr. Arnold's destruction order was designed, however mistakenly, to further the corporation's interests.")).

[22] Additional instructive cases include *Qantom Commc'ns Corp. v Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1270-1276 (S.D. Fla. 2007), where the court entered default judgment because defendants lied under oath, failed to produce relevant documents, and filed a bad-faith bankruptcy petition, and *Leor Exploration & Prod., LLC v. Aguiar*, No. 9-60136-CIV, 2010 WL 3782195, at *13 (S.D. Fla. Sept. 28, 2010), where the court stripped defendant's defenses and dismissed defendant's co-pending action because defendant violated the court's orders and hacked plaintiff's privileged emails.

[23] *See also Greatbatch*, 179 F. Supp. 3d at 385 (Stark, J.) (granting sanction of removing issue of damages and validity of '715 patent and instructing jury to assume infringement of same); *Wagner v. Sea Esta Motel I*, No. 13-81-RGA, 2014 WL 4247731, at *2 (D. Del. Aug. 26, 2014) (finding insurance company acted in bad faith and spoliated evidence and issuing adverse inference instruction); *Kvitka v. Puffin Co., L.L.C.*, No. 1:06-CV-0858, 2009 WL 385582, at *7 (M.D. Pa. Feb. 13, 2009) (permitting adverse inference instruction based on plaintiffs' destruction of laptop containing evidence relevant to claims); Fed. R. Civ. P. 37(e) comment ("[Subdivision (e)(2)] authorizes courts to use specified and very severe measure to address or deter failures to preserve electronically stored information, but only on finding that the party that

Applying the Third Circuit's test under *Schmid*, sanctions for evidence spoliation are also warranted.[24] First, Chawla, Workspot, and Workspot's counsel are unquestionably the parties at fault who altered or destroyed evidence. 13 F.3d at 79. Chawla, at Workspot counsel's direction, deleted a social media post and instructed another Workspot employee to delete his post. Exs. 17, 18. Chawla also wiped the hard drive of his laptop, deleted the VM he created to send the harassing emails and Internet posts, and deleted emails relevant to the "expedited, limited discovery" this Court ordered on December 12 from his personal Gmail account. All of this spoliation occurred after Citrix's October 15 email putting Workspot and its counsel on notice of Citrix's allegations.

Second, Citrix was severely prejudiced by the unlawful conduct of Chawla, Workspot and its counsel. Beginning on October 9, when Henshall received the first email threat, Citrix was forced to divert substantial manpower and technical resources (including significant time of its engineers, in-house counsel, outside counsel, and senior management) to investigate the threats and ensure that Citrix's systems had not been compromised. These steps were necessary because Citrix executives were explicitly informed that Citrix confidential information was being leaked on the Internet. Citrix expended hundreds of hours to uncover and investigate Chawla's conduct and Workspot's cover-up. This expenditure of resources was directly caused by Workspot and its counsel's obstruction.[25]

---

lost the information acted with the intent to deprive another party of the information's use in the litigation.").

[24] "Spoliation occurs where (1) the evidence was in the party's control; (2) the evidence is relevant to the claims or defenses in the case; (3) there has been actual suppression or withholding of evidence; and (4) the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (quoting *Schmid*, 13 F.3d at 79).

[25] Sanctions are also appropriate under Rule 37(b)(2)(A) because Workspot and its counsel violated this Court's December 12 Order directing the parties to conduct "limited, expedited

Sanctions must accomplish the goal of "(1) deterring future spoliation of evidence; (2) protecting the [adverse party's] interests; and (3) remedying the prejudice [the adverse party] suffered as a result of the spoliating party's actions." *Micron Tech.*, 917 F. Supp. 2d at 324. Here, the Court should strip Workspot of its equitable defenses, including its defenses of waiver and estoppel, unclean hands, and laches. As in *Qantum*, Chawla lied under penalty of perjury in an effort to undermine the judicial process. 473 F. Supp. 2d at 1270-1276. Workspot should not be permitted to argue equity with its unclean hands.

The Court should also provide an instruction at trial that Workspot made false statements during this litigation and then destroyed evidence relevant to those false statements. *See GE Harris Ry. Elecs., L.L.C. v. Westinghouse Air Brake Co.*, No. 99-070-GMS, 2004 WL 5702740, at *5 (D. Del. Mar. 29, 2004) (adopting adverse inference as sanction for destruction of documents). The jury should learn of Workspot's dishonest conduct and destruction of evidence, particularly where the falsity of Workspot's statements is at issue.[26] While the Court has the power to enter a default judgment against Workspot in light of its spoliation of evidence, at a

---

discovery" regarding Chawla's harassing emails and Internet posts and his subsequent perjurious declaration. Ex. 44, 110:12-17. *See, e.g., McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 249-50 (3d Cir. 2014) (affirming district court's sanctions in form of attorney's fees for violation of district court's discovery order); *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 823 (3d Cir. 1982) (affirming district court's sanctions in form of preclusion of evidence). Notwithstanding the Court's Order, Workspot initially provided Citrix with four documents and a privilege log with more than 500 entries, forcing Citrix to seek relief from this Court and a California court. Exs. 45, 46. Citrix prevailed in each instance. D.I. 197; Ex. 52.

[26] Citrix requests that the Court also instruct the jury to resolve any doubts as to the credibility of Juan Rivera in Rivera's favor because of Chawla's email to Rivera in which he threatened Rivera with physical violence. *See OptimusCorp. v. Waite*, No. 8773-VCP, 2015 WL 5147038, at *20 (Del. Ch. Aug. 26, 2015) (resolving any doubts as to reliability of witnesses' testimony in defendants' favor because plaintiffs' threats "pervert[s] the truth-seeking function of trial"); Ex. 8; *see also Riley v. City of New York*, No. 10-cv-2513 (MKB), 2015 WL 541346, at *9, 11-12 (E.D.N.Y. Feb. 10, 2015) (awarding sanctions, notifying jury of plaintiff's witness tampering, and permitting an adverse inference to be found against plaintiff).

minimum the jury should know that Workspot breached its duty to preserve evidence. *Positran Mfg., Inc. v. Diebold, Inc.*, No. 2-466-GMS, 2003 WL 21104954, at *2 (D. Del. May 15, 2003).

Furthermore, Workspot and its counsel should be sanctioned monetarily for their egregious conduct. This Court ordered Workspot as an initial sanction to pay 50% of the fees Citrix had incurred through the date of the December 12 hearing. Since that date, discovery has confirmed not only that Chawla knowingly filed a false declaration, but also revealed that Workspot and its counsel (i) knew when Chawla filed his declaration that the declaration was misleading, (ii) instructed Chawla to destroy evidence, (iii) instructed an outside consulting firm not to investigate Workspot's network logs because it would not be "helpful," and (iv) refused to provide Citrix with discovery, requiring Citrix to file two motions to compel, each of which was granted. These actions, taken together, amount to bad faith, and Workspot and its counsel should be held jointly liable for their actions. *In re Intel Microprocessor Antitrust Litig.*, 562 F. Supp. 2d at 608.

Given the magnitude of the wrongdoing committed by Chawla, Workspot, and its counsel, Citrix requests an award of fees and costs for all of its efforts to investigate, uncover, and attempt to remediate Workspot's unlawful conduct through the resolution of this Motion including, but not limited to, the 50% of fees and costs for Citrix's efforts through December 12 that were not part of the Court's initial sanctions award. To deter further misconduct and obstruction, Citrix also requests punitive sanctions for the bad faith spoliation of relevant information and for the misconduct of Chawla, Workspot and Workspot's counsel in an amount that this Court deems appropriate, payable to Citrix. *GN Netcom*, 2016 WL 3792833, at *13 (granting punitive sanctions in the amount of $3 million).

## III.    CONCLUSION

For the foregoing reasons, Citrix requests the Court issue the following sanctions against Workspot and Workspot's counsel and Chawla: (1) strike Workspot's equitable defenses; (2) instruct the jury at trial concerning (a) Chawla's harassing emails and Internet posts, including emails in which Chawla threatened to leak confidential Citrix documents, attempted to extort bitcoin, and warned a Citrix executive that he would suffer physical harm; (b) Chawla's subsequent spoliation of evidence; (c) Workspot's willful negligence in investigating Chawla's misconduct; and (d) Chawla's false declaration to the Court; (3) instruct the jury at trial to resolve any doubts as to Rivera's credibility in his favor; (4) permit the jury to infer that information destroyed by Chawla was unfavorable to Workspot and favorable to Citrix; (5) direct Citrix to propose evidentiary sanctions Citrix believes are warranted, with this proposal to be evaluated by the Court as the case progresses towards trial; (6) levy punitive, monetary sanctions for Workspot's bad faith spoliation and for the misconduct of Chawla, Workspot and Workspot's counsel, payable to Citrix; (7) award to Citrix its reasonable attorneys' fees and costs for all of its efforts to investigate, uncover, and attempt to remediate Workspot's unlawful conduct from October 9, 2018 through the date on which this Court finally resolves this Motion including, but not limited to, the 50% of fees and costs for Citrix's efforts through December 12 that were not part of the Court's initial sanctions award; and (8) award Citrix interest accruing from December 12, 2018 through the date of payment by Workspot of sanctions by Workspot.

Dated:  August 28, 2019

**OF COUNSEL**:

Michael G. Strapp (admitted *Pro Hac Vice* )
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Telephone:  (617) 406-6031
michael.strapp@dlapiper.com

**DLA PIPER LLP (US)**

*/s/ Denise S. Kraft*
Denise S. Kraft (DE Bar No. 2778)
Brian A. Biggs (DE Bar No. 5591)
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, DE  19801
Telephone:  (302) 468-5700
Facsimile:  (302) 394-2341
denise.kraft@dlapiper.com
brian.biggs@dlapiper.com

*Attorneys for Plaintiff*
*Citrix Systems, Inc.*

## CERTIFICATE OF SERVICE

I, Denise S. Kraft, do hereby certify that on this 28th day of August, 2019, I caused a true and correct copy of the foregoing **[FILED UNDER SEAL] CITRIX'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SANCTIONS** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification to the following attorneys of record, and is available for viewing and downloading.

David E. Moore
Stephanie E. O'Byrne
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801
dmoore@potteranderson.com
sobyrne@potteransderson.com
bpalapura@potteranderson.com

Matthew A. Werber
Angelo Christopher
Nixon Peabody LLP
70 West Madison St.
Chicago, IL 60602
Tel: (312) 977-4400
mwerber@nixonpeabody.com
achristopher@nixonpeabody.com

Karen A. Gibbs
1901 S. Bascom Ave
Suite 900
Campbell, CA 95008
karen.gibbs@workspot.com

Jennifer Hayes
Nixon Peabody LLP
300 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 629-6000
jenhayes@nixonpeabody.com

Ronald F. Lopez
Nixon Peabody LLP
One Embarcadero Center
San Francisco, CA 94111
Tel: (415) 984-8200
rflopez@nixonpeabody.com

*/s/ Denise S. Kraft*
Denise S. Kraft (DE Bar No. 2778)

EAST/168302978

22