### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CITRIX SYSTEMS, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>WORKSPOT, INC.<br><br>      Defendant. | C.A. No. 18-00588-LPS<br>PUBLIC VERSION OF D.I. 291<br>FILED DECEMBER 5, 2019 |

### CITRIX'S REPLY BRIEF IN SUPPORT OF ITS
### <u>MOTION FOR SANCTIONS</u>

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ..................................................................................1

II. ARGUMENT ................................................................................................................4

    A. Workspot Cannot Avoid Responsibility By Blaming Chawla, Gibson Dunn, And Citrix For Its Misconduct ..................................................................4

        i. Workspot, Not Just Chawla, Engaged In Sanctionable Conduct ................4

        ii. Chawla's Unlawful Conduct Is Imputed To Workspot ..............................7

        iii. Workspot Fails In Its Attempt To Shift Blame To Gibson Dunn ................9

        iv. Workspot Fails In Its Attempt To Shift Blame To Citrix ..........................10

    B. Workspot Should Be Sanctioned For Its Misconduct ............................................12

        i. Citrix Should Recover All Fees And Costs It Incurred Because Of The Unlawful Conduct Of Workspot, Chawla, and Workspot's Counsel ......................................................................................................12

        ii. Sanctions Should Be Imposed Because Of Workspot's Spoliation Of Evidence And False Statements ............................................................13

III. CONCLUSION ...........................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bull v. United Parcel Serv., Inc.*,
   665 F.3d 68 (3d Cir. 2012) .................................................................................................13

*CIGNEX Datamatics, Inc. v. Lam Research Corp.*,
   2019 WL 1118099 (D. Del. Mar. 11, 2019) .......................................................................14

*Conklin v. Hale*,
   680 F. App'x 120 (3d Cir. 2017) ..........................................................................................9

*Cotton v. Costco Wholesale Corp.*,
   2013 WL 3819974 (D. Kan. July 24, 2013) ................................................................13, 14

*In re Cont'l Airlines, Inc.*,
   279 F.3d 226 (3d Cir. 2002) .................................................................................................7

*CTS Corp. v. Dynamics Corp. of Am.*,
   481 U.S. 69 (1987) ...............................................................................................................8

*In re Global Power Equip. Grp. Inc.*,
   418 B.R. 833 (Bankr. D. Del. 2009) ...................................................................................14

*GN Netcom, Inc. v. Plantronics, Inc.*,
   2016 WL 3792833 (D. Del. July 12, 2016) ............................................................13, 14, 15

*Lambda Optical Sols., LLC v. Alcatel-Lucent USA, Inc.*,
   2015 WL 4720575 (D. Del. Aug. 7, 2015) ..........................................................................7

*Micron Tech., Inc. v. Rambus Inc.*,
   917 F. Supp. 2d 300 (D. Del. 2013) ..............................................................................13, 15

*Monolithic Power Sys., Inc. v. Intersil Corp.*,
   2018 WL 6075046 (D. Del. Nov. 11, 2018) ......................................................................14

*Myers v. Trendwest Resorts, Inc.*,
   148 Cal. App. 4th 1403 (2007) ............................................................................................8

*Perry v. Cty. of Fresno*,
   215 Cal. App. 4th 94 (2013) ................................................................................................8

*Procaps S.A. v. Patheon Inc.*,
   2014 WL 800468 (S.D. Fla. Feb. 28, 2014) ......................................................................14

*State v. Grossberg,*
    705 A.2d 608 (Del. Super. 1997) ...................................................................................... 10

*Stewart v. Wilmington Trust SP Servs., Inc.,*
    112 A.3d 271 (Del. Ch. 2015) ......................................................................................... 8, 9

**Other Authorities**

Delaware Lawyers' Rules of Professional Conduct, Rule 3.3 ....................................................... 10

Fed. R. Civ. P. 37 ..................................................................................................................... 4, 13

I.   **PRELIMINARY STATEMENT**

On December 12, 2018, this Court ordered the parties to conduct discovery to uncover information regarding both "the targeted way" in which Citrix's executives were harassed and "the filing of a false declaration by Workspot . . . under penalty of perjury." Op. Ex. 44 at 110-112. Workspot refused to follow the Court's order, forcing Citrix to file motions with this Court and a California court to seek and obtain orders compelling Workspot and Puneet Chawla, Workspot's co-founder, Board Member, and CTO, to turn over discovery. Information Citrix obtained proves that Workspot and its counsel, not just Chawla, knowingly filed a perjurious declaration with this Court, and that Chawla, due in large part to Workspot's refusal to investigate Citrix's allegations, spoliated evidence. Although Workspot previously challenged the notion that it engaged in any wrongful conduct—Workspot even argued in its TRO opposition that ***Workspot*** was entitled to recover its own attorneys' fees—Workspot now admits that Chawla and Workspot counsel acted unlawfully.

In its sanctions opposition, Workspot acknowledges for the first time that:

- Chawla authored harassing emails and web posts directed at Citrix executives using his MacBook, and then subsequently deleted the MacBook's hard drive. (Ans. at 3, 18)

- Chawla created a Microsoft Azure virtual machine (VM) on Workspot's network with his Workspot user ID, used the VM to send harassing emails and web posts, and then "acted to delete the VM…just hours after Gibson Dunn forwarded Citrix's 'notice' email to Mr. Chawla." (*Id.* at 7) "[D]etails on specific actions that took place inside the VM may have been lost" when Chawla deleted the VM. (*Id.* at 19)

- During the weeks immediately following Citrix's October 15, 2018 notice email, Workspot chose ***not to investigate*** Chawla's devices, Workspot's network logs, or VMs Chawla had created using Workspot network resources. (*Id.* at 5-6)

- Workspot and its counsel—not just Chawla—knowingly included false information in Chawla's sworn declaration. In particular, Chawla's declaration includes the statement that "[w]hen Citrix allows the IP addresses apparently associated with the emails at issue to be shared with Workspot, we intend to

investigate whether those IP addresses were used in the Workspot cloud." In fact, by the time Workspot filed Chawla's declaration, both Chawla and Amitabh Sinha, Workspot's CEO, had already "seen the IP address numbers in Citrix's October 15, 2018 email." (*Id.* at 13-15)

Although Workspot concedes in its sanctions opposition that the evidence regarding its unlawful conduct is incontrovertible, Workspot nonetheless tries to avoid responsibility for its actions. Workspot's first scapegoat is Chawla, who Workspot describes as a "unilateral," rogue actor. *Id.* at 11. However, there is no dispute that Workspot—not just Chawla—is responsible for failing to take ***any*** steps to investigate the allegations set out in Citrix's detailed notice email and TRO motion, filing a false declaration with the Court with at least one statement that Workspot itself knew at the time of filing was false, and obstructing Citrix's discovery efforts even after the Court ordered Workspot to provide Citrix with discovery. Moreover, Chawla's harassing and extortionate emails, spoliation of evidence and perjurious declaration are imputed to Workspot. This is not only the law of the case—this Court has already imputed Chawla's knowledge and actions to Workspot—but also amply supported by case law.

Workspot's second scapegoat is Gibson, Dunn & Crutcher, Workspot's lead trial counsel during the relevant time period, whom Workspot blames for advising Workspot not to investigate Citrix's allegations, recommending that Workspot answer Citrix's TRO motion and file the Chawla declaration before receiving subpoena responses and investigating Workspot's network logs, and knowingly filing Chawla's false declaration. Workspot has no grounds to portray itself as an innocent actor, unwittingly duped by one of "the most experienced and marquee law litigation firms in the Country." *Id.* at 2. Not only did Workspot's in-house counsel work together with Gibson Dunn to respond to Citrix's TRO motion, it was Workspot's in-house counsel, not Gibson Dunn, who directed Workspot not to investigate Chawla's unlawful conduct.

Workspot's final scapegoat is Citrix. Workspot blames Citrix for withholding relevant

2

information from Workspot. In fact, within just a few days of receiving Chawla's harassing emails, Citrix provided Workspot with an extensive overview of its allegations, including details about its initial investigation. In the weeks following Citrix's October 15, 2018 initial notice email, Citrix kept Workspot apprised of its investigation notwithstanding Workspot's refusal to cooperate with Citrix's repeated requests for assistance.

Workspot's attempt to blame Citrix for its own wrongdoing is rich in irony. Not only did Workspot counsel fail to utilize the information willingly provided by Citrix, Workspot counsel immediately forwarded Citrix's October 15 notice email to Chawla and Sinha, even though the notice email specifically identified Chawla by name as the likely author of the harassing emails. As soon as Chawla was made aware by Workspot counsel of Citrix's allegations, Chawla began a systematic effort to delete both the VM he had created and the hard drive of his MacBook laptop. Chawla was able to successfully destroy relevant information because Workspot took no precautionary steps to preserve information and because Workspot refused to investigate Citrix's allegations. Remarkably, weeks later, after Workspot had already learned that Chawla lied in his declaration and was the author of the harassing emails and web posts, Workspot permitted Chawla to oversee the forensic imaging of his own Workspot laptop.

Workspot's failed attempts to shift blame to Chawla, Gibson Dunn, and Citrix underscore why sanctions are appropriate. Citrix's TRO motion, the discovery that followed, and the instant sanctions motion would all have been rendered moot if Workspot had cooperated with Citrix's requests for assistance in investigating Chawla's unlawful activity. Workspot instead pointed the finger at Citrix and *refused* to investigate Citrix's allegations. Workspot and its counsel—not just Chawla—then filed a false and perjurious declaration with the Court. Even after the Court ordered Workspot to provide discovery, Workspot and its counsel refused. More than a year has

passed since Chawla's harassing, extortionate emails and web posts and Workspot's false declaration, yet Workspot still refuses to accept any responsibility.

The Court should not countenance Workspot's conduct. As this Court stated, "our system will complete collapse if people are regularly submitting false or perjurious declarations." Op. Ex. 44, 4:25-5:16. There is now irrefutable evidence that Chawla, Workspot's counsel and Workspot itself knowingly submitted a false and perjurious declaration. Citrix accordingly requests that this Court impose the sanctions sought in Citrix's motion under the Court's inherent authority and Rule 37 of the Federal Rules of Civil Procedure.

## II. ARGUMENT

### A. Workspot Cannot Avoid Responsibility By Blaming Chawla, Gibson Dunn, And Citrix For Its Misconduct

#### i. Workspot, Not Just Chawla, Engaged In Sanctionable Conduct

Workspot refused to take any remedial actions in response to Citrix's initial notice email and TRO Motion. D.I. 197, ¶ 36 ("Workspot's counsel reviewed the allegations in the TRO motion and, nonetheless, took no steps to investigate the allegations independently in the two weeks prior to filing Workspot's response."). Instead, "Workspot's counsel prepared its response to the TRO motion, categorically denying the allegations lodged by Citrix and filing Mr. Chawla's allegedly false declaration in conjunction with the response." *Id*; *see also* Op. at 5, Exs. 28-31. Workspot, not Chawla, is to blame for Workspot's failure to investigate and remedy Chawla's bad acts. *See* D.I. 290 at 7 n.2 (noting that "communications regarding the retainer agreement with third-party forensic investigator Kivu suggest that Workspot's in-house counsel sought to limit the scope of Kivu's investigation due to cost considerations").

Workspot is also responsible for filing Chawla's false declaration. Indeed, Workspot does not deny that Workspot and its counsel—not just Chawla—*knew* Chawla's declaration was false.

4

Op. at 6; Ans. at 14. Chawla's declaration states, "When Citrix allows the IP addresses apparently associated with the emails at issue to be shared with Workspot, we intend to investigate whether those IP addresses were used in the Workspot cloud." Op. Ex. 34, ¶ 6 (D.I. 115). But more than two weeks before Workspot filed the declaration, Workspot's counsel had already provided Chawla and Sinha the IP Addresses (Op. Ex. 14), and by the time the declaration was filed, Workspot had begun investigating whether Workspot used those IP Addresses. Op. Ex. 29.

Workspot seeks to avoid the harsh consequences of knowingly filing a false declaration by suggesting that the referenced portion of Chawla's declaration was not false, just "imprecisely worded." Ans. at 15. Obfuscation and euphemisms cannot hide the plain fact that Workspot deliberately chose to mislead the Court. Workspot wanted the Court to believe it had no access to the IP Addresses so that it could misrepresent that it was unable to investigate Citrix's claims. This was a lie made under penalty of perjury, not just an "imprecisely worded" statement.

Workspot's attempt to pass off its filing of a false declaration as an excusable mistake is undermined by an email sent by Chawla the day before his declaration was filed. On October 29, 2018, in an email to Gibson Dunn and Workspot in-house counsel, copying Workspot's CEO and Workspot's Delaware counsel, Chawla specifically requested that Workspot add the following statement to his declaration, ***"Workspot is investigating if any machine was compromised or if the IP address mentioned by Citrix was ever used in the Workspot cloud."*** Op. Ex. 29 (emphasis added). Workspot not only omitted this statement from Chawla's declaration, but instead included a false statement in the declaration directly at odds with the facts Chawla had insisted on including. A side-by-side comparison of the factual statement Chawla sought to include in his declaration on October 29 and the false statement Workspot and

5

its counsel knowingly submitted under penalty of perjury to the Court the very next day is revealing:

| Statement Chawla Sought to Add to His Declaration | Statement Workspot and its Counsel Instead Included in Chawla's Declaration |
|---|---|
| "Workspot is investigating if any machine was compromised or if the IP address mentioned by Citrix was ever used in the Workspot cloud." | "When Citrix allows the IP addresses apparently associated with the emails at issue to be shared with Workspot, we intend to investigate whether those IP addresses were used in the Workspot cloud." |

As if knowingly filing a false declaration were not bad enough, Workspot also failed to promptly inform the Court that Chawla had lied when he swore under penalty of perjury that he was not the source of the harassing emails. Although Workspot knew Chawla was the source of the emails at least by November 5 (Op. Ex. 39), Workspot never informed Citrix or the Court of that fact. Even after the Comcast subpoena results arrived on November 13 confirming Chawla's IP address, Workspot did not withdraw Chawla's declaration. Instead, Workspot filed a sur-reply nearly one month later with an anemic footnote suggesting that the Court need "not rely on" the Chawla declaration. D.I. 131 at 6 n.3. One week later, at the December 12 TRO hearing, Workspot's counsel refused to acknowledge that Chawla's declaration was false or that Chawla was responsible. Op. Ex. 44, 25:24-26:6 ("we don't know for certain, one way or the other").[1]

Workspot also failed to preserve Chawla's computing devices, instead permitting Chawla to take his work laptop on a vacation to India weeks after learning that Chawla was the source of the harassing emails and the author of a false declaration. While Chawla was in India in early December 2018, *Workspot directed Chawla to supervise the forensic collection of his own*

---

[1] In a similar vein, Workspot failed to reprimand or discipline Chawla for almost two months after it learned he was the source of the emails and web posts. Ops. Ex. 44, 28:5-6 ("It doesn't appear, from what you're telling me, that Workspot has really punished Mr. Chawla."); D.I. 197, ¶ 36 ("Workspot did not decide to disassociate itself from Chawla until December 26, 2018, nearly two months after Workspot filed Mr. Chawla's declaration.").

*laptop*. Op. at 7-8. ***After the forensic imaging of Chawla's Workspot laptop was complete, Workspot permitted Chawla to retain the hard drive with the forensic image of his laptop and took no steps to review the actual files.*** Op. Ex. 43. If Workspot had taken even the most basic steps to preserve information and investigate Citrix's allegations, Chawla would not have had the opportunity to spoliate relevant evidence.

### ii. Chawla's Unlawful Conduct Is Imputed To Workspot

Workspot's attempt to shift blame to Puneet Chawla fails. The law of the case is that Chawla's knowledge and actions as Workspot's co-founder, Board Member, and CTO are imputed to Workspot. *In re Cont'l Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002); *Lambda Optical Sols., LLC v. Alcatel-Lucent USA, Inc.*, 2015 WL 4720575, at *3 (D. Del. Aug. 7, 2015) (applying law of the case doctrine to court's previous ruling on personal jurisdiction) (citation omitted).

This Court has already twice imputed Chawla's misconduct to Workspot. First, at the December 12, 2018 hearing, this Court ordered that 50% of fees and costs incurred by Citrix through that date should be paid by Workspot because of Chawla's actions. Op. Ex. 44, 111:18-24. Second, Magistrate Judge Fallon found, and this Court affirmed, that the crime-fraud exception barred *Workspot* from asserting attorney-client privilege because of *Chawla's* role with the company. D.I. 197, ¶ 36.

Imputation is appropriate not only under the law of the case, but also under Delaware law.[2] Delaware follows the general imputation doctrine and imputes the knowledge and actions

---

[2] Workspot suggests California law applies because this is the state "where Mr. Chawla's unilateral actions were committed" (Ans. at 11 n.7), but a choice of law analysis is unnecessary. In the cases Workspot cites, courts were exercising supplemental jurisdiction over underlying state law claims, including breach of fiduciary duty and fraud and negligent misrepresentation, requiring the courts to choose the applicable law for various claims. Here, this Court's jurisdiction is premised on a federal question, not underlying state law claims. A choice of law

7

of a corporate executive to the corporation when the executive is acting in the course of his employment and for the benefit of the corporation. *Stewart v. Wilmington Trust SP Servs., Inc.*, 112 A.3d 271, 302-3 (Del. Ch. 2015). This general rule applies "even when the agent acts fraudulently or causes injury to third persons through illegal conduct." *Id.* at 303.[3]

In *Stewart*, the Chancery Court imputed to a corporation its president's scheme to steal money from insurance policyholders and mislead the Delaware Department of Insurance because the corporation's position was improved, albeit temporarily, by the executive's bad acts. *Id.* at 309-10. The fraudulent schemer's unlawful actions in *Stewart* certainly were not within the scope of his employment. Nonetheless, the Chancery Court imputed the actions of the executive to the company because the unlawful actions were undertaken to benefit the company. *Id.* at 303 (discussing how adverse interest exception may not apply "even when the 'benefit' enjoyed by the corporation is outweighed by the long-term damage that is done when the agent's mischief comes to light" because "most instances of fraud or illegal misconduct by corporate actors confer at least some benefit on the corporation"). Just like the scheming, unlawful actions of the executive in *Stewart*, Chawla's misconduct should be imputed to Workspot.

---

analysis is also unnecessary because Workspot is a Delaware corporation and Delaware has the authority to regulate Workspot. *See CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89 (1987) ("No principle of corporation law and practices is more firmly established than a State's authority to regulate domestic corporations").

[3] Workspot's reliance on *Myers v. Trendwest Resorts, Inc.*, 148 Cal. App. 4th 1403 (2007) and *Perry v. Cty. of Fresno*, 215 Cal. App. 4th 94 (2013) is misplaced. First, these are California state court decisions that are neither precedential nor persuasive. Second, the courts in *Myers* and *Perry* analyzed the issue of employer liability under the doctrine of *respondeat superior*, not under the imputation doctrine. Additionally, in both *Myers* and *Perry*, the courts found the employees' actions to be personal in nature. Here, Chawla sent anonymous emails referencing the parties' patent litigation and threatening to leak confidential Citrix documents. These anonymous emails were certainly not sent for Chawla's personal benefit, but instead appear to have been motivated by Chawla's desire to gain an advantage for Workspot in this litigation.

### iii. Workspot Fails In Its Attempt To Shift Blame To Gibson Dunn

Workspot cannot absolve its sanctionable conduct by blaming Gibson Dunn for ineffective assistance of counsel.[4] Workspot and Chawla, not Gibson Dunn, are the parties primarily responsible for the sanctionable conduct detailed in Citrix's motion. While Gibson Dunn may be blameworthy, Workspot cannot avoid sanctions simply by firing its counsel and asserting that its actions were premised on its former counsel's advice.[5]

More fundamentally, Workspot cannot pin blame exclusively on Gibson Dunn for bad advice when it was represented by other competent counsel, including Workspot in-house counsel, during the relevant period. In fact, it was Workspot in-house counsel, not Gibson Dunn, who guided the scope of Workspot's investigation. Op. Ex. 19; D.I. 290 at 7 n.2 (Fallon, J.) (noting that "communications regarding the retainer agreement with third-party forensic investigator Kivu suggest that Workspot's in-house counsel sought to limit the scope of Kivu's investigation due to cost considerations"). And it was Workspot in-house counsel's missive to Workspot executives and Workspot outside counsel that set the tone for Workspot's response to Citrix's TRO motion: "[W]e also need to send a message to Citrix through each communication.

---

[4] Workspot does not disclose the legal basis for its attempt to shift responsibility for its misconduct to Gibson Dunn. In any event, it is unclear what relevance an ineffective assistance of counsel defense has in the context of Citrix's sanctions motion given that Workspot has no constitutional right to effective assistance of counsel. *Conklin v. Hale*, 680 F. App'x 120 (3d Cir. 2017).

[5] Workspot's CEO implies in his declaration that Workspot relied on legal advice from Gibson Dunn from the date it received Citrix's notice email on October 15, 2018, but then suddenly "lost faith" in Gibson Dunn after the TRO hearing on December 12, 2018. Ans. at 8. In fact, as early as October 24, 2018, Workspot in-house counsel exclaimed, "***I'm concerned about handling of the TRO. . . It has been over a week with no investigation of claims, no proactive discovery proposal or plan, and no real engagement or reaction….***" Op. Ex. 20 (emphasis added). Workspot did not suddenly lose faith in Gibson Dunn after the TRO hearing; Workspot had serious concerns about Gibson Dunn as early as October 24, 2018, but waited until January 28, 2019 to replace Gibson Dunn with Nixon Peabody as lead counsel.

What they've done is outrageous and crosses lines. . . . If they produce some credible evidence of any Workspot conduct of concern, then we will investigate." Op. Ex. 19; *see also* Op. Exs. 20, 22.

Moreover, all Workspot counsel admitted to practice before this Court (not just Gibson Dunn) violated their duty of candor to the Court. Rule 3.3 of the Delaware Lawyers' Rules of Professional Conduct states, "If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." Rule 3.3.(a)(3). Reasonable remedial measures include informing the court and opposing counsel of the falsity and correcting the record, including by ***promptly*** withdrawing a false declaration. *See State v. Grossberg*, 705 A.2d 608, 612 (Del. Super. 1997) ("[The duty of candor] includes a responsibility to promptly inform the Court and opposing counsel of any development which renders a material representation to the Court inaccurate."). In violation of Rule 3.3 of the Rules of Professional Conduct, none of Workspot's counsel took any action to inform the Court that Chawla had filed a false declaration when they learned in early November 2018 that Chawla was the author of the emails and web posts. Even at the TRO hearing on December 12, 2018, Workspot counsel refused to admit the falsity of the Chawla declaration.

### iv. Workspot Fails In Its Attempt To Shift Blame To Citrix

Workspot's attempt to blame Citrix is likewise unavailing. Workspot argues it should not be sanctioned because Citrix improperly withheld information from Workspot. For example, Workspot points the finger at Citrix for not immediately permitting Workspot counsel to provide Workspot with "Mr. Chawla's home IP address" and unredacted versions of the TRO filings. Ans. at 21, 23. In truth, Workspot had more than enough evidence to investigate Chawla's actions. Chawla sent his initial salvo of harassing emails and web posts between Tuesday,

10

October 9 and Thursday, October 11, 2018. On Monday, October 15, 2018, Citrix sent Workspot counsel a detailed notice email that included the relevant IP Address along with additional information identifying Chawla as the likely author of the emails and web posts. Tellingly, Workspot counsel forward Citrix's detailed allegations, including the IP Address information, to Chawla and Sinha the very same day it received Citrix's allegations.

Furthermore, Citrix's investigation was transparent. At each step of its investigative process, Citrix identified for Workspot the relevant information necessary for Workspot to conduct its own internal investigation. Workspot not only refused to conduct an investigation, it stymied Citrix's investigation. Because of Workspot's intransigence, Citrix was forced to spend hundreds of thousands of dollars and hundreds of hours of time utilizing its own resources to ensure that its own computing systems and networks had not been compromised. Citrix investigated all available resources, including its ShareFile Information Internet Services (IIS) logs. As Citrix's counsel stated at the TRO hearing, Citrix reviewed these logs, which show at a high level when files were transferred and through which IP addresses those transfers occurred.[6] When the IP Addresses in question were identified in the IIS logs, Citrix diligently investigated whether there was a connection between the IP Addresses and the unlawful Chawla emails, and then promptly brought the relevant information from this investigation to Workspot's attention.

---

[6] This information is available to Citrix through the terms and conditions to which ShareFile users agree. Importantly, Citrix did not access or review any files that were transferred. The ShareFile IIS logs that Citrix reviewed reflect only IP addresses associated with file transfers.

### B. Workspot Should Be Sanctioned For Its Misconduct

#### i. Citrix Should Recover All Fees And Costs It Incurred Because Of The Unlawful Conduct Of Workspot, Chawla, and Workspot's Counsel

Citrix seeks the recovery of all fees and costs it incurred attributable to the unlawful misconduct of Workspot, Chawla, and Workspot's counsel. But for this misconduct, neither the Court nor Citrix would have spent the time and resources briefing and deciding unnecessary motions and discovery disputes. For this reason alone, particularly in light of Workspot's concession that Chawla sent the emails and posts, spoliated evidence, and then filed a perjured declaration, Workspot—not Citrix—should pay the fees and costs Citrix has incurred.

Workspot had an opportunity to mitigate the fees and costs Citrix now seeks to recover. Instead, Workspot refused to investigate Citrix's allegations, knowingly filed a false declaration, failed to preserve Chawla's devices, objected to a forensic inspection of Chawla's devices, and initially produced *only 4 documents* in response to Citrix's discovery requests, guarding more than 500 documents behind a cloak of privilege.

Workspot cites no authority that would cut sanctions off as of the date of the December 12, 2018 TRO hearing, particularly where the Court ordered the parties at that hearing to investigate Workspot's wrongdoing. There is also no reason why Citrix should bear *any* of the fees and costs attributable to the wrongdoing of Workspot, Chawla and Workspot's counsel. Accordingly, Citrix seeks to recover the remaining 50% of the fees and costs it incurred in connection with the TRO motion, the fees and costs Citrix incurred for the ensuing discovery Citrix sought and obtained from Workspot and Chawla, including the discovery motions Citrix filed in Delaware and California, as well as the fees and costs associated with the instant sanctions motion.

### ii. Sanctions Should Be Imposed Because Of Workspot's Spoliation Of Evidence And False Statements

The wrongdoing by Workspot, Chawla, and Workspot's counsel is comprehensive and egregious and warrants sanctions beyond fees and costs. Workspot's failure to preserve relevant information, Chawla's spoliation of evidence, Chawla's perjured declaration, which Workspot knew was false at the time it filed the declaration, and Workspot and its counsel's lack of candor to the Court support additional sanctions by this Court under Rule 37, including a finding that Workspot intended to deprive Citrix of relevant information. *See GN Netcom, Inc. v. Plantronics, Inc.*, 2016 WL 3792833, at *7 (D. Del. July 12, 2016) (finding that defendant's senior executive acted in bad faith when he directed employees to delete emails and acted with an intent to deprive GN of discovery); *see also Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, 324 (D. Del. 2013) (finding bad faith spoliation such that Rambus "should not be easily be able to excuse its misconduct by claiming that the vanished documents were of minimal import").

An adverse inference because of Workspot's spoliation is appropriate. Indeed, Workspot does not dispute that evidence was deleted. Workspot instead claims sanctions are inappropriate because the deleted evidence was a hard drive from Chawla's "personal MacBook." Ans. at 17. Workspot suggests that because the destroyed evidence was from Chawla's personal computing device, this evidence was not relevant to the patent infringement and false advertising claims in the litigation, and Citrix therefore suffered no prejudice. *Id.* at 16.

Contrary to Workspot's claim, Chawla testified that he used his MacBook laptop for work. Op. Ex. 2 at 32:5-33:24.[7] When Chawla deleted the hard drive of the MacBook laptop,

---

[7] Workspot, citing *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68 (3d Cir. 2012) and *Cotton v. Costco Wholesale Corp.*, 2013 WL 3819974 (D. Kan. July 24, 2013), argues that Chawla's MacBook laptop was not under Workspot's control. *Bull* and *Cotton* are inapposite. In *Bull*, the issue of control was undisputed as plaintiff admitted on the stand that the evidence was at her house such that there was no controversy that the evidence was in her control. 665 F.3d at 73-74.

13

relevant information was spoliated. What is more, Workspot *concedes* that Chawla spoliated relevant evidence connected to the VM he created on Workspot's network with his Workspot user ID. Ans. at 7, 19. Because Citrix has shown—and Workspot has acknowledged—that relevant evidence was destroyed in bad faith, it is Workspot's burden, not Citrix's, to show lack of prejudice. *See GN Netcom, Inc.*, 2016 WL 3792833, at *6.

The cases Workspot cites in its opposition where courts declined to impose sanctions for spoliation are inapposite. *Cf. Monolithic Power Sys., Inc. v. Intersil Corp.*, 2018 WL 6075046, at *2 (D. Del. Nov. 11, 2018) (denying motion to dismiss for spoliation of evidence because defendant failed to provide evidence that plaintiff destroyed product samples or that messages were deleted from cell phones for any reason other than in the ordinary course of business); *CIGNEX Datamatics, Inc. v. Lam Research Corp.*, 2019 WL 1118099, at *5 (D. Del. Mar. 11, 2019) (denying motion for finding of spoliation and sanctions because defendant failed to provide evidence of prejudice). Here, Citrix has produced ample evidence that Chawla deliberately destroyed relevant information after Workspot failed to take reasonable steps to

---

In *Cotton*, the court found defendant's employees' text messages not to be within Costco's "possession, custody, or control" because plaintiff did not contend that Costco issued the cell phones to its employees or that the employees used the cell phones for any work-related purpose. 2013 WL 3819974, at *6. In contrast, Chawla used his MacBook as a work laptop, such that this device was within Workspot's possession, custody, or control. Op. Ex. 2 at 32:5-33:34. Workspot, as Chawla's employer, had a legal right to the Workspot-related documents, files, and information on Chawla's MacBook. *See In re Global Power Equip. Grp. Inc.*, 418 B.R. 833, 841 (Bankr. D. Del. 2009) ("The Third Circuit . . . [has] held that documents are in the 'control' of the responding party if the party has 'the legal right or ability to obtain the documents from another source upon demand'") (citations omitted); *Procaps S.A. v. Patheon Inc.*, 2014 WL 800468, at *4 (S.D. Fla. Feb. 28, 2014) (ordering production of electronic devices of defendant's employees for forensic imaging, including any "smart phone or PDA device (e.g., I-Pad)" used "for business purposes" and not retrievable from a common server). Workspot breached its affirmative duty to preserve Chawla's MacBook laptop. Fed. R. Civ. P. 37(e) (permitting a court to issue sanctions for a party's failure to preserve ESI "that should have been preserved in the anticipation or conduct of litigation").

preserve evidence. As CTO of Workspot, it is undeniable that Chawla had information relevant to this litigation on his computer including, for example, emails and documents regarding the accused Workspot products.[8] As in *GN Netcom*, Workspot cannot credibly argue that Citrix's inability to access the destroyed data "cannot even ***plausibly*** be thought likely to affect the outcome of the trial." 2016 WL 3792833, at *12 (citations and quotations omitted). Unlike the cases Workspot cites, information Chawla deleted, including the VM and the MacBook hard drive, is not available from any other source. Workspot should not be permitted to avoid consequences for the destruction of this evidence. *See Micron Tech.*, 917 F. Supp. 2d at 324.

The egregious actions of Workspot and Chawla require comprehensive sanctions, like the sanctions this Court imposed in *GN Netcom*. To deter Workspot and future litigants from litigation misconduct, Citrix respectfully requests that the Court strike Workspot's equitable defenses, instruct the jury about the misconduct of Workspot, Workspot's counsel and Chawla and the spoliation of evidence by Chawla, and instruct the jury to draw evidentiary inferences in favor of Mr. Rivera (the Citrix executive who received certain of the harassing emails) and against Workspot.

## III. CONCLUSION

For the foregoing reasons and the reasons set forth in its moving papers, Citrix requests that the Court issue the sanctions detailed in Citrix's opening brief against Workspot, Workspot's counsel, and Chawla.

---

[8] Furthermore, Chawla also testified that he reviewed technical aspects of comparative advertising on Workspot's website. Op. Ex. 2, 301:20-302:7. Accordingly, documents regarding Citrix's false advertising claims were likely also destroyed when Chawla destroyed the hard drive of his laptop.

N/A

Dated: November 27, 2019

**OF COUNSEL**:

Michael G. Strapp (admitted *Pro Hac Vice*)
Larissa Bifano (admitted *Pro Hac Vice*)
Safraz Ishmael (admitted *Pro Hac Vice*)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Telephone: (617) 406-6031
michael.strapp@dlapiper.com
larissa.bifano@dlapiper.com
safraz.ishmael@dlapiper.com

**DLA PIPER LLP (US)**

*/s/ Denise S. Kraft*
Denise S. Kraft (DE Bar No. 2778)
Brian A. Biggs (DE Bar No. 5591)
Erin E. Larson (DE Bar No. 6616)
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile:  (302) 394-2341
denise.kraft@dlapiper.com
brian.biggs@dlapiper.com
erin.larson@dlapiper.com

*Attorneys for Plaintiff*
*Citrix Systems, Inc.*