

DLA Piper LLP (US)
1201 North Market Street
Suite 2100
Wilmington, Delaware 19801-1147
www.dlapiper.com

Denise Seastone Kraft
denise.kraft@dlapiper.com
T  302.468.5645
F  302.778.7917

PUBLIC VERSION OF D.I. 331
FILED: MARCH 24, 2020

March 17, 2020
The Honorable Leonard P. Stark
United States District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

Re:   *Citrix Systems, Inc. v. Workspot, Inc.*, C.A. No. 18-cv-00588-LPS

Dear Chief Judge Stark:

Pursuant to the Scheduling Order (D.I. 160), Citrix submits this letter brief in support of its request for leave to amend its Amended Complaint (D.I. 218) and its Answer to Workspot's Answer to the Amended Complaint and Counterclaim (D.I. 232). Citrix seeks to (1) add to its Amended Complaint allegations that false statements Workspot made regarding Citrix's products also falsely characterize Workspot's products and that Workspot continues to make similar false statements; and (2) add to its Answer an affirmative defense and counterclaim that Workspot's asserted '182 patent is unenforceable due to inequitable conduct.[1]

Prior to a court-ordered deadline to amend pleadings, as here, "[t]he court should freely give leave when justice so requires" to amend pleadings.  Fed. R. Civ. P. 15(a)(2).  "The Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that 'a particular claim will be decided on the merits rather than on the technicalities.'" *Abbott Labs. v. Johnson & Johnson, Inc.*, 524 F. Supp. 2d 553, 557 (D. Del. 2007).  Leave to amend accordingly should be granted unless Workspot demonstrates undue delay, prejudice, bad faith, dilatory motive, or futility. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006).

**I. There has been no undue delay, bad faith, or dilatory motive.**  Citrix is seeking leave to amend its pleadings within the Court-ordered deadline to amend pleadings. D.I. 241. Therefore, Citrix's request is, by definition, timely. *See Invensas Corp. v. Renesas Elecs. Corp.*, 2013 WL 1776112, at *3 (D. Del. Apr. 24, 2013). What is more, Workspot did not assert the '182 patent until it filed its Amended Answer and Counterclaim on May 7, 2019 (D.I. 224). Then, on June 13, 2019, the parties effectively stipulated—and the Court agreed—to stay the case with respect to the '182 patent pending *inter partes* review (D.I. 239, 241, 242). The PTAB issued a decision on October 28, 2019, which then effectively resumed the case with respect to the '182 patent. After reviewing Workspot's document production and attempting to gather information through interrogatories, Citrix seeks to amend in advance of the Court-ordered deadlines. Neither of Citrix's proposed amendments are made in bad faith or with a dilatory motive.

---

[1] Attached hereto are the Second Amended Complaint (Ex. A), a blackline to the Amended Complaint (Ex. B), the Amended Answer and Counterclaim to Workspot's Answer to Amended Complaint and Counterclaim (Ex. C), and a blackline to the Answer to Workspot's Answer to the Amended Complaint and Counterclaim (Ex. D).  Pursuant to Local Rule 7.1.1, the parties conferred, and Workspot will oppose Citrix's request for leave to amend.

**II. Workspot will not be prejudiced.** The burden is on the nonmoving party to prove it will be prejudiced because an amendment "causes surprise, results in additional discovery, or adds costs to the litigation in defending against the new facts or theories alleged." *Aerocrine AB v. Apieron Inc.*, 2010 WL 1225090, at *7 (D. Del. Mar. 30, 2010). Workspot cannot meet its burden because it will not need to expend any additional resources to conduct discovery or prepare for trial. Workspot has long known of the facts giving rise to both of Citrix's proposed amendments and discovery related to the allegations in Citrix's amended pleadings are already central to the case.

First, Citrix does not seek to add new Workspot false statements as the basis for its Lanham Act claims. Instead, Citrix explicitly adds allegations that the previously-asserted statements are also false as to Workspot, and that Workspot continues to make these statements in marketing to its customers. Workspot has had knowledge that statements it made comparing Citrix's products to its own are false with respect to its own products since the date Workspot published the statements. Because Workspot has known this all along and because significant discovery has already been taken on this point, permitting Citrix to amend its pleadings to include allegations directed to these facts would not lead to undue prejudice. Moreover, Citrix's proposed amendments were demanded by Workspot. Ex. E at 3 ("Workspot believes Citrix must seek leave to amend the complaint to introduce [falsity as to Workspot]"). Workspot is engaging in gamesmanship when, on the one hand, it insists that Citrix amend its pleadings, and then, on the other hand, opposes Citrix's request for leave to amend.

Second, Mr. Sinha, Workspot's co-founder and CEO, has unique knowledge of information related to Citrix's proposed inequitable conduct claim, and Workspot is in possession of documents relevant to this claim. Significant additional discovery should not be necessary because information relevant to the inequitable conduct claim, including the prosecution history of the '182 patent and key prior art, has already been exchanged during discovery and described in detail in Citrix's Invalidity Contentions. In any event, Workspot has ample time and opportunity to prepare defenses to Citrix's amendments. Fact discovery does not close until July 17, 2020, expert discovery has not begun, and trial is not scheduled to begin until March 8, 2021.

**III. Citrix's amendments are not futile.** An amendment is futile if "the [pleading], as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). With respect to its Second Amended Complaint, Citrix has pled with specificity that the false statements are false as to Workspot's products and services. *See* Ex. B ¶¶ 23-44 and 121-144. Because Citrix has adequately pled these allegations, its amendment is not futile. *See, e.g., Leader Techs., Inc. v. Facebook, Inc.*, 2010 WL 2545959, at *5-6 (D. Del. June 24, 2010) (amendment to allege inequitable conduct was not futile because "allegations include[d] sufficient facts from which it [could] be inferred that Leader knew of the withheld material information and withheld the information with specific intent to deceive the PTO").

Citrix's inequitable conduct defense and counterclaim also includes the specificity necessary to state a viable claim. To plead inequitable conduct with the "requisite particularity under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material representation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009). The pleading "must include sufficient allegations of

2

underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328-29. Citrix's proposed counterclaim alleging inequitable conduct states a claim upon which relief can be granted and does so with the particularity required under Rule 9(b). *See* Ex. C; *see also* Oral Order re Leave to Amend, *Extang Corp. et al v. Truck Accessories Grp., LLC*, C.A. No. 19-923-MN (Feb. 4, 2020, D. Del.) (D.I. 34) (finding amendment to allege inequitable conduct was not futile). The amendment is not futile because Citrix has adequately pled:

- **Who**: Amitabh Sinha, on behalf of Workspot. Mr. Sinha, an inventor of the '182 patent, was a former Citrix employee who had first-hand knowledge of at least two Citrix access control systems, Citrix Access Gateway and Citrix NetScaler Gateway (collectively, the "Citrix references"), that are prior art to the '182 patent. Ex. C ¶¶ 10, 16-25. At Citrix, Sinha served as Vice President of Engineering, overseeing projects involving XenApp, and as General Manager for the XenDesktop product. *Id.* ¶ 18. Configurations of Citrix Access Gateway and Citrix NetScaler Gateway were integrated with Citrix XenApp and Citrix XenDesktop under Mr. Sinha's management and control. *Id.* ¶ 23.
- **What**: Citrix's SmartAccess, a key feature that predates and discloses limitations of the claims of '182 patent, was added to XenDesktop in 2010, three years before the provisional application that led to the '182 patent was filed, and was also provided with the Citrix references. *Id.* ¶¶ 20-23. Mr. Sinha withheld the Citrix references from the PTO during prosecution of the '182 patent despite having knowledge they were material prior art. Ex. C ¶¶ 16-25. In fact, Mr. Sinha did not disclose *any* prior art to the PTO during prosecution. Ex. C ¶¶ 14-15, 26-30. Mr. Sinha's decision to withhold material prior art led the Examiner to allow the application. Ex. C ¶ 13. Had Mr. Sinha disclosed the Citrix references, references which teach each limitation of the asserted claims of the '182 patent, the Examiner would not have allowed the application to issue as a U.S. patent. Ex. C ¶¶ 32-40.
- **When**: At least by October 20, 2007, Sinha knew about both Citrix references. For example, Sinha is the lead named inventor on U.S. Patent Application No. 2008/0208605, a patent application filed by and assigned to Citrix, in which Mr. Sinha described how the Citrix references could be used with the inventions claimed in that patent application. Ex. C ¶ 24. Although Mr. Sinha had unique knowledge of the Citrix references before Workspot filed the application that led to the '182 patent, he withheld this material information from the PTO during prosecution of the '182 patent. Ex. C ¶ 28.
- **Where**: Mr. Sinha worked at Citrix for several years and had unique first-hand knowledge of, and management control over, the Citrix references. Ex. C ¶ 10, 16-25. After departing Citrix and founding Workspot, he applied for the '182 patent. Mr. Sinha's failure to disclose the Citrix references (or any other prior art) to the PTO is evident in correspondence between Workspot's patent attorneys and the Examiner during prosecution of the '182 patent. Ex. C ¶¶ 14, 27.
- **How**: The '182 patent is unenforceable due to inequitable conduct because Mr. Sinha, on behalf of Workspot, withheld material prior art references from the PTO during prosecution of the '182 patent. If the Examiner had known of the Citrix references, the Examiner would not have issued the '182 patent because he would have found the claims anticipated under 35 U.S.C. § 102 and/or obvious under 35 U.S.C. § 103. *See generally* Ex. C.

Respectfully submitted,

**DLA Piper LLP (US)**

/s/ *Denise S. Kraft*
Denise S. Kraft (DE Bar No. 2778)

*Counsel for Plaintiff Citrix Systems, Inc.*

cc: All Counsel of Record