## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CITRIX SYSTEMS, INC. | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 18-588-LPS |
| WORKSPOT, INC. | : | |
| Defendant. | : | |

Denise S. Kraft, Brian A. Biggs, Erin E. Larson, DLA PIPER LLP (US), Wilmington, DE

Michael G. Strapp, Larissa Bifano, Safraz Ishmael, DLA PIPER LLP (US), Boston, MA

      Attorneys for Plaintiff

Steven J. Balick, Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE

Ronald F. Lopez, NIXON PEABODY LLP, San Francisco, CA

Jennifer Hayes, NIXON PEABODY LLP, Los Angeles, CA

Matthew A. Weber, Angelo Christopher, NIXON PEABODY LLP, Chicago IL

      Attorneys for Defendant

### <u>MEMORANDUM OPINION</u>

UNSEALED ON
9/30/20

September 25, 2020
Wilmington, Delaware

STARR, U.S District Judge:

This case presents the Court with a disturbing and unfortunate situation. Puneet Chawla, Defendant Workspot, Inc.'s ("Workspot") co-founder, former Chief Technology Officer ("CTO"), and former member of the Board of Directors, sent harassing and threatening email messages to executives of Plaintiff Citrix Systems Inc. ("Citrix"), and posted additional messages to internet sites. In connection with opposing Citrix's motion for a preliminary injunction and temporary restraining order ("PI Motion"), Workspot then filed a declaration from Mr. Chawla, which contained knowingly false statements, including denials of Chawla's harassing conduct. (*See* D.I. 115) ("Chawla Declaration," "Declaration," or "Decl.") At a December 2018 hearing denying Citrix's PI Motion, the Court imposed monetary sanctions on Workspot, which ultimately totaled $271,963. (*See* D.I. 145 ("Dec. 2018 Tr.") at 110; *see also* D.I. 197 ¶ 60) The Court also ordered limited, expedited discovery relating to the sanctionable conduct and authorized Citrix to move for additional sanctions after the completion of that discovery. (*See* Dec. 2018 Tr. at 110)

Citrix's motion for additional sanctions is now before the Court. (D.I. 260) Having completed the sanctions-related discovery, Citrix moves for additional monetary sanctions, certain instructions to the jury at trial, and the striking of Workspot's equitable defenses. (*See* D.I. 261) Workspot counters that discovery revealed no new individuals involved in Chawla's misconduct and no cover-up; hence, for these and other reasons, the Court should impose no more sanctions. (*See* D.I. 275)

As explained below, the Court will impose additional monetary sanctions and strike Workspot's equitable defenses, due to Workspot's conduct in connection with the false Chawla Declaration. All of Citrix's requests for other sanctions (e.g., monetary penalties, curative jury

1

instructions) are denied, for reasons including that Citrix has failed to prove that Workspot committed spoliation.

## I.     BACKGROUND

### A.     Early Filings

Citrix filed suit against Workspot on April 19, 2018, alleging patent infringement as well as false advertising and unfair competition under the Lanham Act, the Delaware Deceptive Trade Practices Act, and common law. (D.I. 1; *see also* D.I. 218) On June 11, 2018, Workspot answered and asserted affirmative defenses and counterclaims, including allegations that Citrix infringes certain of Workspot's patents. (D.I. 29; *see also* D.I. 224) The Court entered a protective order, allowing the parties to preserve the confidentiality of certain materials, on June 15, 2018 ("the Protective Order" or "PO"). (D.I. 34)

### B.     Harassing Emails And Posts

Beginning on October 9, 2018, someone with apparent knowledge about this case started a campaign to harass, intimidate, and extort Citrix and two of its executives: President and Chief Executive Officer ("CEO") David Henshall and Senior Vice President, Cloud and Server Engineer ("SVP") Juan Rivera. (D.I. 262 Exs. 3-5, 7-8, 10) Using an anonymous email service (Guerilla Mail), the individual threatened to release Citrix's confidential information "in the dark web" and posted threatening statements online (e.g., Pastebin.com, TheLayoff.com) for the stated purpose of depressing Citrix's stock value and tarnishing the careers and reputations of Henshall and Rivera. (*Id.* Exs. 4, 9) For example, an email to CEO Henshall with the subject line "Emails leaked to take revenge" proclaimed "You will get a thanksgiving present this year!" (*Id.* Ex. 3) Another email with subject line "Patent trolls" declared "DH: your career will end in 2 months!  Your emails are out in the dark web.  It's coming out as a thanksgiving gift!" (*Id.* Ex.

2

4) An October 11, 2018 email to SVP Rivera with the subject line "Cloud innovation" stated "Do you track where you are getting new ideas from? Looks like you are copying everything these days. . . . You can work with legal but at the end you will have your face burried in shyt!" (*Id.* Ex. 8)

### C.    Citrix's Notification To Workspot

On October 15, 2018, Citrix's counsel sent Workspot's counsel a lengthy email message about the threatening emails and informed Workspot that it was investigating this "[v]ery troubling information." (*Id.* Ex. 13) Citrix told Workspot it suspected Workspot's CTO, Chawla, was behind the communications and that he was "leaking Citrix emails and other highly confidential Citrix information in violation of the Court's Protective Order." (*Id.*) In support of its accusation, Citrix pointed to a publicly-available tweet from Chawla accusing Citrix of "patent trolling," which Chawla had posted the same day Henshall had received the anonymous email with the subject "Patent trolls." (*See id.* Exs. 4, 13, 16) Citrix requested an immediate meet and confer with Workspot. (*Id.* Ex. 13)

Citrix advised Workspot that it had also discovered two IP addresses connected to the anonymous emails: one associated with a Comcast service subscriber in Fremont, California and the other associated with a Microsoft Azure user. (*Id.*) Citrix asked Workspot's counsel to identify any Workspot employees who had (i) sent emails to Citrix CEO Henshall or SVP Rivera, (ii) posted to the Pastebin or TheLayoff websites, and (iii) accessed devices associated with the identified IP addresses. (*Id.*)

Citrix also informed Workspot that it intended to file a PI Motion, which Citrix then did the next day, October 16, 2018. (*Id.*; *see also* D.I. 101) Citrix's PI Motion alleged that:

3

(1) Workspot had violated the terms of the Protective Order by sharing with its key executives highly confidential information regarding a license agreement between Citrix and Microsoft, and (2) Chawla had sent harassing emails to Citrix and two of its executives, threatening to leak Citrix's highly confidential information on the "dark web" and to destroy the careers and reputations of Citrix executives. (D.I. 102)

The emails to Citrix's CEO continued. Close to midnight on October 16, 2018, CEO Henshall received an email from *citrixbitcoin@protonmail.com*, with the subject line "Emails leaked – you need to transfer bitcoin," and with a message that listed certain "Keywords" (presumably appearing in the emails that were leaked), instructing that "Transfer needs to happen before Oct30. Wallet address next week." (D.I. 262 Ex. 24)

### D.    Chawla's Response

Within an hour of receiving Citrix's notification email, Workspot's then-litigation counsel (Gibson Dunn & Crutcher) forwarded it to Chawla, as well as to Workspot's CEO, Amitabh Sinha, to Workspot's in-house counsel, Karen Gibbs, and to other attorneys. (*Id.* Ex. 14) In response, Chawla deleted his tweet describing Citrix as a patent troll. (*Id.* Exs. 13, 16) Then, the next day, Chawla wiped his MacBook laptop's hard drive, leaving no "artifacts from use" on it. (*Id.* Ex. 15) That same day he also deleted the infrastructure for the virtual machine ("VM") he apparently had created to send the harassing emails and threatening internet posts. (*See* D.I. 133 at ¶ 10; D.I. 275 at 18)

Chawla also actively misled Workspot CEO Sinha and Workspot's attorneys. Chawla denied that he had been responsible for sending the harassing emails or posts. For example, as later reported by CEO Sinha: "During the October 15 call [among the Workspot team], Mr. Chawla stated that he did not have access to confidential Citrix emails and did not send the

threatening emails or write certain web posts. When asked by the Gibson Dunn attorneys, Mr.

Chawla stated that he was willing to sign a declaration stating that he was not responsible for or

involved in any way in the allegedly leaked or threatening emails, or certain web posts." (D.I.

277 ¶ 10; *see also* D.I. 262 Ex. 33 (Chawla telling Workspot counsel "I have never emailed citrix

folks . . . I will resign from the director position at Workspot if any investigation shows my

involvement")) Chawla also tried to divert attention from himself, including by suggesting in an

October 22, 2018 email that disgruntled Citrix employees may have sent the harassing emails.

(D.I. 262 Ex. 23)

### E. Workspot's Initial Investigation

Workspot's opposition to Citrix's PI Motion was due on October 30, 2018. In

preparation for it, on October 24, 2018, Workspot in-house counsel Gibbs sent an email to her

team – including CEO Sinha, CTO Chawla, and outside counsel – contending that what *Citrix*

had "done is outrageous and crosses the line," adding: "If they produce some credible evidence

of any Workspot conduct of concern, then we will investigate. They have not produced

anything." (*Id.* Ex. 19) Gibbs further instructed the team that Workspot needed "to send a

message to Citrix through each communication. . . . They need to be worried about their

conduct, the motion they filed and scrutiny of the misrepresentations and disparagement of

Workspot and its executives." (*Id.*)

Later that same day, Gibbs lamented to Sinha and Chawla that outside counsel were "not

owning" the situation. (*Id.* Ex. 20) She continued: "I'm concerned about the handling of the

TRO. . . . It has been over a week with no investigation of claims, no proactive discovery

proposal or plan, and no real engagement or reaction" by outside counsel. (*Id.*)

On October 25, 2018, ten days after receiving Citrix's notice and five days before its response to the pending motion was due, Workspot retained Kivu Consulting ("Kivu"), a digital forensic and litigation support services firm, to "review[] the capabilities of the Guerrilla Mail service and the methods with which an IP address could be hidden or discovered while using this service." (D.I. 116 ¶ 6)  Kivu was also asked to perform "research and analysis encompassing IP address obfuscation possibilities with the Guerilla Mail disposable email address service, email header forging, and Microsoft Azure log analysis." (D.I. 133 ¶ 6)  While the initial scope of Kivu's proposed engagement was broad (*see* D.I. 262 Ex. 27), Workspot ultimately limited Kivu's assignment to analyzing how Guerrilla Mail works in the abstract (*id.* Ex. 28) and made other aspects of the investigation "optional" (*compare id.* Ex. 30 *with id.* Ex. 31).

**F.    Workspot's Response Brief**

In its October 30, 2018 response opposing Citrix's PI Motion, Workspot claimed that Citrix's allegations against Chawla were speculative and unsupported by competent evidence. (D.I. 112 at 1, 19-20)  Workspot suggested that Citrix was acting in bad faith, vexatiously, and for oppressive reasons and indicated that it might seek reimbursement from Citrix of Workspot's attorney's fees and costs associated with having to respond to the PI Motion. (*See id.*; *see also* Dec. 2018 Tr. at 15-16, 29-30, 46)

**G.    Chawla's False Declaration**

Along with its brief, Workspot filed the Chawla Declaration, which Chawla signed, under penalty of perjury, on October 30, 2018. (D.I. 115)  In his Declaration, Chawla stated that "[t]he facts set forth herein are true and correct," including:

> 3.    I have never sent any emails – using any email service – to Mr. Henshall or Mr. Rivera.

6

> 4.     I have never posted any threats to Citrix or Mr. Henshall on TheLayoff.com or Pastebin.com.
>
> . . .
>
> 6.     Since Citrix made its accusations, Workspot has been investigating if any Workspot machine was compromised. When Citrix allows the IP addresses apparently associated with the emails at issue to be shared with Workspot, we intend to investigate whether those IP addresses were used in the Workspot cloud.

(Decl.)

Simply put, Chawla's declaration was false.  It is now clear – indeed, undisputed – that Chawla sent the harassing emails and made the harassing posts. (*See infra.*)  Additionally, as later became known to Citrix and the Court, paragraph 6 of the Declaration falsely suggested that Chawla and Workspot did not (as of October 30) know the IP addresses associated with the anonymous emails, when in fact those email addresses had been shared with Chawla weeks earlier, in connection with Worskpot's receipt on October 15 of the initial Citrix notification. (*See* D.I. 262 Ex. 13) (Citrix notification email, forwarded to Chawla, which includes Comcast and Microsoft Azure IP addresses)[1]

## H.     Citrix's Subpoenas

While Workspot was preparing its opposition, Citrix continued to investigate the disturbing emails and posts by serving subpoenas on Comcast, TheLayoff.com, and Microsoft. (*See* D.I. 106-08)  The responses show that Chawla sent the emails.  Comcast confirmed that the

---

[1] The record now includes drafts of the Chawla Declaration.  (*See* D.I. 262 Ex. 29)  They reveal that Chawla suggested declaring "Workspot is investigating if any machine was compromised or *if the IP address mentioned by Citrix was ever* used in the Workspot cloud." (*Id.* (emphasis added); *see also id.* Ex. 33)  Yet in the final Declaration filed by Workspot with the Court, Chawla instead states: "*When Citrix allows the IP addresses apparently associated with the emails at issue to be shared with Workspot, we intend to investigate* whether those IP addresses were used in the Workspot cloud."  (Decl.) (emphasis added)

Comcast IP address associated with the emails was tied to Chawla's home residence. (D.I. 262 Ex. 38) TheLayoff.com confirmed that the offending posts it had received were tied to the Microsoft Azure IP Address (*id.* Ex. 36), while Microsoft confirmed that the Azure IP Address was tied to Chawla's Workspot email address (*id.* Ex. 37; *see also id.* Ex. 2 at 77).

On November 6, 2018, Chawla acknowledged to Workspot that he had received a letter from Comcast informing him that Comcast would be producing materials in response to the Citrix subpoena. (*Id.* Ex. 39) Chawla also notified Workspot counsel that he was going to meet "with my personal counsel." (*Id.*)

### I.     Workspot's Sur-Reply

On December 7, 2018, just days before a hearing on Citrix's PI Motion was set to take place and a full month after Workspot had learned that Comcast had sent its letter to Chawla, Workspot filed a sur-reply brief in opposition to Citrix's motion, in which it finally acknowledged Chawla's potential role in sending the anonymous emails. (*See* D.I. 131 at 6-7) In a footnote in its brief, Workspot admitted that "the evidence collected appears to potentially implicate Mr. Chawla." (*Id.* at 6 n.3) It further told the Court it no longer sought to rely on the Chawla Declaration in its opposition to Citrix's motion. (*Id.*) Workspot also disclosed that it had "formally reprimanded Chawla" and that, "at least for the duration of the Delaware litigation, [Chawla was] prohibited from: 1) contacting anyone working at Citrix without CEO or Board approval, and 2) posting on social media regarding Citrix." (*Id.* at 7)

Workspot's modified position appears to have been informed at least in part by the results of the forensic investigation. In the period between Workspot's filing of its two briefs, Kivu had received and reviewed Microsoft Azure activity logs for the period spanning October 9-23, 2018. (D.I. 133 ¶¶ 8-10) Kivu determined that someone operating under the username

*puneet@workspot.com* had created virtual machines on October 10-11, and 16, 2018, and had then attempted to delete those virtual machines just hours later (one effort to delete was successful while the other was not). (*Id.* ¶ 9)  These are some of the same dates on which the threating emails were sent to Citrix's CEO and SVP.

### J.    PI Hearing And Ruling

On December 12, 2018, the Court heard argument on Citrix's PI Motion.  During the hearing, the Court repeatedly expressed concern about the Chawla Declaration. (*See, e.g.,* Dec. 2018 Tr. at 4-5 (Court: "[I]t's hard to exaggerate how troubled I am by these allegations as to what Mr. Chawla did.  Most particularly, it seems to me that he filed a false and arguably perjurious declaration with the Court . . . ."); *id.* at 5 ("[O]ur system will completely collapse if people are regularly submitting false or perjurious declarations."); *see also id.* at 27, 110)

During Workspot's presentation, counsel acknowledged: "[c]ertainly the evidence is starting to pile and point towards Chawla, and not really any other direction at this point." (*Id.* at 26)  He represented again that Workspot had formally reprimanded Chawla. (*Id.* at 28)  But Workspot was unwilling to stipulate that Chawla's declaration was false.  Instead, when asked directly by the Court "are you here today to tell me that he didn't file the false statement" counsel responded: "So I'm here today to tell you we don't know for certain, one way or the other." (*Id.* at 25-26)

After hearing argument for more than three hours, including much discussion from both parties and the Court about the Chawla Declaration, the Court denied Citrix's requests for a temporary restraining order and/or a preliminary injunction. (*See id.* at 107-14)  In doing so, however, the Court also began to take steps to remedy the harm that had already been created by the false Declaration and to create a full record on the extent and nature of the misconduct

committed. Specifically, the Court imposed some preliminary sanctions and ordered limited

discovery relating to potential sanctionable conduct, explaining:

> . . . [I]n denying the [TRO/PI] motion, I'm not saying that
> we're done with in particular the Mr. Chawla issue . . . .
>
> The Court does remain highly troubled by what appears to
> have been the filing of a false declaration by Workspot . . . a false
> declaration signed by Mr. Chawla under penalty of perjury.
>
> . . . I do think it's appropriate, indeed required, that we put
> some more attention on that issue through some limited expedited
> discovery. Once the discovery is completed, the plaintiffs are
> permitted, should they think they have a basis at that point to do
> so, to file a motion for additional sanctions.

(*Id.* at 110)

Based on all that had occurred to that point, the Court ordered Workspot to pay half of

the costs that Citrix had incurred through the date of the hearing in connection with the filing of

its PI Motion: "And that is reasonable attorney's fees as well as the costs including [Plaintiff's]

retention of the forensic expert to do the investigation." (*Id.* at 111)  The Court continued:

> Some part of the sanction for the false filings that were
> submitted to the Court has to be a financial cost, and I'm beginning
> that by the 50 percent of the cost and fees associated with the [PI]
> motion.
>
> This is without prejudice to asking for further financial
> sanctions, depending on how plaintiffs assess things going
> forward.

(*Id.* at 112)  Importantly, the Court stated that "ultimately, [Citrix] will have a chance to ask me

to impose further sanctions" and explicitly advised the parties that it could still grant additional

relief to Citrix, including monetary sanctions. (*Id.*)

### K.    Post-Hearing Discovery And Developments

After the hearing, Magistrate Judge Fallon determined that the amount to be awarded to

Citrix, consistent with the Court's December 12, 2018 ruling, was $271,963.30. (D.I. 197 ¶ 60)

On December 26, 2018, Workspot terminated Chawla and removed him from its Board

of Directors. (D.I. 143; D.I. 262 Ex. 2 at 15, 199-200; D.I. 277 ¶ 22)

The parties also engaged in the discovery the Court ordered. In response to Citrix's

discovery requests, Workspot initially produced only four documents and a privilege log

containing over 500 entries. (D.I. 262 Exs. 45-47) Neither Workspot's nor Chawla's counsel

produced forensic images of Chawla's devices. (D.I. 262 Exs. 48-50) Citrix then filed motions

in this Court and in the Northern District of California to compel the production of documents

and forensic images of Chawla's personal and work-related devices. (*See* D.I. 185; D.I. 262 Ex.

51) Judge Fallon granted Citrix's motion to compel, finding that Workspot's initial work did not

encompass "all means of examining deleted information to determine the relevant data points

pertaining to potential spoliation." (D.I. 197 at 24) In California, Magistrate Judge LaPorte also

granted Citrix's motion to compel. (*See* D.I. 262 Ex. 52)

Ultimately, it took Citrix eight months to obtain the discovery it requested from

Workspot. (*See* Transcript of April 15, 2020 Hearing (D.I. 357) ("Tr.") at 6, 24) ("In fact, many

of the documents . . . were only produced by Workspot on August 19, 2019, more than ten

months after Citrix filed its TRO motion.") Califorensics, a forensic consulting firm jointly

selected by the parties, provided counsel with a summary of its examination of Chawla's devices

and a list of files on those devices. (D.I. 262 Ex. 15) The results revealed that, as noted above,

Chawla had deleted the hard drive of his MacBook laptop on October 16, 2018, one day after he

learned that Citrix suspected he had sent harassing emails to Citrix's CEO and SVP. (*Id.*; *see also id.* Ex. 13)

On July 17, 2019, Citrix deposed Mr. Chawla. (*Id.* Ex. 2)  Mr. Chawla invoked his rights against self-incrimination, protected under the Fifth Amendment to the United States Constitution, approximately 200 times, including to avoid testifying about whether he had used his MacBook to send and create harassing emails and internet posts and whether he had filed a false declaration. (*See, e.g., id.* at 62-63, 144-45, 150-51, 287; *see also* D.I. 261 at 13 n.20)

On August 28, 2019, Citrix filed the pending motion for additional sanctions. (D.I. 260) Briefing was completed on December 23, 2019 (*see* D.I. 161, 275, 291, 301-02) and the Court heard argument by teleconference on April 15, 2020 (*see* Tr.).

## II.     LEGAL STANDARDS

### A.     Inherent Authority

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).  "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (internal quotation marks omitted).  The Court's inherent authority includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process," including an assessment of attorney's fees, "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 33.

"Federal courts may exercise their inherent power 'to impose sanctions on both litigants and attorneys to regulate their docket, to promote judicial efficiency, and to deter abuse of judicial process.'" *In re Intel Corp. Microprocessor Antitrust Litig.*, 562 F. Supp. 2d 606, 610-

11 (D. Del. 2008) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 505 (3d Cir. 1991)).

Sanctions such as dismissal and attorney's fees are within a court's inherent power to order when

a party's conduct evidences bad faith and an attempt to perpetrate a fraud on the court. *See*

*Chambers*, 501 U.S. at 44-46. "[A]n award of fees and costs pursuant to the court's inherent

authority to control litigation will usually require a finding of bad faith." *In re Prudential Ins.*

*Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 181 (3d Cir. 2002).

### B.  Spoliation

Spoliation involves alteration or destruction of evidence. *See Bull v. United Parcel Serv.*

*Inc.*, 655 F.3d 68, 79 (3d Cir. 2012); *see also Micron Technology, Inc. v. Rambus Inc.*, 645 F.3d

1311, 1319-20 (Fed. Cir. 2011). "Spoliation occurs where: the evidence was in the party's

control; the evidence is relevant to the claims or defenses in the case; there has been actual

suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably

foreseeable to the party." *Bull*, 665 F.3d at 73. "For the [spoliation] rule to apply . . . it must

appear that there has been an actual suppression or withholding of the evidence. No unfavorable

inference arises when the circumstances indicate that the document or article in question has

[merely] been lost or accidentally destroyed, or where the failure to produce it is otherwise

properly accounted for." *Id.* (internal citations omitted).

If a court finds spoliation, it must then determine an appropriate sanction. In doing so,

the Court will focus its analysis on three factors: "(1) the degree of fault of the party who altered

or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and

(3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party

and, where the offending party is seriously at fault, will serve to deter such conduct by others in

the future." *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).

With respect to the prejudice factor, a finding of prejudice requires the non-spoliating party to "come forward with plausible, concrete suggestions as to what the lost evidence might have been" and a showing that the loss of this evidence "materially affect[ed] the substantial rights of the adverse party and is prejudicial to the presentation of the case." *Monolithic Power Sys., Inc. v. Intersil Corp.*, 2018 WL 6075046, at *1 (D. Del. Nov. 19, 2018); *see also GN Netcom, Inc. v. Plantronics, Inc.*, 2016 WL 3792833, at *5-6 (D. Del. July 12, 2016) ("[The] question of prejudice turns largely on whether a spoliating party destroyed evidence in bad faith."), *rev'd on other grounds*, 930 F.3d 76 (3d Cir. 2019).

### C. Rule 37

Pursuant to Federal Rule of Civil Procedure 37, a court may issue sanctions for a party's failure to obey an order to provide or permit discovery. Rule 37(e) "specifically addresses the applicability of sanctions for spoliation of electronically stored information [("ESI")]." *Accurso v. Infra-Red Servs., Inc.*, 169 F. Supp. 3d 612, 618 (E.D. Pa. 2016). Rule 37(e) provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

The 2015 Advisory Committee Notes to amended Rule 37(e) explain that "[a]n evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Moreover, a court is "not require[d] . . . to adopt any of the measures listed in subdivision (e)(2)" if "lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss." 2015 Advisory Comm. Notes to Rule 37(e).

## III.   DISCUSSION

### A.   The Court is Imposing Additional Monetary Sanctions

For reasons explained below, the Court is imposing additional monetary sanctions on Workspot, principally for its filing of the false Chawla Declaration in connection with its opposition to Citrix's PI Motion.

Citrix was prejudiced by Chawla's and Workspot's conduct, including Workspot's handling of the false Chawla Declaration. Citrix has been required to devote hundreds of hours to uncovering and investigating Chawla's actions, to proving its allegations to the Court (overcoming Workspot's initially strenuous opposition), and to litigating and trying to rectify the consequences of the misconduct. (*See, e.g.*, D.I. 261 at 17-18) Moreover, had Workspot been more diligent in its investigation of Citrix's detailed and credible allegations, and had it been more open about its findings, it is likely that the prejudice to Citrix – and the impact on the progress of this case – would have been significantly reduced.

The Court will require Workspot to pay all of the reasonable fees and costs Citrix incurred as a result of Chawla's actions and as a consequence of Workspot's filing of the false Chawla Declaration. This includes the remaining 50% of the fees and costs that the Court had not yet ordered Workspot to pay at the December 2018 PI Motion hearing and the reasonable

fees and costs incurred in connection with the filing, briefing, and arguing of the motion for additional sanctions. The Court will further require Workspot to pay Citrix's reasonable fees and costs incurred in obtaining the discovery from Workspot that the Court ordered Citrix be permitted to obtain in its December 2018 bench ruling. This includes all reasonable fees and costs associated with the motions to compel discovery. Any dispute as to the proper amount Workspot is to pay to Citrix will be referred to Judge Fallon.

### 1.    Chawla Sent Harassing Emails and Made Harassing Posts

It is now undisputed, and the Court finds, that Chawla sent the harassing emails to Citrix's CEO and SVP and made the harassing posts on the internet. (*See* D.I. 275 at 7-8; Tr. at 60-63) This was confirmed by Workspot's forensic consultant firm, Kivu, who linked Mr. Chawla's username, *puneet@workspot.com*, to the Microsoft Azure IP address associated with the anonymous activity. (D.I. 133 at ¶¶ 8-10) This finding is further supported by the responses to subpoenas from Comcast, TheLayoff.com, and Microsoft. (*See* D.I. 262 Exs. 36-38; *see also* Ex. 2 at 77)

The Court does not impute this portion of Chawla's misconduct to Workspot and, to be clear, is not sanctioning Workspot for it. However, the Court has sanctioned Workspot – and is again doing so today – for the submission of the false Chawla Declaration. A large part of what makes that declaration false is that it contains Chawla's false denial of his misconduct.

### 2.      Chawla Signed a False Declaration – and Workspot Submitted It to the Court but Then Failed to Promptly and Visibly Withdraw It

Workspot submitted the Chawla Declaration to the Court on October 30, 2018 in connection with its brief opposing the then-pending Citrix PI Motion. (*See* D.I. 115)  In doing so, Workspot was vouching for the veracity of the Declaration.  But the Declaration was false.[2]

In the Declaration, Chawla falsely denied sending the harassing emails and making the harassing posts. (D.I. 115 ¶¶ 3-4)  It is self-evident that the Court must be able to rely on the honesty and accuracy of documents litigants put in front of it; Workspot violated this fundamental premise of our judicial system.  Among the problems resulting from submission of false evidence is that it makes it essentially impossible for the Court to "achieve the orderly expeditious disposition of cases." *Chambers*, 501 U.S. at 43.  Preparing for a hearing and conducting the analysis required to make a correct decision, based on careful application of the law to the facts, cannot be accomplished when parties provide the Court lies instead of truth.

The Declaration also misleadingly stated that Workspot had not begun its investigation of the IP addresses from which the offending emails and posts were sent, and suggested that Workspot would be unable to do so until after Citrix permitted it to. (D.I. 115 ¶ 6)  Workspot used this false statement as part of its troubling effort to distract the Court from Workspot's own wrongdoing in a meritless attempt to shift the blame to Citrix.[3]

---

[2] Chawla lied to and misdirected Workspot and Workspot's counsel. (*See, e.g.*, D.I. 275 at 7-8, 13 ("Mr. Chawla falsely maintain[ed] he was not involved."); D.I. 277 ¶¶ 13-14)  It is, nonetheless, appropriate to hold Workspot accountable for the Declaration because Workspot is the litigant before the Court, Workspot submitted it to the Court in an effort to persuade the Court, and Workspot did not overtly withdraw or denigrate the Declaration when it came to recognize (or reasonably should have recognized) it was false.

[3] Workspot's attempts to shift blame have taken many forms.  At the December 2018 hearing, Workspot lamented that it had "been very limited in [its] ability to share [the

Workspot knew by no later than November 6 that Chawla was likely the source of the

harassing emails and posts, when he confirmed to Workspot that he had received the Comcast

subpoena letter and indicated he was conferring with personal counsel.  (*See* D.I. 262 Ex. 39)

But Workspot did not inform Citrix or the Court of Chawla's confirmed role – or the falsity of

the Chawla Declaration – for another month.  (D.I. 291 at 6)  And even then, Workspot's

December 7 sur-reply brief merely stated "Workspot acknowledges that the anonymous emails

were improper, and that the evidence collected appears potentially to implicate Mr. Chawla,"

buttressed by the following footnote:

> Workspot no longer seeks to rely on the Chawla Declaration in
> support of its opposition to the TRO motion.  Further, Workspot
> respectfully requests that the Court not rely on it in deciding this
> motion.  The facts stand for themselves – Workspot did not violate
> the Protective Order.

(D.I. 131 at 6 & n.3)  These statements – framed in the blandest possible manner – were dropped

---

allegations] with that people that are involved," and that, according to Workspot, "until just a
couple of weeks [prior], Mr. Sinha . . . was not able to see these allegations and understand what
was at issue;" the Court was told Workspot was similarly unable "to share them directly with Mr.
Chawla." (Dec. 2018 Tr. at 24-25; *see also* D.I. 276 Ex. B)  While it is possible that
confidentiality concerns imposed some limitations on what Workspot shared internally
(especially because Workspot was in the midst of defending against an accusation it had violated
the Court's Protective Order), emails from October 15, 2018 show that Workspot's litigation
counsel immediately forwarded Citrix's notification email (containing the IP addresses) to CEO
Sinha and Chawla and that an internal teleconference to address the allegations was scheduled
within hours.  (*See* D.I. 262 Ex. 13)

More recently, Workspot persisted in its strategy of attempting to shift blame by
contending that Citrix has unclean hands.  (D.I. 275 at 23-24)  According to Workspot, Citrix
somehow committed misconduct by exploiting the happenstance that Workspot's former lawyers
at Gibson, Dunn & Crutcher and Potter Anderson & Corroon were corporate customers of
Citrix's product, ShareFile.  (*See, e.g.,* D.I. 275 at 23-24 (citing D.I. 119 ¶¶ 8-13); Tr. at 52-54)
Citrix has explained that its investigation was permitted under the terms and conditions to which
ShareFile users agree and that it never accessed nor reviewed the content of any involved files.
(*See* D.I. 291 at 11 & n.6; Tr. at 88-89)  At the April 2020 hearing, Workspot's counsel admitted
he had not seen the ShareFile customer agreement and, so, could not dispute Citrix's
representations that Citrix acted entirely consistently with it.  (*See* Tr. at 53-56)

into the middle of Workspot's eleventh-hour sur-reply brief, providing no explanation, and were unaccompanied by anything (e.g., a cover letter) drawing the Court's attention to Workspot's non-reliance on evidence or to the **gravity** of the revelation. *See generally State v. Grossberg*, 705 A.2d 608, 612 (Del. Super. 1997) ("[The duty of candor] includes responsibility to promptly inform the Court and opposing counsel of any development which renders material representations to the Court inaccurate.").

As the Court stated at the December 2018 hearing, "our system will completely collapse if people are regularly submitting false or perjurious declarations." (Dec. 2018 Tr. at 4-5)  It is imperative that when such egregious violations of the laws, rules, and norms that govern the judicial process are proven, the Court respond by imposing appropriate consequences.  By imposing additional sanctions, the Court is exercising its inherent authority and "fashion[ing] an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 33.

All of these actions (and inactions) by Workspot have factored into the Court's decision to impose additional sanctions.[4]

### 3.   The Court Ordered Discovery Into the Sanctionable Conduct – Not Only to Determine If Others Were Involved

The principal premise on which Workspot opposes additional sanctions is its contention

---

[4] The Court continues to find it appropriate to hold Workspot (as well as Chawla) responsible for the filing of the false Declaration. (*See* Tr. at 35-36, 71) (parties agreeing Court has already reached this conclusion) The Court is not holding Workspot responsible for Chawla's sending of the harassing emails or making the harassing posts. Contrary to Citrix's contention, the "law of the case" does not dictate that the Court must impute all of Chawla's actions to Workspot. (*See* D.I. 291 at 7-8) The Court's prior fee and cost award was based only on the falsity of the Declaration and a subsequent ruling by Judge Fallon related only to applicability of the crime-fraud exception to potentially privileged emails "regarding Mr. Chawla's Declaration" (rather than the harassing emails and posts themselves) (*see* D.I. 197 at 35).

that the discovery the Court ordered in December 2018 was for ***the singular purpose*** of

determining "whether there were others at Workspot who knew about Puneet Chawla's actions

beforehand or who were involved in any cover up after the fact." (Dec. 2018 Tr. at 17)

Workspot is mistaken. Certainly, this was ***among the purposes*** for which the Court ordered

discovery, as is evident from the quotes Workspot correctly attributes to the Court. But the

Court never stated nor implied that this was the ***only*** purpose for the discovery. The Court's goal

was broader: to understand how the outrageous misconduct of a sophisticated party filing a false

declaration could have come about.

### 4.    Discovery Revealed Material, New Evidence

Even if Workspot were somehow correct that the Court could, or should, only impose

additional sanctions if the post-hearing discovery revealed new information, that standard has

been met here. While the Court is not persuaded that Citrix has proven that additional people at

Workspot knew about Chawla's actions, or knowingly aided in Chawla's cover-up,[5] other new

evidence, material to the Court's decision about the nature and extent of sanctions that are

warranted, has been discovered.

First, the situation with respect to Chawla's misconduct is materially different now than it

was at the December 2018 hearing, and that is at least partly due to the post-hearing discovery

the parties took. (*See, e.g.*, D.I. 197 at 38) At the PI Motion hearing, Workspot took the view

that while much evidence pointed to Chawla having committed the email and positing

misconduct – and, therefore, that the Chawla Declaration was false – Workspot would not admit

these points. Workspot's position at that time was "we don't know for certain one way or the

---

[5] Judge Fallon found that the record before her did "not suggest an intention to cover up
the alleged falsity of the Chawla declaration." (D.I. 197 ¶ 38)

other" if the Declaration is false. (Dec. 2018 Tr. at 25-26)  Now, after discovery, Workspot has

certainty, and has conceded the falsity of the portions of the Declaration denying Chawla's

misconduct. (*See* D.I. 275 at 7-8)

Likewise, the Court has a much better understanding of the relevant events, as there is

now, post-discovery, much greater clarity in the record.  At the December 2018 hearing, the

Court did not make a finding that the Chawla Declaration was false – but now it does.  The

discovery (including Chawla's deposition testimony and invocation of the Fifth Amendment) no

doubt contributed to Workspot's evolving position and also strengthens the basis in the record

for the Court's conclusion that the Chawla Declaration is false.[6]

Discovery also established that paragraph 6 of the Chawla Declaration was materially

false, which had not been clear at the December 2018 hearing.  In that paragraph, Chawla

declared:

> Since Citrix made its accusations, Workspot has been investigating
> if any Workspot machine was compromised. ***When Citrix allows
> the IP addresses apparently associated with the emails at issue to
> be shared with Workspot, we intend to investigate*** whether those
> IP addresses were used in the Workspot cloud.

(D.I. 115) (emphasis added)  When Workspot submitted Chawla's Declaration to the Court on

October 30, more than two weeks had passed since Workspot's counsel had already forwarded

Citrix's October 15, 2018 notification email – containing the IP addresses – to Chawla (and to

CEO Sinha and to Workspot's in-house counsel).  (*See* D.I. 262 Ex. 13; *see also* Tr. at 15-17)

---

[6] In a civil action, an adverse inference may be drawn from an invocation of the Fifth
Amendment when a witness refuses to testify in response to probative evidence offered against
him. *See generally Baxter v. Palmigiano*, 425 U.S. 308, 320 (1976); *S.E.C. v. Graystone Nash,
Inc.*, 25 F.3d 187, 191 (3d Cir. 1994) (explaining that while "Supreme Court has cautioned that
the Constitution limits the imposition of any sanction which makes assertion of the Fifth
Amendment privilege costly," that "principle . . . does not mean that it must be costless").

Yet Workspot submitted the Chawla Declaration, containing the false suggestion that it had not yet received the IP addresses and had not yet (and could not have) begun to investigate Citrix's accusations. The record indicates this was part of an apparent effort to deter the Court from holding Workspot at all responsible for the difficult situation that had arisen. Workspot was trying to shift the blame to Citrix. These were poor decisions, warranting further sanctions.

Additionally, the discovery established that Workspot (1) failed to timely investigate Citrix's claims about Chawla and other harassing conduct (*see* D.I. 262 Exs. 27-28, 30-31), (2) failed to notify Citrix or the Court in a timely manner after it learned of Chawla's actions (*id.* Ex. 39), (3) seemingly chose not to examine its own network logs because purportedly "it would not be helpful" (*id.* Ex. 28), and (4) allowed Chawla himself to image an MS Surface Pro laptop in his possession, which he did not do until December 7, after talking it on travel to India, all of which Workspot's counsel admitted "was not good in hindsight" (Tr. at 81; *see also* D.I. 262 Exs. 40, 41, 43) Generally, discovery revealed that while Workspot took steps to investigate Citrix's allegations, it did not respond with the full diligence, cooperation, and candor the Court would expect.[7]

The Court does not feel it needs to make a finding as to whether Workspot intended to "perpetrate a fraud on the Court," *Chambers*, 501 U.S. at 44-46, or acted in bad faith. In the Court's view, the additional sanctions it is imposing are fully justified based on the totality of

---

[7] As Judge Fallon recognized in granting Citrix's motion to compel, "Citrix's reservations about the thoroughness of Workspot's investigative efforts" were supported by the record. (D.I. 197 ¶ 25) ("Specifically, after being notified of the allegations against Mr. Chawla on October 15, 2018, Workspot took no efforts to obtain the work-issued devices in Chawla's possession. Instead, Workspot categorically denied Citrix's allegations, and submitted Chawla's declaration on October 30, 2018.")

factors discussed throughout this Opinion, including those revealed (and those confirmed) by the post-2018 discovery.

### 5.    The Court Has Inherent Authority to Sanction Workspot Even Without New Evidence

Workspot argues it would be inappropriate to impose additional sanctions based on the same facts presented to the Court at the PI Motion hearing in December 2018. (*See* D.I. 275 at 9-10) Workspot emphasizes that, in its view, Citrix has failed to discover or present to the Court any evidence that others associated with Workspot knew of Chawla's actions or covered them up. (*Id.*) Workspot presents no authority to support its suggestion that the PI Motion hearing should act as something of a "cut-off date" for sanctions. Workspot had to acknowledge during the April 2020 hearing that the Court did not indicate it would impose additional sanctions only if the discovery it ordered revealed new information. (Tr. at 60) Workspot also conceded under questioning that the Court has never said nor held that it would only impose additional sanctions if the post-December 2018 discovery revealed something new. (*See id.* at 63-65)

In imposing preliminary sanctions, the Court did nothing to constrain its inherent authority going forward to impose additional sanctions, even for the same conduct about which it already knew in December 2018. Even if the discovery had revealed nothing new (which, as explained above, is not a correct view of what occurred), the Court would still be free to continue its efforts to calibrate the consequences of Workspot's sanctionable conduct.

### B.    The Court Is Striking Workspot's Equitable Defenses

The Court will also strike Workspot's equitable defenses of waiver, estoppel, unclean hands, and laches. (*See* D.I. 224 at 38-39) It is axiomatic that "[h]e who desires equity must be willing to do equity." *Freck v. I.R.S.*, 37 F.3d 986, 989 (3d Cir. 1994); *see also Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 241 (1933) ("He who comes into equity must come

with clean hands."); *Bein v. Heath*, 47 U.S. 228, 247 (1848) ("The equitable powers of this court can never be exerted on behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage. To aid a party in such a case would make this court the abetter of iniquity.").

Workspot, by submitting and relying on the false Chawla Declaration, has come to this Court with "unclean hands." It would offend notions of equity for Workspot to prevail on any equitable defense moving forward. *See, e.g., Leor Expl. & Prod., LLC v. Aguiar*, 2010 WL 3782195, at *1, 13 (S.D. Fla. Sept. 28, 2010), *on reconsideration in part*, 2011 WL 4345294 (S.D. Fla. 15, 2011) (affirming magistrate judge's order striking defenses because defendant violated court's order and hacked plaintiff's privileged emails); *see also Greatbatch Ltd. v. AVX Corp.*, 179 F. Supp. 3d 370, 386 (D. Del. 2016) (granting sanction of removing issue of damages and patent validity and instructing jury to assume infringement), *aff'd*, 813 F. App'x 609 (Fed. Cir. 2020).

Striking these equitable defenses will, the Court hopes, serve as a deterrent to any future litigant who may consider filing a false declaration in any court, as well as those who would respond to the discovery that they filed a false declaration with the far from ideal approach exhibited here.

## C.    The Court is Not Imposing Additional Non-Monetary Sanctions

Citrix seeks additional sanctions as a result of what it contends was Workspot's spoliation of evidence. In particular, Citrix requests a jury instruction regarding Chawla's credibility, a permissive adverse inference regarding spoliation, and punitive monetary sanctions. (*See* D.I. 261 at 18-20) Each of Citrix's allegations of spoliation, however, is countered by a

plausible contention from Workspot, supported by some evidence, that spoliation did not occur. While a close call, the Court find that Citrix has failed to prove spoliation.

For instance, Citrix alleges that Workspot committed spoliation when Chawla wiped his personal MacBook laptop on October 16, 2018, a computer that he used for years to do company business. (*See* D.I. 261 at 14; D.I. 291 at 13-14; Tr. at 37) The hard drive Chawla deleted from his personal MacBook likely contained emails and documents regarding the Workspot products accused of infringement in this action, given that Chawla used his MacBook as a work device in connection with his role as Workspot's CTO. (*See* D.I. 291 at 15; D.I. 262 Ex. 2 at 32-33, 301-02) According to Workspot, any relevant documents on the MacBook would have been maintained in shared cloud storage, such as Drop-Box, not just on the individual laptop. To Workspot, then, any files that had been deleted by Chawla from his MacBook have likely been collected from other sources during the course of litigation. (*See* D.I. 301 at 4) The record is unclear as to whether the deleted files on Chawla's MacBook were backed up, saved, or synced on any storage system in Workspot's possession. (*See* D.I. 302 at 5; D.I. 262 Ex. 2 at 201-02, 209 (Chawla testifying he did not think "guidelines were followed in a very stringent manner. It's a start-up."); *see also* Tr. at 94-95) As Citrix has the burden of proof, the Court finds that Citrix failed to meet it.[8]

Similarly, Citrix says that Chawla's actions relating to the virtual machines he created on Workspot's network using his Workspot ID and used to send the harassing emails and posts

---

[8] Judge Fallon found "[t]he evidence suggests that Mr. Chawla wiped his personal MacBook and iPhone, which were not devices under Workspot's control." (D.I. 290 at 9 n.5) The Court is neither endorsing nor rejecting the suggestion that these devices were not under Workspot's "control." Even assuming they were, Citrix has failed to show that they contained discoverable evidence that has not been otherwise produced and the absence of which is prejudicial to Citrix in this case.

constitute spoliation. (D.I. 261 at 2 n.6, 17) But Workspot points to evidence that the logs were preserved and available for inspection by the forensic investigator, Kivu. (D.I. 133 ¶¶ 5-11; D.I. 295 at 7, 19) The Court has also considered Citrix's evidence and allegations concerning Chawla's personal iPhone (*see* D.I. 261 at 11) and his MS Surface Pro laptop (*see* D.I. 291 at 6-7) and all else that Citrix has alleged and, again, finds that Citrix has failed to prove spoliation.[9]

Nor is the Court persuaded that Workspot's opposition to Citrix's motion to compel evidences bad faith or intent to deprive Citrix of discovery. *See generally Leonard v. Stemtech Health Sciences, Inc.*, 269 F.R.D. 427 (D. Del. 2010) (denying fees for motion to compel because "[d]efendant acted in good faith and with substantial justification").

In short, Citrix has failed to meet its burden to demonstrate that discoverable evidence was lost, causing prejudice to Citrix, and that Workspot "acted with intent to deprive" Citrix "of the information's use in the litigation." Fed. R. Civ. P. 37(e). In other words, Citrix has failed to prove that Workspot committed spoliation.

## IV.   CONCLUSION

An appropriate Order follows.

---

[9] Chawla's "troll" tweet is not lost ESI, as is clear from the fact that Citrix was able to access it and then attach a screenshot of it to its papers. (*See, e.g.*, D.I. 262 Ex. 16)