**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| CITRIX SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 18-588-LPS-SRF |
| v. | ) | |
| | ) | **REDACTED PUBLIC VERSION** |
| WORKSPOT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF JOHN W. SHAW**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CITRIX SYSTEMS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 18-588-LPS |
| | ) | |
| WORKSPOT, INC., | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |

## <u>DECLARATION OF JOHN W. SHAW</u>

I, John W. Shaw, declare and state as follows:

1.      I am a member of the bars of the Supreme Court of Delaware, the Supreme Court of Pennsylvania, the Third Circuit Court of Appeals, the Federal Circuit Court of Appeals, the United States District Court for the District of Delaware, the United States District Court for the Eastern District of Pennsylvania, and the United States Patent & Trademark Office.  I was admitted to the Delaware Bar in 1995.

2.      I am a 1994 *magna cum laude* graduate of the University of Pittsburgh School of Law, and a 1989 graduate of The Pennsylvania State University with Honors and High Distinction.  I served as a law clerk for the Honorable Murray M. Schwartz, Senior Judge, United States District Court for the District of Delaware, in 1994-95.

{00828893}

3.      I worked at the law firm of Young Conaway Stargatt & Taylor, LLP as an associate from 1995 to 2001 and as a partner from 2002 to 2011.  I was a founding partner of Shaw Keller LLP in 2011.

4.      Through 2009 my practice consisted primarily of commercial and patent litigation.  From 2009 to present, the majority of my practice has consisted of patent litigation.

5.      I have tried cases in the United States District Court for the District of Delaware, the United States District Court for the Northern District of California, the United States International Trade Commission, and the Delaware Court of Chancery.  Additionally, I have appeared on behalf of clients in litigations pending in the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the Western District of Pennsylvania, the United States District Court for the Middle District of Florida, the United States District Court for the Southern District of Florida, and the Delaware Superior Court.

6.      I received the Caleb R. Layton, III Service Award from the United States District Court for the District of Delaware and the H. James Conaway Pro Bono Award from Young Conaway Stargatt & Taylor, LLP.  I have received

recognition from various third-party sources, including an AV rating from Martindale and a Band 1 rating in Intellectual Property from Chambers USA.[1]

7.      I am a past Vice President for the Third Circuit, Federal Bar Association, and previously served as the President of the Delaware Chapter of the Federal Bar Association.

8.      In my practice I serve as both lead (or primary) counsel, as co-counsel, and as Delaware counsel.  Through this work, I am familiar with the tasks normally and regularly performed as lead trial counsel in commercial and in patent litigation and with the tasks normally and regularly performed as Delaware counsel in commercial and in patent litigation.

9.      I perform litigation budgeting and review litigation tasks and client billing as part of my normal and regular practice and have done so for my clients since at least 2002.

10.     I have previously served as an expert on attorneys' fees in *Liqwd, Inc. v. L'Oréal USA, Inc.*, C.A. No. 17-014-JFB-SRF (D. Del.).

11.     My regular and customary hourly rate is ▮▮▮ per hour.  I have employed the services of a paralegal and a law clerk to locate additional data from the public record to supplement my analysis and opinions.

---

[1] *John Shaw*, CHAMBERS AND PARTNERS, https://chambers.com/lawyer/john-shaw-usa-5:194005 (last visited Jan. 6, 2021).

12.     I have been requested to evaluate two questions and to provide analysis and opinions in connection with a fee application filed by Citrix Systems, Inc. ("Citrix").  Citrix filed this fee application after the Court ordered Workspot, Inc. ("Workspot") to pay the reasonable attorneys' fees incurred by Citrix in litigation concerning misconduct by former Workspot Chief Technology Officer Puneet Chawla and potential spoliation (the "Chawla ancillary litigation") (*see* D.I. 213, 411, 412).  I have been requested to evaluate these questions in light of my specialized knowledge and experience in budgeting and evaluating attorney billing.

13.     The two questions are:

a.  Whether the volume of work performed by DLA Piper ("DLA"), as claimed in the Citrix fee application, is reasonable.

b.  Whether the hourly rates charged by DLA, as claimed in the Citrix fee application, are reasonable and within the range of rates charged for work on intellectual property and/or complex litigation in the District of Delaware.

14.     I took several steps relevant to answering these questions.  First, I noted that the litigation is between competitors, which is often more contentious and harder fought than other types of litigation.  Judge Leonard P. Stark, the presiding district judge, further reported in D.I. 411 the difficult nature of the Chawla ancillary litigation:

> Citrix has been required to devote hundreds of hours to uncovering and investigating Chawla's actions, to proving its allegations to the Court (overcoming Workspot's initially strenuous opposition), and to litigating and trying to rectify the consequences of the misconduct. (*See*, *e.g.*, D.I. 261 at 17-18) Moreover, had Workspot been more diligent in its investigation of Citrix's detailed and credible allegations, and had it been more open about its findings, it is likely that the prejudice to Citrix – and the impact on the progress of this case – would have been significantly reduced.

D.I. 411 at 15.

15.     Next, I reviewed the docket.  As of January 6, 2021, the docket contained 477 numbered entries.  A subset of these docket entries appear to be related to the Chawla ancillary litigation.  It appears that Citrix issued 20 requests for production, in a single set (*see* D.I. 141); issued subpoenas *duces tecum* to Microsoft (D.I. 108), Comcast (D.I. 108), and Mr. Chawla (D.I. 146) and a subpoena *ad testificandum* to Mr. Chawla (*id.*); and took Mr. Chawla's deposition. Workspot did not serve discovery related to the Chawla ancillary litigation.

16.     The parties had multiple disputes in the Chawla ancillary litigation that required adjudication by the Court.  Workspot also filed objections to Magistrate Judge Sherry R. Fallon's privilege and attorneys' fee decision.  (D.I. 212 (public version)).  Citrix filed two substantive motions (its motion for temporary restraining order (D.I. 101) and its motion for sanctions (D.I. 260) and participated in two oral arguments on these motions.

17.     Third, I reviewed the Court's decisions, including the Court's first attorneys' fee decision (D.I. 213 (public version)), the decision on Workspot's objections to the first attorneys' fee decision (D.I. 252), and the sanctions hearing oral argument transcript (D.I. 357).  I noted that the Court accepted Citrix's original fee application and had access to Citrix's underlying billing records.  I also noted Judge Stark's order on Workspot's objections:

> The Order's fees and costs determinations were properly based on the not clearly erroneous findings that, under the circumstances of this case (in particular, the complexity and extent of discovery, briefing, and oral argument necessitated by the filing of a false declaration), the 600 hours expended and rates charged by DLA attorneys were reasonable.

D.I. 252.

18.     The materials I have reviewed in connection with this assignment are listed in Appendix 1 to this Declaration.

### Question 1:  Was the volume of work performed by DLA, as claimed in the Citrix fee application, reasonable?

19.     To evaluate this question I started with the Citrix fee submission.  I understand that Citrix will submit its original billing records to the Court, but that those records are not available for my review.  Citrix's fee submission consists of a series of monthly charts that lists the activities related to the Chawla ancillary litigation performed in that month, the timekeepers who performed those tasks, and

the total number of hours worked on the Chawla ancillary litigation in that month.

A sample monthly chart is reproduced in Figure 1:

<u>Figure 1 – D.I 466 Exh. A, pg. 17</u>

November, 2019



20.     The Citrix charts do not identify how many hours its attorneys spent on any individual activity listed in the charts, which attorneys worked on each listed activity, or how much time each attorney spent on each listed activity.

21.     Without this information, the Citrix charts do not provide enough information to determine the reasonableness of the time the Citrix attorneys spent on the listed tasks in any particular month, or on the Chawla ancillary litigation as a whole.

22.    For example, with reference to Figure 1, the task ███████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████ appears to refer to the November

13, 2019 hearing conducted by Magistrate Judge Fallon.

23.    The task descriptions in Figure 1 omit attendance and arguing at the

November 13, 2019 privilege dispute hearing.  From the information found in the

chart, it is not possible to determine whether this task is subsumed in one of the

other descriptions, if the underlying timesheets were sufficiently detailed to

segregate this task from the other recorded tasks, if the hours spent were

unnecessary or duplicative, or if Citrix is seeking reimbursement for other, unlisted

tasks within the eight identified task categories.

24.    To evaluate the reasonableness of the fees for this month, I would

want to know – at a minimum – the number of hours each listed timekeeper

worked on each listed task in that month, along with the experience level of each

listed timekeeper.

---

[2] ████████████████████████ appears to have occurred in October 2019.  D.I
466, Exh. A, pg. 16.

25.     This information would permit a general assessment, for example, of whether the total fees and time spent by Citrix to ███████████████ ████████████████████████████████████ were reasonable. This information also would permit an assessment of whether Citrix assigned timekeepers of an appropriate experience level to each task (thus impacting the total fee sought) and an assessment of whether the time spent on the task was appropriate for the experience of the timekeeper performing the task.

26.     There are various tools that may be employed to make these assessments.  For example, when budgeting for clients, a good rule of thumb is that briefing costs, per finished page, $1,500 to $3,000 depending on the length of the submission and the complexity of the issues briefed, regardless of the experience level of the drafter.  A motion to compel or motion to transfer should fall at the lower end of the range; a complex case dispositive brief will fall at the upper end. Short submissions sometimes cost somewhat more per finished page due to the need for concision in the author's prose to meet shorter page limits or drafting goals.  Further, an experienced attorney is likely to bill at a higher hourly rate but be more efficient (and thus record less time) for any given task than an associate attorney billing at a lower hourly rate.

27.     The goalposts for the reasonable cost of a four page discovery dispute letter of the nature submitted in November 2019 are somewhere in the range of $6,000 to $12,000 based on the metrics described above.

28.     If I were provided the raw Citrix timesheets, I would match each relevant time entry to the summary list of categories in the charts provided by Citrix and create a total of time for each category, by timekeeper.  This information will allow an evaluation of whether attorneys at an appropriate level performed the various tasks and whether the time spent by each attorney and for the task as a whole was reasonable.

29.     I understand Citrix has not provided its original billing records because of attorney-client privilege concerns.  In my experience, original billing records are usually provided to opposing counsel in connection with a fee application, with any information subject to the attorney-client privilege redacted. *See*, *e.g.*, *In re Rembrandt Techs. LP Patent Litig.*, C.A. No. 07-1848-LPS (D. Del.) D.I. 978, ¶¶ 6-7 (Shaw Declaration (Shaw Keller LLP)); 979, ¶¶ 5-6 (Blumenfeld Declaration (Morris Nichols Arsht & Tunnell, LLP)); 983, ¶¶ 4, 6 (Cottrell Declaration (Richards, Layton & Finger LLP)); 987, ¶ 5 (Kirk Declaration (Bayard LLP)); 986, ¶¶ 5-7 (Cherny Declaration (Kirkland & Ellis LLP); 980, ¶¶ 12-14 (Lam Declaration (Keker & Van Nest LLP)); 981, ¶¶ 4-5 (Reisner Declaration (Kaye Scholer LLP)); 984, ¶¶ 5-6 (Hershkowitz Declaration (Gibson,

Dunn & Crutcher LLP)).  Further, I understand that Citrix maintained its billing records for the Chawla ancillary litigation in a separate matter number. Declaration of Jennifer Hayes, ¶ 6.  This should have minimized any risk of waiver of attorney-client privilege in the underlying litigation on the merits.

30.     It should have been possible for Citrix to create tabulations of this nature at minimal additional effort or cost, without disclosing its original billing records or revealing any potentially privileged material.  To create each monthly summary, Citrix already had to identify the relevant time entries on a timekeeper-by-timekeeper basis and list the tasks performed.  The one remaining task was to total the hours of each timekeeper by task.

31.     Another tool to evaluate reasonableness of an attorneys' fee is to evaluate the client's response.  Here, the monthly charts provided by Citrix contain no information about billed rates.  While it may exist, I have not seen anything in the materials provided that indicate Citrix paid the underlying billing statements. Further, if a client asked for a discount from the total fee sought in the billing statements, this would be an indication that some or all of the fees sought in the bill may not be reasonable.  Also, information about client payments is important in understanding whether the client paid the attorneys' standard hourly rate, or if the attorney worked for this client at some discounted rate.

32.     The Citrix submission for July 2019 (reproduced in Figure 2 below)

further illustrates the difficulty in evaluating the reasonableness of the fee request

based on the data I have been provided.  The highlighted lines in Figure 2 appear to

detail Citrix's ███████████████████████

Figure 2 – D.I 466, Exh. A, pg. 13



33.     Without underlying timesheets or details about these categories

provided by declaration or affidavit, it is not possible to tell whether other

categories may also fit within the deposition preparation category.  For example,

████████████████████████████████████████████████████ may

form part of the Citrix deposition tasks.  The other listed tasks, like the two tasks

for analysis of the Chawla deposition transcript and documents related to Chawla

testimony, appear on their face to have occurred post-deposition but cannot

conclusively be determined to be unrelated to deposition preparation.

34.     To evaluate the reasonableness of the deposition preparation time, I

would normally compare Citrix's total expended time to budgeting metrics for

deposition.  Typically, deposition preparation is budgeted as a 2:1 to 5:1 ratio of

preparation time to time on the record, depending on the complexity of the

deposition, the amount of relevant material, and the skill of the practitioner

preparing for the deposition.  Costs can exceed this ratio for various reasons,

sometimes reasonable, sometimes not.  An unreasonable increase in cost could

include preparation of an outline or script prepared by an associate attorney that

was not used (or lightly used) by the attorney taking the deposition.

35.     The data in Figure 2 does not show how much time each attorney

spent on each task, and without this information it is not possible to know what

portion of Citrix's July 2019 fees relate to deposition preparation or whether the

total fees Citrix incurred for deposition preparation are reasonable.[3]  A tabulation of the items in the categories related to deposition preparation would make it possible to determine whether the fees claimed for those tasks were reasonable.

36.    Citrix's fee submission for March and April 2020 (reproduced below as Figures 3 and 4, respectively) further illustrate the difficulties in evaluating Citrix's fee application in the absence of information about the total time spent by each attorney on each task.  That said, the smaller number of tasks performed in these months do allow some generalized conclusions to be made about the likely time spent by Citrix's attorneys to ███████████████████████

37.    In March 2020, Citrix identified the following tasks performed by counsel:

---

[3] According to the Citrix charts, █████████████████ also occurred in June 2019.  D.I. 446, Exh. A, pg. 12.

Figure 3 – D.I 466, Exh. A, pg. 20



38.     The Court Order referenced for this billing period appears to be D.I.
343, an oral order resolving disputes relating to the sanctions hearing conducted on
April 15, 2020.  Considering the record in a light most generous to Citrix, a
reasonable amount of time spent on this task should have been no more than 0.5
hours total between the three timekeepers.  This amount is equal to the total time
spent by three Citrix timekeepers in January 2020, for the single listed task of

███████████████████████████████████████

███████  (D.I. 466, Exh. A, pg. 19).  Because the data in Figure 3 does not show
how much time each attorney spent on this task, however, it is not possible to
know the total fees Citrix incurred for this task.

39.     The status letter referenced in this chart appears to be the status report,
D.I. 342.  The parties filed this letter on Tuesday, March 24, 2020 as directed by

the Court on Thursday, March 19, 2020.  Citrix's portion of the status report encompasses 3 paragraphs equivalent to slightly over one page double-spaced (358 words).  Using the briefing metric, a reasonable total cost for this work falls somewhere in the range of $1,500 to $2,000, or less than one hour for each of the three attorneys using a blended hourly rate as a yardstick.  To account for any meet and confer process, and considering the record in a light most generous to Citrix, this task reasonably should have taken no more than two hours per each of the three listed timekeepers.  Because the data in Figure 3 does not show how much time each attorney spent on this task, however, it is not possible to determine with certainty the total fees Citrix incurred for this task.

40.     The balance of the time March 2020 – approximately ■ hours – likely is attributable to the task ███████████████████████████████

████████████████████████

41.     This does not appear to be the total amount of the fees sought by Citrix for ████████████████  The Citrix summary for April 2020 also lists ████████████████ as an activity for that month, as shown in Figure 4:

Figure 4 – D.I 466, Exh. A, pg. 21

April, 2020



42.     The docket reveals several things related to the three highlighted

tasks.  First, the oral argument on the Chawla sanctions hearing occurred on April

15, 2020.  The April 15 transcript indicates the hearing lasted three hours on the

record.  D.I. 357.  According to the transcript, four attorneys identified in this chart

attended the hearing.  *Id.*, at 1.  Assuming the parties joined the teleconference

early, a reasonable time entry for each participant at the hearing is 3.3 hours.[4]

---

[4] Citrix's monthly summaries do not provide enough information to determine
whether or not attendance at this hearing by four attorneys was reasonable.
Normally, it is reasonable for the attorneys who directly supported preparation of

43.     The task listed as ██████████████████████████████

████████appears to be the parties' April 8, 2020 letter found at D.I. 348.  The

Citrix portion of this letter is approximately the same length as the portion of its

March submission (D.I. 342) discussed above.  Reasonable attorneys' fees for this

task should be in the same range as the reasonable attorneys' fees for submission

of D.I. 342.  Because the data in Figure 4 does not show how much time each

attorney spent on this task, however, it is not possible to know the total fees Citrix

incurred for this task.

44.     The time entry for ████████████████████████████████

█████████████████ to be an administrative or paralegal task related to finalizing the

demonstrative slides and transmitting the slides electronically as ordered in D.I.

343.

45.     A conservative view of Citrix's fee request thus allocates to these

three tasks approximately ██████ attorney hours ████████████████████████████

████████████████████████████████

---

the argument, along with Delaware counsel and lead trial counsel (if different from
the arguing attorney), to attend a hearing of the nature that occurred on April 15.
Often when additional attorneys attend, their time is not billed to the client.
Without the original billing records and information about the tasks performed by
each listed timekeeper leading up to the hearing, it is not possible to know whether
having these four attorneys attend the hearing was reasonable or whether Citrix
paid for the attendance of each timekeeper at the hearing.

46.     Three of the four remaining Citrix tasks appear to be related to

████████████████████   The final entry ████████████████████████████████

appears to relate to a portion of the transcript that was not captured by the Court

reporter during the hearing and that the Court ordered the parties to confer with

regard to the missing text.  *See* D.I. 357 at 105.

47.     Because the data in Figure 4 does not show how much time each

attorney spent on each task, however, it is not possible to know whether the total

fees Citrix incurred for the remaining three tasks are reasonable.  The hearing

demonstratives were sent to the court the day before the hearing, so it is likely that

only a small portion of this time was spent ████████████████████████

████████████████████████

48.     Nonetheless, the total ████████████████ time for Citrix thus appears

to be in the range of approximately ████████████████████████████

████████   Citrix's total ████████████████████ time equates to just under ████

████████████████████████   The hearing time was evenly split between the

parties, and thus Citrix's attorneys likely planned to speak for sixty minutes (the

hearing length set in D.I. 343).  Citrix transmitted thirty-four demonstrative slides

for Court's consideration at the hearing, not including its non-substantive title

page.

49.     There are several other facts I would like to know to evaluate the reasonableness of the time expended by Citrix attorneys in connection with the fee request.  For example, do the charts supporting the Citrix fee application reflect the amount billed to and paid by Citrix?  If a client has not paid its own counsel's attorney billing statement on the basis of excess fees or time spent (even if not reflected in the fee application), this information would be relevant to assessing attorneys' fee reasonableness.  Likewise, if Citrix has asked for or its counsel has offered a discount on the total fees sought or the billing rates of counsel for any of the time periods covered by the fee application, the discount and the reasons for the discount are relevant to assessing attorneys' fee reasonableness.  I have been unable to find any information in the record on these subjects.

### Question 2:  Are the hourly rates charged by DLA, as claimed in the Citrix fee application, are reasonable and within the range of rates charged for work on intellectual property <u>and/or complex litigation in the District of Delaware?</u>

50.     To evaluate the reasonableness of the DLA billing rates, I considered data from several sources.  First, I evaluated the American Intellectual Property Law Association's "2019 Report of the Economic Survey" ("2019 Economic Survey").

51.     The 2019 Economic Survey reports various demographic and "economic aspects of intellectual property law practice, including individual billing rates and typical charges for representative IP law services."  2019

Economic Survey at 1.  The survey participants are self-selected in response to an

email invitation.  *Id.*  The 2019 Economic Survey reports that AIPLA received 961

responses and that many respondents did not answer all questions.  *Id.*

52.     Most of the DLA attorneys who participated in this litigation are

located within the Boston, San Francisco, and Other East[5] reporting regions.  The

2019 Economic Survey reports partner billing rates for these regions as follows:

<u>Figure 5 – 2019 Economic Survey, pg. I-29</u>

| | Number of Individuals | Mean (Average) | 10th Percentile 10% | First Quartile 25% | Median (Midpoint) | Third Quartile 75% | 90th Percentile 90% |
|---|---|---|---|---|---|---|---|
| | | | * | * | * | | |
| Boston CMSA | 13 | $747 | $369 | $450 | $800 | $1,015 | $1,080 |
| NYC CMSA | 22 | $559 | $365 | $408 | $475 | $699 | $964 |
| Philadelphia CMSA | 10 | $599 | $433 | $486 | $560 | $729 | $823 |
| Washington, DC CMSA | 43 | $590 | $354 | $430 | $570 | $700 | $850 |
| Other East | 10 | $462 | $314 | $365 | $461 | $513 | $691 |
| Metro Southeast | 12 | $418 | $292 | $343 | $375 | $421 | $746 |
| Other Southeast | 8 | $414 | ISD | $354 | $375 | $463 | ISD |
| Chicago CMSA | 20 | $537 | $351 | $435 | $533 | $644 | $734 |
| Minne.-St. Paul PMSA | 15 | $443 | $290 | $330 | $420 | $545 | $626 |
| Other Central | 62 | $421 | $283 | $342 | $390 | $500 | $646 |
| Texas | 19 | $534 | $400 | $406 | $460 | $650 | $800 |
| Los Angeles CMSA | 13 | $586 | $336 | $440 | $575 | $675 | $978 |
| San Francisco CMSA | 14 | $665 | $385 | $464 | $650 | $826 | $1,023 |
| Other West | 41 | $496 | $300 | $343 | $450 | $623 | $769 |

---

[5]     Delaware falls within the study location "Other East", which includes
practitioners from Maine, New Hampshire, Vermont, Massachusetts, Rhode Island,
Connecticut, New York, New Jersey, Pennsylvania, Maryland, Virginia, and West
Virginia, in addition to Delaware.  Because the patent litigation practice in many of
these states bears little semblance to practice in this district, as a practitioner I also
look to comparable data from Philadelphia.

The number of respondents, while deemed sufficient by the survey authors to report results, are not large.

53.   The 2019 Economic Survey combines billing rates for patent prosecution and patent litigation professionals, treating these different areas of work in the field of patent law as the same for purposes of data aggregation.  As reported for partners:

<u>Figure 6 – 2019 Economic Survey, pg. I-26</u>

**Percent of time devoted to the following types of work, by Income Level (Q17)**

*Private Firm, Equity Partner*

| Gross Income in 2018 | TOTAL Number of Individuals | IP prosecution work Mean (Average) | Opinions or counseling prior to litigation or formal ADR Mean (Average) | IP licensing Mean (Average) | Non-licensing transactional work Mean (Average) | IP litigation Mean (Average) | Post-grant proceedings Mean (Average) | Other dispute resolution Mean (Average) |
|---|---|---|---|---|---|---|---|---|
| All Individuals | 350 | 42.3% | 8.7% | 3.8% | 2.2% | 15.2% | 3.4% | .7% |
| Less than $126,000 | 9 | 56.0% | 6.2% | .4% | .6% | 3.9% | .2% | .3% |
| $126,000-$150,999 | 5 | 54.0% | 13.6% | 7.0% | 2.0% | 4.0% | .0% | .0% |
| $151,000-$175,999 | 5 | 60.0% | 3.0% | 2.2% | .2% | 7.0% | .0% | .0% |
| $176,000-$200,999 | 19 | 46.3% | 8.7% | 5.6% | 2.9% | 8.4% | .5% | 1.3% |
| $201,000-$250,999 | 31 | 44.8% | 7.2% | 3.8% | 1.3% | 15.8% | 1.8% | .9% |
| $251,000-$300,999 | 37 | 52.3% | 9.2% | 5.0% | 2.8% | 8.4% | 2.3% | .3% |
| $301,000-$350,999 | 28 | 48.0% | 8.7% | 4.7% | 1.5% | 13.0% | 2.0% | .4% |
| $351,000-$400,999 | 31 | 46.1% | 5.9% | 4.3% | 1.8% | 13.6% | 2.9% | .9% |
| $401,000-$450,999 | 31 | 51.6% | 12.2% | 3.5% | 2.2% | 8.7% | 2.4% | .3% |
| $451,000-$500,999 | 24 | 37.9% | 5.7% | 4.0% | 2.4% | 21.8% | 4.1% | .7% |
| $501,000-$600,999 | 23 | 34.2% | 9.6% | 2.5% | .9% | 26.3% | 8.0% | .7% |
| $601,000-$750,999 | 24 | 43.8% | 13.2% | 5.1% | 5.0% | 9.2% | 1.0% | .0% |
| $751,000 or more | 62 | 29.7% | 7.9% | 2.5% | 2.1% | 23.4% | 6.5% | .7% |

54.   This table indicates that the survey respondents skew heavily toward patent prosecution (identified in the table as "IP prosecution work"), which carries a lower billable rate than patent litigation work in my experience.  Further, the 2019 Economic Survey, while reporting billable rates by region, does not compare

partner experience levels within regions, litigation versus IP prosecution work, types of matters handled, litigation experience, or other factors that impact actual billing rates.  Thus, while the survey results provide useful benchmarks for assessing the reasonableness of hourly rates in a complex patent litigation, the survey alone does not answer the question.

55.    The 2019 Economic Survey reports partner-track (*e.g.*, associate) billing rates as follows:

<u>Figure 7 – 2019 Economic Survey, pg. I-42</u>

|  | Number of Individuals | Mean (Average) | 10th Percentile 10% | First Quartile 25% | Median (Midpoint) | Third Quartile 75% | 90th Percentile 90% |
|---|---|---|---|---|---|---|---|
|  |  | * | * | * |  |  |  |
| Boston CMSA | 4 | $671 | ISD | $533 | $675 | $806 | ISD |
| Philadelphia CMSA | 3 | $381 | ISD | ISD | $414 | ISD | ISD |
| Washington, DC CMSA | 16 | $436 | $285 | $315 | $400 | $516 | $669 |
| Other East | 5 | $312 | ISD | $288 | $300 | $343 | ISD |
| Metro Southeast | 6 | $422 | ISD | $324 | $438 | $503 | ISD |
| Other Southeast | 4 | $335 | ISD | $233 | $336 | $438 | ISD |
| Chicago CMSA | 5 | $378 | ISD | $350 | $360 | $415 | ISD |
| Minne.-St. Paul PMSA | 9 | $297 | ISD | $276 | $295 | $313 | ISD |
| Other Central | 24 | $314 | $245 | $251 | $284 | $345 | $428 |
| Texas | 4 | $448 | ISD | $310 | $345 | $688 | ISD |
| Other West | 14 | $413 | $243 | $269 | $427 | $500 | $664 |

56.    The 2019 Economic Survey reports that the partner-track respondents were roughly 50% or more focused on IP prosecution work, as compared to patent litigation work:

Figure 8 – 2019 Economic Survey, pg. I-38

**Percent of time devoted to the following types of work, by Income Level (Q17)**

*Private Firm, Partner-Track Attorney*

| Gross Income in 2018 | TOTAL Number of Individuals | IP prosecution work Mean (Average) | Opinions or counseling prior to litigation or formal ADR Mean (Average) | IP licensing Mean (Average) | Non-licensing transactional work Mean (Average) | IP litigation Mean (Average) | Post-grant proceedings Mean (Average) | Other dispute resolution Mean (Average) |
|---|---|---|---|---|---|---|---|---|
| All Individuals | 135 | 54.8% | 6.5% | 2.8% | 1.9% | 16.5% | 3.6% | .2% |
| Less than $126,000 | 10 | 57.1% | 8.0% | 2.6% | 1.5% | 19.5% | .5% | .2% |
| $126,000-$150,999 | 20 | 71.4% | 2.2% | 1.4% | .9% | 8.7% | 1.4% | .0% |
| $151,000-$175,999 | 20 | 56.7% | 12.6% | 2.9% | 2.1% | 10.9% | 1.6% | .6% |
| $176,000-$200,999 | 19 | 59.2% | 6.7% | 7.1% | 3.7% | 11.1% | 1.3% | .0% |
| $201,000-$250,999 | 29 | 55.2% | 6.3% | 1.4% | 2.1% | 14.0% | 7.2% | .2% |
| $251,000-$300,999 | 15 | 51.9% | 6.6% | 2.6% | .5% | 16.9% | 4.1% | .3% |
| $301,000-$350,999 | 6 | 18.3% | 6.2% | 2.5% | 3.3% | 44.5% | 10.0% | .0% |
| $351,000-$400,999 | 4 | 27.5% | 2.5% | 3.8% | 3.8% | 45.0% | 7.5% | .0% |
| $401,000-$450,999 | 4 | 35.5% | 3.8% | 3.0% | 2.3% | 40.0% | .8% | .0% |
| $451,000-$500,999 | 1 | 69.0% | .0% | .0% | .0% | .0% | 20.0% | .0% |
| $501,000-$600,999 | 2 | 46.0% | .5% | .5% | .5% | 44.0% | .0% | .5% |
| $751,000 or more | 1 | 100.0% | .0% | .0% | .0% | .0% | .0% | .0% |

57.     The 2019 Economic Survey results, though instructive, do not focus on the precise nature of litigation at issue in the Citrix fee application, as described in paragraphs 14-17, above.  Therefore, I reviewed additional data sources to supplement my knowledge of reasonable billing rates for the Citrix fee application.

58.     Specifically, I evaluated fee applications in the United States Bankruptcy Court.  I reviewed these filings because I understand that, under the Bankruptcy Code, the reasonableness of fees paid in bankruptcy proceedings is measured in part by whether the rates are comparable to the hourly rates charged by comparably skilled practitioners in analogous non-bankruptcy fields such as intellectual property and complex corporate and commercial litigation matters, among other practice areas.  As a result, bankruptcy fee applications often report non-bankruptcy attorney hourly rates.

59.     I evaluated bankruptcy fee applications filed by Morris Nichols Arsht & Tunnel LLP ("Morris Nichols"), Richards Layton & Finger LLP ("Richards Layton"), and Young Conaway Stargatt & Taylor LLP (Young Conaway") filed in the United States Bankruptcy Court for the District of Delaware.  These fee petitions showed the following hourly rate data for non-bankruptcy attorneys practicing at those firms:

<u>Figure 9 – Blended Rates by Law Firm</u>

| <u>Law Firm & Time Period</u> | Blended Non-Bankruptcy <u>Partner Rate</u> | Blended Non-Bankruptcy <u>Associate Rate</u> | Blended Non-Bankruptcy <u>Paralegal Rate</u> |
|---|---|---|---|
| Richards Layton & Finger LLP (calendar year 2018)[6] | $757.76 | $401.67 | $239.81 |
| Young Conaway Stargatt & Taylor LLP (calendar year 2019)[7] | $782 | $401 | $253 |

_____

[6] *In re: Imerys Talc America, Inc.*, Case 19-10289 (LSS) (Bankr. D. Del.), Doc. 821, Exh. E (Jul. 15, 2019).  The identified rates correspond to all non-bankruptcy attorneys at Richards Layton.  *Id.*, Exh. B.

[7] *In re: Old BBP, Inc.*, Case 19-12502-LSS (Bankr. D. Del.), Doc. 728, Exh. A (Oct. 15, 2020).  This fee application states that the reported rates are the "blended hourly rates for attorneys and paraprofessionals in the Corporate Counseling and Litigation, Business Planning and Tax, and Intellectual Property Litigation sections of the Firm."

| Law Firm & Time Period | Blended Non-Bankruptcy Partner Rate | Blended Non-Bankruptcy Associate Rate | Blended Non-Bankruptcy Paralegal Rate |
|---|---|---|---|
| Morris Nichols Arsht & Tunnel LLP (May 1, 2018 to May 1, 2019)[8] | $804.86 | $478.61 | $279.61 |
| Richards Layton & Finger LLP (calendar year 2019)[9] | $771 | $438 | $265 |

60.     I understand that these average hourly rates are "blended" rates for all timekeepers with a particular title, regardless of experience.

61.     These billing rates are consistent with each other and with the market rates for comparable attorneys. Each of these firms have, in my experience and as noted on their websites, represented large non-Delaware businesses in litigations as primary counsel. These billing rates are thus a reasonable measure of prevailing market rates for comparable work in the District of Delaware. These ranges also fall within the approximate ranges reported in the 2019 Economic Survey.

62.     Based on the available data, the associate billing rates reported for the associate attorney timekeepers in the monthly Citrix charts do not appear to be reasonable.

---

[8] *In re: Orexigen Therapeutics, Inc.*, Case No. 18-10518 (JTD) (Bankr. D. Del.), Doc. 1151, Exh. C (Jul. 19, 2019).

[9] *In re Insys Therapeutics, Inc.*, Case 19-11292-KG (Bankr. D. Del.), Doc. 1136, Exh. D (Jan. 17, 2020).

63.     Timekeeper ███ appears to be a general litigation attorney admitted to the bar in 2013.  The Citrix monthly charts list her 2019 and 2020 billing rates as ███ per hour.  D.I. 466, Exh. A.

64.     Timekeeper ███ appears to be a patent litigation associate admitted to the bar in 2011.  The Citrix monthly charts list his 2018, 2019, and 2020 associate billing rate as ███ per hour.  D.I. 466, Exh. A.

65.     Timekeeper ████ appears to have been a patent litigation associate admitted to the bar in 2013.  The Citrix monthly charts list her 2018 and 2019 hourly rates as ███ per hour.  D.I. 466, Exh. A.

66.     Timekeeper ███ is a Boston-based DLA patent litigation partner admitted to the bar in 2002.  Timekeeper Strapp's DLA webpage states he "handles high-stakes intellectual property litigation and licensing disputes" describes him as "lead counsel" for 19 different clients (some in multiple actions), including for Citrix, in patent and other intellectual property matters.[10]  The Citrix monthly charts list his 2019 and 2020 billing rates as ███ per hour.  D.I. 466, Exh. A.

---

[10] *Michael Strapp*, DLA PIPER, https://www.dlapiper.com/en/us/people/s/michael-strapp/ (last visited Jan. 6, 2021) (see "Experience" tab for list of lead counsel cases).

67.     The billing rates for timekeeper ██████ are in the same range as the blended partner billing rates reported in the bankruptcy filings and the 2019 Economic Survey, as described above.  *See supra* Figure 9, Figure 5.

68.     The hourly rate of timekeeper ██████ is over 90% the hourly rate of timekeeper ██████  The hourly rate of timekeeper ██████ is over 93% the hourly rate of timekeeper ██████. The hourly rate of timekeeper ██████ is over 85% the hourly rate of timekeeper ██████  Considering the experience, reputation in the field, and abilities of the three timekeepers provided by the DLA website, the hourly rates of timekeepers ████████████████ do not appear to be reasonable.

69.     The hourly rates of timekeepers ████[11] ($████ per hour), ████ ($████ per hour), and ████████ ($████ per hour) also exceed the rates reported in the 2019 Economic Survey for associates and the blended non-bankruptcy rates reported in the public bankruptcy filings described above.  *See supra* Figure 7, Figure 9.  For example, these rates significantly exceed the average blended bankruptcy rates reported above:

---

[11]  Timekeeper ████ is not described as an intellectual property or patent litigation associate, so the closest data for timekeeper ████ comes from the bankruptcy filings.  *See Joy G. Kim*, DLA PIPER, https://www.dlapiper.com/en/us/people/k/kim-joy/ (last visited Jan. 6, 2021).

Figure 10 – Average Blended Associate Rates

| | Blended Non-Bankruptcy Associate Rate – Richards Layton & Finger LLP (calendar year 2018) | Blended Non-Bankruptcy Associate Rate – Young Conaway Stargatt & Taylor LLP (calendar year 2019) | Blended Non-Bankruptcy Associate Rate – Morris Nichols Arsht & Tunnel LLP (May 1, 2018 to May 1, 2019) | Blended Non-Bankruptcy Associate Rate – Richards Layton & Finger LLP (calendar year 2019) |
|---|---|---|---|---|
| Rate | $401.67 | $401 | $478.61 | $438 |

70.     While some of this difference is likely due to the experience level of timekeepers ███████████████████ it is unlikely that all of the difference is due to this fact.

71.     The hourly rates of associate timekeepers ████████████████ ███████████████████ also approach the average blended partner rates reported above, which ranged between $757 and $804 per hour.  *See* Figure 9.  The reported blended partner rates include attorneys of all experience levels.

72.     Likewise, the hourly rates of timekeepers ████████████ are above the median partner rate in San Francisco and in the range of the third quartile in Philadelphia, as reported in the 2019 Economic Survey.  *See* Figure 5.

73.     For example, timekeeper ███████ hourly rate is higher than the rates of

at least three more experienced Richards Layton partners.[12]  Comparison to the

partner rates further indicates that the hourly rates for the associates sought in the

Citrix fee application are not reasonable.

74.     A reasonable rate for experienced associates is likely in the range of

$500 to $575 per hour.  This range is higher than the average blended rates

reported in the bankruptcy filings, reflecting the experience level of timekeepers

████████████████████

I declare under penalty of perjury under the laws of the United States of

America that foregoing is true and correct.

_____
John W. Shaw, Esquire (No. 3362)

Executed on January 7, 2021
West Grove, Pennsylvania

---

[12] *In re Insys Therapeutics, Inc.*, Case 19-11292-KG (Bankr. D. Del.), Doc. 1136,
Exh. A (Jan. 17, 2020).  The Richards Layton timekeepers are Steele ($700/hour,
admitted to the bar in 2010), Shapiro ($675/hour, admitted to the bar in 2008), and
Stuhlmiller ($675/hour, admitted to the bar in 2010).  Richards Layton calls its
partners "Directors".

## APPENDIX 1:
## Materials Reviewed

**Docket Entries**:

*In Citrix Systems Inc., v. Workspot, Inc.*, C.A. No. 18-588-LPS: D.I. 101, 108, 146, 212, 213, 252, 260, 289, 295, 342, 343, 348, 357, 411, 412, 426, 434, 463, 466, 467, 478, 479

*In re: Imerys Talc America, Inc.*, Case 19-10289 (LSS) (Bankr. D. Del.), Doc. 821 (Jul. 15, 2019)

*In re Insys Therapeutics, Inc.*, Case 19-11292-KG (Bankr. D. Del.), Doc. 1136 (Jan. 17, 2020)

*In re: Old BBP, Inc.*, Case 19-12502-LSS (Bankr. D. Del.), Doc. 728 (Oct. 15, 2020)

*In re: Orexigen Therapeutics, Inc.*, Case No. 18-10518 (JTD) (Bankr. D. Del.), Doc. 1151 (Jul. 19, 2019).

*In re Rembrandt Techs. LP Patent Litig.*, C.A. No. 07-1848-LPS (D. Del.) D.I. 978, 979, 980, 981, 983, 984, 986, 987

**Decisions:**

1. *Rode v. Dellarciprete*, 892 F.2d 1177 (3d Cir. 1990)
2. *Seagate Tech. (US) Holdings, Inc. v. Syntellect, Inc.*, 2016 U.S. Dist. Lexis 135460 (D. Del. 2016)

**Citrix E-mails:**

1. 2020-10-19 RE: Case 1:18-cv-00588-LPS Citrix Systems Inc. v. Workspot, Inc.
2. 2020-10-30 RE: Case 1:18-cv-00588-LPS Citrix Systems Inc. v. Workspot, Inc.
3. 2020-11-12 RE: Case 1:18-cv-00588-LPS Citrix Systems Inc. v. Workspot, Inc.
4. 2020-11-17 RE: Case 1:18-cv-00588-LPS Citrix Systems Inc. v. Workspot, Inc.
5. 2020-11-18 RE: Case 1:18-cv-00588-LPS Citrix Systems Inc. v. Workspot, Inc.
6. 2020-11-18 RE: Case 1:18-cv-00588-LPS Citrix Systems Inc. v. Workspot, Inc.
7. 2020-11-19 RE: Case 1:18-cv-00588-LPS Citrix Systems Inc. v. Workspot, Inc.
8. 2020-11-23 RE: Case 1:18-cv-00588-LPS Citrix Systems Inc. v. Workspot, Inc.2.
9. 2020-11-23 RE: Case 1:18-cv-00588-LPS Citrix Systems Inc. v. Workspot, Inc.
10. 2020-11-24 RE: Case 1:18-cv-00588-LPS Citrix Systems Inc. v. Workspot, Inc.

**Workspot E-mails:**

1. 2020-11-13 RE: Case 1:18-cv-00588-LPS Citrix Systems Inc. v. Workspot, Inc.
2. 2020-11-23 RE: Case 1:18-cv-00588-LPS Citrix Systems Inc. v. Workspot, Inc.

**Websites:**

1. https://www.linkedin.com/in/erin-larson-a0805298, accessed December 16, 2020
2. https://www.dlapiper.com/en/us/people/s/michael-strapp/, first accessed December 16, 2020
3. https://www.dlapiper.com/en/us/people/b/biggs-brian/, first accessed December 16, 2020
4. https://www.dlapiper.com/en/us/people/k/kim-joy/, first accessed December 16, 2020
5. https://www.bmplawyers.com/denise-seastone-kraft/, accessed December 16, 2020
6. https://www.linkedin.com/in/yasmin-ghassab-5022bb5a?challengeId=AQErZI4ndqmkhwAAAXbY5d9PGxfnsVtgOTb6s68-EheB84lHQzjGYgN_X65ZD60rgc7LYECodZg4vEQV7fK1n-k7ZRV4DgXK0Q&submissionId=08399080-19b7-5716-7887-62602a5db852, first accessed December 16, 2020
7. https://www.linkedin.com/in/elizabeth-callahan?challengeId=AQGU2ZRE_U_fRAAAAXbZUNeAgxrXbs-bjAzS8HNQLpF3tMaXH4RcLkkdsbBqyVoSJE0AKyU_f2KWAxEt_LU0AWTHmLonmXYgCw&submissionId=32ef94b7-79bd-5716-4e6e-19e787392c59, accessed December 16, 2020

**Other Materials:**

1. 2020-10-16 Letter to M. Strapp re Fee Demand 4820-8512-6863v.1
2. 2020-11-13 Letter to M. Strapp 4845-6657-4034v.1
3. Attachment – Citrix External Counsel Sanctions Fees – Confidential
4. Citrix External Counsel Post-PI Sanctions Fees and Costs (10.7.20) – Confidential (004)
5. Correspondence re Fees and Costs Owed by Workspot Pursuant to Sanctions Order – 10.2.20
6. March, April 2020 invoices 4840-3465-5700 v.1
7. 7-17-19 Citrix – Chawla Transcript
8. 2019-01-07 Defendant's Responses to Plaintiff's First Set of Request for Production re: Email Investigation (Nos. 1-20)
9. 2020-04-15 Citrix Sanctions Motion Hearing Slides
10. 2020-04-15 Workspot Sanction Motion Hearing Slides
11. 2019 AIPLA Economic Survey