IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CITRIX SYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 18-588-LPS |
| v. ) | |
| ) | |
| WORKSPOT, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

At Wilmington this **21st** day of **January, 2021**, the court having considered Citrix Systems, Inc.'s ("Citrix") request for a determination regarding the proper amount of sanctions awarded against Workspot, Inc. ("Workspot"), and Workspot's response to Citrix's motion (D.I. 478; D.I. 480);[1] IT IS HEREBY ORDERED THAT Citrix's request is GRANTED-IN-PART in the manner set forth below.

1.  **Background.** On April 19, 2018, Citrix Systems Inc. ("Citrix") initiated the present litigation by filing a complaint against Workspot, Inc. ("Workspot"), alleging causes of action for patent infringement, false advertising under Section 43(a) of the Lanham Act, violations of the Delaware Deceptive Trade Practices Act, and unfair competition. (D.I. 1 at ¶¶ 43-129)

2.  In early October 2018, Workspot's Chief Technology Officer, Puneet Chawla, sent emails and posted information to websites to harass, intimidate, and extort Citrix and two of its executives. (D.I. 262, Exs. 1, 3-12) After investigating the source of the threatening emails,

---

[1] In addition to the parties' letter submissions found at D.I. 478 and D.I. 480, the parties also filed several declarations in support of those letter submissions, which can be found at D.I. 479, D.I. 481, and D.I. 482.

Citrix notified Workspot on October 15, 2018 that Mr. Chawla sent the communications. (D.I. 262, Ex. 13)

3.  On October 16, 2018, Citrix filed a motion for a temporary restraining order ("TRO") against Workspot. (D.I. 101) Workspot responded to Citrix's motion for a TRO on October 30, 2018, claiming that Citrix's allegations against Mr. Chawla were speculative and unsupported by competent evidence. (D.I. 112 at 1, 19-20; 12/12/18 Tr. at 16:7-15) In conjunction with Workspot's response, Mr. Chawla filed a declaration, under penalty of perjury, categorically denying that he sent the threatening emails and web postings. (D.I. 115 at ¶¶ 2-4)

4.  On December 12, 2018, the District Judge conducted a hearing on the motion for a preliminary injunction and the TRO motion. (12/12/18 Tr.) The District Judge denied Citrix's motion for a TRO, but also expressed concerns about the allegedly false declaration signed by Mr. Chawla on October 30, 2018 and ordered discovery on the issue. (12/12/18 Tr. at 4:25-5:18, 110:5-17) The District Judge also ordered Workspot to reimburse Citrix for half of the costs incurred in connection with the TRO motion. (*Id.* at 111:18-23)

5.  Citrix subsequently challenged the sufficiency of Workspot's investigative efforts and discovery responses regarding the Chawla declaration. (D.I. 185; D.I. 188) On March 28, 2019, the undersigned judicial officer issued a Memorandum Order granting-in-part Citrix's motion to compel the production of certain discovery and motion for fees and costs. (D.I. 197)

6.  On August 28, 2019, Citrix filed a motion for additional sanctions against Workspot, among other requested relief. (D.I. 260; D.I. 261) The District Judge heard argument by teleconference on April 15, 2020 and issued a Memorandum Opinion and Order on September 25, 2020 granting Citrix's motion for additional sanctions. (D.I. 411; D.I. 412) Specifically, Workspot was ordered to "pay Citrix its reasonable fees and costs associated with

responding to Mr. Chawla and Workspot's misconduct, including the remaining 50% of such fees and costs which the Court did not initially order Workspot to pay at the December 12, 2018 hearing, as well as the reasonable fees and costs incurred in Citrix seeking and obtaining the discovery ordered by the Court and briefing and arguing th[e] sanctions motion." (D.I. 412 at ¶ 1)  The District Judge further ordered the parties to submit a joint status report, "which shall include a proposal for determining the amount of additional fees and costs Workspot is to pay Citrix."  (*Id.* at ¶ 3)

7. In accordance with the Court's September 25, 2020 Order, the parties filed a joint status report on October 5, 2020 outlining a procedure by which the parties were to exchange information on an accounting of the amount of fees incurred by Citrix.  (D.I. 426)  The joint status report specified that any remaining disputes related to the amount of the fee award would be resolved by the undersigned judicial officer, providing that, "[s]hould the dispute require review of Citrix's billing records, the parties propose providing those for *in camera* review to" the undersigned judicial officer.  (*Id.* at ¶ 5)

8. Consistent with the procedure set forth in the joint status report, the parties filed a joint motion for a teleconference to resolve a sanctions-related dispute.  (D.I. 463)  The undersigned judicial officer ordered the production of Citrix's billing records for *in camera* review and considered the billing records in connection with the parties' letter submissions.  (12/4/2020 Oral Order; D.I. 478; D.I. 480)  At a teleconference held on January 14, 2021, the parties presented their respective arguments on the sanctions-related dispute.

9. **Legal standard.**  The Court has the inherent authority to assess attorney's fees as a sanction "for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46 (1991). "Federal courts may exercise their inherent power 'to impose sanctions on

both litigants and attorneys to regulate their docket, to promote judicial efficiency, and to deter abuse of judicial process.'" *In re Intel Corp. Microprocessor Antitrust Litig.*, 562 F. Supp. 2d 606, 610-11 (D. Del. 2008) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 505 (3d Cir. 1991)). In determining whether the amount of attorney's fees sought is reasonable, "[t]he district court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Pub. Interest Research Grp. of NJ, Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995).

10. **Analysis.** Citrix's additional fee request is GRANTED-IN-PART in the manner set forth below:

| CATEGORY OF SANCTIONS | AMOUNT AWARDED |
|---|---:|
| **DLA Piper fees & costs (from 12/12/2018)** | $1,066,273.31 |
| **DLA Piper fees & costs (from 9/25/2020)** | $0 |
| **Other outside counsel fees & costs** | $2,265.30 |
| **In-house counsel & IT fees & costs** | $0 |
| **Remaining 50% of pre-TRO hearing fees** | $271,963.30 |
| **Third-party disbursements to vendors** | $36,841.30 |
| **Prejudgment interest** <br> **Post-judgment interest** | $0 <br> TBD on final judgment |
| **TOTAL:** | **$1,377,343.21** |

11. *Workspot's request to compel Citrix to produce its billing invoices is denied.* Workspot contends that it cannot adequately assess the reasonableness of Citrix's fee request based on the information Citrix provided, and asks to review Citrix's billing invoices for itself. (D.I. 480) Workspot's request is denied. The parties jointly agreed in the October 5, 2020 status

4

report that, "[a]fter conducting a good faith meet and confer under Local Rule 7.1.1, should the parties have any remaining disputes related to the amount of the fee award, the parties propose availing themselves of Magistrate Judge Fallon's discovery dispute procedures. Should the dispute require review of Citrix's billing records, the parties propose providing those for in camera review to Magistrate Judge Fallon."  (D.I. 426 at ¶ 5)  In accordance with the procedure agreed to by the parties, the undersigned judicial officer has reviewed Citrix's billing records *in camera* and has considered them along with the parties' letter submissions and the arguments presented during the January 14, 2021 teleconference.  Moreover, Workspot acknowledged during the teleconference that it has an independent baseline for assessing the reasonableness of Citrix's fees based on Workspot's own participation in this litigation.

12. Workspot relies on the Court's decision in *Skretvedt v. E.I. duPont de Nemours Co.*, which stated that the plaintiff "has the affirmative obligation to maintain accurate records and present that information to the court and opposing counsel in a reliable, cogent fashion, thereby allowing opposing counsel to determine if any reasonable objections are warranted and enabling the court to properly evaluate the motion."  262 F. Supp. 2d 366, 379 (D. Del. 2003).  But in *Skretvedt*, the Court did not require the production of the billing invoices themselves to opposing counsel because the plaintiff did not prepare monthly bills or maintain daily time records.  *Id.*  The Shaw Declaration also refers to docket entries in MDL litigation indicating that firms voluntarily attached redacted versions of their billing invoices in support of their fee applications, with unredacted copies provided to the court for *in camera* review.  (D.I. 482 at ¶ 29) (citing C.A. No. 07-1848-LPS, D.I. 978 at ¶¶ 6-7; D.I. 979 at ¶¶ 5-6, etc.).  Here, however, Citrix's billing summaries, combined with its production of the underlying invoices for the

5

court's *in camera* review, are sufficient to satisfy Citrix's burden in light of the parties' procedural agreement as set forth in the joint status report.

13.     ***DLA Piper fees & costs (post-TRO hearing) shall be reduced by 20%.***  Citrix's request for $1,334,627.64 in fees from the period after the December 12, 2018 TRO hearing to May 2020 is granted-in-part, to be reduced by $1,786.00 representing the fees of Andrew Valentine for a subtotal of $1,332,841.64, which is further reduced by 20% for an award of $1,066,273.31.  (D.I. 478, Ex. 2)  These fees are related to the topics for which sanctions were ordered in the September 25, 2020 Memorandum Opinion and Order, including sanctions-related discovery, motions to compel, and fees and costs incurred in drafting the motion for additional sanctions.  (*Id.*; D.I. 412)  The reasoning for the two reductions is set forth below. The Court bases its 20% reduction of the fee amount on a review of all of the DLA Piper invoices for the relevant time period.  Specific examples supporting the reduction are set forth below, but these should not be construed as the sole basis for the reduction.

14.     <u>Fees of Andrew Valentine.</u>  In the March 28, 2019 Memorandum Order, the Court previously determined that the billing rates of DLA Piper attorneys involved in the litigation were reasonable.  (D.I. 197 at ¶ 57)  Citrix represents that "the billing rates have not changed for any of the DLA Piper billing attorneys since 2018."  (D.I. 478 at 3)  But Citrix's invoices from March and April 2019 reflect the involvement of a partner from DLA Piper who was not previously involved in the case, did not actively participate as a member of the core "team" addressing sanctions-related issues, and who bills at a rate of $115 more per hour than the next-highest billing partner on the case. During the January 14, 2021 teleconference, counsel for Citrix explained that the partner was based in the Northern District of California, and his efforts were related to enforcing the subpoena against Mr. Chawla in that district.  "[I]n most cases, the

relevant rate is the prevailing rate in the forum of the litigation." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005). In this case, the attorney's billing rate is not in line with the prevailing rate of the Delaware partners working on the case or other attorneys performing substantive work on filings made to enforce the subpoena against Mr. Chawla in the Northern District of California. While an exception to the forum rule exists for "the need for special expertise of counsel from a distant district," *id.*, the line item invoice entries from March and April 2019 reflect that the partner's involvement in this particular case was primarily limited to "review" of briefs and other filings drafted by others, as opposed to substantive work.

15. Mr. Chawla's July 2019 deposition. First, the fees incurred in preparation for Mr. Chawla's deposition are disproportionate to the length of the deposition itself. The Shaw Declaration represents that a typical ratio of preparation time to on-the-record time for a deposition ranges from 2:1 to 5:1. (D.I. 482 at ¶ 34) Citrix's billing invoices reflect approximately 130 hours of preparation time, for a ratio of 18:1. Although Citrix challenges the accuracy of the Shaw Declaration's estimate for a deposition as complex as Mr. Chawla's, this still represents more than triple the Shaw Declaration's most liberal estimate for a standard-length deposition.

16. Second, not all of the invoiced charges are reasonably related to the issues for which sanctions were awarded. Citrix argues that the full amount of requested sanctions is justified "because Citrix and its counsel have had to divert substantial resources from pursuing the false advertising and patent infringement claims brought against Workspot in this lawsuit," but a review of Citrix's invoices suggests that Citrix seeks to recover at least some fees for these unrelated topics as well. (D.I. 478 at 2) For example, a line item from the June 2019 invoice

7

indicates that a deposition outline was prepared by counsel on false advertising, as opposed to sanctions-related issues. Consistent with this time entry, Citrix's counsel represented during the teleconference that the Chawla deposition preparation was unusually complex because counsel believed it would be their sole opportunity to depose Mr. Chawla on issues including false advertising and patent infringement. A comparison of the June 2019 invoice to the June 2019 billing summary provided to Workspot confirms that no deductions were made for such entries in Citrix's request for sanctions. (Compare D.I. 478, Ex. 2 at 7 *with* June 2019 invoice total of $34,685.00) The September 25, 2020 Memorandum Opinion provides no basis for the recovery of fees related to causes of action for false advertising and patent infringement.

17. <u>Preparation for the April 15, 2020 sanctions hearing.</u> The amount of time spent by Citrix attorneys in preparing for the April 15, 2020 sanctions hearing is also disproportionate. Citrix's billing invoices from March and April 2020 reflect that the amount of time spent in preparation for the 3-hour sanctions hearings was approximately 190 hours. This includes legal research, preparing a slide presentation, and participating in moot oral arguments with the client. Preparation of the slides alone accounted for over 50 hours.

18. ***DLA Piper's request for fees & costs accruing since the Court's September 25, 2020 Memorandum Opinion and Order are denied.*** Citrix's request for an award of fees from September 25, 2020 to the date of full payment by Workspot, amounting to $73,315.00 through the end of December 2020, is denied. (D.I. 478, Ex. 4) The District Judge's September 25, 2020 Order contemplated an award of additional fees for the motion for additional sanctions, discovery, and motions to compel. (D.I. 412) It did not expressly contemplate an award of fees for continuing fee disputes.

19.     Citrix argues that the fees are justified because it continues to be prejudiced by Workspot's "protracted effort to prevent Citrix from recovering the full amount of the awarded sanctions." (D.I. 478 at 2-3)  But Citrix's request for "fees on fees" is increasingly tangential to the conduct for which sanctions were originally awarded, namely, Mr. Chawla's actions and Workspot's filing of the false Chawla Declaration.  Workspot's challenge to the reasonableness of Citrix's fee request is not only within Workspot's rights—it is substantiated by Citrix's own overreach in requesting fees.  *See, e.g.*, ¶ 15, *supra*.  Moreover, the record shows that Citrix refused to accept Workspot's overture of $1 million in uncontested fees, without restrictions on Citrix's right to seek additional fees.  (D.I. 480 at 1-2; D.I. 481, Exs. E & H)  On this record, Workspot does not bear sole responsibility for the amount of fees incurred by Citrix following the September 25, 2020 Memorandum Opinion and Order.

20.     Citing the Third Circuit's decision in *Planned Parenthood of Central New Jersey v. Attorney General of State of New Jersey*, Citrix argues that "[a] party entitled to an award of attorneys' fees is also entitled to reimbursement for the time spent litigating its fee application." 297 F.3d 253, 268 (3d Cir. 2002).[2]  "However, as the Supreme Court observed in *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1982), a 'request for attorney's fees should not result in a second major litigation.'" *Id.*  The amount of fees associated directly with Mr. Chawla's conduct and the filing of the false Chawla Declaration is now settled, and the total cumulative sanctions award of $1,649,306.51[3] is sufficient to compensate Citrix and penalize Workspot for the repercussions of these events.  Further litigation on the issue of fees will not advance the Court's

---

[2] In *Planned Parenthood*, the Third Circuit ultimately vacated the award of fees for work performed on the fee petition.  *Id.*

[3] This amount represents $1,377,343.21 awarded in the instant Memorandum Order, plus $271,963.30 previously awarded by the Court during the December 2018 hearing.

9

goal of compensating Citrix for Mr. Chawla's actions and the filing of the false Chawla Declaration. Instead, it would run the risk of devolving into "a second major litigation" on a request for attorney's fees. *See Hensley*, 461 U.S. at 437.

21. ***Other outside counsel fees & costs are granted.*** Citrix's request for $2,265.30 in attorney fees for services provided by Skadden Arps and Wilks during the relevant time frame are granted. (D.I. 478, Ex. 3) Workspot does not object to these fees, and the amount of time expended was limited. The invoices produced for *in camera* review show that the work performed falls within the scope of the categories outlined by the District Judge in the September 25, 2020 Memorandum Opinion and Order.

22. ***In-house counsel fees & costs are denied.*** Citrix's request for $60,351.96 in in-house counsel fees from the October 9, 2018 conduct by Chawla to the December 12, 2018 TRO hearing is denied. (D.I. 478, Ex. 3) This request was previously denied in the March 28, 2019 Memorandum Order. (D.I. 197 at ¶ 59) In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, Workspot filed objections to the Memorandum Order. (D.I. 203) The District Judge overruled those objections and adopted the Memorandum Order. (D.I. 252) There is no provision for reconsideration of the March 28, 2019 Memorandum Order under Rule 72.

23. ***Fees for third party disbursements to vendors are granted.*** Fees in the amount of $36,841.30 are granted for third-party disbursements to vendors. (D.I. 478, Ex. 6) Workspot does not challenge this amount of fees.

24. ***The remaining 50% of pre-TRO hearing fees is granted.*** Fees in the amount of $271,963.30, representing the remaining 50% of the pre-TRO hearing fees, are granted. (D.I. 478, Ex. 7) The District Judge expressly included these fees in the September 25, 2020

Memorandum Opinion and Order, and Workspot raises no objection to this fee amount. (D.I. 411 at 15-16)

25. ***The request for prejudgment interest is denied.*** Citrix's request for prejudgment interest is denied. Prejudgment is intended to "place the party in as good a position as it would have been absent the wrongful act." *See Takeda Pharms., U.S.A., Inc. v. West-Ward Pharm. Corp.*, C.A. No. 14-1268-RGA, 2018 WL 6529289, at *7 (D. Del. Nov. 12, 2018) (awarding prejudgment interest on lost profits). The cases cited by Citrix involved efforts to obtain prejudgment interest for compensatory damages for patent infringement, not for the recovery of attorney's fees. *See id.*; *see also Idenix Pharms. LLC v. Gilead Scis., Inc.*, 271 F. Supp. 3d 694, 705 (D. Del. 2017); *Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, C.A. No. 18-462-MN, 2020 WL 1443215, at *9 (D. Del. Mar. 24, 2020); *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, C.A. No. 15-634-JFB, 2019 WL 1877189, at *5 (D. Del. Apr. 26, 2019). Where, as here, a party seeks prejudgment interest on the recovery of attorney's fees as a punitive measure as opposed to seeking prejudgment interest on compensatory damages, the court has discretion to deny the request.[4] *See Liqwd, Inc. v. L'Oreal USA, Inc.*, C.A. No. 17-14-JFB, 2019 WL 6840353, at *3 (D. Del. Dec. 16, 2019) ("While the Court finds the award of pre-judgment interest on the compensatory damages is appropriate in this case, the Court finds that pre-judgment interest . . . on the attorneys' fee award is unnecessary" because "the purpose of pre-judgment interest is to compensate and make whole the patent holder, not to punish the infringer.").

---

[4] Citrix seeks prejudgment interest on the total amount of sanctions accruing from the filing of the false Chawla Declaration on October 30, 2018. (D.I. 478 at 4) In this regard, Citrix seeks to collect interest on fees that had not yet been incurred.

11

26. *The request for post-judgment interest is unripe.* Citrix seeks post-judgment interest on the remaining 50% of the pre-TRO fees and costs from the date of the September 25, 2020 Order through the date of final payment, as well as on the amount of the total sanctions judgment from the date of that judgment through the date of final payment. (D.I. 478 at 4) Citrix's request for post-judgment interest is unripe because a judgment has not been entered on the amount of total sanctions. Under 28 U.S.C. § 1961, "interest shall be calculated from the date of the entry of the judgment" and "shall be computed daily to the date of payment." 28 U.S.C. § 1961(a)-(b). Although the September 25, 2020 Order specified the amount of $271,963.30, representing the balance of the pre-TRO fees, Citrix cites no precedent for a piecemeal award on fees relating to the same conduct. Moreover, Citrix does not account for the fact that Workspot made an effort to pay even more than the pre-TRO sum following the entry of the September 25, 2020 Order without prejudice to Citrix's right to seek additional fees. (D.I. 481, Ex. E) Workspot should not now be penalized with an accrual of post-judgment interest on an amount that it attempted to pay promptly. The date of the judgment shall occur upon the later of the expiration of the objections period or the resolution of objections by the District Judge.

27. **Conclusion.** For the foregoing reasons, IT IS HEREBY ORDERED THAT Citrix's request for a determination regarding the proper amount of sanctions awarded against Workspot is GRANTED-IN-PART. (D.I. 478)

28. Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Order should be redacted, the parties shall jointly submit a proposed redacted version by no later than **January 28, 2021**, for review by the court, along with a motion supported by a declaration that includes a

clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within thirty (30) days of the date the Memorandum Order issued.

29. This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within seven (7) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to five (5) pages each.

30. The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

_____
Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE